**BURNS & LEVINSON LLP**
Howard J. Susser (*pro hac vice*)
hsusser@burnslev.com
Paul T. Muniz (*pro hac vice*)
pmuniz@burnslev.com
Zachary R. Gates (*pro hac vice*)
zgates@burnslev.com
Alexandra Capachietti (*pro hac vice*)
acapachietti@burnslev.com
125 Summer Street
Boston, Massachusetts
[Tel.] 617-345-3000
[Fax] 617-345-3299

*Additional Plaintiff's Counsel Listed on Signature Page*

**Attorneys for Plaintiff GPNE Corp.**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

| | |
|---|---|
| GPNE CORP., <br><br> Plaintiff, <br><br> v. <br><br> APPLE, INC., NOKIA CORP., NOKIA INC., PANTECH CO. LTD., and PANTECH WIRELESS, INC. <br><br> Defendants. | Case Nos.:  12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK <br><br> **NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*** <br><br> (Notice of Motion and GPNE's Motion for Leave to Amend/Supplement Its Infringement Contentions Post-*Markman*; Memorandum of Points and Authorities in Support Thereof; and [Proposed] Order filed concurrently herewith) <br><br> Time: 1:30 PM <br> Date:   October 31, 2013 <br> Location: Ct Rm 8 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT ON** October 31, 2013, at 1:30 P.M., or as soon thereafter as the matter may be heard, in Courtroom 8 of the above-entitled court, located at 201 S 1st Street, San Jose, CA 95113, Plaintiff GPNE Corp. ("GPNE") will and hereby does move the Court pursuant to Patent Local Rule 3-6 for the Northern District of California for an Order granting leave to supplement GPNE's Disclosure of Asserted Claims & Infringement Contentions ("Infringement Contentions").

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Howard J. Susser, the exhibits attached thereto, the [Proposed] Order filed concurrently herewith, the records and files in this action, and any other matters of which this Court may take judicial notice.

Dated: September 26, 2013

**GARTEISER HONEA**

BY: /s/ *Randall T. Garteiser*
Randall T. Garteiser
Christopher A. Honea

**Attorneys for GPNE CORP.**

---

1

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

**TABLE OF CONTENTS**

I.    Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.   Statement of Relevant Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

      A.    Legal Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    GPNE Was Diligent in Seeking to Amend its Infringement Contentions. . . . . . . . . .4

      C.    The Defendants Will Suffer No Prejudice Should This Motion Be Granted. . . . . . .13

IV.   Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

# TABLE OF AUTHORITIES

Pat. L.R. 3-6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1363, 1366 (Fed. Cir. 2006). . 3

*Acer, Inc. v. Tech. Prop. Ltd.*, No. 08-cv-00877, 08-cv-00882, 08-cv-05398, 2010 U.S. Dist. LEXIS 142472 AT *11 (N.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Golden Hour Data Systems, Inc. v. Health Services Integration, Inc.*, No. 06-cv-07477, 2008 U.S. Dist. LEXIS 75495, at *4 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Apple v. Samsung*, Case No. 12-cv-0630-LHK, 2013 U.S. Dist. LEXIS 91450, *34-46 (N.D. Cal. June 26, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 13

ii

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Introduction**

This Court held a *Markman* hearing on June 6, 2013, and construed ten claims in its Order Construing Claims dated August 13, 2013 (*Markman* Order). (Susser Decl., ¶ 3, Exh. A.) By this motion, GPNE seeks leave to amend its infringement contentions to address constructions as to two terms out of the ten construed: "node," and "count value." As to "node," the Court adopted a construction that no party asserted. Furthermore, the Court's construction of "node" added limitations to the term that are not written in the claim. GPNE is not changing its contentions to point to a different "node" or component in the accused devices (the accused device are the "nodes"), but only to explain how the already identified and accused "nodes" meet the claim term as construed by the Court, literally and under the doctrine of equivalents ("DOE"). Likewise, as to "count value," GPNE seeks to clarify that the asserted claims that contain a recitation to "count value" are still literally infringed, since the asserted claims require a signal with "information relating to a count value," and GPNE merely expounds on the original contention to show more precisely how such "information" is derived in the accused products given the Court's construction. (Susser Decl., ¶ 3, Exh. A, p. 28.)

GPNE respectfully submits that since GPNE is not altering its contentions to point to different products or components from its original contentions, formal amendment of contentions may not be necessary under Local Rules practice, as GPNE is not substantively changing positions, and GPNE is now mainly giving formal notice to Defendants as to the bases for its infringement contentions following *Markman*. To be sure, Defendants know what GPNE accuses as infringement and why and nothing has changed that could prejudice Defendants based on GPNE's updating and fine-tuning its contentions. Defendants do not unanimously assent to this motion for leave.

**II.    Statement of Relevant Facts**

The Court's Order Construing Claims ("*Markman* Order") lays out a description of the background of the invention and procedural background of this case. (Susser Decl., ¶ 3, Exh. A, pp. 1-6.)

1

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

1   GPNE served its Initial Infringement Contentions in this case on October 24, 2012.  (Susser Decl., ¶ 4, Exh. B; ¶ 5, Exh. C; ¶ 6, Exh. D.)[1]  GPNE served a First Amended set of Infringement Contentions on Defendant Nokia on February 15, 2013, in response to Nokia's request to provide further technical details regarding the Nokia accused devices.  (Susser Decl., ¶ 7, Exh. E.)

Defendants served Initial Invalidity Contentions in this case on December 10, 2012.  (Susser Decl., ¶ 8, Exh. F.)

GPNE propounded Non-Infringement Contention Interrogatories to Defendants on March 21, 2013.  (Susser Decl., ¶ 9, Exh. G; ¶ 10, Exh. H.)  While the Non-Infringement Contention Interrogatories were timely answered by the Defendants, GPNE has requested that the Defendants supplement their responses in light of the Court's *Markman* Order, as Defendants' initial responses to the Non-Infringement Contention Interrogatories relied upon the Defendants' proposed constructions, which were rejected by the Court in its *Markman* Order.  (Susser Decl., ¶ 9, Exh. G; ¶ 10, Exh. H.)  In response to GPNE's requests, Defendants have indicated their intention to amend and supplement their non-infringement contentions in view of the *Markman* Order.

The Court issued its *Markman* Order on August 13, 2013.  (Susser Decl. ¶ 3, Exh. A.)

On August 19, 2013, GPNE counsel notified Defendants that GPNE intended to amend its contentions based on the Court's *Markman* Order ("The parties should agree to a procedure regarding Local Patent Rule 3-6.  GPNE will amend its infringement contentions pursuant to 3-6(a) at least as to 'node' and 'count value.'").  (Susser Decl., ¶ 11, Exh. I.)

On September 13, 2013, GPNE sent Defendants a lengthy letter describing its infringement position as to "node" in view of the *Markman* Order, a draft proposed amendment of contentions, along with a request for assent for leave to file this motion.  (Susser Decl., ¶ 12, Exh. J.)

Despite that GPNE moved swiftly and courteously to advise Defendants of its plan to update its contentions to reflect the *Markman* Order (and cooperatively acknowledging Defendants' need to do

---

[1] GPNE had served a prior set of contentions when the case was still pending in Hawaii.

2

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

so with their non-infringement and invalidity contentions), Defendants to varying extents, oppose this motion for leave.[2]

### III.     Argument

#### A.     Legal Authority

Patent Local Rule 3-6 allows the parties to amend their infringement contentions "by order of the Court upon a timely showing of good cause." Pat. L.R. 3-6. The rule provides a non-exhaustive list of circumstances that may support a finding of good cause: "(a) A claim construction by the Court different from that proposed by the party seeking amendment; (b) Recent discovery of material, prior art despite earlier diligent search; and (c) Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." "Good cause" requires a showing that "the party seeking leave to amend acted with diligence promptly when new evidence is revealed." *O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1363, 1366 (Fed. Cir. 2006). Once the moving party shows it was diligent in amending its contentions, the court considers whether the non-moving party "would suffer prejudice if the motion to amend were granted." *Acer, Inc. v. Tech. Prop. Ltd.*, No. 08-cv-00877, 08-cv-00882, 08-cv-05398, 2010 U.S. Dist. LEXIS 142472 AT *11 (N.D. Cal. 2010). "The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the

---

[2] Following the Court's Claim Construction Order, GPNE sent Defendants a letter on August 19, 2013, asking the parties to meet and confer on a process to amend infringement contentions, pursuant to Local Patent Rule 3-6, and non-infringement contention interrogatories in light of the Court's constructions of "node" and "count value." (Susser Decl., ¶ 11, Exh. I.)  After conferring with Defendants, GPNE sent a follow-up letter on September 13 (one month after the *Markman* Order) discussing the Court's construction of the terms "node" and "information relating to a count value" and requested Defendants' consent to amend its infringement contentions in light of the Court's constructions of these two terms. (Susser Decl., ¶ 12, Exh. J.) On September 16, Apple informed GPNE that it would not consent characterizing GPNE's "infringement theories [as] objectively baseless under the Court's Claim Construction Order" and claiming that the timing and scope of GPNE's request is prejudicial. (Susser Decl. ¶ 13, Exh. K.) On September 17, Nokia objected to the proposed changes attached to GPNE's  September 13 letter as not being in final form for Nokia. (Susser Decl., ¶ 14, Exh. L.) After sending additional revisions, Nokia's counsel responded via email on September 23 that Nokia consented to certain changes regarding the term "node," but opposed other proposed changes to the infringement contentions. (Susser Decl., ¶ 15, Exh. M.)  Likewise, on September 17, Defendant Pantech sent a letter objecting to GPNE's request to amend asserting that GPNE's infringement theories are "objectively baseless" and that the timing of the proposed amendments are "extremely prejudicial" implying that GPNE should have sought leave to amend before the Court's Claim Construction Order issued. (Susser Decl., ¶ 16, Exh. N.)

3

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

legal theories." *Golden Hour Data Systems, Inc. v. Health Services Integration, Inc.*, No. 06-cv-07477, 2008 U.S. Dist. LEXIS 75495, at *4 (N.D. Cal. 2008), *citing O2 Micro*, 467 F.3d at 1365-1366.

According to Judge Grewal, "infringement contentions serve as substitutes for interrogatories, [and] also act as forms of pleading that disclose the parties' theories of their case and thereby shape discovery and the issues to be determined at trial. . . . As with other forms of pleadings, the infringement contentions should become more specific and fine-tuned as the case progresses, not more sprawling and encompassing." *Apple v. Samsung*, Case No. 12-cv-0630-LHK, 2013 U.S. Dist. LEXIS 91450, *34-46 (N.D. Cal. June 26, 2013). GPNE and the Defendants are entitled to "fine-tune" and amend their respective contentions when the Court construes a term in a way the amending party did not propose or when the claim construction difference is material to a theory of infringement/non-infringement, and where there would be no prejudice to the other side. *See id.* at *43-46. Judge Grewal's decision recognizes, too, that doctrine of equivalence theories can be added based on the same general standard applicable to literal infringement. *Id*. at *44.[3]

### B. GPNE Was Diligent in Seeking to Amend its Infringement Contentions.

GPNE acted promptly after receiving and digesting the Court's fifty-nine (59) page *Markman* Order, as its initial communication to Defendants on this issue was six (6) days after the issuance of the *Markman* Order. (Susser Decl., ¶ 3, Exh. A; ¶ 11, Exh. I.) GPNE notified Defendants of its intention to amend contentions, as claim elements related to two of the ten terms construed, and shortly thereafter, GPNE provided Defendants with the content of the proposed amendments to those contentions. Plainly there was no delay or prejudice to Defendants from the time of the *Markman*

---

[3] With respect to DOE, GPNE's original contentions state: "Based on GPNE's current understanding of the claim language and publicly available information regarding the Accused Instrumentalities, GPNE asserts that Apple literally infringes the asserted claims. Any claim element not literally present in the Accused Instrumentalities as set forth in the claim charts is found in those Instrumentalities under the doctrine of equivalents because any differences between such claim element and the Accused Instrumentalities are insubstantial and/or the Accused Instrumentalities perform substantially the same function, in substantially the same way to achieve substantially the same result as the corresponding claim element(s). In addition, GPNE reserves the right to assert infringement solely under the doctrine of equivalents with respect to any particular claim element(s) if warranted by discovery received from Apple, or a claim construction ruling from the Court, or both." (Susser Decl. ¶ 4, Exh. B.) GPNE respectfully submits that the adoption of a claim construction that neither party proposed is good cause to add this specificity as to equivalence as GPNE reserved.

4

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

Order through to this motion for leave. GPNE is also diligent in the sense that these proposed amendments either could not or need not have been provided earlier. The proposed amended contentions are either directly related to new claim constructions neither party asserted, or they merely fine-tune and explicate that which is already in GPNE's contentions based on the Court's ruling, and in each case, there is no prejudice to the Defendants.

As to the vigorously disputed construction of the term "node," GPNE was not in a position to amend its contentions prior to receiving the Court's *Markman* Order. As described more fully herein, the parties took very diverse positions on the term "node," the Court adopted a separate construction not urged by either party. At the *Markman* hearing Judge Koh recognized that part of her construction, construing "node" to be "a type of pager," presented potential definitional issues for the parties to address going forward, pressing GPNE and Apple counsel about the matter. (Susser Decl., ¶ 17, Exh. O.) To Judge Koh's questions, both sides expressed an unclear position at the *Markman* hearing as to precisely what a "pager" could cover if the Court adopted a construction using that term, even though the two-way signaling recited in the claim, among other things, was precisely not associated with one-way simple "pagers" of the time of the invention. (Susser Decl., ¶ 17, Exh. O.).[4]

---

[4] Even Apple counsel could not adequately identify its own position on "pager": "The Court: let's say the Court issues a construction which will go to the jury saying 'a node is a pager that has this enhanced capability of two-way data communication.' Then what's going to happen with 'pager'? We're just going to assume the jury understands what a person of ordinary skill at the time would understand 'pager' to mean?
Mr. Green: I think we have -- because of terms like -- the term 'pager' is defined. If we're setting up a construction of the term 'pager,' then we would look to what kind of network does that device connect to? What kind of componentry is within that device? What kind of data would it be capable of sending and receiving?
The Court: so when is that happening, that construction of "pager"? Are you going to file a summary judgment motion and then have the court do that –
Mr. Green: it becomes a fact-based issue, your honor, yes. We would construe -- we would have to have -- I'm sure we would have a debate of what a pager is, or we could address it now. We could talk about what a pager is or isn't in the perspective of one of ordinary skill in the art at the time that these patents were filed." (Susser Decl., ¶ 17, Exh. O, pp. 84-85.)

5

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

Manifestly, the Court spent ten (10) pages addressing the issue and did not adopt either side's proposed construction as to "node" (Susser Decl., ¶ 3, Exh. A, pp. 8-18.):

| Court's Order | GPNE | Defendants |
|---|---|---|
| "pager with two-way data communications capability that transmits wireless data communications on a paging system that operates independently from a telephone network." | "A device in a network that can transmit and receive information" | "A pager in a network operating independently of a telephone network" |

As the Court's *Markman* Order explains, GPNE's patent specification describes the invention in terms of an enhancement to the conventional one-way "pagers" of the time allowed of them to send and receive a variety of signals for the purposes of performing two-way data communications commonly used in today's smartphones, such as the accused devices. While the specification describes the devices as a "type of" pager – an "enhanced [one] with preprogrammed software and appropriate hardware to allow for two-way data packet communication," the asserted claims of the patents in suit use the term "node." (Susser Decl., ¶ 3, Exh. A, pp. 14-15.)

The GPNE patent specification and file history make clear that the main advantage of the claimed inventions that allowed a device to receive a data message ***and*** return a data message to a sender, over the conventional one-way pagers of the time, was that a message (a "page") could be returned without using a common telephone. Thus, and to that extent alone, the patent specification and the file history refer to the "paging system" that provides for the two way data communication capability to "operate independently" of a conventional telephone system. (Susser Decl., ¶ 3, Exh. A, pp. 16-19.)

With this backdrop, and as more fully explained in the *Markman* Order, the centerpiece of Defendants proposed, but unadopted, construction can be understood; namely, that "node" was to be limited to a "pager" of the time of the invention that could not operate on a telephone network at all, thus potentially excluding all of the accused devices from literal infringement. The Court sized-up Defendants' position as follows:

6

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN* NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

> Defendants appear to contend that this statement [in the specification] supports the conclusion that the node may only communicate on a pager network and therefore cannot be a device capable of communicating on the telephone network. (Susser Decl., ¶ 3, Exh. A, p. 16.)

GPNE, on the other hand, refuted that proposition (*"*In contrast, GPNE contends that this statement … does not support the conclusion that the node itself cannot also be connected to and thus capable of communicating on the telephone network."). (Susser Decl., ¶ 3, Exh. A, pp. 16-17.) As GPNE understood Defendants' basic proposed construction the same way as Judge Koh, GPNE could not propound a back-up or alternative infringement contention that would establish infringement if the Court were to adopt Defendants' construction and rule, as a matter of law, that the claimed inventions were limited to only "pagers" of the time, and excluded devices that could also operate as cellular telephones. And as to this critical dispute, Judge Koh was unambiguous: "The Court agrees with GPNE." (Susser Decl., ¶ 3, Exh. A, p. 17.) However, the Court did not adopt GPNE's construction either, and stated:

> For the reasons set forth above, the Court rejects Defendants' proposed construction to the extent Defendants seek to limit the "node" to devices which do not have the capability of operating on a telephone network. However, because the specification clearly discloses that the "paging system . . . operates independently from a telephone system for wireless data communication between users," '267 Patent at 14:14-16, and thus implies that the "node" must have the capability to communicate on a paging system that is independent of the telephone system, the Court includes the following language in the construction of "node": "that transmits wireless data communications on a paging system that operates independently from a telephone network." (Susser Decl., ¶ 3, Exh. A, p. 18.)

Therefore, prior to the *Markman* Order, Defendants had asserted a claim construction designed to preclude infringement under any theory, and the Court rejected both sides' constructions in favor of one that was not advanced by either side, a "type of" pager – an "enhanced [one] with preprogrammed software and appropriate hardware to allow for two-way data packet communication." GPNE's proposed amendment does not change the accused "node" or point to a separate component of the earlier accused node, but merely explicates how the accused nodes meet the Court's fresh construction, both literally and under the doctrine of equivalents.

7

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

| Original Contention as to Node for Apple accused devices | Amended Contention as to GPRS protocols for Apple[5] accused devices[6] |
|---|---|
| Apple makes, uses, sells and offers for sale products that have the ability to communicate using GPRS, EGPRS, or EDGE "standards", including the communication products listed in Exhibit B, (such products are referred to herein as "the Phone"). These "standards" are set forth in technical documents promulgated by a group known as the 3rd Generation Partnership Project ("3GPP"). The node is a Phone, as well as any other communication device made, used, sold, offered for sale, or imported by Apple that operates according to the 3GPP standards listed below. | Apple makes, uses, sells and offers for sale products that have the ability to communicate using GPRS, EGPRS, or EDGE "standards," including the communication products listed in Exhibit B, (such products are referred to herein as "the Phone" or "Accused Devices"). These "standards" are set forth in technical documents promulgated by a group known as the 3rd Generation Partnership Project ("3GPP"). The node is a Phone, as well as any other communication device made, used, sold, offered for sale, or imported by Apple that operates according to the 3GPP standards listed below.

A "node" has been construed as "pager with two way data communications capability that transmits wireless data communications on a paging system that operates independently from a telephone network."

The Accused Devices are "pagers with two way data communications capability" because they have the capability to send and receive alphanumeric and graphical messages (e.g., email, pictures, etc.) over a radio communications system. These messages include alphanumeric and graphical digital messages that can be viewed by the user of the device.

As to the issue of a "pager" and a "paging system," the accused devices send and receive data messages as contemplated in the asserted patents as being done (one-way) by the "pagers" of the time. Judge Koh held that the claimed node is a "type of" pager – an "enhanced [one] with preprogrammed software and appropriate hardware to allow for two-way data packet communication." Order at 14-15. The Court cited a definition of "pager" as "[a] receiver in a radio paging system." Order at 15. The accused devices wirelessly receive radio signals/messages. A paging system is a system that carries out this wireless process by radio signals.

The Accused Products also have the capability to send/receive these messages/responses on a "paging system that operates independently from a telephone network."

As for GPRS/EDGE networks, these networks were developed due to the shortcomings in the original GSM networks. GPNE contends that GPRS/EDGE networks operate independently from GSM networks (i.e., GPRS/EDGE networks do not depend from GSM and the other cellular networks). |

---

[5] The proposed amendments in the tables included herein are exemplary of the proposed amendments to the Infringement Contentions for Apple, Nokia and Pantech. Full copies of the Infringement Contentions for each defendant and for each patent, with proposed amendments indicated in redline, are appended hereto as Exhibits 18 through 35 to the attached Declaration of Howard Susser.

[6] A largely identical amendment is proposed for the accused devices that also use the LTE protocol.

8

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

| Original Contention as to Node for Apple accused devices | Amended Contention as to GPRS protocols for Apple[5] accused devices[6] |
|---|---|
| | The asserted claims are product claims, not process claims. The "nodes" of the claimed inventions may be integrated devices capable of both data/paging and telephone communications. The "nodes" are "capable" of transmitting wireless data communications on a paging system that operates independently from a telephone network as they are "actually programmed" with the capability to do so. <br><br> The Accused Devices have this capability to transmit data on a network that does not depend on a telephone network. There is no requirement that a GPRS compliant "data only" network contain telephone capability. There is no requirement that a GPRS compliant network contain telephone operability at the time GPRS data communications are performed. <br><br> In addition to the inherent capability of GPRS compliant Accused Devices to transmit over a network that does not depend on a telephone network where no telephone network is configured or operable with respect to any related resources, Accused Devices that transmit wireless data communications on a GPRS network that can share certain resources with a telephone network are not GPRS data communication on a network that "depends on" a telephone network. To return a message received over a GPRS/EDGE, the Accused Devices are not required to make a telephone call, or use presently configured telephone resources for a return message. <br><br> DOCTRINE OF EQUIVALENTS <br><br> To the extent the Accused Devices are not literally "pager[s] with two way data communications capability that transmits wireless data communications on a paging system that operates independently from a telephone network," the Accused Devices are equivalents under the doctrine of equivalents. <br><br> Any differences between the Accused Devices that are GPRS compliant and thus pre-programmed to transmit wireless data communications over a GPRS network on the one hand, and the "nodes" of the claimed inventions on the other hand, are insubstantial. <br><br> The "pagers" of the patents in suit are described with reference to the radio devices common at the time of the invention that could receive alpha-numeric data communications over the air. The systems that operated such paging capabilities used common base stations serving multiple pagers in a geographic area. To this extent, the Accused Devices receiving data messages from base stations perform substantially the same function in substantially the same way to achieve substantially the same result. <br><br> The Accused Devices are equivalent to "pagers" in that the relevant functionality of the "node" element in this claim is to be able to send and receive "data packets." As described in the patents, these data packets can contain alphanumeric messages and graphical images. Further, the construction of the term "node" states that the functionality of the |

9

| Original Contention as to Node for Apple accused devices | Amended Contention as to GPRS protocols for Apple[5] accused devices[6] |
|---|---|
| | "pager" is to have the capability to perform two way data communications.<br><br>The Accused Devices have the capability to send and receive data packets (which can contain email and images, for example). Thus, the relevant functionality of the Accused Devices is the same as the pagers/nodes of the asserted patents.<br><br>The Accused Devices carry out this functionality in the same way as the pages/nodes of the present invention. As described in the claims and specification of the patents, the nodes/pagers send/receive a series of signals with the network in order to obtain resources to send a message, which has been broken down into packets. The Accused Products operate in the same way when it comes to sending data – they obtain network resources (as described in detail below) in order to send their data to the network.<br><br>The Accused Devices transmit this information over a GPRS/EDGE network which is the equivalent of the paging system referred to in the construction of node. GPRS/EDGE are not telephone networks as the Accused Devices do not come with any pre-programmed functionality to use these networks as telephone (i.e., voice) networks. Thus, like the paging system described in the patent and as utilized by the Accused Devices, GPRS/EDGE are data networks operable to transmit digital data and are not telephone networks.<br><br>The Accused Devices ultimately achieve the same result as the pagers/nodes of the claims/patent – they are devices with the capability to engage in two way data communications (e.g., two way exchange of alphanumeric messages). Thus, the emails and graphical images that can be sent and received by an Accused Device are equivalent in character to the paging messages and graphical images as described in the patent that can be exchanged between pagers over a paging system.<br><br>To the extent there is no literal infringement based on a conclusion that carrier networks in which the Accused Devices are implemented use GPRS resources that are shared with telephone resources, and thus that the network upon which the Devices transmit is not "independent" of a telephone network, the Accused Devices infringe under the doctrine of equivalents since the implementation of two otherwise separate networks that merely share partial resources is an insubstantial difference from the same two networks where such resources are physically or logically segregated.<br><br>To the extent this Court-ordered limitation to the claims of "independent" networks is viewed based on the specification, the patent (and the Court) recognize that the "dependency" obviated by the claimed inventions relates to whether the device must make a telephone call to return a message. The Accused Devices do not require a user to access a telephone network to make a telephone call to return a message. The Accused Devices are pre-programmed with the capability to transmit data communications as the return message that do not involve voice |

10

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

| Original Contention as to Node for Apple accused devices | Amended Contention as to GPRS protocols for Apple[5] accused devices[6] |
|---|---|
| | communication and do not utilize specific resources that are dedicated to telephony. The two-way data transmission over the GPRS "network" that may use partial resources that can be used by a telephone network, is the equivalent of a completely separate network that does not share any resources, since the GPRS data transmission network that performs the two-way data transmission -- from the viewpoint of that "node" -- perform substantially the same function in substantially the same way to achieve substantially the same result. |

GPNE's proposed amendment to the claim element using the term "count value" likewise does not point to a different device or component or signal, but only explicates how the original contention's infringement allegation is still met given the Court's *Markman* construction. As with respect to "node," the proposed amendment may not even be necessary as a formal matter in this regard, and there can be no legitimate claim of prejudice.

The variation from GPNE's original contention relating to "count value" to its proposed amended contention relates to the fact that "count value" is part of a larger element: "information relating to a count value" in the asserted claims, although only the included term "count value" was construed. The Court adopted Defendants' proposed construction of "count value" as "the number of consecutively related packets emanating from a transmitter." (Susser Decl., ¶ 3, Exh. A, pp. 24-28.)

GPNE's original GPRS contention pointed to information element within the signals generated by the accused devices: a "countdown value." The "countdown value" in the accused devices is a dynamically assigned number for each packet of a set of related packets. GPNE sought a construction of "count value" that included the concept of a dynamically changing number assigned to each packet. Thus, GPNE's original contentions equated the "information relating to a count value" with a "countdown value" in the accused devices. The amended contentions merely show how, in the accused devices, "countdown value" is actually calculated directly from a total number of related packets, meaning that "information relating to a count value" is still "information relating to a countdown value." Again, GPNE is still pointing to the same "countdown value" in the accused

11

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

device signal as originally contended. The added content does not change that *contention*, but merely advises Defendants regarding how the same accused element meets the new construction.

| Claim Element with "Count Value" | Original Contention as to GPRS Protocol | Amended Contention as to GPRS Protocol |
|---|---|---|
| wherein the interface further transmits information relating to a count value, | The Phone includes in the MAC header of the RLC uplink data blocks a Countdown Value (CV) field. This field allows the network to calculate the number of RLC data blocks remaining to be transmitted. See 3GPP TS 44.060 § 9.3.1 and 10.4.6. | "Count value" has been construed to mean "[t]he number of consecutively related packets emanating from a transmitter." The Countdown Value (CV) field "relates to" the number of consecutively related packets. According to 3GPP TS 44.060 § 9.3.1. The CV shall be calculated as follows: $$\text{Let integer } x = round\left(\frac{TBC - BSN' - 1}{NTS \times K}\right).$$ $$\text{then, } CV = \begin{cases} x, & \text{if } x \leq BS\_CV\_MAX, \\ 15, & \text{otherwise.} \end{cases}$$ where:<br>TBC = total number of RLC data blocks currently to be transmitted in the TBF.<br>BSN' = absolute block sequence number of the RLC data block, with range from 0 to (TBC - 1).<br>Accordingly, the CV is related to the number of consecutively related blocks, which is related to the number of consecutively related packets making up such blocks. |

The same type of explication is provided in GPNE's proposed amendment to its contention regarding "information relating to a count value" in LTE protocol signals of the accused devices.

| Claim Element with "Count Value" | Original Contention as to LTE Protocol | Amended Contention as to LTE Protocol |
|---|---|---|
| wherein the interface further transmits information relating to a count value, | The Buffer Status Report control element contains a Buffer Size field. See 3GPP TS 36.321 §§ 5.4.5 and 6.1.3. | The Buffer Status Report MAC Control Element contains a Buffer Size field value. See 3GPP TS 36.321 §§ 5.4.5 and 6.1.3. The Buffer Size value identifies the total amount of data available across all logical channels of a logical channel group waiting to be transmitted. All things being equal, more |

12

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

| Claim Element with "Count Value" | Original Contention as to LTE Protocol | Amended Contention as to LTE Protocol |
|---|---|---|
| | | packets will be required to transmit a larger amount of data than a smaller amount of data. Accordingly, the number of packets that are ultimately transmitted by the node/pager is directionally proportional to the Buffer Size value. Thus, the Buffer Size value relates to the number of consecutively related packets being transmitted by the node/pager. |

C.  **The Defendants Will Suffer No Prejudice Should This Motion Be Granted.**

Since GPNE is not directing its proposed amended contentions to new products or new components of the accused products, the proposed amended contentions will not prejudice Defendants in any way. *See, e.g.*, *Apple v. Samsung*, 2013 U.S. Dist. Lexis 91450, *45 (N.D. Cal. June 26, 2013) ("The court also finds that Apple would not be prejudiced by these amendments. Apple has had notice that Samsung believes Apple's mobile devices infringe the patent and so it presumably already produced discovery regarding the products."). Likewise, there is no prejudice from GPNE's amended DOE contentions where, as here, GPNE "alleges nothing more than that the components it previously identified . . . still infringe under equivalence theories even though Judge Koh construed the term[s]" differently than GPNE urged. *Id.* at *49.

IV.  **Conclusion**

For the foregoing reasons, GPNE respectfully requests that its Motion for Leave to Amend/Supplement Its Infringement Contentions be granted.

/s/ Randall T. Garteiser

**GARTEISER HONEA, P.C.**
Randall T. Garteiser (SBN 231821)
randall.garteiser@sftrialattorneys.com
Christopher A. Honea (SBN 232473)
chris.honea@sftrialattorneys.com
44 North San Pedro Road
San Rafael, California 94903
[Tel.] (415) 785-3762
[Fax] (415) 785-3805

13

NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK

**BURNS & LEVINSON LLP**
Howard J. Susser (*pro hac vice*)
hsusser@burnslev.com
Paul T. Muniz (*pro hac vice*)
pmuniz@burnslev.com
Zachary R. Gates (*pro hac vice*)
zgates@burnslev.com
Alexandra Capachietti (*pro hac vice*)
acapachietti@burnslev.com
125 Summer Street
Boston, Massachusetts
[Tel.] 617-345-3000
[Fax] 617-345-3299

**NELSON BUMGARDNER CASTO, P.C.**
Barry J. Bumgardner (*pro hac vice*)
barry@nbclaw.net
Steven W. Hartsell (*pro hac vice*)
shartsell@nbclaw.net
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
[Tel.] (817) 377-9111
[Fax] (817) 377-3485

**Attorneys for Plaintiff GPNE Corp.**

**NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2013, I electronically submitted the foregoing **NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO FILE AMENDED INFRINGEMENT CONTENTIONS** using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Randall T. Garteiser
Randall T. Garteiser

15

NOTICE OF MOTION AND GPNE CORP.'S MOTION FOR LEAVE TO
AMEND/SUPPLEMENT ITS INFRINGEMENT CONTENTIONS POST-*MARKMAN*
NOS. 12-CV-02885-LHK, 12-CV-03056-LHK, 12-CV-03057-LHK