**BURNS & LEVINSON LLP**
Howard J. Susser (*Pro Hac Vice*)
hsusser@burnslev.com
Paul T. Muniz (*Pro Hac Vice*)
pmuniz@burnlev.com
Zachary R. Gates (*Pro Hac Vice*)
zgates@burnslev.com
Alexandra Capachietti (*Pro Hac Vice*)
acapachietti@burnslev.com
125 Summer Street
Boston, Massachusetts  02110-1624
[Tel.] (617) 345-3000
[Fax] (617) 345-3299
**ATTORNEYS FOR PLAINTIFF GPNE CORP.**
Additional counsel listed on signature page.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| GPNE CORP.,<br><br>            Plaintiff,<br><br>      vs.<br><br>APPLE INC.,<br><br>            Defendant. | Case No. 5:12-cv-02885-LHK<br><br>**GPNE CORP.'S OPPOSITION TO APPLE'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 124) & OBJECTION TO PANTECH'S JOINDER IN SAME (DKT. NO. 132)**<br><br>**NOTICED HEARING:**<br>DATE:  JANUARY 7, 2014<br>TIME:  10:00 A.M.<br>PLACE:  COURTROOM 5, 4TH FLOOR<br>JUDGE:  HON. PAUL S. GREWAL |

# **TABLE OF CONTENTS**

I. The Proper Standard To Be Applied By This Court Is A Balancing Test, Under Which Apple Carries The Burden Of Proof .......................................................................................................... 1

II. The Risks Hypothesized By Apple Are Neither Inevitable Nor Objectively Reasonable, And Certainly Do Not Outweigh GPNE's Interest In Retaining Dr. Etemad And Dr. Heidari .................................................................................................... 3

    A. The Proposed Experts' Consulting Work Is Not A Valid Reason To Preclude Them From Reviewing Apple's Protected Material ............................................................... 5

    B. Dr. Etemad's Work For The FCC Does Not Pose The Risk Of Inevitable Disclosure That Apple Portrays .......................................................................................... 6

III. Dr. Etemad And Dr. Heidari Are Not And Will Not Be In Violation Of The Prosecution Bar .................................................. 7

    A. The Experts Can Satisfy Their Duty Of Candor To The USPTO ................................................................................ 7

    B. Dr. Etemad And Dr. Heidari Are Not Competitive Decisionmakers For GPNE Or Any Of The Entities To Whom They Have Assigned Their Patent Rights ..................................................................................... 9

IV. Pantech's Belated Joinder In Apple's Motion Should Be Viewed As A Nullity, And Any Exclusion Of Dr. Etemad And/Or Dr. Heidari Should Not Extend To Their Review Of Protected Material Provided By Pantech ............................... 11

# TABLE OF AUTHORITIES

**Cases**

*Abaxis, Inc. v. Cepheid,*
  No. C10-02840 LHK, 2012 U.S. Dist. LEXIS 116499, at *3 (N.D. Cal.
  Aug. 17, 2012)[1] ...................................................................................................1, 2, 4

*Adv. Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*,
  43 U.S.P.Q.2d (BNA) 1381, 1996 U.S. Dist. LEXIS 21459, * 10 (N.D. Cal.
  Oct. 28, 1996) ................................................................................................................2, 5

*Affinity Labs of Texas v. Apple Inc.*,
  2011 U.S. Dist. LEXIS 53649, *42-43 (N.D. Cal. May 9, 2011) .....................................2

*AGA Medical Corp. v. W.L. Gore & Associates*,
  Case No. 10-cv-3734 (JNE/JSM) (D. Minn. Dec. 13, 2011) .............................................4,5

*Allstate Ins. Co. v. Nationwide Mutual Insurance Co.*,
  2013 U.S. Dist. LEXIS 91408 (N.D. Ill. Jun. 28, 2013) ......................................................11

*Apple Inc. v. Samsung Electronics Co., Ltd.*, Case No. 11-cv-184 LHK (PSG),
  (N.D. Cal.) (Orders of Dec. 22, 2011 (2011 U.S. Dist. LEXIS 147515)
  & Oct. 2, 2013) ...................................................................................................................2,3

*Applied Signal Tech., Inc. v. Emerging Markets Communications, Inc.*,
  2011 U.S. Dist. LEXIS 97403 (N.D. Cal. Jan. 20, 2011)................................................9, 10

*Autotech Techs. Ltd. Partnership v. Automationdirect.com, Inc.*,
  237 F.R.D. 405 (N.D. Ill. Aug. 21, 2006) ..............................................................................5

*Biax Corp. v. Brother Int'l Corp.*,
  Case No. 10-cv-03013, 2011 U.S. Dist. LEXIS 126359 (D. Colo. Nov. 1, 2011).................4

*Blankenship v. Hearst Corp.*,
  519 F.2d 418, 426 (9th Cir. 1975)........................................................................................2

*Brown Bag Software v. Symantec Corp.*,
  960 F.2d 1465, 1470-1472 (9th Cir. 1992)..........................................................................5

*Deutsche Bank Trust Co. Americas*,
  605 F.3d 1373 (Fed. Cir. 2010).................................................................................5, 9, 10

*FTC v. Exxon Corp.*,
  636 F.2d 1336, 1350-51 (D.C. Cir. 1980) ...........................................................................5

---

[1]  *Abaxis* is an order marked "Not For Citation" pursuant to Civil L.R. 7-14.  GPNE's reference to *Abaxis* in this brief, and its inclusion in this table of contents, is purely referential, for purposes of discussing Apple's improper citation of it.  No violation of Civil L.R. 3-4(e) is intended by GPNE.

*Intel Corp. v. Via Techs., Inc.*,
  198 F.R.D. 525 (N.D. Cal. Oct. 11, 2000) .......................................................................5

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
  1998 U.S. Dist. LEXIS 22251 (D. Nev. Apr. 15, 1998) ......................................................5

*Pabst Licensing, GmbH, Patent Litigation*,
  2000 U.S. Dist. LEXIS 6374 (E.D. La. May 4, 2000) ........................................................5

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  Case No. 08-cv-335, 2008 U.S. Dist. LEXIS 93873 (S.D. Cal. Nov. 18, 2008).................4, 6

*ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*,
  2008 U.S. Dist. LEXIS 107096 (E.D. Tex. Mar. 14, 2008) ..................................................5

*Telular Corp. v. VOX2, Inc.*,
  No. 00 C 6144, 2001 U.S. Dist. LEXIS 7472, 2001 WL 641188, at *1 (N.D. Ill.
  June 4, 2001)) ................................................................................................................2

*Trading Tech., Int'l, Inc. v. BGC Partners, Inc.*,
  2011 U.S. Dist. LEXIS 43668, *11 n. 4 (N.D. Ill. Apr. 22, 2011).......................................8,9

*U.S. Steel Corp. v. United States*,
  730 F.2d 1465, 1467-1469 (Fed. Cir. 1984) ........................................................................5

**Statutes**

35 U.S.C. §§ 102 & 103 .........................................................................................................8

**Regulations**

5 C.F.R. § 2635.805 ..............................................................................................................7

37 C.F.R. § 1.56(a & b) ......................................................................................................7, 8

**Rules**

Fed. R. Civ. P. 26(c) ..........................................................................................................2, 8

Civil L.R. 1-4, 3-4(e) & 7-14 ..............................................................................................2, 3

GPNE Corp.'s Opposition to Apple's Motion for Protective Order (Dkt. No. 124)
& Objection To Pantech's Joinder In Same (Dkt. No. 132)                     Case No. 5:12-cv-02885
-iii-

**GPNE CORP.'S OPPOSITION TO APPLE'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 124) & OBJECTION TO PANTECH'S JOINDER IN SAME (DKT. NO 132)**

Pursuant to Civil L.R. 7-3(a), Plaintiff GPNE Corporation ("GPNE") submits its opposition to the Motion By Defendant Apple For Protective Order ("Motion") (Dkt. No. 124) filed by Apple Inc. ("Apple"). Apple's Motion ignores the law previously applied by the Court in expert-disclosure disputes, and instead relies on caselaw that is either not citable or inapposite.[2]

**I.    The Proper Standard To Be Applied By This Court Is A Balancing Test, Under Which Apple Carries The Burden Of Proof.**

An uninformed observer reading Apple's motion might <u>incorrectly</u> conclude that:

(1) GPNE carries the burden of justifying its expert's ability to review Apple's confidential materials;

(2) an expert privy to Apple's confidential materials who also consults in the general technical field will be forever precluded as a result of the potential for "inevitable disclosure" in violation of the current Protective Order; and

(3) *Abaxis, Inc. v. Cepheid,* No. C10-02840 LHK, 2012 U.S. Dist. LEXIS 116499, at *3 (N.D. Cal. Aug. 17, 2012) is the guiding decision in this District in the realm of expert disclosure disputes.

This Court should not be persuaded by any of these false and/or misplaced premises, and Apple's motion should be denied.

---

[2] On November 20, 2013, Pantech Co., Ltd. and Pantech Wireless, Inc. (collectively, "Pantech") filed a "joinder" in Apple's motion. *See* Dkt. No. 132 (Case No. 5:12-cv-02885-LHK) and Dkt. No. 117 (Case No. 5:12-cv-03057-LHK). As explained below, GPNE views Pantech's attempted joinder to be untimely under the terms of the governing Protective Order, and objects to it. To the extent the Court determines otherwise, GPNE's arguments as to Apple apply, *mutatis mutandis*, to Pantech.

First, under the Protective Order and Fed. R. Civ. P. 26(c), Apple – not GPNE – carries the burden of proving to this Court that the relief it seeks is supported by good cause.[3]  *See* Dkt. No. 86, ¶¶ 12(b) & 22(f).  *See also Adv. Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, 43 U.S.P.Q.2d (BNA) 1381, 1996 U.S. Dist. LEXIS 21459, * 10 (N.D. Cal. Oct. 28, 1996) (Infante, U.S.M.J.) (moving party bears burden of showing good cause therefor) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 426 (9th Cir. 1975).

Second, the proper standard to be applied is that previously set forth by this Court in *Apple Inc. v. Samsung Electronics Co., Ltd.*, Case No. 11-cv-184 LHK (PSG), 2011 U.S. Dist. LEXIS 147515, *10 (N.D. Cal. Dec. 22, 2011).  There, the Court inquired whether the risks presented by the proposed disclosure outweighed the substantial interest of the party proposing the expert "in retaining and preparing an expert with relevant industry experience and availability."[4]  It is this standard of review that should guide the Court.

Third, *Abaxis* (prominently cited by Apple three times in its motion) is neither binding precedent, nor persuasive precedent.  It is an order that most certainly cannot be, and should not have been, cited to the Court by Apple, given Civil L.R. 3-4(e).[5]  Both the provided Lexis

---

[3] Under the Protective Order, good cause "shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Discovery Materials in a way or ways that are inconsistent with the provisions contained in this Order." *Id.*, ¶ 12(c).

[4] *Id.* (citing *Adv. Semiconductor Materials Am. Inc. v. Applied Materials Inc.*, No. 95-20169 MRW (EAI), 1996 U.S. Dist. LEXIS 21459, 1996 WL 908654 (N.D. Cal. Oct. 28, 1996) and *Telular Corp. v. VOX2, Inc.*, No. 00 C 6144, 2001 U.S. Dist. LEXIS 7472, 2001 WL 641188, at *1 (N.D. Ill. June 4, 2001)).

[5] The Court may take judicial notice that one of the parties in the *Abaxis* case – Cepheid – was represented by Fish & Richardson, P.C. (Apple's current outside legal counsel).  Separately, Apple itself is no stranger to the requirements of Civil L.R. 3-4(e), having been apprised quite directly of that rule in the context of *Affinity Labs of Texas v. Apple Inc.*, 2011 U.S. Dist. LEXIS 53649, *42-43 (N.D. Cal. May 9, 2011) (Larson, U.S.M.J.) (noting that another Magistrate Judge Lloyd opinion had been designated "Not for Citation," and that *Affinity* had "improperly cited this decision" in violation of Civil L.R. 3-4(e)).  The Court is in the best position to determine whether Apple's and/or its counsel's violation of Civil L.R. 3-4(e) warrants any sanction.  *See* Civil L.R. 1-4.

citation, and the first page of the original order from Magistrate Judge Lloyd, show that the decisions was clearly marked "**Not for Citation**" in a manner complying with Civil L.R. 7-14. *See* 2012 U.S. Dist. LEXIS 116499; *see also* Case No. 5:10-cv-02840-LHK, Dkt. No. 214 (N.D. Cal. Aug. 17, 2012) (stating "NOT FOR CITATION" above the caption).

**II.     The Risks Hypothesized By Apple Are Neither Inevitable Nor Objectively Reasonable, And Certainly Do Not Outweigh GPNE's Interest In Retaining Dr. Etemad and Dr. Heidari.**

Apple apparently believes that the protections afforded under the governing Protective Order are insufficient. Yet, as this Court observed just two months ago, "confidential information remains confidential because counsel and clients alike follow court orders. If parties breach this basic rule, the court's assurances become meaningless." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 5:11-cv-01846-LHK (N.D. Cal. Oct. 2, 2013) (Dkt. No. 2483) (Grewal, U.S.M.J.).

The same can be said of Dr. Heidari and Dr. Etemad. If these experts cannot be taken at their word to honor the obligations under the Protective Order to which they have agreed to be bound, then the entire premise of a stipulated protective order – providing for disclosure of an opponent's confidential material to another party's outside expert(s), subject to stringent restrictions – in almost any case would devolve into an *ad hoc* inquiry of "inevitable disclosure" and consequent contentious motion practice. That is not a result this Court should encourage, particularly given the ample deterrent presented by its inherent contempt powers. Still, Apple would have the Court engage in just such prognostication: Would Dr. Heidari and Dr. Etemad be able to withstand the apparent lure of subsequent unauthorized disclosure, and thereby breach the Protective Order? If yes, then would their good faith efforts to partition knowledge gleaned from a review of Apple's confidential material nonetheless be inadequate, resulting in an inevitable osmosis of that information from this litigation to their work for currently unknown future

clients?[6]

Fortunately, other courts faced with similar challenges to experts have resolved such disputes with common sense, not wholesale preclusion of experts:

- *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, Case No. 08-cv-335, 2008 U.S. Dist. LEXIS 93873 (S.D. Cal. Nov. 18, 2008) (Stormes, U.S.M.J.) (granting Presidio's motion to quash defendant's objections to disclosure to experts, and denying ATC's motion to disqualify plaintiff's expert)[7];

- *Biax Corp. v. Brother Int'l Corp.*, Case No. 10-cv-03013, 2011 U.S. Dist. LEXIS 126359 (D. Colo. Nov. 1, 2011) (Mix, U.S.M.J.) (characterizing Hewlett-Packard's proposal (i.e., that in exchange for allowing plaintiff's expert to work for plaintiff, he would not do any work on patents in the field for four years after trial) as "arrogan[t]," lacking in sufficient explanation, and requiring "unprecedented judicial interference in selection and employment of individuals who accept work as expert witnesses"; ". . . HP's argument that Dr. Bokhari's work may lead to other litigation is unavailing. . . . HP's mistrust of Dr. Bokhari because of his previous work is hardly uncommon, and simply does not warrant the relief sought here.");

- *AGA Medical Corp. v. W.L. Gore & Associates*, Case No. 10-cv-3734 (JNE/JSM) (D.

---

[6] With the exception of the improperly cited *Abaxis* decision, and *Applied Signal Tech., Inc. v. Emerging Markets Communications, Inc.*, Case No. C-09-02180 SBA (DMR) (N.D. Cal. Jan. 20, 2011) (discussed *infra*), the other cases cited by Apple on the "inevitable disclosure" issue actually concerned disputes over access to confidential information by in-house or outside counsel, or the scope of patent prosecution bars applicable to the same, neither of which is the pertinent issue here.

[7] In *Presidio Components*, Magistrate Judge Stormes observed that: (a) defendant ATC's remedy for any prohibited disclosure by Presidio's expert (Dr. Huebner) was based on Dr. Huebner's execution of an agreement to be bound by the Protective Order; (b) plaintiff's two technical experts were not competitive decisionmakers for *the plaintiff*; and therefore defendant's cited caselaw (concerning disclosure of confidential information to in-house counsel and outside counsel that prosecute patent applications) was inapposite. *Id.*, pp. 4-6.

Minn. Dec. 13, 2011) (Mayeron, U.S.M.J.) (denying AGA's motion for protective order, subject to expert's agreement to (a) return all Protected Information she had received in the case within 30 days after the termination of the suit, or within 30 days after her termination as an expert for Gore, whichever occurred first; and (b) physically and electronically segregate all Protected Information received in the case, and all work performed by her on behalf of Gore, from all other matters for which she was currently providing or would in the future provide services, whether as an employee or independent consultant)[8]. [A copy of this Order is attached as Gates Decl., Exhibit 1.]

A. The Proposed Experts' Consulting Work Is Not A Valid Reason To Preclude Them From Reviewing Apple's Protected Material.

Apple mightily attempts to liken Dr. Heidari and Dr. Etemad to the outside counsel and in-house counsel that were the subject of inquiry in the various opinions it cites.[9] For obvious

---

[8] "In sum, AGA's request is found on a belief that [W.L. Gore's proposed expert] Devellian will disseminate information she learns in this litigation to its (unnamed and unknown) competitors; yet AGA has provided no proof that Devellian intends to do so. Lacking such proof, and despite the fact that such conduct would likely lead to the demise of Devellian's consulting work, AGA hinges its motion on a conviction that if in the future Devellian was retained by a competitor, she would inadvertently use this information because it is in her head. However, such a fear, without more, does not amount to good cause to modify the Protective Order to prohibit all outside experts from receiving Protected Information unless they sign AGA's more restrictive written assurance preventing them from working with or providing services to a competitor until the litigation has ended, or to single out Devellian to require her to agree to such a provision." *Id.*, pp. 30-31 (citing *Adv. Semiconductor,* 43 U.S.P.Q.2d at 1384).

[9] For cases involving bars to in-house counsel's access to protected information, *see FTC v. Exxon Corp.*, 636 F.2d 1336, 1350-51 (D.C. Cir. 1980), *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467-1469 (Fed. Cir. 1984), *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470-1472 (9th Cir. 1992), *Intel Corp. v. Via Techs., Inc.*, 198 F.R.D. 525 (N.D. Cal. Oct. 11, 2000), *Autotech Techs. Ltd. Partnership v. Automationdirect.com, Inc.*, 237 F.R.D. 405 (N.D. Ill. Aug. 21, 2006). For cases involving bars to outside counsel's access, *see In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373 (Fed. Cir. 2010) and *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 1998 U.S. Dist. LEXIS 22251 (D. Nev. Apr. 15, 1998). For cases addressing both circumstances, *see In re Pabst Licensing, GmbH, Patent Litigation*, 2000 U.S. Dist. LEXIS 6374 (E.D. La. May 4, 2000) and *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, 2008 U.S. Dist. LEXIS 107096 (E.D. Tex. Mar. 14, 2008).

reasons, that is simply not the case.  Neither expert is employed by GPNE for patent prosecution assistance.  Drs. Heidari and Etemad are not employed by, nor do they provide consulting services to, any individuals or entities relating to the design, development, operation, or patenting of cellular communication reservation request protocols (generally or as described in any patent in suit), such as GPRS or relating to the acquisition of intellectual property assets relating to cellular communication reservation request protocols (generally or as described in any patent in suit), such as GPRS. [10]  Whatever future consulting clients these experts in their field may one day have, there is nothing to suggest that they cannot compartmentalize information learned in one consulting capacity from another.  Testifying experts must do so routinely, lest their opinions be struck for consideration of irrelevant information.  Further, as suggested in *AGA Medical* and *Presidio Components*, such disclosure would expose the expert both to court sanctions and a loss of future work (the expert becoming branded as unreliable and untrustworthy).

To the extent that any latent concerns remain, the type of segregation and information destruction measures ordered in *AGA Medical* would be more than sufficient, and would strike the proper balance between Apple's interest in protecting its confidential information and GPNE's interest in retaining a qualified expert of its choosing.  Apple simply cannot and has not established good cause for the wholesale exclusion of Dr. Etemad and Dr. Heidari that it seeks – its speculative concern over a potential improper use or disclosure is not "objectively reasonable."

B.  **Dr. Etemad's Work For The FCC Does Not Pose The Risk Of Inevitable Disclosure That Apple Portrays.**

Apple's two-plus page narrative of its involvement with the Federal Communications Commission does nothing to advance its position that Dr. Etemad should not serve as an expert

---

[10] *See* Tio Decl., Exh. A (Dkt. No. 124-3) (providing other disclosures required under Section 12(a) of the Protective Order).

witness for GPNE simply because he works for that governmental entity. (Apple Mot. at pp. 9-11). As GPNE has already made clear, Dr. Etemad's work on this matter will not implicate any concerns relating to his employment with the FCC, and will be in full compliance with 5 C.F.R. § 2635.805, which governs service of employees of the United States as expert witnesses. *See* Tio Decl., Ex. I (Nov. 5, 2013 Letter fr Gates to Defendants) at 2. Indeed, and perhaps most tellingly, Apple has made no suggestion to the contrary.

Moreover, the speculative proffer by Apple that an announcement by the FCC at the beginning of 2013 of initial recommendations to increase capacity on the wireless spectrum, which "***could*** open the wireless spectrum market to players ***such as*** Apple" is far too removed to be considered a basis for exclusion of Dr. Etemad at this juncture. (Apple Mot. at 9) (emphasis added). To the extent any confidential Apple information that Dr. Etemad may review could be relevant to any future proceedings before the FCC, Apple no doubt either would provide that information voluntarily to the FCC (making Dr. Etemad's prior exposure a moot point), or could be required to provide such information pursuant to an administrative subpoena issued by the FCC itself. Again, though, Apple provides no evidence whatsoever to link Dr. Etemad's potential exposure to confidential materials to any objectively reasonable concern of a future inadvertent disclosure, let alone a disclosure unfairly prejudicial to Apple.

**III.     Dr. Etemad and Dr. Heidari Are Not And Will Not Be In Violation Of The Prosecution Bar.**

A.     <u>The Experts Can Satisfy Their Duty of Candor To The USPTO.</u>

Apple lambasts "GPNE's proposal to have both [experts] sign the Protective Order and forego prosecution related activities," on the basis that doing so would be mutually exclusive with their duty of candor under 37 C.F.R. § 1.56. However, the inventors' duty to disclose under Rule 1.56 extends only to information satisfying each of the following criteria:

(1) "known to that individual to be material to patentability," (*i.e.*, it either (i) "establishes, by itself or in combination with other information, a *prima facie* case of

unpatentability of a claim," (ii) refutes, or is inconsistent with, a position the applicant takes in opposing an argument of unpatentability relied on by the Office, or (iii) refutes, or is inconsistent with, a position the applicant takes in asserting an argument of patentability"), *see* § 1.56(a & b);

(2) material to patentability of an "existing claim", *see* § 1.56(a); and

(3) "not cumulative to information already of record or being made of record in the application," *see* § 1.56(a).

For any information of Apple to establish a *prima facie* case of unpatentability, it would necessarily have to be information that was available to the public and therefore invalidating under 35 U.S.C. §§ 102 & 103. Yet, if that was in fact the case, then Apple's designation of the information as "Confidential – Attorneys' Eyes Only" or "Confidential – Attorneys' Eyes Only – Source Code" would be improper in the first place. Put another way, Apple cannot on the one hand argue that its information is confidentially proprietary warranting special protections under Fed. R. Civ. P. 26(c), while at the same time arguing that the same information is invalidating prior art (which, by virtue of Sections 102(a) and 103), would have been publicly available. Thus, Apple's concern would only come into play ***if*** its confidential information, disclosed to the expert, refuted or was inconsistent with a position the applicant took in opposing an argument of unpatentability or in asserting an argument of patentability. Again, though, if Apple's information was truly confidential at all times, it is difficult to imagine a circumstance in which such a scenario would occur.

Not surprisingly, other courts have not been swayed by the argument now being made by Apple.[11] Like the inventor in *Trading Tech., Int'l*, both Dr. Etemad and Dr. Heidari have

---

[11] *See, e.g., Trading Tech., Int'l, Inc. v. BGC Partners, Inc.*, 2011 U.S. Dist. LEXIS 43668, *11 n. 4 (N.D. Ill. Apr. 22, 2011) (Schenkier, U.S.M.J.) (because inventor named on a continuation patent application had "not made any inventive contributions" since the original application was filed, which status had previously been determined by the Court not to

confirmed their lack of involvement with any ongoing patent prosecution, save for being listed as inventors and (if necessary) providing procedurally required papers like powers of attorney if asked. *See* Tio Decl., Exhibits E, F & I (Gates Letters of October 8, October 15 and November 5, 2013). Despite these assurances, Apple persists with its objections.

### B. Dr. Etemad And Dr. Heidari Are Not Competitive Decisionmakers, For GPNE Or Any Of The Entities To Whom They Have Assigned Their Patent Rights.

Neither Dr. Etemad nor Dr. Heidari is a competitive decisionmaker. In *Applied Signal Tech., Inc. v. Emerging Markets Communications, Inc.*, 2011 U.S. Dist. LEXIS 97403 (N.D. Cal. Jan. 20, 2011), a case cited in Apple's motion, U.S. Magistrate Judge Ryu initially observed that

> an expert witness who prepares or applies for patents themselves is undoubtedly a competitive decisionmaker . . . An expert witness who acts as an inventor or technical advisor . . . certainly controls the content of his or her own patent applications and thus falls squarely into the parameters of competitive decisionmaking as contemplated by the court in *Deutsche Bank*. Allowing experts who prosecute patents themselves to access confidential technical information *without* the protection of a prosecution bar thus poses a tremendous risk of inadvertent disclosure.

*Id.* at *17-18. Nonetheless, the Court later tempered that view, leaving open the possibility that an expert could nonetheless qualify and avoid disqualification under the patent prosecution bar:

> That is not to say that the Court forecloses the possibility that the imposition of the prosecution bar may effectively preclude the parties from being able to retain necessary expert witnesses in this litigation. Therefore, in concluding that Defendants' proposed prosecution bar is both warranted and reasonable, and that the harm to the parties is not outweighed by the risk of inadvertent disclosure of confidential information, the Court hereby grants either party leave to file a motion at a future date to challenge the application of the prosecution bar to a specific expert witness or witnesses. Any such motion would necessarily require a particularized showing that warrants relief from the prosecution bar. For example, a party could demonstrate that the available pool of experts with the relevant

---

constitute competitive decisionmaking, the inventor had "already given up his prosecution activities and thus is not in a position to disclose any of defendants' confidential information"; certain defendants' argument that inventor "has a continuing duty of candor as to the continuation applications to disclose all information material to patentability to the PTO, [and therefore] defendants' confidential technical information will end up in plaintiff's patent prosecutions," was an argument that "does not change our analysis").

expertise in the field of satellite communications is so limited that the prosecution bar significantly impairs the party's ability to retain expert witnesses. As a further example, *a party could demonstrate that a particular expert is not a competitive decisionmaker*.

*Id.*, at *19-20 (emphasis added). In *Applied Signal Tech.*, the standard for "competitive decisionmaking" employed by the Court was that discussed in *Deutsche Bank*, namely whether the particular individual had

> activities, association, and relationship with a client that are such as to involve . . . advice and participation in any or all of the client's decisions . . . made in light of similar or corresponding information about a competitor," which activities may include "obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution.

*Deutsch Bank*, 605 F.3d at 1378, 1380. However, the Federal Circuit in *Deutsche Bank* also saliently observed, in the context of patent attorneys, that:

> Some attorneys involved in patent litigation, for example, may have patent prosecution duties *that involve little more than* reporting office actions or *filing ancillary paperwork*, such as sequence listings, formal drawings, or information disclosure statements. Similarly, some attorneys may be involved in high-altitude oversight of patent prosecution, such as staffing projects or coordinating client meetings, *but have no significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios*. There is little risk that attorneys involved solely in these kinds of prosecution activities will inadvertently rely on or be influenced by information they may learn as trial counsel during the course of litigation. This is because *the opportunity* such attorneys have *to engage with the client in any competitive decisionmaking in connection with such patent prosecution activities is remote*. Unless there is a reasonable expectation that one such attorney's involvement or authority will change in a relevant way during the tenure of the prosecution bar, a judge may find that the attorney is properly exempted from a prosecution bar.

*Id.*, at 1379-1380 (emphasis added). Replacing the word "attorneys" with "experts", and considering the information provided by GPNE to Apple (*see* Tio Decl., Exh. A, E, F & I), the impropriety of disqualifying Dr. Etemad and Dr. Heidari on the basis of their greatly limited activities becomes apparent.

Yet, in the spirit of good-faith collaboration, GPNE's counsel submitted to Apple's

GPNE Corp.'s Opposition to Apple's Motion for Protective Order (Dkt. No. 124)
& Objection To Pantech's Joinder In Same (Dkt. No. 132)    Case No. 5:12-cv-02885
-10-

counsel on October 17, 2013 a copy of *Allstate Ins. Co. v. Nationwide Mutual Insurance Co.*, 2013 U.S. Dist. LEXIS 91408 (N.D. Ill. Jun. 28, 2013). *See* Tio Decl., Exhibit G ("*For your consideration and discussion with your clients*, here's a copy of the case I mentioned during today's call. GPNE reserves its rights, so for the time being, *please accept this as further to our meet-and-confer*, and not a representation that GPNE or its proposed experts are presently agreeing *to be bound* to terms like those set forth in the attached case.") (emphasis added). Any reasonable reading of that statement shows that GPNE was offering a possible solution, a way to get past the impasse on the prosecution bar issue by striking a balance using the protocol suggested by the court in *Allstate*. Rather than taking the opinion in the spirit it was offered, Apple's counsel asserted that the case "does not apply to our situation." *See* Tio Decl., Exh. H. Yet, the wisdom found in *Allstate* cannot be ignored – taking a wait-and-see approach avoids total disqualification, while respecting Apple's concerns.

### IV. Pantech's Belated Joinder In Apple's Motion Should Be Viewed As A Nullity, And Any Exclusion Of Dr. Etemad And/Or Dr. Heidari Should Not Extend To Their Review of Protected Material Provided By Pantech.

Five days after Apple filed its motion for protective order, Pantech, on November 20, 2013, filed a "joinder" in the motion. *See* Dkt. No. 132 (Case No. 5:12-cv-02885-LHK) and Dkt. No. 117 (Case No. 5:12-cv-03057-LHK). In it, Pantech opines that "any relief sought by Apple would necessarily need to apply to the remaining actions." *Id.*, p. 2. Pantech's professed concerns come too late, and ring hollow.

First, the fact that Apple was planning a motion for protective order was openly announced to *all* parties in Apple's counsel's November 8, 2013 email. *See* Tio Decl., Exh. J. Why Pantech did not simply become a co-signatory to Apple's motion when that motion timely was filed on November 15, 2013 is left wholly unexplained by Pantech in its attempted "joinder."

More critical, though, is that Pantech's "joinder" disregards Section 12(b) of the Agreed Protective Order, which unambiguously states: ***"If the dispute is not resolved, the Party***

*objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, <u>the objection shall be deemed withdrawn</u>.*" (Emphasis added.) As noted in Apple's moving papers, the last session of the meet-and-confer among the parties was held on November 8, 2013. *See* Tio Decl., Exh. J. Instead of seeking a protective order from the Court on November 15 (i.e., seven days later), Pantech waited a total of twelve days before speaking up and essentially saying, "Same here." Pantech is quite fortunate that GPNE had not yet provided Pantech's protected information to any expert in the intervening five days between November 15 and 20, otherwise this situation would have been far more complicated – but GPNE's discretion should not redound to Pantech's benefit, particularly where the clear terms of a Court Order are implicated.

* * *

For the reasons set forth in this opposition, and at any hearing the Court may hold on Apple's motion, GPNE respectfully requests that the Court:

(A) Deny Apple's motion for protective order;

(B) Deny Pantech's "joinder" as untimely;

(C) Permit Dr. Kamran Etemad and Dr. Ghobad Heidari to review discovery materials that either Apple or Pantech has designated as "Confidential-Attorneys' Eyes Only" or "Confidential – Outside Attorneys' Eyes Only – Source Code"; AND

(D) Grant GPNE such other and further relief as the Court may deem just and equitable under the circumstances.

RESPECTFULLY SUBMITTED this 4th day of December, 2013.

/s/ Randall T. Garteiser
**GARTEISER HONEA, P.C.**
Randall T. Garteiser (SBN 231821)
Christopher A. Honea (SBN 232473)
44 North San Pedro Road
San Rafael, California 94903
[Tel.] (415) 785-3762
[Fax] (415) 785-3805
randall.garteiser@sftrialattorneys.com
chris.honea@sftrialattorneys.com

**BURNS & LEVINSON LLP**
Howard J. Susser (*Pro Hac Vice*)
Paul T. Muniz (*Pro Hac Vice*)
Zachary R. Gates (*Pro Hac Vice*)
Alexandra Capachietti (*Pro Hac Vice*)
125 Summer Street
Boston, Massachusetts 02110-1624
[Tel.] (617) 345-3000
[Fax] (617) 345-3299
hsusser@burnslev.com
pmuniz@burnlev.com
zgates@burnslev.com
acapachietti@burnslev.com

**NELSON BUMGARDNER CASTO, P.C.**
Barry J. Bumgardner (*Pro Hac Vice*)
Steven W. Hartsell (*Pro Hac Vice*)
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
[Tel.] (817) 377-9111
[Fax] (817) 377-3485
barry@nbclaw.net
shartsell@nbclaw.net

**ATTORNEYS FOR PLAINTIFF GPNE CORP.**

---

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 4, 2013, a true and correct copy of *GPNE CORP.'S OPPOSITION TO APPLE'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 124)* was served on all counsel for Apple, Inc., Pantech Co., Ltd. and Pantech Wireless, Inc., which service was accomplished via e-mail pursuant to the parties' agreement under Fed. R. Civ. P. 5(b)(2)(E).

　　　　　　　　　　　　　　　　　　*/s/ Randall T. Garteiser*
　　　　　　　　　　　　　　　　　　Randall T. Garteiser

4848-8357-8135.2