| | |
|---|---|
| FISH & RICHARDSON P.C. | WILMER CUTLER PICKERING HALE AND DORR LLP |
| Kelly C. Hunsaker (CSB No. 168307 / hunsaker@fr.com) | Joseph J. Mueller (*pro hac vice*) joseph.mueller@wilmerhale.com |
| Enrique Duarte (CSB No. 247523 / duarte@fr.com) | 60 State Street Boston, MA 02109 |
| 500 Arguello Street, Suite 500 Redwood City, CA 94063 | (617) 526-6000 |
| Tel: (650) 839-5070 Fax: (650) 839-5071 | Matthew Hawkinson CSB No.248216 |
| Ruffin B. Cordell (*pro hac vice*) cordell@fr.com | matthew.hawkinson@wilmerhale.com 350 South Grand Avenue, Suite 2100 |
| 1425 K Street, NW, Suite 1100 Washington, DC 20005 | Los Angeles, California 90071 (213) 443-5300 |
| Tel: (207) 783-5070 Fax: (207) 783-2331 | |

Christopher O. Green (*pro hac vice*)
cgreen@fr.com
Aamir A. Kazi (*pro hac vice*)
kazi@fr.com
Jacqueline Tio (*pro hac vice*)
tio@fr.com
1180 Peachtree Street, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005 Fax: (404) 892-5002

Benjamin C. Elacqua (*pro hac vice*)
elacqua@fr.com
1221 McKinney Street, Suite 2800
Houston, TX 77010
Tel: (713) 654-5300 Fax: (713) 652-0109

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

| | |
|---|---|
| GPNE, CORP. | Case No. C 5:12-cv-02885-LHK |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION BY DEFENDANT APPLE FOR PROTECTIVE ORDER** |
| v. | |
| APPLE INC., | **HEARING REQUESTED** |
| Defendant. | Date: January 7, 2013 Time: 10:00 AM Place: Courtroom 5, 4th Floor Judge: Hon. Paul S. Grewal |

# **TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................1

   A. Apple's Objections to Dr. Heidari and Dr. Etemad Are Specific to Their Day-to-Day Activities, None of Which Are Rebutted by GPNE................................................1

   B. Apple's Motion Establishes Good Cause under Fed. R. Civ. P. 26(c) and Should Be Granted Under the Balancing Test in *In re Deustche* and *Brown Bag* ...................4

   C. Apple's Motion Must Also Be Granted Because Access of Protected Material by Dr. Heidari and Dr. Etemad Violates the Patent Prosecution Bar...............................11

III. CONCLUSION.............................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Abaxis, Inc. v. Cepheid*,
   No. C10-02840 LHK, 2012 U.S. Dist. LEXIS 116499 (N.D. Cal. Aug. 17, 2012) ................ 11

*Adv. Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*,
   No. C-95-20169 RMW, 1996 U.S. Dist. LEXIS 21459 (N.D. Cal. Oct. 28, 1996) .......... 7, 8, 9

*AGA Med. Corp. v. W.L. Gore & Assocs.*,
   No. 10-cv-3734 (D. Minn. Dec. 13, 2011) ............................................................................... 7

*Apple Inc. v. Samsung Elecs. Co.*,
   No. C 11-1846 LHK (PSG), 2011 U.S. Dist. LEXIS 147515 (N.D. Cal. Dec. 22, 2011) ........ 8

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 5:11-cv-01846-LHK (N.D. Cal. Oct. 2, 2013) .................................................................. 6

*Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*,
   No. C-09-02180, 2011 WL 197811 (N.D. Cal. Jan. 20, 2011) .................................... 5, 9, 10

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*,
   237 F.R.D. 405 (N.D. Ill. 2006) ............................................................................... 4, 9, 10

*Brown Bag Software v. Symantec Corp.*,
   960 F.2d 1465 (9th Cir. 1992) ............................................................................... passim

*Cleveland v. Compass Vision, Inc.*,
   No. C07-5642 BZ, 2008 WL 576755 (N.D. Cal. Feb. 29, 2008) .......................................... 11

*Contrast Biax Corp. v. Brother Int'l Corp.*,
   No. 10-cv-03013-PAB-KLM, 2011 U.S. Dist. LEXIS 126359 (D. Colo. Nov. 1, 2011) ......... 7

*FTC v. Exxon Corp.*,
   636 F.2d 1336 (D.C. Cir. 1980) ............................................................................................... 9

*In re Deutsche Bank Trust Co. Ams.*,
   605 F.3d 1373 (Fed. Cir. 2010) ....................................................................................... passim

*Intel Corp. v. VIA Techs., Inc.*,
   198 F.R.D. 525 (N.D. Cal. 2000) ........................................................................ 2, 6, 10, 11

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   2008 U.S. Dist. LEXIS 93873 (S.D. Cal. Nov. 18, 2008) ....................................................... 8

iii                                                          REPLY ISO APPLE MOTION FOR
                                                              PROTECTIVE ORDER
                                                              Case No. 5:12-CV-02885-LHK

*ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.*,
   No. 6:07-cv-346, 2008 WL 5634214 (E.D. Tex. Mar. 14, 2008) .................................. 3, 6, 10

*Telular Corp. v. Vox2, Inc.*,
   No. 00 C 6144, 2001 WL 641188 (N.D. Ill. June 4, 2001) ......................................................... 7

*Trading Techs., Int'l, Inc. v. BCG Partners, Inc.*,
   No. 10 C 715, 2011 U.S. Dist. LEXIS 43668 (N.D. Ill. Apr. 22, 2011) ................................ 12

*U.S. v. Antonelli Fireworks Co.*,
   155 F.2d 631 (2d Cir. 1946) ....................................................................................................... 9

*U.S. v. DeCastris*,
   798 F.2d 261 (7th Cir. 1996) ...................................................................................................... 9

**OTHER AUTHORITIES**

5 C.F.R. § 2635.502 ........................................................................................................................ 3

5 C.F.R. §§ 2635.802 and 2635.803 .............................................................................................. 3

5 C.F.R. § 2635.805 ........................................................................................................................ 3

9th Cir. Rule 36-3(b) .................................................................................................................... 11

Fed. R. App. P. 32.1(a) ................................................................................................................. 11

Fed. R. Civ. P. 26(c) ....................................................................................................................... 4

N.D. Cal. Local Rule 3-4(e) ......................................................................................................... 11

37 C.F.R § 1.56 ............................................................................................................................ 12

## I. INTRODUCTION

GPNE's opposition overstates Apple's specific objections to Dr. Heidari and Dr. Etemad, attempts to create disputes that do not exist between the parties (*i.e.*, the proper standard to apply in determining whether to grant Apple's motion for protective order), and—most critically—fails to demonstrate any need by GPNE for permitting these particular individuals to access Apple's confidential information. Instead of dealing with the merits, GPNE attempts to win the issue by arguing burden. GPNE's first problem is that this is not a motion for summary judgment, and the Court is not required to view the facts in the light most favorable to a non-movant. Next, and importantly, the burden issue is more akin to a bursting bubble theory, which requires a showing of good cause by Apple, and then shifts to GPNE to demonstrate why its need for disclosure of Apple's confidential information to these individuals outweighs the risk of inadvertent disclosure. Apple has unquestionably met its requirement to shift the burden to GPNE, and GPNE has failed to provide any justification for allowing Dr. Heidari or Dr. Etemad to see Protected Material. Moreover, GPNE has not disputed the fact that these individuals have pending patent applications that expressly violate the prosecution bar already entered in this action. Therefore, Apple respectfully requests that the Court grant its motion for entry of a protective order preventing Drs. Heidari and Etemad from seeing Protected Material under the Protective Order.

## II. ARGUMENT

### A. Apple's Objections to Dr. Heidari and Dr. Etemad Are Specific to Their Day-to-Day Activities, None of Which Are Rebutted by GPNE

Apple's motion is not arguing for the Court to mistrust Dr. Heidari or Dr. Etemad but, rather, asks the Court to enter a Protective Order based on upon specific, objectively reasonable concerns regarding Dr. Heidari and Dr. Etemad's day-to-day activities. GPNE's reply mischaracterizes Apple's motion as seeking a "wholesale exclusion" for *any* expert consulting in

the general technical field.  That is not the basis of Apple's motion, nor the scope of the protective order sought by Apple.

As explained in the opening brief, Dr. Heidari is the President of his own company, a company that specializes in patent valuation and litigation in the same field of technology as this case.  Dr. Heidari reverse engineers products, including smartphones, for Apple competitors. Dr. Heidari also has a history of working with Parsa Wireless, a company that focuses on advising the acquisition, enforcement, and licensing of patents.  Dkt. No. 124 at 6-7.  GPNE does not dispute these facts establishing the risk of inadvertent disclosure in the course of Dr. Heidari's current employment.  *See, e.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (affirming magistrate judge's finding of risk of inadvertent disclosure when individual's employment would necessarily entail advising his employer in areas relating to Symantec's trade secrets); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000) (finding it necessary to examine whether role of individual would place that person "in the untenable position of having to refuse his employer . . . advise [sic] on a host of . . . decisions lest he improperly or indirectly reveal . . . trade secrets") (citing *Brown Bag*, 960 F.2d at 1472).   Nor does GPNE dispute the fact that Dr. Heidari has at least one pending U.S. patent application before the USPTO that includes smartphones within the scope of his invention.  Dkt. No. 124 at 11-12.

GPNE similarly remains silent as to Apple's specific concerns for Dr. Etemad, who has over twenty pending U.S. patent applications in the same space, including one published as recently as May 9, 2013.  *See, e.g.*, U.S. Patent App. No. 13/658,735.  Not only is Dr. Etemad also formerly affiliated with Parsa Wireless, but Dr. Etemad is currently employed by the FCC to advise the same division that requested information from Apple on its iPhone products in 2009. This division provides yearly reports on competition in the mobile wireless industry and gathers

2

REPLY ISO APPLE MOTION FOR
PROTECTIVE ORDER
Case No. 5:12-CV-02885-LHK

1  information about Apple for inclusion in these reports released as recently as March 21, 2013.

2  Dkt. No. 124 at 9.  It also implements policy with other FCC divisions such as the Office of

3  Engineering and Technology, to whom Apple submits information for certification and approval

4  of products released into the U.S. market.  Dkt. No. 124 at 10-11.  This is not merely a "narrative"

5  that GPNE wishes it to be—rather, these are detailed and true facts supported by public documents

6

7  in response to which GPNE has provided not a single iota of evidence to the contrary.

8       GPNE provides no evidentiary support for why Apple's concerns as to the FCC's role in

9  spectrum sharing policy (and potential future implementation) are "speculative."  Although GPNE

10  points to regulations designed to protect the government—*i.e.*, 5 C.F.R. § 2635.805—the basis of

11  Apple's motion here is to seek relief on behalf of Apple, which the FCC regulations do not

12  consider.[1]   Here, Dr. Etemad is in the unique position of being adverse to Apple in litigation while

13  at the same time working as a Senior Technical Advisor for the FCC to evaluate spectrum

14  licensing and policies at the center of recent lobbying efforts by Apple and several other

15

16  companies in the same industry.  *See* Dkt. No. 124 at 9-11.  The case law is clear that the Court

17  must "examine factually all the risks and safeguards surrounding inadvertent disclosure." *Brown*

18  *Bag*, 960 F.2d at 1470.  "It is that ultimate potential for damaging use of the confidential

19  information that underlies the concerns of Rule 26 and *U.S. Steel Corp.* 'competitive

20  decisionmaker' analysis." *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.*, No. 6:07-cv-

21  346, 2008 WL 5634214, at *6 (E.D. Tex. Mar. 14, 2008).  These concerns also do not limit the

22  bases for finding a risk of inadvertent disclosure to competitive decision-making alone.  *See*

23

---

[1] Further, GPNE does not account for several other ethics regulations imposed by the FCC on Dr. Etemad.  Specifically, 5 C.F.R. §§ 2635.802 and 2635.803, entitled "Conflicting outside employment and activities" and "Prior approval for outside employment and activities" are additional rules promulgated by the FCC requiring that employees refrain from matters that "would cause a reasonable person with knowledge of the relevant facts to question his impartiality on the matter."  5 C.F.R. § 2635.502; *see, e.g., id.* at Example 3; 5 C.F.R. 2635.802 at Example 2;. GPNE has not provided any evidence of compliance with these regulations.

24
25
26
27
28

3      REPLY ISO APPLE MOTION FOR
PROTECTIVE ORDER
Case No. 5:12-CV-02885-LHK

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 408 (N.D. Ill. 2006) (recognizing competitive decision-making as "*one* basis for limiting access") (emphasis in original). Whether the Court finds that Dr. Etemad is a competitive decision-maker, or that he is otherwise conflicted in his duties to the FCC and his duties under the Protective Order here, the same underlying concern exists for each: that Dr. Etemad poses a risk of inadvertent disclosure of Apple's confidential information.

**B.**  **Apple's Motion Establishes Good Cause under Fed. R. Civ. P. 26(c) and Should Be Granted Under the Balancing Test in *In re Deustche* and *Brown Bag***

Apple's motion is warranted under the proper standard, which is not disputed. Specifically, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). Under governing law, moreover, "[a] determination of the risk of inadvertent disclosure or competitive use does not end the inquiry." *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1380 (Fed. Cir. 2010). "Even if a district court is satisfied such a risk exists, the district court must balance this risk against the potential harm *to the opposing party from restrictions imposed on that party's right to have the benefit of [expert] of his choice*." *Id.* (emphasis added); *see also Brown Bag*, 960 F.2d at 1470 ("Specifically, in this case we must balance the risk to Symantec of inadvertent disclosure of trade secrets to competitors *against the risk to Brown Bag that protection of Symantec's trade secrets impaired prosecution of Brown Bag's claims*.") (emphasis added).

4

REPLY ISO APPLE MOTION FOR
PROTECTIVE ORDER
Case No. 5:12-CV-02885-LHK

### 1. GPNE Fails to Demonstrate Any Particularized Need for Access to Apple Confidential Information by Dr. Heidari or Dr. Etemad

GPNE does not provide any evidence rebutting Apple's identified concerns of the risk of inadvertent disclosure. *See Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C-09-02180, 2011 WL 197811 (N.D. Cal. Jan. 20, 2011), at *5 ("*Deutsche Bank* does not hold that the party seeking a prosecution bar must show actual evidence that an individual will ignore a protective order; rather, it is *AST and Comtech's* burden to show that their experts should be exempt on an individual basis.") (emphasis in original). Tellingly, GPNE fails to inform the Court that since the filing of Apple's motion, GPNE is now using another disclosed expert, Dr. Neil Birkett, to view Apple-confidential technical information. GPNE has also retained an expert to view Apple-confidential information for damages-related issues. GPNE has set forth no reason nor provided any evidence as to why either Dr. Heidari or Dr. Etemad possesses unique skills for analyzing Apple's confidential information that GPNE cannot otherwise obtain through its other experts.

GPNE also does not explain why a Protective Order entered here would prohibit GPNE from retaining Dr. Heidari or Dr. Etemad as experts in other capacities. For example, neither Dr. Heidari nor Dr. Etemad would need to access Apple confidential information to opine on issues of invalidity specific to GPNE's patents or to review documents that are not designated confidential. Instead, GPNE's only stated reason for why its interest "outweighs" Apple's concerns as to risk of disclosure is by arguing that the Protective Order is sufficient, that these experts should be "taken at their word to honor the obligations under the Protective Order," and that they can "compartmentalize information learned in one consulting capacity from another." *See* Dkt. No. 143 at 3, 6. However, an agreement to faithfully abide by a Protective Order is only the starting point of this inquiry, and it does not resolve the risk of inadvertent disclosure. *See Brown Bag*,

960 F.2d at 1471 (entering protective order against access by in-house counsel, despite reassurance as to the professional integrity of in-house counsel and that in-house counsel would store trade secret documents in a locked cabinet); *Intel Corp.*, 198 F.R.D. at 530-31 (finding that agreement to be bound by protective order and to not keep copies of confidential documents in office were insufficient to prevent inadvertent disclosure of confidential information because it was not possible to "lock-up trade secrets in [her] mind"); *ST Sales*, 2008 WL 5634214, at *2 ("[A]ccepting that an attorney will abide by a protective order is the starting point of the inquiry, not the end of the analysis."). GPNE's argument that neither individuals are prosecuting patents for GPNE and its unsupported assertion that they do not consult in the "design, development, operation, or patenting of cellular communication reservation request protocols" also do not contradict the underlying facts establishing risk of inadvertent disclosure. *See also* Dkt. No. 86 at § 12(a) & (b) (requiring GPNE to disclose all consulting relationships, including this subset). The prosecution bar applies to all patent prosecution activity within the scope of the Protective Order. *Id.* at § 6(b). GPNE's argument does not contradict the fact that both individuals have pending U.S. patent applications of their own in this same space—a fact that GPNE does not dispute. *See id.*; Dkt. No. 124 at 11-13.

Ironically, GPNE relies upon a recent Order from this Court for the general proposition that "confidential information remains confidential because counsel and clients alike follow court orders," yet even the decision it cites addresses an alleged breach of such a court order. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-01846-LHK (N.D. Cal. Oct. 2, 2013) at 2-3. Furthermore, the Court is currently considering whether sanctions are appropriate against Samsung for its improper disclosure of Apple's confidential information. In light of this court order, Apple has even more reason to ensure that its confidential information produced in this

action is not disseminated to individuals who pose a risk of inadvertent disclosure and whose access to Apple confidential information is not necessary for GPNE to prosecute its case.

### 2. The Underlying Principles of the Law Require a Case-by-Case Analysis of the Facts, which Warrant Granting a Protective Order Here

The undisputed facts underlying Apple's motion, here, are critical because they govern the applicability of the cited case law by both parties. The cases cited by GPNE in support of its opposition are distinguishable on these facts, and do not apply here. First, both Dr. Heidari and Dr. Etemad partake in day-to-day activities in their current employment that conflict with access to Apple's confidential information. This is different from concerns derived solely from an individual's **past**, as opposed to current, employment. *See Telular Corp. v. Vox2, Inc.*, No. 00 C 6144, 2001 WL 641188, at *1-2 (N.D. Ill. June 4, 2001) (finding less risk of disclosure when disclosed expert was "not actively working or consulting as electrical engineer in telecommunications industry" as sales director of a company that distributes cellular telephones and accessories manufactured by others); *Adv. Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, No. C-95-20169 RMW, 1996 U.S. Dist. LEXIS 21459, at *6-7 (N.D. Cal. Oct. 28, 1996) (noting that objection to expert was based on past consultation work with another company). Second, Apple is not asking for either of Dr. Heidari or Dr. Etemad to sign a non-compete clause; rather, Apple is asking that the Court prohibit them from accessing Apple's confidential information, which is distinct from the protective orders that seek to limit an expert's future employment. *Contrast Biax Corp. v. Brother Int'l Corp.*, No. 10-cv-03013-PAB-KLM, 2011 U.S. Dist. LEXIS 126359, at *7 (D. Colo. Nov. 1, 2011) (where movant sought attestation that expert is not working for any entity in capacity of reviewing patents or products, services, or targets for non-practicing entities and that he will not do so for four years after trial of this lawsuit); *AGA Med. Corp. v. W.L. Gore & Assocs.*, No. 10-cv-3734 (D. Minn. Dec. 13, 2011)

(Dkt. No. 143-2, Ex. 1) at 20-21 (where movant sought agreement by expert to a non-compete clause that excluded "involve[ment] in any product development, designing, modifying, or manufacturing of occlusion devices or in regard to obtaining intellectual rights concerning occlusion devices until (1) year has lapsed from the settlement of or final unappealable decision in this litigation").  Third, the cases upon which GPNE rely are also distinguishable based on the subject matter sought to be protected.  The Court's prior decision in *Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK (PSG), 2011 U.S. Dist. LEXIS 147515 (N.D. Cal. Dec. 22, 2011), for example, applied a different Protective Order agreed to by the parties and responded to a request for limited review of design-related materials that specifically identified the documents for disclosure and did not include any "utility-side details."  *Id.* at *7-9.  Further, to the extent access of materials to an expert has previously been granted, these instances occurred where the non-moving party successfully provided evidence of why its expert possessed unique skills or qualifications that other experts did not have.  *See, e.g.*, *AGA Medical Corp.*, No. 10-cv-3734 (Dkt. No. 143-2, Ex. 1) at 28-29 (presenting sufficient evidence of interest in using Devellian as an expert); *Adv. Semiconductor*, 1996 U.S. Dist. LEXIS 21459, at *5-6 (same).[2]

The risk identified by Apple here is real, rather than "unknown."  Dr. Heidari evaluates patent portfolios for licensing, due diligence, and enforcement against potential infringers.  He reverse engineers smart phones and creates claim charts for competitors of Apple.  This type of

---

[2] Additionally, the arguments presented by the movant in *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, are different than those proffered here. Specifically, the request for protective order was based on grounds of incomplete disclosure by plaintiff for one expert, and the argument that two experts were not necessary because it would result in duplicative disclosures.  No. 08-cv-335 IEG (NLS), 2008 U.S. Dist. LEXIS 93873, at *4-10 (S.D. Cal. Nov. 18, 2008).  The request for protective order was ***not*** based on whether each expert's current employment posed a risk of inadvertent disclosure of confidential information.  Further, unlike here—where GPNE does not dispute Dr. Etemad's employment by the FCC—in *Presidio*, the Court did not find a basis to disqualify Dr. Ewell, a proposed expert, based on a former or current status as a government employee because Dr. Ewell did not work for an express branch of the U.S. government.  *Id.* at *17-19.

day-to-day activity poses a real risk to Apple, whose confidential information about its accused products are certain to fall within the realm of information Dr. Heidari uses on a daily basis. Similarly, Dr. Etemad is employed by the WTB division of the FCC to advise the WTB and to evaluate new spectrum licensing applications and spectrum policies.  Dkt. No. 124, Ex. I at 2. This same division requested information from Apple as recently as 2009, tracks Apple's industry position in its annual mobile wireless competition reports, and collaboratively implements policy with the Office of Engineering and Technology division of the FCC—from whom Apple must seek authorization to launch products in the United States. GPNE suggests that *U.S. Steel Corp.*, *In re Deutsche*, *Brown Bag*, and their progeny cannot be applied here, but it is undisputed that courts have found this analysis applicable to consideration of an expert's access to confidential information.  *See, e.g.*, *Applied Signal*, 2011 WL 197811, at *3-4; *see also AGA Medical Corp.*, No. 10-cv-3734 (Dkt. No. 143-2, Ex. 1), at 28-29; *Adv. Semiconductor*, 2011 U.S. Dist. LEXIS 21459, at *5-6.  Further, the underlying concern that an individual is unable to separate confidential from non-confidential information in one's mind is not limited to the realm of patent prosecution, but is a principle well-understood in other legal contexts as well . *See, e.g.*, *Autotech Techs.*, 237 F.R.D. at 410-11 (citing to *U.S. v. Antonelli Fireworks Co.*, 155 F.2d 631, 656 (2d Cir. 1946) and *U.S. v. DeCastris*, 798 F.2d 261, 264 (7th Cir. 1996) describing this same reality encountered in information disclosed to a jury); *see also FTC v. Exxon Corp.*, 636 F.2d 1336, 1349-51 (D.C. Cir. 1980) (recognizing this same risk in an FTC action and restricting access to confidential information to representatives of a potential future competitor should the FTC order divestiture).   None of these cases require that the Court limit its analysis to instances where competitive decision-making is made on behalf of only plaintiff, as a client, in the context of a patent prosecution bar.  Rather, for those cases that do confront those circumstances, the principles

and reasoning used by the courts in those instances are highly analogous to the concerns raised here by Apple.

In *Applied Signal*, for example, the Court performed a case-specific balancing inquiry, ultimately concluding that the risk of inadvertent disclosure of confidential information outweighed the harm to the parties seeking access when "AST and Comtech have already been able to retain two experts who have agreed to the proposed prosecution bar, and have made no showing that there is a dearth of experts in the field of satellite communications or that they will be seriously prejudiced by the imposition of the prosecution bar." 2011 WL 197811, at *5.[3] Similarly, here, the risk of inadvertent disclosure outweighs any harm to GPNE because GPNE has already proposed two experts who have agreed to the prosecution bar and has not made a showing as to the "dearth" of experts in the field of its patents. *See also Autotech Techs.*, 237 F.R.D. at 412 (granting motion for protective order when plaintiff offered no proof that restricting access to confidential information would impair plaintiff's ability to prosecute its claims or defenses); *Intel Corp.*, 198 F.R.D. at 529 (requiring party seeking access to demonstrate its ability to litigate will be prejudiced absent this access). In *Intel Corp.*, moreover, the person seeking access to confidential information—senior counsel for the plaintiff—was involved in "licensing through litigation," provided advice that "necessarily affect licensing decisions," and "evaluate[ing] the strength of the patent, Intel's products implicated by the patent, and competitors' products implicated by the patent." 198 F.R.D. at 529-30. The only difference between this role and Dr. Heidari's current employment is one of title. Apart from this, Dr. Heidari's active, daily job involves the same exact activities. *See also ST Sales*, 2008 WL

---

[3] Notably, the Court also found that "[a]n expert witness who acts as an inventor or technical advisor, as appears to be the case here based on a review of the submitted resumes of AST and Comtech's current experts, certainly controls the content of his or her own patent applications and thus falls squarely into the parameters of competitive decisionmaking as contemplated by the court in *Deutsche Bank*." *Applied Signal*, 2011 WL 197811 at *5.

5634214, at *4-5 (noting that it is undisputed that "Pridham himself focuses his practice on patent litigation, licensing, and acquisition for Spangenburg entities" and that Pridham's active role in these businesses make him a "competitive decisionmaker"). This risk of potential injury is only increased by Dr. Heidari's business of providing advice to Apple competitors and patentees in the "UTM, CDMA2000, WiMax, LTE, WiFi, GPS, UWB, multimedia, hardware and software architectures of cell phone" fields as described in his curriculum vitae. Dkt. No. 124, Ex. A at 10; *see Intel Corp.*, 198 F.R.D. at 531.[4]

### C. Apple's Motion Must Also Be Granted Because Access of Protected Material by Dr. Heidari and Dr. Etemad Violates the Patent Prosecution Bar

GPNE's opposition points to law that is not irrelevant to the application of the Protective Order's patent prosecution bar to Dr. Heidari and Dr. Etemad. Here, irrespective of whether Dr. Heidari and Dr. Etemad are competitive decisionmakers, Apple's argument is specific to the language of the Protective Order, which GPNE does not dispute here. The Protective Order's patent prosecution bar, under the definition of "prosecution" prohibits Dr. Heidari and Dr. Etemad from being named inventors on patent applications pending before the USPTO. Since both individuals have pending patent applications, both are in violation of this provision of the Protective Order and should, therefore, be barred from accessing Apple's confidential information.

GPNE does not dispute the interpretation of this language of the Protective Order. Rather, GPNE diverts the Court's attention to competitive decisionmaking arguments in the context of a

---

[4] GPNE's criticism of Apple's citation to *Abaxis, Inc. v. Cepheid*, No. C10-02840 LHK, 2012 U.S. Dist. LEXIS 116499 (N.D. Cal. Aug. 17, 2012), is incorrect. Local Rule 3-4(e) cross references Ninth Circuit Court of Appeals Rule 36-3, which currently allows citations of unpublished dispositions issued on or after January 1, 2007 in accordance with Federal Rule of Appellate Procedure 32.1. *See* N.D. Cal. L.R. 3-4(e); 9th Cir. Rule 36-3(b); *see also* Fed. R. App. P. 32.1(a) ("A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as unpublished, not for publication, nonprecedential, not precedent, or the like; and (ii) issued on or after January 1, 2007."); *Cleveland v. Compass Vision, Inc.*, No. C07-5642 BZ, 2008 WL 576755, at *1 (N.D. Cal. Feb. 29, 2008) (observing the same).

patent prosecution bar. However, these arguments do not change the fact that both individuals, by virtue of having pending patent applications in the same technology space, are violating the Protective Order under the patent prosecution bar. The case law does not provide an exemption for experts in violation of the prosecution bar simply by arguing that they are not competitive decisionmakers. *See, e.g.*, *In re Deutsche*, 605 F.3d at 1381 ("We further hold that the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, **and** (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use."). Nor does the case law make an exception from this analysis for proposed experts who are viewing and analyzing protected material, as opposed to in-house or outside counsel. Additionally, the case upon which GPNE cites involves a very different set of circumstances, where the information at issue had already been disclosed to a named individual under a prior protective order without objection, and a party was seeking entry of a protective order preventing disclosure of the same information to the same person. *See Trading Techs., Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 U.S. Dist. LEXIS 43668, at *2-4, 8 (N.D. Ill. Apr. 22, 2011). GPNE must go further and provide evidence showing how the potential injury to GPNE outweighs the potential injury to Apple, and it has not done so here.

Further, GPNE's argument as to why Rule 1.56 is inapplicable here is also unavailing because it fails to explain how Dr. Heidari and Dr. Etemad's ongoing obligation to the USPTO under Rule 1.56 can be severed by GPNE's assertion that Dr. Heidari and Dr. Etemad's

"agreement" to the contrary. Because of the inability of the human mind to compartmentalize confidential from non-confidential information, access by these individuals to Apple's confidential information will necessarily affect what they choose to disclose to the USPTO, such as claim amendments, declarations, inventor oaths, and information disclosure statements filed on their behalf. The risk of disclosure is not limited to "public information," as GPNE contends, particularly when confidential information of Apple product discloses information about products on sale in the market. Further, the risk of disclosure extends not only to the USPTO, but also to discussions that Dr. Heidari or Dr. Etemad may have with their attorneys should an issue arise in any pending U.S. patent application requiring their attention as inventors. Under the definition agreed to by the parties, Dr. Heidari and Dr. Etemad are still "prosecuting" patent applications in violation of the patent prosecution bar. GPNE has set forth no reason why Dr. Heidari and Dr. Etemad should be afforded different treatment from all of the other experts disclosed by the parties in this case. Indeed, GPNE could not even confirm from Dr. Etemad's patent attorneys that Dr. Etemad does not have any pending, unpublished patent applications currently being prosecuted on behalf of Intel. *See, e.g.*, Dkt. No. 124-11, Ex. I at 2-3. Its willingness to represent that Drs. Heidari and Etemad are not prosecuting patents in violation of the Protective Order (despite having pending U.S. patent applications) ***and*** that Drs. Heidari and Etemad are also somehow more capable than any other human being in their ability to compartmentalize information in their head—without providing declaration from either expert—is suspect, unsupported, and should be rejected.

### III. CONCLUSION

For the foregoing reasons and the reasons set forth in Apple's motion, Defendants respectfully request that the Court issue a Protective Order prohibiting Dr. Ghobad Heidari and Dr. Kamran Etemad from accessing Protected Material under the Protective Order.

Dated: December 11, 2013                    FISH & RICHARDSON P.C.

                                            By:  /s/ Benjamin C. Elacqua
                                                  Benjamin C. Elacqua

                                            Attorneys for Defendant
                                            APPLE INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 11, 2013, all counsel of record who are deemed to have consented to electronic service are being served with a copy of **REPLY IN SUPPORT OF MOTION BY DEFENDANT APPLE FOR PROTECTIVE ORDER** via the Court's CM/ECF system.

By: */s/ Jacqueline Tio*
Jacqueline Tio