| | |
|---|---|
| FISH & RICHARDSON P.C. | WILMER CUTLER PICKERING HALE AND DORR LLP |
| Katherine K. Lutton (CSB No. 194971 / lutton@fr.com) | Joseph J. Mueller (*pro hac vice*) joseph.mueller@wilmerhale.com |
| Kelly C. Hunsaker (CSB No. 168307 / hunsaker@fr.com) | 60 State Street Boston, MA 02109 |
| Enrique Duarte (CSB No. 247523 / duarte@fr.com) | Tel: (617) 526-6000 Fax: (617) 526-5000 |
| 500 Arguello Street, Suite 500 Redwood City, CA 94063 | Matthew Hawkinson |
| Tel: (650) 839-5070 Fax: (650) 839-5071 | CSB No.248216 matthew.hawkinson@wilmerhale.com |
| Ruffin B. Cordell (*pro hac vice*) cordell@fr.com | 350 South Grand Avenue, Suite 2100 Los Angeles, California 90071 |
| 1425 K Street, NW, Suite 1100 Washington, DC 20005 | Tel: (213) 443-5300 Fax: (213) 443-5400 |
| Tel: (207) 783-5070 Fax: (207) 783-2331 | Mark D. Selwyn (State Bar No. 244180) mark.selwyn@wilmerhale.com |
| Christopher O. Green (*pro hac vice*) cgreen@fr.com | 950 Page Mill Road Palo Alto, CA 94304 |
| Aamir A. Kazi (*pro hac vice*) kazi@fr.com | Tel: (650) 858-6000 Fax: (650) 858-6100 |
| Jacqueline Tio (*pro hac vice*) tio@fr.com | Attorneys for Defendant APPLE INC. |
| 1180 Peachtree Street, 21st Floor Atlanta, GA 30309 | |
| Tel: (404) 892-5005 Fax: (404) 892-5002 | |
| Benjamin C. Elacqua (*pro hac vice*) elacqua@fr.com | |
| 1221 McKinney Street, Suite 2800 Houston, TX 77010 | |
| Tel: (713) 654-5300 Fax: (713) 652-0109 | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

| | |
|---|---|
| GPNE, CORP. | Case No. 5:12-cv-02885-LHK |
| Plaintiff, | **APPLE INC.'S *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF MICHAEL J. DANSKY** |
| v. | |
| APPLE INC., | |
| Defendant. | **HEARING REQUESTED** |
| | Date: April 3, 2014 Time: 1:30 p.m. Place: Courtroom 8, 4th Floor Judge: Hon. Lucy H. Koh |

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................1

II.   STATEMENT OF THE ISSUE TO BE DECIDED .....................................................2

III.  STATEMENT OF RELEVANT FACTS .....................................................................2

   A.  Mr. Dansky's Failure to Attempt to Isolate the Value of the Patents-in-Suit ................2

   B.  Mr. Dansky's "Black-Box" Opinion ...............................................................................5

IV.   LEGAL STANDARDS ................................................................................................7

V.    ARGUMENT ................................................................................................................7

   A.  Mr. Dansky Did Not Follow Federal Circuit Precedent Requiring
       Identification of a Proper Royalty Base—Based on His Mistaken
       View of the "Smallest Saleable Unit" Rule .................................................................. 7

   B.  Mr. Dansky's "Black-Box" Royalty Opinion Relies on Impermissible
       *Ipse Dixit* Reasoning...................................................................................................11

VI.   CONCLUSION............................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*AVM Techs., LLC v. Intel Corp.*,
    No. 10-610-RGA, 2013 WL 126233 (D. Del. Jan. 4, 2013) .................................................. 10

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ........................................................................................................... 1, 7

*DSU Med. Corp. v. JMS Co.*,
    296 F. Supp. 2d 1140 (N.D. Cal. 2003) ................................................................................ 11

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
    744 F. Supp. 2d 870 (E.D. Wis. 2010) .................................................................................. 12

*General Electric Co. v. Joiner*,
    522 U.S. 136 (1997) ................................................................................................................ 7

*In re Innovatio Ventures, LLC Patent Litig.*,
    No. 1:11-cv-09308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) ............................................. 9

*Joy v. Bell Helicopter Textron, Inc.*,
    999 F.2d 549 (D.C. Cir. 1993) ............................................................................................... 13

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ................................................................................................................ 7

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ................................................................................ 7, 8, 10, 11

*Lawrence v. Raymond Corp.*,
    No. 3:09-cv-1067, 2011 WL 3418324 (N.D. Ohio Aug. 4, 2011) ......................................... 12

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ........................................................................................... 7, 8

*Lust v. Merrell Dow Pharms., Inc.*,
    89 F.3d 594 (9th Cir. 1996) ..................................................................................................... 7

*Microsoft Corp v. Motorola, Inc.*,
    No. C10-1823JLR, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013) ................................... 10

*Network Protection Sciences, LLC v. Fortinet, Inc.*,
   No. C 12-01106 WHA, 2013 WL 5402089 (N.D. Cal. Sept. 26, 2013) ................................. 10

*Oiness v. Walgreen Co.*,
   88 F.3d 1025 (Fed. Cir. 1996) .............................................................................................. 11

*Reinsdorf v. Skechers, U.S.A.*,
   922 F. Supp. 2d 866 (C.D. Cal. 2013) .................................................................................. 11

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
   550 F.3d 1356 (Fed. Cir. 2008) .............................................................................................. 7

*Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*,
   427 F. Supp. 2d 1022 (D. Kan. 2006) .................................................................................. 13

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ........................................................................................ 7, 13

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) ................................................................................................ 12

**OTHER AUTHORITIES**

Federal Rule of Evidence 403 ........................................................................................................ 1

Federal Rule of Evidence 702 .................................................................................................... 1, 7

**NOTICE OF MOTION**

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 3, 2014, or soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, Apple Inc. ("Apple") respectfully requests this Court to hear Apple's *Daubert* motion to exclude the testimony and damages opinion of Michael J. Dansky. Apple's motion is based on this Notice of Motion, Motion to Exclude, and the supporting declaration of Benjamin C. Elacqua filed herewith; the Reply papers to be filed; all papers and pleadings on file in this action; and such evidence and argument as may properly be presented at or before the hearing on this matter.

**STATEMENT OF RELIEF TO BE REQUESTED**

Apple moves for an order excluding the testimony and opinion of GPNE's damages expert Michael J. Dansky from trial pursuant to Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 403.

**I.   INTRODUCTION**

GPNE's damages expert Michael J. Dansky relied on incorrect legal premises and "black box" reasoning to reach his opinion that GPNE should be paid a royalty of ▇ for each of the ▇ accused Apple mobile devices. Mr. Dansky did not try to isolate the value of the allegedly infringing functionality within the multi-component Apple devices, in part because of his legally mistaken view that the "smallest saleable patent-practicing unit" rule applies only to products sold by the defendant—rather than also applying to component products purchased by Apple and incorporated into its products, such as the baseband chips that enable cellular functionality in Apple's products. Instead of isolating the proper royalty base and then applying a reasonable royalty rate to that base, Mr. Dansky seeks to offer a "black-box" opinion—he provided no mathematical explanation for his ▇ royalty rate, instead relying opaquely on his "years of experience." Mr. Dansky's opinions do not meet the methodological standards of Daubert and cannot be reconciled with controlling law, and should therefore be excluded.

## II. STATEMENT OF THE ISSUE TO BE DECIDED

1. Whether the Court should enter an order excluding the testimony and opinion of GPNE's damages expert Michael J. Dansky from trial, given his failure to provide a transparent, mathematically sound explanation for his royalty opinion, and his reliance on incorrect legal principles.

## III. STATEMENT OF RELEVANT FACTS

GPNE contends that several models of Apple's iPhones and iPads infringe U.S. Patent Nos. 7,555,267, 7,570,954, and 7,792,492. (Dkt. Nos. 107, 108.) On January 4, 2014, GPNE served the expert report of Michael J. Dansky on damages, in which he advocated a ▓▓▓▓ royalty, which would result in total damages of ▓▓▓▓.

### A. Mr. Dansky's Failure to Attempt to Isolate the Value of the Patents-in-Suit

In his report, Mr. Dansky states his understanding, based on communications with GPNE's technical expert Dr. Dinan, is that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. A, Dansky Report at 24.) At his deposition, Mr. Dansky acknowledged that—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(Ex. D, Dansky Dep. Tr. at 18:13-19:7.)

Mr. Dansky concededly failed to make any effort to isolate the value of the particular functionality allegedly covered by the GPNE patents, as compared to the other functionality in the cellular standards:



(*Id.* at 53:6-54:16 (emphases added).)

Mr. Dansky made no effort to identify the component in the Apple devices that most closely corresponds to the allegedly infringing functionality—namely, the baseband processor that enables the cellular functionality in Apple's products. Those chips are inexpensive products that

3     APPLE'S MOTION TO EXCLUDE
TESTIMONY OF MR. DANSKY
Case No. 5:12-CV-02885-LHK



(Ex. E, APP-GPNE1014484) (produced to GPNE November 2013 and listed in Exhibit 2 of the Dansky Report). GPNE's infringement allegations center on functionality that resides in these chips. (Ex. F, Dinan Dep. Tr. at 70:1-72:8) ("Q. If a mobile phone other than the Apple phones that are accused of infringement in this case had the same GPRS capabilities as the Apple phones then that other mobile phone would be equally subject to the GPNE patents; is that correct? MR. SUSSER: Objection. A. Yes, it is a regular phone. . . . . Q. So a basic phone that has the same LTE capabilities as an Apple phone would in your opinion infringe the GPNE patents just the same? MR. SUSSER: Objection. A. Yes."); Ex. G (Birkett Dep. Tr. at 24:12-16) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. H (Birkett Report at 30-32, 44-48) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)[1]

Yet, when asked, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Dansky responded, ▮▮▮ (Ex. D, Dansky Dep. Tr. at 87:11-15.) Indeed, when asked more broadly, ▮▮▮

---

[1] GPNE served on January 4, 2014 the Expert Report of Dr. Neil Birkett and the Expert Report of Dr. Esmael H. Dinan in support of its infringement theory.

1  ▮

2  ▮ he replied, ▮

3  ▮ (*Id.* at 94:2-7.) One reason for his belief that ▮

4  ▮

5  ▮

6  ▮ ▮

7    ▮

8    ▮

9  ▮ ▮

10

11 (*Id.* at 94:20-95:1.) Under this view, the smallest saleable unit could not be a chip, because Apple

12 does not sell chips. (*See id.*)

13    The end result was that Mr. Dansky did not determine a royalty in the traditional manner

14 by identifying the proper base and applying a rate to that base.

15 ▮ ▮

16

17 ▮ ▮

18 (*Id.* at 39:12-15.)

   **B.    Mr. Dansky's "Black-Box" Opinion**

19
    Instead, Mr. Dansky used a non-transparent approach. First, he offered his view of ▮
20
   ▮
21
   ▮ (Ex. A, Dansky Report at 80-81.) Mr. Dansky concluded that ▮
22
   ▮
23
   ▮
24
   ▮ (Ex. A, Dansky Report at 82-83.)
25
    This calculation contained a critical error: Mr. Dansky failed to account for the fact that
26
   ▮
27
   ▮
28

1    At his deposition, Mr. Dansky admitted that ████████████████
2 ████████████████████████
3   ████████████████████████████████████████
4   ████████████████████████████
5 ████████████████████
6   ████████████████████████████████████
7 (Ex. D, Dansky Dep. Tr. at 112:9-16 (emphasis added).)  Mr. Dansky did not even try to ██
8 ████████████████████████████████████████████████ (*Id.* ████
9 ████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████
11 ████████████████████████████); *see also* Ex. A, Dansky
12 Report at 82, 87-90.)

13    Moreover, for both the iPad and the iPhone, Mr. Dansky provided no transparent,
14 mathematical reasoning or even logic as to how he went from ██ to his ██████ royalty:



Ex. D (Dansky Dep. Tr. at 39:16-40:14 (emphasis added).)

## IV. LEGAL STANDARDS

An expert may only provide testimony that is (1) based upon sufficient data, (2) is a product of reliable principles and methods, and (3) where the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008). Under *Daubert v. Merrell Dow Pharms., Inc.*, this requires consideration of (1) whether theory or technique can be and has been tested, (2) whether theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether it is generally accepted in the scientific community. 509 U.S. 579, 593-94 (1993). The burden is on the party submitting the expert opinion evidence to demonstrate compliance with these requirements to prove admissibility, *see Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996), and failure to meet any one of these requirements under Rule 702 justifies exclusion. The Court may exclude opinion evidence that rests only the *ipse dixit* of an expert. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 157 (1999); *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## V. ARGUMENT

Mr. Dansky's opinions fail to meet the basic *Daubert* standards for two independent reasons: (1) he failed to properly apply the Federal Circuit's precedent requiring identification of a proper royalty base corresponding as closely as possible to the accused functionality (also known as the "smallest patent-practicing unit" rule), and (2) he instead offered a "black-box" opinion that rests only on his purported experience—and fails to provide any transparent, reasoned explanation of how he derived the royalty that he advocates.

### A. Mr. Dansky Did Not Follow Federal Circuit Precedent Requiring Identification of a Proper Royalty Base—Based on His Mistaken View of the "Smallest Saleable Unit" Rule

The Federal Circuit has repeatedly instructed that a proper damages analysis must identify the proper royalty base. *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 66-70 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315-21 (Fed. Cir. 2011); *Lucent*

7   APPLE'S MOTION TO EXCLUDE
TESTIMONY OF MR. DANSKY
Case No. 5:12-CV-02885-LHK

1  *Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336-39 (Fed. Cir. 2009).  One starting point for
2  such an analysis is the "smallest saleable component," the smallest component that substantially
3  embodies the alleged invention.  *LaserDynamics*, 694 F.3d at 67 ("[I]t is generally required that
4  royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing
5  unit.'").  Even the smallest saleable component can be an overinclusive royalty base, because it
6  may include additional, nonaccused features and functionality.  *Lucent,* 580 F.3d 1337-38 (finding
7  a violation of the entire market value rule when the patent holder failed to apportion damages to
8  the date-picker feature of Outlook, even though Outlook was the smallest patent-practicing unit)
9  But, it is a useful guidepost for arriving at a proper royalty base.

10         Here, despite acknowledging that GPNE's patents covered—even under GPNE's own
11 theories—only a fraction of certain cellular standards, Mr. Dansky made no effort to identify a
12 patent-specific royalty base.  One reason for this failure is his mistaken belief that the "smallest
13 saleable patent-practicing unit" rule applies only to the products sold by a defendant.  Under this
14 view, the smallest-saleable-unit inquiry in this case turns entirely on which products Apple itself
15 offers for sale—*e.g.*, the iPhone and iPad—thus excluding baseband chips that enable cellular
16 functionality.

17         This is wrong as a matter of law.  As explained by the Federal Circuit in *LaserDynamics*:
18  > Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a ***considerable risk that the patentee will be improperly compensated for non-infringing components of that product***.  ***Thus, it is generally required that royalties be based not on the entire product, but instead on the "smallest saleable patent-practicing unit."***

21 694 F.3d at 67 (emphasis added).  In *LaserDynamics*, the defendant sold laptop computers, not the
22 optical disk drives containing the accused functionality, yet the Federal Circuit ruled that it would
23 be improper to use the price of the entire laptop as the royalty base.  *See id.* at 58, 68.  The Federal
24 Circuit never suggested, as Mr. Dansky avows is the law, that the royalty-base inquiry is limited to
25 the set of products actually sold by the defendant.  *See id.*  To the contrary, the Federal Circuit
26 rejected the plaintiff's arguments that focusing on the component parts (the optical disk drives) as
27 the royalty base would be impractical.  *See id.* at 70 ("LaserDynamics in fact did obtain and use
28

1  alternative pricing information from Sony-made ODDs [optical disk drives] in the second trial.  As
2  explained below, this Sony-made ODD pricing information was not per se unreliable, as the jury
3  was entitled to weigh it against QCI's competing views of appropriate ODD pricing.").

4  So too here:  GPNE had access to component pricing information—*e.g.*, ▮
5  ▮—yet Mr. Dansky claims that he did not conduct this analysis because Apple
6  did not produce this information.   But that claim makes no sense because Apple did produce this
7  and other information about components—and indeed Mr. Dansky even cited to such information
8  in his list of documents considered.  (*Compare* Ex. D, Dansky Dep. Tr. at 173:25-174:17 ▮
9  ▮
10 ▮
11 ▮
12 ▮
13 *with* Ex. B, Exhibit 2 of Dansky's Report (listing in his documents considered the ▮
14 ▮ and the BOMs produced
15 by Apple at APP-GPNE0634837-0692215 and APP-GPNE0693106-APP-GPNE0693342).)[2]

16 The error in Mr. Dansky's approach is further confirmed by *In re Innovatio Ventures, LLC*
17 *Patent Litigation*, a recent royalty rate-setting decision in the specific context of wireless
18 communications (Wi-Fi).  In that case, the United States District Court for the Northern District of
19 Illinois rejected the argument that the royalty base could be the end device, and instead concluded
20 that it should be the profit margin on the relevant processing chip (in that case, Wi-Fi processor
21 chips).  The court stated: "the appropriate royalty base in this case is the Wi-Fi chip, the small
22 module that provides Wi-Fi capability to electronic devices in which it is inserted…" *In re*
23 *Innovatio Ventures, LLC Patent Litig.*, N.D. Ill. Case No. 1:11-cv-09308, 2013 WL 5593609, at *8

24
25

---

26 [2] Apple also identified the produced BOMs in its May 28, 2013 and June 14, 2013 responses to
27 GPNE's Interrogatory No. 12 and responded to GPNE's requests for admissions identifying the
   baseband processor chip in the accused devices, none of which are listed in Mr. Dansky's
28 documents considered.

1  (N.D. Ill. Oct. 3, 2013).  Again, the district court did not limit its royalty-base inquiry to the set of
2  products sold by the particular defendants in the case.  *See id.*[3]
3       The need to identify the proper component-level royalty base was particularly important
4  given that Mr. Dansky conceded that the accused products contain features unrelated to GPNE's
5  alleged invention.[4]  He also concedes that the accused features do not drive the demand for the
6  products—which would be necessary for reliance on the entire device as the royalty base.[5]  Again,
7  Mr. Dansky's failure to separate allegedly patented from unpatented components is precisely the
8  type of opinion that district courts have ruled inadmissible for failure to comply with
9  *LaserDynamics* and other Federal Circuit precedent.  *See, e.g.*, *Network Protection Sciences, LLC*
10 *v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 5402089, at *5-8 (N.D. Cal. Sept. 26, 2013)
11 (excluding expert testimony for failure to comply with guidance of *LaserDynamics* by failing to
12 provide sufficient evidence that the accused features drive demand for the accused products); *AVM*
13 *Techs., LLC v. Intel Corp.*, No. 10-610-RGA, 2013 WL 126233, at *2-3 (D. Del. Jan. 4, 2013)
14 (excluding expert opinion that used a royalty base greater than the patented feature, and thus
15 contravened Federal Circuit precedent).

---

[3] Further, and in the context of another standards related case, Judge Robart deemed Mr. Dansky's opinion improper for trying to capture the value of the whole H.264 standard, as opposed to properly apportioning the value of the standard that related to the patented technology.  *See Microsoft Corp v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217, at *44 (W.D. Wash. Apr. 25, 2013).

[4] Ex. D, Dansky Dep. Tr. ▮

▮.  Ex. D, Dansky Dep. Tr. at ▮

▮.  Mr. Dansky admits ▮ (*Id.*)  Further, Mr. Dansky's argument that GPNE's patents are ▮ does not show that the accused features drives demand for Apple products.  *See LaserDynamics*, 694 F.3d at 68 ("[P]roof that consumers would choose the [product] having the [allegedly patented] functionality says nothing as to whether the presence of that functionality ***is what motivates consumers to buy [that product] in the first place***.") (emphasis added).

Whatever Mr. Dansky's reasons—whether a basic misunderstanding of the law, or a conscious decision to avoid focusing on the low-cost components that actually supply the accused functionality—his failure to identify and rely on a proper component-level royalty base means his royalty opinion does not meet the standards set by controlling Federal Circuit precedent. It should be excluded on that basis alone.

### B. Mr. Dansky's "Black-Box" Royalty Opinion Relies on Impermissible *Ipse Dixit* Reasoning

There is another independent ground for excluding Mr. Dansky's opinions: his ▮▮▮ royalty is not supported by transparent, economically reasonable analysis, but rather by his "say so" as an alleged expert—which is not enough for admissibility at trial. *See e.g.*, *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1158 (N.D. Cal. 2003) (excluding testimony of damages expert when picking a "million dollar number" was "classic ipse dixit" because "the analytical gap between the data used and the opinion offered [wa]s far too great to permit the opinion to be introduced"); *see also LaserDynamics*, 694 F.3d at 69 (excluding testimony when valuation contained "no credible economic analysis" and where numbers were merely "plucked out of thin air based on vague qualitative notions"); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1032 (Fed. Cir. 1996) (reversing damages award based on solely on plaintiff's expert's "bald speculation"); *Reinsdorf v. Skechers, U.S.A.*, 922 F. Supp. 2d 866, 879-80 (C.D. Cal. 2013) (excluding damages expert testimony that lacked "specific data or discernible methodology" to illustrate the relationship between infringing conduct and specific income).

At his deposition, Mr. Dansky repeatedly conceded that ▮▮▮



(Ex. D, Dansky Dep. Tr. at 41:13-18 (emphasis added); *see generally id.* at 40:10-41:18.)

1   His only math related to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as discussed

3 in Section III-B above.  That mistake might be grounds for cross-examination, but his complete

4 failure to offer *any* mathematical explanation for how he went from ▮▮ to his ▮▮▮ royalty is

5 grounds for exclusion.

6   Mr. Dansky's black-box royalty opinion cannot be saved by his listing certain qualitative

7 reasons for why his ▮▮▮▮▮ rate is reasonable (Ex. A, Dansky Report at 87-90), because he has

8 not provided any specific, quantitative link between these factors and his royalty.  *See Whitserve,*

9 *LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26, 29-31 (Fed. Cir. 2012) (finding no substantial

10 evidence supporting a damages award when expert stated certain factors support higher reasonable

11 royalty rate, but offered no explanation of *how much* the rate should have been increased).

12 Instead, his report includes subjective, unsupported assertions, *e.g.*:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. A, Dansky Report at 76.)
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. A, Dansky Report at 89.)
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A, Dansky Report at 84.)

None of these statements—all made without citations to the record—provides a testable opinion that could be meaningfully analyzed to determine whether it actually supports Mr. Dansky's royalty.  *See, e.g., Lawrence v. Raymond Corp.*, No. 3:09-cv-1067, 2011 WL 3418324, *7-8 (N.D. Ohio Aug. 4, 2011) (granting motion to exclude expert's testimony upon observing that "[a]n expert is not a black box into which data is fed at one end and from which an answer emerges at the other" and that "[t]he Court must be able to see the mechanisms in order to determine if they are reliable and helpful"); *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 888 (E.D.

1  Wis. 2010) (declining to accept expert's word for a specific proposition when "analysis is in a
2  black box out of the view of the court").
3     In a similar vein, Mr. Dansky states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. A, Dansky Report at 90.)  But again, he offers no
7  citation or evidence supporting any "apportionment" of value between patented and non-patented
8  features of the accused products.  *See Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp.
9  2d 1022, 1030 (D. Kan. 2006) ("Plaintiff's vague statements that it took into account 'various
10 analyses' and 'numerous and various documents' are conclusory, evasive and anything but
11 expert.").  Instead, Mr. Dansky ignores the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. C (Dansky Report at Exhibit 3); Ex. I
14 (Attachment 5 of Meyer Report; *see also* Ex. D, Dansky Dep. Tr. at 154:11-155:6 (testifying that
15 he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).[6]
17     "To be admissible, expert testimony opining on a reasonable royalty rate must carefully tie
18 proof of damages to the claimed invention's footprint in the market place."  *Uniloc*, 632 F.3d at
19 1317 (internal quotation marks omitted).  Mr. Dansky's black-box opinions do not meet the
20 requisite standard of care and transparency.  *See Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d
21 549, 568–69 (D.C. Cir. 1993) (reversing decision to admit expert testimony that "was based solely
22 on guesswork, speculation, and conjecture" and where the trial court perceived that "the decision
23 to receive expert testimony was simply tossed off to the jury under a 'let it all in' philosophy");
24 *Sunlight Saunas*, 427 F. Supp. 2d at 1030 (striking the testimony of the plaintiff's damages expert
25 where "[n]othing in the record suggest[ed] that a reasonable economist would employ such a

---

[6] Mr. Dansky submitted his expert report on January 4, 2014, prior to the production of ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These ▮▮▮▮▮▮▮▮▮ were produced before Mr. Dansky's deposition,
which was taken by counsel for Apple on February 21, 2014.

13     APPLE'S MOTION TO EXCLUDE
TESTIMONY OF MR. DANSKY
Case No. 5:12-CV-02885-LHK

methodology to forecast sales, or assume that such a methodology, when conducted by others, is accurate").

## VI. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court exclude the testimony and damages opinion of Michael J. Dansky.

Dated: February 27, 2014                FISH & RICHARDSON P.C.

                                        By:  /s/ Benjamin C. Elacqua
                                             Benjamin C. Elacqua

                                        Attorneys for Defendant
                                        APPLE INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 27, 2014, all counsel of record who are deemed to have consented to electronic service are being served with a copy of **APPLE INC.'S** *DAUBERT* **MOTION TO EXCLUDE TESTIMONY OF MICHAEL J. DANSKY** via the Court's CM/ECF system.

By: */s/ Benjamin C. Elacqua*
Benjamin C. Elacqua