UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| GPNE CORP., | ) | Case No. 5:12-cv-2885-LHK (PSG) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING-IN-PART** |
| v. | ) | **APPLE'S MOTION FOR A** |
| | ) | **PROTECTIVE ORDER** |
| APPLE INC., | ) | |
| | ) | **(Re: Docket No. 124)** |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff GPNE Corporation hopes to retain two experts in this matter, Ghobad Heidari and Kamran Etemad, to whom Defendant Apple Inc. objects. Apple's complaints are two-fold. First, it argues that if Heidari and Etemad are given access to Apple's confidential information (as would be required for them to act as experts), Apple would suffer extreme prejudice in the marketplace as both Heidari and Etemad are active in patenting mobile technology. Second, Apple argues that the patent prosecution bar within the protective order prohibits Heidari and Etemad from being granted access to its proprietary information, as both men have patent applications now pending before the

1

Case No. 5:12-cv-2885-LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR A PROTECTIVE ORDER**

Patent and Trademark Office.  Having considered the papers and the arguments of counsel, the court GRANTS Apple's motion, but only IN PART.

The parties are familiar with the facts of this case, so the court will not belabor them here. Simply put, this is a patent infringement and invalidity case, and like all patent cases, the parties plan to bring in experts to testify about how the inventions at issue function.  In the ordinary course of litigation, a party is owed some degree of deference "in retaining and preparing an expert with the relevant industry experience and availability."[1]  However, in particular circumstances, that interest must be balanced against an increased risk of improper use or disclosure borne by the producing party.  This is one such circumstance.

The two experts proposed by GPNE are both active and knowledgeable players in their fields. Heidari is the president of a business which provides "portfolio/landscape evaluation, claim charts, reverse engineering, expert witness [testimony], and due diligence" in patent litigation.  His work spans mobile device, computer, and software patents, and he has previously worked for several companies competing with Apple in those spaces.  Similarly, Etemad markets his "extensive knowledge and first-hand experience in wireless communication networks deployments, systems and standards and IP development and Patent Analysis."  He also is an employee of the Federal Communications Commission, which is responsible for establishing public policy to regulate companies including Apple.  Apple is concerned that these experts' "day jobs" create an above average risk that their information will be inadvertently misused, as the experts cannot simply cordon off the confidential information that they will review and erase it from their memory once this case is over.

---

[1] *Apple Inc. v. Samsung Elecs. Co.*, Case No. 5:11-01846-LHK (PSG), 2011 U.S. Dist. LEXIS 147515, at *2 (N.D. Cal. Dec. 22, 2011).

2

Case No. 5:12-cv-2885-LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR A PROTECTIVE ORDER**

As this district has seen more than its fair share of patent disputes, it should come as no surprise that others serving this court have considered this issue. In particular, Judge Corley's opinion in *Symantec Corp v. Acronis Corp.*[2] provides a persuasive analysis of the issue. In that case, the defendant objected to disclosure of its confidential information to the plaintiff's proposed expert because "he actively consult[ed] on product development" in the relevant field and because he had "ongoing relationships" with the defendant's competitors.[3] Judge Corley's review of the case law led her to the conclusion that the proposed expert's ongoing work in the field created a substantial risk of misuse such that he should only be allowed access to the confidential information if he possessed "unique expertise."[4] Because such a showing had not been made, she refused to allow the proposed expert access to the defendant's confidential information. She distinguished her decision from the situation facing Judge Whyte in *Advance SemiConductor Materials America v. Applied Materials*[5] in two ways. First, the expert in *Advance SemiConductor Materials* had not been involved in consulting within the field at issue for several years, and second, in *Advance SemiConductor Materials*, there had been a particularized showing that the expert had unique qualifications that other experts could not provide.

Turning to the motion at hand, the court first considers the risk to Apple if Heidari were granted access to its confidential information. Heidari presents precisely the same risks as the expert in *Symantec*. He is an active consultant in the field at issue. In the very recent past, he has worked for several of Apple's competitors, and there has been no representation or agreement that

---

[2] Case No. 11-5310-EMC (JSC), 2012 WL 3582974 (N.D. Cal. Aug., 20 2012).

[3] *See id.* at *2.

[4] *Id.*

[5] Case No. 95-20169-JW, 1996 WL 908654 (N.D. Cal. Oct. 28, 1996).

Case No. 5:12-cv-2885-LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR A PROTECTIVE ORDER**

he will not do so again in the very near future.  Apple points out several ways in which the information to which he would be exposed as an expert in this case could influence his work as a consultant on patent licensing, reverse engineering, and  portfolio management, even if he were to make his best efforts to cabin the information off in his mind, and the court finds these concerns persuasive.  Furthermore, despite the concerns raised by Apple, GPNE has not identified any unique qualifications or knowledge that make Heidari better suited than any other expert to serve. Weighing GPNE's lack of specific need against the discrete concerns raised by Apple, the court reaches concludes that the risk outweighs the benefit and GRANTS Apple's motion for a protective order as to Heidari.

Apple's arguments are less discrete and therefore less persuasive as to the danger posed by Etemad's "day job" at the FCC.  The concerns raised by Apple stem from the fact that the FCC has the power to request information from Apple and decide whether its products are in compliance with existing legal standards.  It is unclear to the court- and Apple has not clearly identified- any way in which the information to which Etemad would be privy as an expert in this matter would be harmful to Apple if disclosed to a regulatory agency.  Apple's concerns are therefore not sufficiently particularized to outweigh GPNE's interest in selecting its own expert.

The patent prosecution bar in the protective order in this case provides Apple with similarly little relief.  The language of the order requires that the individual not participate in the drafting, amending, advising, or maintenance of a patent application before the PTO after they are granted access to "attorney's eyes only" information under the protective order.  Etemad has indicated that he is willing to forego any such involvement with the applications that he has pending, and particularly because many of the patents involved appear to be assigned to other entities, the court has no reason to discredit that representation.   Finally, as GPNE argues in their papers, Etemad

4

Case No. 5:12-cv-2885-LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR A PROTECTIVE ORDER**

would only violate his duty to the PTO under Rule 1.56 if he were exposed to public information that was material to the patentability of his claims.  There is-or should be- no greater risk of Etemad encountering such information under the "confidential- attorney's eyes only" designation than anywhere else.   The patent prosecution bar therefore does not stand as a barrier to GPNE's retention of Etemad as an expert in this matter.

In short, while Heidari's ongoing work with Apple's competitors presents a sufficient risk of inadvertent misuse or disclosure of Apple's confidential information to justify denying GPNE their first choice expert in this matter, Etemad's work in regulating the mobile industry does not. Apple cannot use the patent prosecution bar as an obstacle when Etemad is willing and able to forego participation in the patent prosecution process, and the only "confidential" information that he may be required to disclose to the PTO is that which should not have been designated "confidential" in the first place.  Apple's motion for a protective order therefore is GRANTED as to Heidari, but DENIED as to Etemad.  This order shall apply with equal force to Pantech Co., Ltd., and Pantech Wireless, Inc.[6]

**IT IS SO ORDERED.**

Dated: March 13, 2014

PAUL S. GREWAL
United States Magistrate Judge

---

[6] The court notes that Pantech did not file a motion within the timeline set forth in the Protective Order.  However, in light of the sensitive information at issue, the court will accept the joinder and extend to Pantech the protections set forth in this order.

5
Case No. 5:12-cv-2885-LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR A PROTECTIVE ORDER**