| | |
|---|---|
| FISH & RICHARDSON P.C. | WILMER CUTLER PICKERING HALE AND DORR LLP |
| Katherine K. Lutton(CSB No. 194971) lutton@fr.com 500 Arguello Street, Suite 500 Redwood City, CA 94063 Tel: (650) 839-5070 Fax: (650) 839-5071 | Joseph J. Mueller (*pro hac vice*) joseph.mueller@wilmerhale.com 60 State Street Boston, MA 02109 Tel: (617) 526-6000 Fax: (617) 526-5000 |
| Ruffin B. Cordell (*pro hac vice*) cordell@fr.com 1425 K Street, NW, Suite 1100 Washington, DC 20005 Tel: (207) 783-5070 Fax: (207) 783-2331 | Matthew Hawkinson (CSB No.248216) matthew.hawkinson@wilmerhale.com 350 South Grand Avenue, Suite 2100 Los Angeles, California 90071 Tel: (213) 443-5300 Fax: (213) 443-5400 |
| Christopher O. Green (*pro hac vice*) cgreen@fr.com Aamir A. Kazi (*pro hac vice*) kazi@fr.com Jacqueline Tio (*pro hac vice*) tio@fr.com 1180 Peachtree Street, 21st Floor Atlanta, GA 30309 Tel: (404) 892-5005 Fax: (404) 892-5002 | Mark D. Selwyn (CSB No. 244180) mark.selwyn@wilmerhale.com 950 Page Mill Road Palo Alto, CA 94304 Tel: (650) 858-6000 Fax: (650) 858-6100  Attorneys for Defendant APPLE INC. |
| Benjamin C. Elacqua (*pro hac vice*) elacqua@fr.com 1221 McKinney Street, Suite 2800 Houston, TX 77010 Tel: (713) 654-5300 Fax: (713) 652-0109 | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# (SAN JOSE DIVISION)

| | |
|---|---|
| GPNE Corp., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC. <br><br> Defendant. | Case No. 5:12-cv-02885-LHK <br><br> **DEFENDANT APPLE INC.'S OPPOSITION TO GPNE'S MOTIONS *IN LIMINE* NOS. 1-5** <br><br> Date: June 26, 2014 <br> Time: 12:00 p.m. <br> Place: Courtroom 8, 4th Floor <br> Judge: Hon. Lucy H. Koh |

## I. GPNE's Motion *in Limine* No. 1 Should be Denied Because It Seeks to Exclude Probative Evidence Critical to Apple's Damages Case

### A. Response to Derogatory, Disparaging and/or Pejorative References to GPNE

Apple has no intention of introducing derogatory or disparaging terms about anyone, including GPNE, and agrees not to reference the following terms from GPNE's list: "patent troll," "pirate," "bounty hunter," "privateer," "bandit," "paper patent," "stick up," "shakedown," "playing the lawsuit lottery," "corporate shell game," and/or "corporate shell."

However, GPNE overreaches by seeking to preclude use of fair and accurate terms such as "patent assertion entity," "a company that doesn't make anything," and "a company that doesn't sell anything." GPNE's status as a non-practicing entity, and whether or not GPNE or its predecessors successfully commercialized the claimed technology, is highly relevant to alleged damages, secondary considerations of non-obviousness (e.g., lack of commercial success), and as overall background as to what the business of GPNE is (or is not).

A patentee's inability to commercialize the claimed technology is probative to *Georgia-Pacific* Factors 5, 6, and 10. GPNE's status as a non-practicing entity demonstrates that it and Apple are not "competitors in the same territory in the same line of business" (GP 5) and that GPNE's invention is not a "generator of sales of [GPNE's] non-patented items" (GP 6). Other courts have recognized this and denied motions *in limine* "to exclude references to the lack of products marketed by [company] embodying its [patent]".[1] Moreover, as GPNE readily admits in

---

[1] *See NXP B.V. v. Blackberry LTD. et al.,* C.A. No. 6:12-cv-00498-YK [Dkt. No. 419] at 16-17 (attached hereto as Exhibit 1) (M.D. Fl. Mar. 25, 2014) (denying attempt to exclude evidence of party's decision to not develop a product); *HTC Corp. v. Tech. Properties Ltd.*, Case No. 5:08-cv-00882-PSG, 2013 U.S. Dist. LEXIS 129263, *11 (N.D. Cal. Sep. 6, 2013) (permitting HTC to refer to plaintiff as a "non-practicing entity" and a "patent assertion entity," and neutral language to that effect); *Personalized User Model, L.L.P. v. Google, Inc.,* C.A. No. 09-525-LPS [Dkt. No. 606], at 6-8 (attached hereto as Exhibit 2) (D. Del. Feb. 27, 2014) ("Evidence showing that [patentees] were not successful at the times they owned the patents-in-suit is probative of [alleged infringer's] contention that its own commercial success is in no way due to its alleged practice of the patented technology"). Indeed, GPNE itself relies upon the alleged commercial success of others in defending the alleged validity of its patents, and its request to exclude facts that it does not make or sell a product is contrary to this representation. *Compare* Ex. 3 (GPNE's Resp. to Interrogatory No. 11) (claiming objective indicia of non-obviousness for its patents include "commercial success" and "adoption and acceptance in the industry"); *with In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995) (addressing patentee's claim for commercial success of its patents through licensing of its invention); *Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 878 (Fed. Cir. 1993) (holding that a lack of commercial success may be probative evidence to rebut

its brief, courts have recognized that terms such as "non-practicing entity" are neutral terms and may be utilized if accurate.[2]

### B. Response to GPNE's Other Prior or Currently Pending Litigations[3]

GPNE's licenses are relevant to this case, and GPNE's licensing practices are equally relevant because they put additional context into how GPNE negotiates licenses, providing the jury with evidence of GPNE's views about its patents in the market (e.g., potential targets as well as value). Despite the relevance, GPNE seeks exclusion of (1) past litigation settlements that are not contemporaneous with the hypothetical negotiation; and (2) GPNE's licensing activities relating to alleged infringement by GPRS products. Neither should be excluded.

The Court has already rejected GPNE's request to exclude its past litigation settlements because "GPNE's licenses are at the very least probative of the royalty to which Apple and GPNE would have agreed in a hypothetical negotiation at the time of first infringement." Dkt. No. 242, at 16-17. Therefore, GPNE's motion relating to GPNE license agreements should be denied.

GPNE's motion relating to other licensing activities should also be denied because, as GPNE concedes in its Motion, the licensing letters "address alleged infringement of a patent-in-suit, and/or relate to infringement by GPRS products . . . ." Dkt. No. 276 at 2. The substance of the *known* licensing activities is outlined in Apple's Motion to Compel (Dkt. No. 297), particularly the undisputed facts which establish that GPNE has ████████████████████████

---

claims of commercial success); *Rambus Inc. v. Hynix Semiconductor Inc.,* 254 F.R.D. 597, 605 (N.D. Cal. 2008) (holding licensing evidence relevant to claim that invention is not obvious, where "proof beyond the mere existence of a license" is required).
[2] *See* Dkt. No. 276 (citing *HTC Corp. v. Tech. Properties Ltd., Case HTC Corp. v. Tech. Properties Ltd.*, Case No. 5:08-cv-00882-PSG, 2013 U.S. Dist. LEXIS 129263, *11 (N.D. Cal. Sep. 6, 2013) (permitting HTC to refer to plaintiff as a "non-practicing entity" and a "patent assertion entity," and neutral language to that effect); *Rambus Inc. v. Hynix Semiconductor Inc.*, Nos. C-05-334, C-05-2298, C-06-244, 2008 U.S. Dist. LEXIS 106481, *5 (N.D. Cal. Dec. 29, 2008) (limiting exclusion to the terms "patent troll" and "submarine patent")). The cases GPNE relies upon supports Apple's position here, that Apple may not use the term "patent troll," but may use neutral terms such as "non-practicing entity." *See also DNT, LLC v. Sprint Spectrum, LP*, No. 3:09-cv-21, 2010 WL 582164, *4-5 (E.D. Va. Feb. 12, 2010) (denying motion *in limine* to exclude use of terms "shell company" or "non-practicing entity" because these are neutral terms).
[3] Apple agrees not to reference other GPNE litigations, although some reference may be necessary as GPNE points out in order for Apple to "contextualize finalized settlement/license agreements referred to in the damages portion of the trial." Dkt. No. 276, at 1.

| | |
|---|---|
| 1 | ███████████████████████████████████████████████ |
| 2 | ███████████████████████████████████████████████ |
| 3 | ████████████████████████████████████ *see also* Ex. 6 (Edwin Wong |
| 4 | Oct. 24, 2013 Dep. Tr. at 150:6-18) (testifying ████████████████████ |
| 5 | ████████████████████████████████████████████████). More |
| 6 | recently, and as outlined in Apple's Motion to Compel [Dkt No. 297], publicly available |
| 7 | information shows the existence of letters GPNE has withheld from discovery. Further, according |
| 8 | to testimony from GPNE's licensing agent Todd Schmidt, these letters █████████████ |
| 9 | █████████████████████████████████ Ex. 7 (Schmidt Dep. Tr.) |
| 10 | at 79:25-80:22; *see also id.* at 59:13-15 (████████████████████████████. |
| 11 | The fact that GPNE is actively trying to license its patents—including the patents-in-suit— |
| 12 | on the same accused technology is relevant to the overall background of the dispute and at a |
| 13 | minimum probative of GPNE's business as compared to Apple's business. *See Georgia-Pacific* |
| 14 | *Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing as relevant to a |
| 15 | reasonable royalty determination "5. The commercial relationship between the licensor and |
| 16 | licensee, such as, whether they are competitors in the same territory in the same line of business"). |
| 17 | Apple should be allowed to show the jury that GPNE has offered to license the same patents-in- |
| 18 | suit on the same accused technology, including offers to license ████████████████ |
| 19 | █████████████████████████████. Such evidence provides the jury the full |
| 20 | story and rebuts GPNE's statements about the value and importance of its patents, for example, |
| 21 | where GPNE claims that its patents are essential to LTE systems, when GPNE is telling everyone |
| 22 | else ████████████████. |
| 23 | GPNE's primary arguments to exclude the licensing evidence are the following: (1) |
| 24 | "[t]hese cases are generally seeking damages far below the amount sought here for many reasons," |
| 25 | and (2) "Apple will attempt to cast unfavorable light on GPNE's recent licensing history and/or |
| 26 | licensing strategies . . . where such characterizations have no relevance to other issues in the case." |
| 27 | Dkt. No. 276 at 2. Neither argument has merit. |
| 28 | |

*First*, the fact that GPNE is ███████████████████████████████ ████████ is relevant to rebut GPNE's damages requests in this case. GPNE argues that its patents are highly important to LTE; ████████████████████████████████ ████ *See, e.g.*, *SanDisk Corp. v. Round Rock Research LLC*, No., 2014 WL 691565, at *2 (N.D. Cal. Feb. 21, 2014) (holding that documents that "involve IPValue's assessment of SanDisk's business and potential royalty value," such as overviews of Round Rock's patent portfolio and analyses of potential licensing value and licensing targets, is relevant to the reasonable royalty issue).

*Second*, the fact that Apple will try and use these ████████████████████ ████████████████ should not surprise GPNE and is not a basis for exclusion. At bottom, GPNE's objection here is that they do not like evidence that undermines GPNE's damages case, but that is the definition of relevant and probative evidence. GPNE must deal with any unfavorable evidence with its own proofs or cross examination, not by exclusion.

*Third*, excluding such evidence would allow GPNE to try its case through an alter-ego personality about its true business. As the Court noted, "GPNE's business model is based entirely on litigation and licensing." Dkt. No. 243, at 17. The jury should be allowed to hear evidence about GPNE's business model and the way it goes about trying to license the patents in suit. Such a broad request to exclude is an improper use of a motion *in limine*. *See Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525 PSG (PJWx), 2010 WL 2035800, *1 (C.D. Cal. May 19, 2010) ("In fact, motions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial."); *Carpenter v. Forest Meadows Owners Ass'n*, No. 1:09–cv–01918–JLT, 2011 WL 3207778, *1 (E.D. Cal. July 27, 2011). Simply put, GPNE's business practices relating to its sole business of licensing its patents, including the licensing letters, are necessary for the jury to understand the context of this case as well as necessary for the jury in assessing the credibility of GPNE's damages demand against Apple as compared to other parties who have been offered licenses on the same technology.

## II. GPNE's Motion *in Limine* No. 2 Should be Denied As Improperly Preventing Apple From Challenging the Sufficiency of GPNE's Evidence

GPNE's MIL No. 2 should be denied because it improperly seeks to preclude Apple from challenging the sufficiency of GPNE's evidence of infringement in general and to limit Apple's ability to cross-examine GPNE's expert on infringement issues in particular. At bottom, the motion seeks to prevent Apple from exposing key holes in GPNE's evidence—a subject that is plainly appropriate for trial and cross-examination of an expert.

### A. GPNE Alone Is Responsible for Its Failure to Seek Relevant Evidence from Third Parties

The motivation of this motion cannot be a genuine fear that Apple will "lead the jury to believe that GPNE did not satisfy a legal obligation that GPNE never had." Dkt. 277 at 3. GPNE is instead attempting to shield itself from criticism or consequence of its decision to take not discovery from (1) the entities that GPNE identified in its infringement contentions as making the baseband processors that incorporate the accused GPRS and LTE functionality, or (2) the actual cellular telephone network operators who distribute iPhones and iPads to their subscribers (e.g., AT&T, T-Mobile). Further still, GPNE seeks to shield its infringement expert, Dr. Dinan, from any criticism owing to his failure to consider evidence from those same third parties.

These are all proper subjects of cross-examination. The basis for cross-examination fairly includes Dr. Dinan's selection of materials that he considered and relied upon in forming his opinions, as well as which materials he elected ***not to consider at all***. Once the jury has had opportunity to evaluate Dr. Dinan's opinions in complete context, it is within the jury's province to determine how much (if any) weight it will give those opinions. *See Colton Crane Co.,* 2010 WL 2035800 at *1 ("In fact, motions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial."); *Carpenter,* 2011 WL 3207778 at *1 ("Motions *in limine* that seek exclusion of broad and unspecific categories of evidence, however, are generally disfavored.").

### B. The Magistrate Judge Did Not Make Any Evidentiary Rulings

GPNE attempts to convince this Court that Magistrate Judge Grewal already ruled on this issue via an incomplete and out of context citation to a discovery hearing transcript. Dkt. 277 at 2.

GPNE excerpted a substantial discussion between the court and counsel as to the *source*—not the relevance or weight—from which GPNE could obtain one specific item (i.e., baseband log files) via discovery. A more complete presentation of the exchange is as follows:

> **The Court:** Well, 'cause they have you. You're subject to the jurisdiction of this court. You're in this District. You have the information. So why would they go about -- why would they go down to San Diego, file a motion to compel in the southern district, go to all that trouble?
>
> **[Apple Counsel]:** The answer is I don't have all the same information that Qualcomm has, your Honor. If one wants to know how Qualcomm source code is developed, exactly what happens in all the various files or routines, I don't have that information. I cannot substitute an Apple witness as being the same as a Qualcomm engineer. I won't say that Apple engineers know nothing about Qualcomm base band chips because obviously we would have to integrate them into our phones.
>
> **The Court:** It's not the same as designing --
>
> **[Apple Counsel]:** That's correct.
>
> **The Court:** Right.

(Dec. 17, 2013 Hearing Tr. at 54). That is, Magistrate Judge Grewal and Apple counsel were purely addressing a question of discovery procedure concerning third party Qualcomm. Nothing in that record constitutes a ruling on the sufficiency or relevance of any third party evidence. GPNE's MIL is therefore improper and should be denied.

**III. GPNE's Motion *in Limine* No. 3 Should Be Denied Because Apple's Expert Mr. Meyer Has Consistently Disclosed and Testified to the Facts in Question**

Mr. Meyer has consistently opined that the number of patent families declared essential to the relevant ETSI standards is substantially higher than 800. GPNE cites nothing to suggest Mr. Meyer has ever varied from this opinion. Both of Mr. Meyer's reports clearly set forth declared essential patent counts derived from industry research and/or the official ETSI IPR Database. Because Mr. Meyer will not offer testimony that will contradict the patent counts in his reports, GPNE's motion should be denied.

**A. Statement of Relevant Facts**

Both Mr. Meyer's initial rebuttal report and his supplemental report state that more than 800 patent families have been declared essential to the relevant standards in this case, and both include actual numbers in excess of 800. *See, e.g.*, Ex. 8, Expert Rebuttal Report of Paul K. Meyer

at ¶ 83; Ex. 9, Expert Supplemental Rebuttal Report of Paul K. Meyer at ¶ 71 (an additional 610 patent families for GSM, 1,080 for UMTS, and 2,342 for LTE). Mr. Meyer also explains that the 800 number is extremely conservative because it does not include additional patents declared essential to the GPRS, EDGE, CDMA, CDMA 2000 and LTE standards or the thousands of patent families that have been declared essential after Fairfield conducted its studies. *See* Ex. 8, Expert Rebuttal Report of Paul K. Meyer at ¶ 83.[4] Mr. Meyer's Supplemental Rebuttal Report reiterates this point. Ex. 9, Expert Supplemental Rebuttal Report of Paul K. Meyer at ¶ 70 (". . . my patent family count of 800 is conservative as it does not include the substantial number of patent families declared essential after the Fairfield studies . . . Nor does my 800 patent family count consider unique patent families declared essential to other standards such as GPRS and EDGE or patents that were not declared essential to the standards (such as the patents-in-suit asserted by GPNE)."). Mr. Meyer repeated the same patent counts when deposed. Ex. 10, Transcript of February 21, 2014 Deposition of Paul Meyer ("Meyer Tr.") at 69:9-11 (at least 2400 patents declared essential to GSM and WCDMA since the Fairfield reports); *see also id.* at 179-180 (". . . that 800 is going to go to probably 2000 and then drive the value down further."); *id.* at 192 (testifying that the 800 number is conservative and the actual number is much larger).

### 1. Mr. Meyer's Opinions Are Not Precluded Under the Doctrine of Judicial Estoppel

Judicial estoppel functions to "prohibit[] parties from deliberately changing positions" in litigation. *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001). Several factors inform whether to apply the doctrine in a particular case, including (1) whether the current testimony is clearly inconsistent with a prior position; (2) whether the prior position was accepted by the court and, (3) whether the party seeking to assert an inconsistent position would gain an unfair advantage or its opponent would face an unfair disadvantage. *Ah Quin v. Cnty. of Kauai Dep't of*

---

[4] *See also* Ex. 8, Rebuttal Report of Paul K. Meyer at ¶ 83 (over 2,000 patent families declared essential to LTE); *id.* at ¶ 86 (over 1,500 U.S. patent families have been declared essential to GSM and UMTS after the dates of the Fairfield studies); *id.* at ¶ 248 and Table 10 (over 3,000 patents listed in Table 10 above does not include all standards supported by the iPhone and iPad, do not include patents more recently declared essential and do not include thousands of other patents related to other features and technologies).

*Transp.*, 733 F.3d 267, 270-71 (9th Cir. 2013). None of these factors is satisfied here, and Mr. Meyer has not changed positions.

*First*, Mr. Meyer has been consistent in his initial report, his supplemental report, and in the testimony given at both of his depositions that the actual number of declared essential patent families is higher than 800, and that 800 is a highly conservative floor. If he were to present an inconsistent view of these facts, he would be subject to withering cross examination given his repeated statements.

*Second*, in allowing Mr. Meyer to testify regarding his Component Royalty Stack Approach, the Court only held that the 800 number was conservative, not that it was concrete or immutable. Indeed, the Court acknowledged the fact that there are many declared essential patents above and beyond the 800 patent family floor.[5]

*Third*, GPNE has failed to identify any unfair advantage to Apple or prejudice to GPNE. GPNE's argument that Mr. Meyer will testify to "undisclosed methodologies or facts" is incorrect because the relevant patent counts are already in Mr. Meyer's reports, along with a detailed description of the Component Royalty Stack Approach. Moreover, GPNE cannot possibly be "severely handicapped" in preparing for a trial when GPNE has deposed Mr. Meyer on both reports, his methodology, and the underlying facts used in that methodology.

### 2. Mr. Meyer's Opinions Are Admissible under Fed. R. Civ. P. 26

Mr. Meyer's reports comply with Rule 26(a)(2)(B). Mr. Meyer's reports contain patent counts for the relevant standards, all of which were obtained using the official ETSI IPR Database or industry reports. GPNE's claim of "litigation ambush" is wholly unfounded. Mr. Meyer has thoroughly explained the operation of the Component Royalty Stack Approach, which this Court already deemed reliable. And as stated above, GPNE has substantial deposition testimony from Mr. Meyer – all of which are consistent on the topic of declared essential patent counts. GPNE has ample time before trial to prepare for the cross examination of Mr. Meyer.

---

[5] *See, e.g.*, Dkt. 243 at 15 ("…there is some support for finding that Mr. Meyer's royalty figure is reliable because the 800 patent families do not account for all patents that have been and will be declared essential…").

### 3. Mr. Meyer's Opinions Are Admissible Under Federal Rules of Evidence 402 And 403

Mr. Meyer's opinions are relevant and not unduly prejudicial and therefore should not be precluded under either Rule 402 or 403. First, the number of declared essential patents is directly relevant to understanding the mindset of the parties at the hypothetical negotiation for the reasons stated in Mr. Meyer's report. *See* Ex. 8, Expert Rebuttal Report of Paul K. Meyer at ¶¶ 72, 246-248. The context provided by the overall number of declared essential patent families has increased in relevance as a result of Mr. Dansky's supplemental report, in which he disputes the 800 patent family number. Second, GPNE's argument—that Mr. Meyer's testimony regarding declared essential patents in excess of the 800 patent family figure will be prejudicial—is misplaced. GPNE claims that such testimony would amount to "permitting an expert to testify about an undisclosed opinion." Dkt. 279 at 5. Quite the opposite, Mr. Meyer has consistently repeated, throughout both of his reports and his two depositions, that there are thousands of additional declared essential patents. This is not an undisclosed opinion. Rather, it has been a recurring theme of Mr. Meyer's opinions.

GPNE's argument that testimony from Mr. Meyer regarding the total number of declared essential patents will mislead and confuse the jury is likewise incorrect. Mr. Meyer will not be able to "disavow the analysis" as GPNE suggests. Dkt. 279 at 5. Mr. Meyer will offer testimony regarding the patent counts disclosed and supported in his initial and rebuttal reports and consistent with his deposition testimony on this topic. GPNE will be free to cross-examine Mr. Meyer on any and all aspects of this testimony.

### IV. GPNE's Motion *in Limine* No. 4 Should be Denied Because It Is a Procedurally Improper Attempt to Adjudicate Facts

GPNE's motion should be denied because it improperly seeks the exclusion of evidence that forms the factual basis of one of Apple's non-infringement arguments. Ignoring that evidence at GPNE's request requires the Court to become a trier of fact – which is a procedurally improper use of a motion *in limine*.

### A. GPNE is Asking the Court to Decide an Issue of Fact Relevant to Non-Infringement

It is an undisputed fact that the Apple devices could not operate in Dr. Dinan's Agilent test environment without an Agilent SIM card. Taken one step further, both Dr. Wilson and Dr. Dinan agree that the Agilent SIM card determines which "network" the Apple devices utilize. Dr. Wilson states as much in her report:

> [A]ccording to Dr. Dinan's report, the Apple GPRS devices were not even capable of communicating in that environment until after they were supplied with an Agilent SIM card and activated in that environment. 

Ex. 11, Expert Report of Dr. Wilson at ¶ 141. GPNE's expert, Dr. Dinan, agrees:

> Q. Thank you. Were you able to use the Apple products that you tested in the Agilent environment before you installed an Agilent SIM card in them?
> A. No, I cannot. I have to insert the Agilent SIM card in the device.
> Q. The Apple products had to be activated for use in that test environment with an Agilent SIM card before they can be used to test or send any GPRS signals?
> A. That is right.

Ex. 12, Dinan Feb. 20, 2014 Dep. Tr. at 61:12-21.

This fact is directly relevant to one of Apple's non-infringement arguments: Apple products can only operate in an Agilent test environment if programmed with an Agilent SIM card. In other words, even if one were to accept that the Agilent test environment is a "paging system that operates independently from a telephone network," which it is not, Apple devices are not able to communicate on that "paging system" without an Agilent SIM card. GPNE and Dr. Dinan may disagree with Apple's conclusion, but Apple and Dr. Wilson should be able to offer testimony on this point in support of Apple's non-infringement argument, and Apple should be able to challenge GPNE and Dr. Dinan via cross-examination.

Thus, GPNE's premise—that the effect of the SIM card is not relevant to any non-infringement argument—is incorrect.

A. **GPNE's MIL Is Procedurally Improper**

GPNE's motion is effectively a request for the Court to disregard Apple's evidence in favor of GPNE's evidence. But a MIL is an inappropriate means to resolve factual disputes or weigh evidence. *Engman v. City of Ontario,* 2011 WL 2463178, at *9 (C.D. Cal. 2011) ("Defendants' motion appears to be a motion for summary judgment in disguise. Motions *in limine* are an inappropriate means to resolve factual disputes or weigh evidence."); *Chopourian v. Catholic Healthcare West,* 2011 WL 6396500, at *12 (E.D. Cal. 2011) ("This motion presents no clear set of undisputed facts. Indeed, the motion is, as plaintiff argues, a substantive motion disguised as a motion *in limine*, which the court 'may ... summarily deny.'"); *Louzon v. Ford Motor Co.,* 718 F.3d 556, 562 (6th Cir. 2013) ("In light of their limited purpose, motions *in limine* should not be used to resolve factual disputes, which remains the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards.") (internal citation omitted); *Samsung Elecs. Co. Ltd. v. Quanta Computer, Inc.,* No. 00-4524-VRW, 2006 WL 2850028, at *6 (N.D. Cal. Oct. 4, 2006) (denying motion *in limine* asking to resolve "disputed meaning of certain evidence and the disputed credibility of witnesses" as this was "a de facto summary judgment issue" that "[t]he court declines to resolve"). To what extent the inclusion of an Agilent SIM card modifies the operation of an Apple device is a question of fact, and GPNE's MIL improperly asks the Court to resolve this factual dispute.

B. **GPNE's Reliance on the Court's MSJ Order Is Misplaced.**

GPNE's motion improperly suggests that the Court's April 9, 2014 Order resolved a factual issue in favor of GPNE. In that order on Apple's motion for summary judgment, the Court identified a ***dispute*** of fact as to the effect of the Agilent SIM card on the operation of the Apple products, when viewing the record evidence in the light most favorable to the non-moving party (GPNE). Dkt. No. 239, at 5-6 ("Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences ***in the light most favorable to the nonmoving party***, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law.") (emphasis added). The Court's ruling in its April 9, 2014 Order was not a factual finding as

to the effect of the SIM card on the Apple products in the Agilent environment, and the Court should not allow GPNE to use motions *in limine* for factual determinations.

### V. GPNE'S Motion *in Limine* No. 5 Should Be Denied Because It Is Based on Misleading Grounds and, in Any Event, Seeks Disproportionate Relief

GPNE bases this motion on an incorrect premise: that Apple will "improperly suggest[] to the jury that GPNE acted in bad faith in obtaining the patents." Dkt. No. 281 at 1. Apple has not done so—GPNE's alleged support for this concern is based on a handful of out-of-context quotes taken from early motion practice over issues that have been long settled. Nor, as GPNE suggests, will Apple argue laches. However, Apple should be free to refer to the chronology of the patents-in-suit, to place the alleged inventions into correct historical context, as required for Apple to present its case. To the extent that GPNE's motion seeks to prevent such contextual evidence and arguments, the motion should be denied.

#### A. GPNE's Alleged Evidence in Support of Its Motion Is Misleading and Irrelevant

GPNE provides four examples that it alleges to support its fear that Apple will "improperly suggest[] to the jury that GPNE acted in bad faith in obtaining the patents":

- "GPNE has continuously prosecuted this patent family for nearly two decades." *See, e.g.*, Dkt. No. 53, p. 9, l. 15;
- ". . . the accused GPRS standard has existed for more than ten years, and some of the accused products have been on the market since the patents issued." *See* Dkt. No. 57, p. 3, ll. 14-15;
- "All three Patents-in-Suit claim priority to, and share a common specification with, a June 1994 application that concerns a stylized, 1994-era paging network . . ." . . [the] "extended prosecution history . . . spans sixteen years and includes many continuation applications." *See* Dkt. No. 72, p. 1, ll. 7-8 & 15-16;
- "GPNE then spent the following nine years filing still further continuation applications (including the applications for the Patents-in-Suit) using hindsight to draft claims that, it contends, cover the wireless protocols that the market actually adopted without GPNE's participation." *See id.*, p. 1, l. 21 – p. 2, l. 2.

Dkt. No. 281 at 1.

GPNE's first citation—in which Apple and other defendants made the observation that "GPNE has continuously prosecuted this patent family for nearly two decades"—is from a motion concerning GPNE's attempt to circumvent the prosecution bar in this case's Protective Order and

have its litigation counsel participate in the reexamination proceedings. *See generally* Dkt. Nos. 50, 53, 55. In the actual full quote, the defendants stated that such participation was unnecessary: "GPNE has continuously prosecuted this patent family for nearly two decades, ***and its prosecution counsel presumably understands the technical subject matter and the pertinent prior art.***" Dkt. No. 53 at 9:15-16 (emphasis added).

GPNE's second excerpt—in which Apple and other defendants observed that "the accused GPRS standard has existed for more than ten years, and some of the accused products have been on the market since the patents issued"—is from defendants' motion to stay this case pending the results of the reexaminations. *See generally* Dkt. Nos. 57 and 60. The actual full passage stated:

> The first of the asserted patents issued in June 2009, the accused GPRS standard has existed for more than ten years, and some of the accused products have been on the market since the patents issued. GPNE did not file suit until July 2011, and when it did, it improperly joined unrelated defendants. ***Because GPNE was previously content to postpone its "day in court" for years, the Court should not risk further waste of judicial and party resources over the next two years in construing claims that will likely be canceled or substantially changed.***

Dkt. No. 57 at 3:13-19 (emphasis added).

Nor do GPNE's third and fourth excerpts have anything to do with laches or "bad faith" in obtaining the patents. Both excerpts come from Apple's and the other defendants' *Markman* brief and concern GPNE's quest to frame its asserted claims as pertaining to generic "data communication devices" rather than the pagers described in the specification. *See generally* Dkt. No. 72 at 1-2. GPNE lost that argument, and the Court properly construed the claimed "node" to be a type of pager, not a generic "data communication device." Any attempt by GPNE to use this motion *in limine* to position itself to reargue a claim construction at trial is improper.

### A.     Apple Should Be Free to Present Dates Relevant to Its Claims and Defenses, Just As GPNE Will Be

Although "bad faith" prosecution and laches will not be trial issues, the timeline of GPNE's patents is relevant to Apple's claims and defenses. For example:

First, the effective filing date of the patents-in-suit (June 24, 1994) is relevant to both Apple's non-infringement and invalidity defenses, which require the evaluation of the knowledge of a person of ordinary skill in the art at the time of the invention. *See, e.g., Ariad Pharm., Inc. v.*

*Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010 (for a patent's written description, "the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date"); *Wang Laboratories, Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993) (obviousness is measured by the knowledge of one of ordinary skill in the art at the time of filing); *Phillips*, 415 F. 3d at 1313 ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."); *see also* Ex. 13, Expert Report of Esmael H. Dinan at 2 ("For the terms that were not construed, I read and understood them as one of ordinary skill in the art would have at the time of the GPNE patents were filed.").

Second, the patents-in-suit were still pending when Apple first began to sell products GPNE contends are infringing. (Ex. 14, Expert Report of Michael J. Dansky at 25-26.) The hypothetical negotiation date is thus defined by the issue dates of the patents-in-suit and is directly relevant to damages. *See, e.g., Wang*, 993 F.2d at 870 (holding that patent issue date was proper hypothetical negotiation date when accused products were already being sold on that date).

Third, GPNE itself has placed on its preliminary exhibit list documents that evaluate other, earlier GPNE patents against the accused GPRS protocol. *See, e.g.*, Ex. 15, GPNE Preliminary Exhibit 302 (GPNE_MPM_006283-GPNE_MPM_006301), listed as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 16, GPNE Preliminary Exhibit 309 (GPNE_MPM_003757-GPNE_MPM_003766), listed as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To the extent GPNE is allowed to elicit testimony about such documents at all, Apple must be able to clearly present to the jury the timeline of GPNE's patent family in relation to that of the accused standards. To do otherwise would be grossly prejudicial to Apple and almost certainly would confuse the jury.

1  For all these reasons, GPNE's Motion *in Limine* No. 5 should be denied.

Dated: June 5, 2014

By: */s/ Christopher O. Green*
Christopher O. Green