1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

   GPNE CORP.,                    )   C-12-02885 LHK
6                                  )
                  PLAINTIFF,      )   SAN JOSE, CALIFORNIA
7                                  )
          VS.                      )   JUNE 26, 2014
8                                  )
   APPLE, INC.,                    )   PAGES 1-93
9                                  )
                  DEFENDANT.       )
10   _____ )

11

12          TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
13          UNITED STATES DISTRICT JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:    NELSON, BUMGARDNER, CASTO
                           BY:  BARRY BUMGARDNER
17                              STEVEN W. HARTSELL
                           3131 WEST 7TH STREET, SUITE 300
18                         FORT WORTH, TEXAS  76107

19                         BURNS & LEVINSON
                           BY:  HOWARD J. SUSSER
20                         125 SUMMER STREET
                           BOSTON, MASSACHUSETTS  02110
21

22          APPEARANCES CONTINUED ON NEXT PAGE

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

APPEARANCES (CONTINUED)


FOR THE PLAINTIFF:     KERR & WAGSTAFFE
                       BY:  PATRICIA L. PEDEN
                       100 SPEAR STREET, 18TH FLOOR
                       SAN FRANCISCO, CALIFORNIA  94105


FOR THE DEFENDANT:     FISH & RICHARDSON
                       BY:  RUFFIN B. CORDELL
                       1425 K STREET, N.W., 11TH FLOOR
                       WASHINGTON, D.C.  20005

                       BY:  CHRISTOPHER O. GREEN
                       1180 PEACHTREE STREET, 21ST FLOOR
                       ATLANTA, GEORGIA  30309

                       BY:  KATHERINE K. LUTTON
                       500 ARGUELLO STREET, SUITE 500
                       REDWOOD CITY, CALIFORNIA  94063


                       WILMER, CUTLER, PICKERING, HALE & DORR
                       BY:  JOSEPH J. MUELLER
                       60 STATE STREET
                       BOSTON, MASSACHUSETTS  02109

                       BY:  MARK D. SELWYN
                       950 PAGE MILL ROAD
                       PALO ALTO, CALIFORNIA  94304

```
1     SAN JOSE, CALIFORNIA                    JUNE 26, 2014

2                    P R O C E E D I N G S

3          (COURT CONVENED AT 12:15 P.M.)

4              THE CLERK:  CALLING CASE NUMBER C-12-02885 LHK, GPNE

5     CORPORATION VERSUS APPLE, INCORPORATED.

6          COUNSEL, STATE YOUR APPEARANCES, PLEASE.

7              MR. SUSSER:  HI, YOUR HONOR.  HOWARD SUSSER FOR GPNE,

8     PLAINTIFF.

9          AND WITH ME ARE PATTY PEDEN --

10             THE COURT:  OKAY.

11             MR. SUSSER:  -- FROM KERR & WAGSTAFFE.

12             THE COURT:  ALL RIGHT.  GIVE ME JUST ONE -- OKAY,

13    PATTY PEDEN, GOT IT.  THANK YOU.

14             MR. SUSSER:  BARRY BUMGARDNER FROM NBC IN TEXAS.

15             THE COURT:  GOT THAT.

16             MR. SUSSER:  AND HIS ASSOCIATE, STEVE HARTSELL, WHO

17    WILL BE ARGUING TODAY.

18             THE COURT:  OKAY.  GOT THAT.  THANK YOU.  WELCOME.

19             MR. CORDELL:  GOOD AFTERNOON, YOUR HONOR.

20    RUFFIN CORDELL FROM FISH & RICHARDSON ON BEHALF OF APPLE, AND

21    WITH ME ARE MY PARTNERS, CHRISTOPHER GREEN.

22             MR. GREEN:  GOOD AFTERNOON, YOUR HONOR.

23             MR. CORDELL:  KATHY LUTTON.

24             MS. LUTTON:  GOOD AFTERNOON.

25             MR. CORDELL:  AND OUR COLLEAGUES FROM WILMER HALE,
```

1    JOE MUELLER AND MARK SELWYN.

2         THE COURT:  OKAY.  WELCOME.  WELCOME TO EVERYBODY.

3    LET'S DO THE SORT OF HOUSEKEEPING THINGS FIRST.  I WAS

4    GOING TO SUGGEST EIGHT JURORS, SO THAT GIVES US TWO EXTRAS.

5    DOES ANYONE WANT TO BE HEARD ON THAT?

6    I MEAN, IT'S, UNFORTUNATELY, GOING TO HAVE TO BE THREE

7    WEEKS OF TRIAL BECAUSE OF THE COLUMBUS DAY HOLIDAY.  SO, I

8    MEAN, WE COULD DO NINE, BUT I DON'T HAVE A STRONG FEELING.  I

9    MEAN, WE SHOULD ANTICIPATE WE'RE GOING TO LOSE ONE OR TWO

10   PROBABLY THE FIRST DAY OF EVIDENCE.

11        MR. CORDELL:  EIGHT SOUNDS SUFFICIENT FOR US, YOUR

12   HONOR.

13        THE COURT:  OKAY.  WHAT ABOUT FOR THE PLAINTIFFS, IS

14   THAT OKAY?

15        MR. BUMGARDNER:  THAT'S FINE, YOUR HONOR.

16        THE COURT:  OKAY.  SO LET'S DO EIGHT JURORS, THREE

17   PEREMPTORIES EACH.

18   AND AS FAR AS THE VOIR DIRE, I'VE REVIEWED YOUR PROPOSED

19   VOIR DIRE AND I WILL PRETTY MUCH ASK ALL OF THE QUESTIONS.  I

20   MEAN, I MIGHT SLIGHTLY REPHRASE IT, BUT I'LL TRY TO GET THE

21   INFORMATION THAT I THINK THAT YOU WERE TRYING TO GET, AND I'LL

22   DO FAIRLY LENGTHY QUESTIONING OF EVERY POTENTIAL JUROR MYSELF.

23        AND THEN AFTER THAT -- USING YOUR QUESTIONS.

24        AND THEN I WOULD ALLOW EACH SIDE 15 MINUTES OF ATTORNEY

25   VOIR DIRE FOR YOU TO ASK ADDITIONAL QUESTIONS ON TOP OF WHAT

1        YOU'VE ALREADY PROPOSED.

2             IS THAT ALL RIGHT?

3                  MR. BUMGARDNER:  THAT'S FINE FOR THE PLAINTIFF, YOUR

4        HONOR.

5                  THE COURT:  ALL RIGHT.  WHAT ABOUT FOR THE

6        DEFENDANTS?

7                  MR. CORDELL:  YOUR HONOR, THERE WERE A COUPLE OF

8        QUESTIONS IN THE PLAINTIFF'S PROPOSED VOIR DIRE THAT WE THOUGHT

9        WERE JUST A LITTLE, A LITTLE AGGRESSIVE.  MAY I BE HEARD ON

10       THOSE?

11                 THE COURT:  YES.  AND I WON'T ASK ALL OF THEM.

12       PERHAPS I SHOULD HAVE QUALIFIED THAT.  I WON'T ASK ALL OF THEM,

13       BUT I -- YOU KNOW, IF I THINK THAT YOU'RE, YOU KNOW, TRYING TO

14       GET A CERTAIN TYPE OF BIAS, I WILL TRY TO DO THAT.

15            BUT WHY DON'T YOU POINT OUT WHICH ONES YOU'RE CONCERNED

16       ABOUT?

17                 MR. CORDELL:  WELL, FOR EXAMPLE, YOUR HONOR, THE --

18       THERE ARE QUESTIONS REGARDING DAMAGES AWARDS BEGINNING AT

19       QUESTION 15 AND GOING THROUGH 16 AND 17 WHERE THEY'RE ASKING

20       YOUR HONOR TO, TO ASK OF THE JURY WHETHER THEY WOULD HAVE A

21       BIAS AGAINST AWARDING OVER A HUNDRED MILLION DOLLARS.

22                 THE COURT:  YEAH, I'M NOT GOING TO ASK THOSE.

23                 MR. CORDELL:  THANK YOU.  AND THEN PERHAPS ONE OTHER,

24       IF I MIGHT?

25                 THE COURT:  GO AHEAD.

1          MR. CORDELL:  QUESTION 10, THERE IS A -- THERE'S A

2     SUGGESTION IN THE WAY THE QUESTIONS ARE PHRASED THAT THERE ARE

3     LOTS OF REASONS WHY A COMPANY MIGHT FAIL HAVING SOMETHING OTHER

4     THAN -- TO DO WITH SOMETHING OTHER THAN THE QUALITY OF THEIR

5     TECHNOLOGY.

6          THE COURT:  RIGHT, AND I'M NOT GOING TO ASK THAT.

7     I'M NOT GOING TO ASK ANYTHING THAT'S SPECIFIC TO THE CASE,

8     OTHER THAN, YOU KNOW, HAVE YOU EVER WORKED FOR OR INVESTED IN

9     ANY OF THESE COMPANIES.

10          I MEAN, IF YOU WANT TO KNOW WHAT I'M PROBABLY LIKELY TO

11     DO, YOU KNOW, I'LL PROBABLY JUST ASK ABOUT, YOU KNOW, THE

12     PARTIES THEMSELVES, THE LAWYERS, THE WITNESSES; AND THEN GET

13     EVERYONE'S EDUCATIONAL BACKGROUND, PROFESSIONAL BACKGROUND;

14     WHAT -- IF THEY HAVE ANY PATENTS AND WHAT THEIR EXPERIENCE WITH

15     EITHER LAW OR PATENTS IS; WE'LL ASK ABOUT WHAT KIND OF CELL

16     PHONES THEY HAVE; WE'LL ASK WHETHER THEY'VE BEEN INVOLVED IN

17     LITIGATION; WHETHER THEY'VE EVER BEEN ACCUSED OF SOME TYPE OF

18     INFRINGEMENT OR TAKING SOMEONE'S IDEA OR WHETHER THEY'VE

19     ACCUSED SOMEONE ELSE.

20          IT WILL NOT BE SPECIFIC TO ANY OF THE PARTIES, OTHER THAN

21     WHETHER THEY'VE INVESTED OR ARE EMPLOYED BY OR HAVE SUED OR

22     WORKED FOR.

23          BUT OTHERWISE IT'LL BE SORT OF MORE GENERAL AND WHAT THEIR

24     VIEWS ARE ABOUT OUR PATENT SYSTEM AND LITIGATION.

25          SO IT'S GOING TO BE SOMETHING LIKE THAT.

1          MR. CORDELL:  THANK YOU, YOUR HONOR.

2          THE COURT:  DOES THAT SOUND OKAY FOR THE PLAINTIFFS?

3          MR. BUMGARDNER:  THAT'S FINE, YOUR HONOR.

4          THE COURT:  OKAY.  ALL RIGHT.  SO THAT'S THAT.

5      WE'VE ALREADY TALKED ABOUT THREE PEREMPTORY STRIKES EACH.

6      AND I SAW THAT YOU FILED A JOINT LIST.  I WOULD LIKE YOU

7  TO INCLUDE IN YOUR JOINT LIST ALL THE LAWYERS WHO'VE WORKED ON

8  THE CASE BECAUSE IT'S IMPORTANT FOR US TO FIND OUT IF ANY OF

9  OUR JURORS MIGHT KNOW ANY LAWYERS WHO'VE WORKED ON THE CASE.

10  SO IF YOU WOULD ADD THAT.

11      SO I WOULD LIKE -- SO YOU ALREADY HAVE, FROM WHAT I COULD

12  SEE, THE LIST OF WITNESSES, LAW FIRMS, AND COMPANIES.

13      AND I ASSUME YOUR WITNESSES ARE BOTH LIVE AND BY

14  DEPOSITION.  DOES THAT SOUND RIGHT?

15      OKAY.  THEN IF YOU WOULD PLEASE ADD ALL OF THE LAWYERS WHO

16  WORKED ON THE CASE, AND BECAUSE THAT MIGHT GROW BETWEEN NOW AND

17  OCTOBER, I THOUGHT MAYBE THIS REVISED LIST YOU WOULDN'T HAVE TO

18  FILE UNTIL, LET'S JUST SAY, OCTOBER 2ND.  DOES THAT -- SO THAT

19  WAY WE CAN MAKE SURE WE HAVE EVERYONE WHO MIGHT BE INVOLVED IN

20  THE CASE, OR BE INVOLVED IN THE TRIAL.

21      I'M ASSUMING THIS TRIAL IS GOING TO BE IN THIS COURTROOM.

22  DO YOU THINK THAT'S A PROBLEM IN TERMS OF SPACE?

23          MR. CORDELL:  WE THINK IT'S FINE, YOUR HONOR.

24          THE COURT:  OKAY.

25          MR. BUMGARDNER:  I THINK IT'LL BE FINE.  WE JUST HAVE

1    TO WORK ON THE AUDIO/VIDEO STUFF TO MAKE SURE THAT --

2              THE COURT:  SURE.

3              MR. BUMGARDNER:  -- WE HAVE OUR PRESENTATIONS.

4              THE COURT:  SURE.

5              MR. BUMGARDNER:  BUT NO PROBLEMS OTHERWISE, YOUR

6    HONOR.

7              THE COURT:  OKAY.  AND UNFORTUNATELY, ALL THE

8    TECHNOLOGY IN HERE IS QUITE OLD, BUT WHAT WE CAN DO IS BEFORE

9    THE TRIAL, IF -- I ONLY WANT BOTH SIDES TO BE IN THE ROOM AT

10   THE SAME TIME.

11        IF YOU WOULD PLEASE GET IN CONTACT WITH MS. PARKER BROWN

12   AND SHE CAN ARRANGE A TIME SO YOU CAN HAVE ACCESS AND TRY OUT

13   ALL THE EQUIPMENT AND MAKE SURE EVERYTHING WORKS IN ADVANCE IF

14   YOU WANT TO COME IN, LIKE, THE FRIDAY BEFORE, OR THE

15   THURSDAY -- PROBABLY THE FRIDAY BEFORE WOULD BE BEST.

16        OKAY.  SO FILE THAT LIST BY OCTOBER 2ND.

17        WE'RE -- WE'VE ALREADY DONE OUR TIME LIMITS.  WE ALREADY

18   HAVE OUR DATES.

19        THE OBJECTION PROCEDURE THAT YOU ALL PROPOSED DOESN'T GIVE

20   ME ENOUGH TIME TO RULE ON YOUR OBJECTIONS, SO WHAT I WAS GOING

21   TO PROPOSE IS THAT YOU FILE ANY OBJECTIONS TO ANY WITNESSES,

22   EXHIBITS, OR DEMONSTRATIVES BY 8:00 A.M. THE DAY BEFORE YOU

23   INTEND TO USE THAT EXHIBIT, THAT DEMONSTRATIVE, OR CALL THAT

24   WITNESS.

25        SO THEN I CAN RULE ON THOSE OBJECTIONS THAT NIGHT SO

1    YOU'LL HAVE THE RULING THE NIGHT BEFORE.  OKAY?

2        AND I'M GOING TO IMPOSE LIMITS ON THESE OBJECTIONS.  ANY

3    OBJECTIONS YOU WANT TO DO BEYOND THESE LIMITS, YOU'LL HAVE TO

4    DO JUST DURING TRIAL.  ALL RIGHT?

5        SO HERE ARE THE LIMITS:  I WOULD LIKE NO MORE THAN FIVE

6    PAGES PER SIDE PER DAY; YOU CAN OBJECT TO UP TO THREE EXHIBITS

7    PER WITNESS AND RAISE TWO OBJECTIONS PER EXHIBIT; AND YOU CAN

8    RAISE THREE OBJECTIONS TO THE DEPOSITION TESTIMONY OF ANY

9    WITNESS.

10        AND I'LL ISSUE A PRETRIAL CONFERENCE ORDER THAT WILL LAY

11    OUT ALL THESE LIMITS, BUT I CAN REPEAT THEM NOW IF THAT WOULD

12    BE HELPFUL.  WOULD THAT BE HELPFUL?  NO?  YOU'RE OKAY?

13        ALL RIGHT.  NOW, OBVIOUSLY YOU CAN MAKE MORE OBJECTIONS

14    THAN THIS, BUT YOU'LL JUST HAVE TO MAKE THEM LIVE IN FRONT OF

15    THE JURY.

16        ALL RIGHT.  AND THEN I'M GOING TO ASK THAT THE RESPONDING

17    PARTY FOLLOW THE FORMAT OF THE OBJECTING PARTY.  SO IF THE

18    OBJECTING PARTY -- HOWEVER THEY ORGANIZE IT, WHETHER IT'S BY A

19    CERTAIN NUMBER OR BY WITNESS, THAT YOU FOLLOW THAT.  IT'S JUST

20    EASIER FOR US TO BE ABLE TO COMPARE AN OBJECTION AND A RESPONSE

21    IF IT'S SORT OF AT LEAST FORMATTED THE SAME.  OKAY?

22        NOW, I'LL GIVE YOU AN ADDITIONAL PAGE TO REQUEST SEALING,

23    AND THAT PAGE SHOULD JUST BE IN THE SAME FILING AS YOUR

24    OBJECTIONS, AND YOU SHOULD INCLUDE ANY OBJECTIONS AND RESPONSES

25    TO THE SEALING REQUEST IN THAT ONE PAGE.  OKAY?

```
 1              NOW, I WOULD LIKE TO HAVE YOUR OBJECTIONS TO YOUR OPENING

 2   STATEMENT DEMONSTRATIVES EARLIER.  WOULD YOU BE ABLE TO FILE

 3   THOSE BY THURSDAY, OCTOBER 2ND BY 1:00 O'CLOCK?  WOULD THAT --

 4   OR DO YOU NEED MORE TIME THAN THAT?  I CAN GIVE YOU UNTIL

 5   FRIDAY MORNING IF YOU THINK THAT WOULD BE MORE USEFUL.

 6              MR. CORDELL:  WHATEVER THE COURT DECIDES.  WE HAVE

 7    PLENTY OF TIME BETWEEN NOW AND THEN.

 8              THE COURT:  OKAY.  WHAT ABOUT --

 9              MR. BUMGARDNER:  THAT'S FINE, YOUR HONOR.

10              THE COURT:  OKAY.  WHY DON'T WE SAY THEN THURSDAY AT

11    1:00 SO THAT WE CAN TRY TO GIVE YOU RULINGS BY FRIDAY SO YOU'LL

12    HAVE THE OBJECTIONS RULED ON BEFORE YOU GO INTO THE WEEKEND.

13              NOW, I'D ALSO LIKE TO -- I DON'T THINK IT WILL NECESSARILY

14    BE A PROBLEM IN THIS CASE, BUT JUST TO AVOID ANY OVERWHELMING

15    NUMBER, CAN WE PUT SOME LIMIT ON THE NUMBER OF DEMONSTRATIVES

16    THAT YOU'RE GOING TO EXCHANGE FOR BOTH YOUR OPENING AND YOUR

17    CLOSING?

18              I JUST DON'T WANT SOMEONE TO BE, YOU KNOW, BURDENED TO

19    HAVING TO OBJECT TO 500 DEMONSTRATIVES WHEN THAT'S NOT GOING TO

20    HAPPEN WHEN YOU HAVE 40 MINUTES FOR OPENING AND AN HOUR FOR

21    CLOSING.

22              WHAT DO YOU THINK?

23              MR. BUMGARDNER:  YOUR HONOR, FOR -- WE HAVEN'T

24    REALLY -- I JUST CONSIDERED THAT QUESTION.

25              THE COURT:  SURE.
```

```
 1                MR. BUMGARDNER:  WOULD IT BE ACCEPTABLE IF WE JUST
 2      DISCUSSED THIS WITH APPLE AND TRIED TO WORK OUT SOMETHING THAT
 3      WE BOTH THOUGHT WAS REASONABLE?
 4                THE COURT:  THAT'S FINE.  THAT'S FINE.
 5                MR. CORDELL:  THAT WOULD BE GREAT, YOUR HONOR.  I
 6      MEAN, WE -- THE REALITY IS WE CAN'T DO 150 SLIDES IN 45
 7      MINUTES.  THAT WOULD BE --
 8                THE COURT:  YOU'VE GOT 40 MINUTES.
 9                MR. CORDELL:  THEN WE REALLY CAN'T DO 150.
10           (LAUGHTER.)
11                THE COURT:  SO I DON'T WANT YOU TO BE BURDENED WITH
12      HAVING TO OBJECT TO OVER 150 SLIDES WHEN WE ALL KNOW THAT'S NOT
13      REALLY GOING TO HAPPEN.
14                MR. CORDELL:  I SEE.
15                MR. BUMGARDNER:  ABSOLUTELY.
16                THE COURT:  THAT'S WHAT I MEAN.  I JUST DON'T WANT
17      YOU TO OVER EXCHANGE AND THEN JUST IT CREATES A LOT OF MAKEWORK
18      WHEN WE ALL KNOW THAT'S REALLY NOT GOING TO BE USED.
19                MR. BUMGARDNER:  THAT'S SOMETHING I THINK -- THAT'S
20      GOING TO CUT BOTH WAYS, SO I'M HOPEFUL THAT WE WOULD BE ABLE TO
21      WORK OUT SOMETHING WITH APPLE.
22                THE COURT:  OH, YEAH.  IT'S A MUTUAL LIMIT.
23                MR. BUMGARDNER:  BUT IT'S THE BURDEN OF OBJECTING,
24      SO --
25                MR. CORDELL:  THE OVER DESIGNATION WAS A TECHNIQUE I
```

```
 1    HAVEN'T EVER EMBRACED, YOUR HONOR, SO THAT'S -- I'LL MAKE SURE
 2    WE DON'T START NOW.
 3              THE COURT:  OKAY.  AND I -- YOU KNOW, I'M NOT SAYING
 4    THAT I ANTICIPATE IT TO BE AN ISSUE IN THIS CASE.  IT'S JUST I
 5    DON'T WANT IT TO BECOME AN ISSUE IN THIS CASE, SO I THOUGHT I
 6    WOULD JUST HEAD IT OFF.
 7         SO WHY DON'T YOU -- I MEAN, YOU HAVE TIME.  WHEN DO YOU
 8    WANT TO FILE THAT?  LET'S JUST PUT A DATE NEXT TO IT, A
 9    STIPULATION ON THE LIMITS ON THE NUMBER OF DEMONSTRATIVES THAT
10    YOU'LL EXCHANGE FOR OPENING AND CLOSING.
11              MR. BUMGARDNER:  I'D PREFER, JUST MY PREFERENCE,
12    WOULD BE TO DO SOMETHING CLOSER TO TRIAL.  SO ONCE WE REALLY
13    GET INTO IT AND HAVE A NUMBER --
14              THE COURT:  SURE.  DO YOU WANT TO SAY SEPTEMBER --
15    WELL, I WAS GOING TO SUGGEST ANOTHER PTC ON SEPTEMBER 25TH, I
16    THINK.  LET ME -- I'LL TAKE A LOOK AT THE CALENDAR IN A MINUTE.
17         BUT WHAT ABOUT SEPTEMBER 19TH?  SEPTEMBER 17TH?
18              MR. BUMGARDNER:  SEPTEMBER 19TH WOULD BE GOOD.  I WAS
19    THINKING, YOU KNOW, A COUPLE WEEKS BEFORE TRIAL, AND SO THAT'S
20    CERTAINLY FINE WITH GPNE.
21              THE COURT:  ALL RIGHT.  THAT'S FINE.  SEPTEMBER 19TH.
22         AND I'M OKAY IF YOU WANT TO, ON THE 19TH, JUST FILE A
23    STIPULATION ON THE NUMBER OF OPENING DEMONSTRATIVES; AND IF YOU
24    WANT TO WAIT ON CLOSING UNTIL, YOU KNOW, MID-WAY THROUGH THE
25    TRIAL, THAT'S FINE, TOO.
```

```
 1              MR. BUMGARDNER:  I SUSPECT WE'LL BE ABLE TO WORK

 2    SOMETHING OUT FOR BOTH OPENING AND CLOSING.

 3              THE COURT:  ALL RIGHT.  THAT'S FINE.

 4              MR. CORDELL:  I TAKE THE COURT'S SUGGESTION.  I THINK

 5    THAT'S PROBABLY THE RIGHT WAY TO GO.

 6              THE COURT:  OKAY.  WITH REGARD TO THE EXHIBIT LISTS,

 7    THERE ARE A LOT OF THE SAME EXHIBITS ON BOTH LISTS, SO I WANTED

 8    TO PROPOSE, WHAT IF WE HAD ONE JOINT EXHIBIT LIST, THE THINGS

 9    THAT YOU KNOW BOTH SIDES ARE GOING TO REFER TO, AND THEN HAVE

10    YOU FILE A MORE NARROWED INDIVIDUAL EXHIBIT LIST?  THAT WAY WE

11    COULD GET OUR, YOU KNOW, 1,065 NUMBER DOWN A LITTLE BIT.  IS

12    THAT --

13              MR. BUMGARDNER:  THAT WOULD BE FINE, YOUR HONOR.  I

14    WOULD JUST SAY THERE'S NO -- THERE'S NO QUESTION THAT THERE'S

15    STILL -- WE CAN DO SOME GOOD WORK, I THINK, ON THE EXHIBIT LIST

16    AND GETTING THE ABSOLUTE NUMBER DOWN --

17              THE COURT:  SURE.

18              MR. BUMGARDNER:  -- AND PUTTING TOGETHER A COMMON

19    EXHIBIT LIST AND THEN HAVING, YOU KNOW, EACH PARTIES' --

20              THE COURT:  SURE.  SO I WAS GOING TO SET THAT

21    DEADLINE FOR SOMETIME IN SEPTEMBER SO YOU HAD MORE TIME TO

22    FOCUS ON EXACTLY WHAT YOU THINK YOU'LL ACTUALLY USE AND

23    PRESENT.

24         SO YOU TELL ME.  WHAT DATE MAKES SENSE FOR YOU TO FILE ONE

25    JOINT EXHIBIT LIST FOR EVERYTHING THAT BOTH SIDES WILL NOT
```

```
1      OBJECT TO AND MAY USE, AND THEN WHEN YOU'RE GOING TO FILE YOUR

2      INDIVIDUAL REVISED EXHIBIT LISTS?

3               MR. CORDELL:  WOULD SEPTEMBER 10 SUFFICE, YOUR HONOR?

4               THE COURT:  THAT'S FINE.  I MEAN, IF YOU NEEDED MORE

5      TIME THAN THAT, THAT'S OKAY, TOO.

6               MR. BUMGARDNER:  I WAS GOING TO SAY THE 19TH, JUST SO

7      WE COULD HAVE, ALONG WITH THE STIPULATIONS, SORT OF HAVE ONE

8      DATE WHERE WE NEED TO GET IT ALL IN TO THE COURT.  BUT IT'S --

9               MR. CORDELL:  THE 19TH IS FINE, YOUR HONOR.  I WAS

10     TRYING TO DO MATH AND MAKE SURE WE FELL ON A WEEKDAY.

11              THE COURT:  YEAH.  THE ONLY THING IS IF WE HAVE A

12     FURTHER CMC, OR ANOTHER PRETRIAL CONFERENCE, I THINK I WAS

13     GOING TO SUGGEST SEPTEMBER 25.  IT MAY BE WORTH DOING IT --

14     WELL, SEPTEMBER 24, BUT THAT'S A WEDNESDAY.  I GUESS WE COULD

15     DO IT ON A WEDNESDAY.

16         I WOULD LIKE IT TO BE IN ADVANCE OF THAT DATE.  WHAT

17     ABOUT, IN CASE THERE ARE ANY PROBLEMS, WHAT ABOUT

18     SEPTEMBER 17TH?  LET'S SAY SEPTEMBER 17TH.

19              MR. BUMGARDNER:  THE WORK HAS TO BE DONE AT SOME

20     POINT, YOUR HONOR, SO ONE -- WE DON'T HAVE STRONG FEELINGS ON

21     OUR SIDE ON THE SPECIFIC DATE.

22              THE COURT:  OKAY.  SO LET'S DO THAT.

23         SO YOU'RE GOING TO FILE YOUR DEPO DESIGNATIONS ON

24     AUGUST 22ND AND YOUR OBJECTIONS AND COUNTER-DESIGNATIONS BY

25     SEPTEMBER 5?  IS THAT RIGHT?  ALL RIGHT.  THAT SCHEDULE IS
```

```
 1        FINE.
 2            OKAY.  DID YOU SEE THE PRELIMINARY JURY INSTRUCTIONS THAT
 3        WERE FILED ON JUNE 24TH?  DID YOU HAVE ANY ADDITIONAL COMMENTS
 4        TO THOSE?
 5                MS. LUTTON:  WE DID SEE THEM, YOUR HONOR.  WE HAVE NO
 6        ADDITIONAL COMMENTS.
 7                THE COURT:  OKAY.  THANK YOU.
 8            WHAT ABOUT FOR THE PLAINTIFFS?
 9                MR. BUMGARDNER:  NO COMMENTS, YOUR HONOR.
10                THE COURT:  ALL RIGHT.  THANK YOU.  SO THOSE WILL BE
11        THE FINAL ONES.
12                MR. BUMGARDNER:  IF I COULD LOOP BACK TO THE EXHIBIT
13        LIST, YOUR HONOR?
14                THE COURT:  YES.
15                MR. BUMGARDNER:  JUST A POINT OF CLARIFICATION.  I
16        BELIEVE THIS COURT'S STANDING ORDER SAYS THE EXHIBIT LIST CAN'T
17        BE ALTERED WITHOUT LEAVE OF COURT.  I ASSUME THAT SINCE WE'RE
18        GOING TO BE SUBMITTING NEW EXHIBIT LISTS IN SEPTEMBER THAT WE
19        CAN -- WE DON'T NEED TO WORRY ABOUT THAT PROVISION IN THE
20        STANDING ORDER.
21                THE COURT:  WELL, LET ME HEAR FROM -- THAT'S UP TO
22        APPLE.  EITHER I CAN SAY YOU CAN ONLY NARROW AND YOU CAN'T ADD
23        SOMETHING NEW, OR WE CAN SAY IT'S A FREE-FOR-ALL AND YOU GET TO
24        TOTALLY RE-DO YOUR LIST.
25                MR. BUMGARDNER:  AND WE'RE NOT LOOKING TO DO THAT.  I
```

```
 1       WOULD SAY CAN WE DO IT BY AGREEMENT WITH APPLE?  IF THEY WANT

 2       TO OPPOSE US ON SOMETHING, THEN THAT'S -- I WOULD JUST SAY IF

 3       WE'RE WORKING TOGETHER TO CREATE THESE LISTS, A NARROWED LIST,

 4       THEN I -- JUST GIVEN WHAT YOU SAID, I ASSUME WE DON'T HAVE TO

 5       INVOLVE THE COURT AS FAR AS NARROWING AND CARRYING OUT WHAT

 6       YOU'VE SAID.

 7              THE COURT:  RIGHT.  BUT I WAS ENVISIONING A, A LEANER

 8       AND SLIMMER LIST.  I WAS NOT ENVISIONING NEW STUFF SUDDENLY

 9       COMING ON THE LIST THAT HADN'T PREVIOUSLY BEEN --

10              MR. BUMGARDNER:  AND THAT'S --

11              THE COURT:  -- INCLUDED IN THE LIST.

12              MR. CORDELL:  AND THAT WAS OUR VISION AS WELL, YOUR

13       HONOR.

14              THE COURT:  OKAY.

15              MR. CORDELL:  WITH ONE EXCEPTION.

16              THE COURT:  WHAT'S THAT?

17              MR. CORDELL:  AND THAT IS THAT WE HAVE A MOTION TO

18       COMPEL PENDING REGARDING SOME ADDITIONAL LICENSE DOCUMENTS, BUT

19       I ASSUME WE WOULD HAVE TO SHOW GOOD CAUSE TO ADD THEM TO THE

20       LIST AND WE WOULD GO THROUGH THAT PROCEDURE.

21              THE COURT:  SO THE STANDING ORDER WILL REMAIN IN

22       EFFECT.  THIS IS REALLY A, A REDUCTION AND NARROWING OF THE

23       LIST.  IT'S NOT FURTHER EXPANSION OF SOMETHING NEW, UNLESS IT'S

24       JUST BEEN PRODUCED.

25              MR. CORDELL:  THANK YOU.
```

```
 1            THE COURT:  OKAY.  ALL RIGHT.  IT LOOKS LIKE YOUR
 2     FINAL JURY INSTRUCTIONS, SOME OF THE MIL RULINGS MIGHT TAKE
 3     CARE OF SOME OF THOSE ISSUES.
 4            WE'LL WORRY ABOUT THE VERDICT FORM LATER.
 5            I WOULD LIKE YOU TO DO JURY NOTEBOOKS, AND IN THE JURY
 6     NOTEBOOKS -- IF YOU WOULD BRING, PLEASE, 12 COPIES.  WHY DON'T
 7     YOU BRING THEM ON FRIDAY, OCTOBER 3RD?
 8            SO THE ONLY THINGS THAT GO IN THE NOTEBOOKS ARE THINGS
 9     THAT HAVE BEEN STIPULATED TO.  IF THERE'S ANY DISPUTE, IT WILL
10     NOT GO TO THE JURY.  BUT WHAT I WOULD LIKE INCLUDED IN THE
11     JUROR NOTEBOOKS ARE, NUMBER ONE, THAT LIST OF WITNESSES,
12     ATTORNEYS, FIRMS, COMPANIES, PARTIES.
13            I WOULD ALSO LIKE YOU TO ADD THE TRIAL DATES AND TIMES.
14            I ASSUME WE'RE SHOWING THE FJC VIDEO.  ANY OBJECTION TO
15     THAT?
16            MR. CORDELL:  NOT FROM DEFENDANTS, YOUR HONOR.
17            MR. BUMGARDNER:  NO OBJECTION, YOUR HONOR.
18            THE COURT:  ALL RIGHT.  AND WE'RE SHOWING THE NEW
19     ONE, THE JUDGE FOGEL ONE, NOT THE OLD ONE?  I THINK THAT MAKES
20     SENSE TO SHOW THE NEW ONE.
21            MR. CORDELL:  YES, YOUR HONOR.
22            THE COURT:  OKAY.  SO WE'RE SHOWING THE NEW ONE.
23            I'M GOING TO ASK THE PARTIES, YOU'RE RESPONSIBLE FOR
24     GETTING THAT VIDEO.
25            SO I WANT YOU TO INCLUDE IN THE JURY NOTEBOOKS THE SAMPLE
```

1    PATENT, YOU KNOW, THE CROCS PATENT THAT GOES WITH THAT VIDEO.

2    PUT THAT IN THE BINDER, PLEASE.

3         THE PRELIMINARY JURY INSTRUCTIONS, GO AHEAD AND PUT THOSE

4    IN.

5         EVERYTHING SHOULD BE DOUBLE-SIDED.

6         THE PRELIMINARY JURY INSTRUCTIONS, I WILL ISSUE A CLEAN

7    ONE.  I ONLY WANT THE CLEAN INSTRUCTIONS TO GO TO THE JURY.

8    THE ANNOTATED IS REALLY JUST FOR US TO KNOW WHAT THE SOURCE IS.

9    PROBABLY CLOSER TO THE TIME WE'LL FILE A CLEAN SET OF

10   PRELIMINARY JURY INSTRUCTIONS.

11        AND THEN A TWO-COLUMN CHART FOR THE ASSERTED CLAIMS, I'D

12   LIKE THE ASSERTED CLAIMS ON THE LEFT SIDE WITH THE CONSTRUED

13   TERMS HIGHLIGHTED, AND THEN IN THE RIGHT COLUMN PUT IN THE

14   COURT'S CONSTRUCTION OF THOSE HIGHLIGHTED TERMS.

15        ANOTHER TAB FOR A GLOSSARY, AND ONLY DEFINITIONS THAT YOU

16   STIPULATE TO CAN BE INCLUDED IN THE GLOSSARY.

17        I'D LIKE A COPY OF ALL ASSERTED PATENTS IN THE BINDER.

18        AND THEN I WOULD LIKE A TAB FOR WITNESS PHOTOS.  RIGHT

19   BEFORE A WITNESS TESTIFIES, IF YOU WOULD PLEASE PROVIDE A PHOTO

20   OF THE PERSON, THREE-HOLE PUNCHED, AND THEY NEED TO LOOK THE

21   SAME, SAME HAIR-DO, SAME, YOU KNOW, GLASS, NO GLASSES,

22   WHATEVER, SO THAT THE JURORS CAN REMIND THEMSELVES WHO THE

23   WITNESS ARE AND TAKE NOTES.

24        A TAB FOR THE FINAL JURY INSTRUCTIONS, WHICH I WILL HAND

25   OUT, AND A TAB FOR BLANK LINED PAPER.

```
 1            NOW, BECAUSE THE MOTION IN LIMINE RULINGS, SOME OF WHICH

 2    YOU GOT EARLIER IN THE WEEK, AND ALSO ADDITIONAL ONES THAT

 3    YOU'LL GET TODAY, I THINK WILL CHANGE THE FINAL JURY

 4    INSTRUCTIONS, I'D LIKE YOU TO FILE REVISED JURY INSTRUCTIONS

 5    TAKING INTO ACCOUNT THOSE RULINGS.

 6            WHEN WOULD YOU LIKE TO DO THAT BY?

 7            MS. LUTTON:  YOUR HONOR, I DON'T THINK THERE ARE THAT

 8    MANY ISSUES, YOUR HONOR.  I THINK MAYBE A WEEK FROM THE COURT'S

 9    RULING WOULD SUFFICE.

10            MR. BUMGARDNER:  THAT'S PERFECTLY FINE, YOUR HONOR.

11            THE COURT:  ALL RIGHT.  SO WE COULD SAY -- DO YOU

12    WANT TO JUST SAY JULY 15TH?

13            MR. BUMGARDNER:  PERFECT.

14            MS. LUTTON:  THAT WORKS GREAT, YOUR HONOR.

15            THE COURT:  OKAY.  SO LET'S DO JULY 15TH FOR THAT.

16        OKAY.  LET'S SET A FURTHER STATUS CONFERENCE FOR

17    SEPTEMBER 24TH, THAT'S A WEDNESDAY, AT 2:00 O'CLOCK.

18        NOW, I'M NOT INVITING YOU TO FILE ANY NEW MOTIONS.  THAT

19    WILL REALLY JUST BE HOUSEKEEPING.

20        NOW, YOU HAVE A SETTLEMENT CONFERENCE WITH JUDGE LAPORTE

21    ON FRIDAY.  IS THAT RIGHT?

22            MR. BUMGARDNER:  TOMORROW, YOUR HONOR.

23            THE COURT:  TOMORROW, THAT'S RIGHT.

24        CAN YOU FILE, PLEASE, A SETTLEMENT STATUS REPORT BY

25    JULY 3RD?
```

```
 1            MR. BUMGARDNER:  YES.  NO PROBLEM.

 2            MS. LUTTON:  YES, YOUR HONOR.

 3            THE COURT:  OKAY.  AND LET'S HAVE THAT BE A JOINT

 4      FILING, PLEASE.

 5            OKAY.  SO FOR HOUSEKEEPING, THERE WERE TWO LAST ISSUES

 6      FROM YOUR PRETRIAL STATEMENTS.

 7            FOR DISPUTED LEGAL ISSUES, NUMBERS 4 AND 5 RAISED BY

 8      APPLE, I WAS UNCLEAR IF YOU'RE ASKING FOR MORE CLAIM

 9      CONSTRUCTION ON "SLOT" AND "PACKET," WHAT THE SIGNIFICANCE OF

10      THAT IS, WHY DO YOU WANT IT CONSTRUED, OR REQUESTED TO BE

11      CONSTRUED EARLIER IF THEY WERE IMPORTANT.

12            IS THERE ANY NON-INFRINGEMENT OR INVALIDITY ARGUMENT THAT

13      DEPEND ON THIS ISSUE?

14            MR. GREEN:  YOUR HONOR, MAY I COME TO THE PODIUM?

15            THE COURT:  YES, PLEASE.

16            MR. GREEN:  YOUR HONOR, IT IS SOMETHING THAT'S GOING

17      TO REVOLVE SOMEWHAT AROUND THE CLAIM CONSTRUCTION ISSUES.

18            WHAT WE'RE FLAGGING AS POTENTIAL ISSUES BASED ON THINGS

19      WE'VE SEEN, THE ARGUMENTS MADE IN SUMMARY JUDGMENT, WHAT'S

20      COMING OUT IN THE EXPERT REPORTS, THE MILS, THESE MAY BE

21      DETERMINED AS A TENDENCY TO STRAY FROM THE COURT'S CONSTRUCTION

22      OR TO OFFER SOMETHING THAT WOULD BE INCONSISTENT WITH THE PLAIN

23      MEANING OF THOSE TERMS AND THAT IS THE REASON WE HAVE

24      PRELIMINARILY FLAGGED THESE TERMS.

25            THE COURT:  OKAY.  BUT YOU'RE FINE WITH PLAIN AND
```

```
 1        ORDINARY MEANING?  I GUESS I'M UNCLEAR.  IS YOUR POSITION THAT,

 2        YOU KNOW, THE JURY SHOULD UNDERSTAND THESE TERMS USING THEIR

 3        PLAIN AND ORDINARY MEANING, AND YOU'RE JUST CONCERNED THAT THE

 4        PARTIES MIGHT TRY TO DEFINE THE PLAIN AND ORDINARY MEANING?

 5             MR. GREEN:  WE'RE TRYING TO AVOID AD HOC CLAIM

 6        CONSTRUCTION, YOUR HONOR.  THAT -- THE PARTIES ARE FINE THAT

 7        WE'RE GOING TO GO WITH PLAIN AND ORDINARY MEANING.

 8             THE COURT:  YEAH.  I THINK AT THIS POINT, IF IT

 9        HASN'T BEEN CONSTRUED, IT'S PLAIN AND ORDINARY MEANING.

10          OKAY.  NOW, WHAT GIVES YOU ANY CONCERN THAT GPNE MIGHT TRY

11        TO PROVIDE SOME KIND OF CONSTRUCTION FOR "SLOT" AND "PACKET"?

12        IS THAT JUST YOUR GUESS, OR --

13             MR. GREEN:  YOUR HONOR, IT WOULD BE OUR BEST READ ON

14        THE PAPERS WE'VE SEEN SO FAR AND THE ARGUMENTS WE'VE HEARD IN

15        RESPONSE TO THE MOTIONS THAT HAVE BEEN FILED, SUMMARY JUDGMENT

16        MOTIONS THAT WE'VE SEEN AND THE MILS, THAT SORT OF THING, WHAT

17        WE SEE IN THE EXPERT REPORTS.

18             THE COURT:  ALL RIGHT.  WELL, I GUESS YOU'LL JUST

19        HAVE TO FILE AN OBJECTION AT THE TIME, AND IF THIS IS PLAIN AND

20        ORDINARY MEANING, I'M NOT GOING TO ALLOW SOMEONE TO TRY TO, YOU

21        KNOW, SWEEP A CONSTRUCTION UNDER THE TABLE.

22          LET ME ASK GPNE, ARE YOU INTENDING TO DO ANY CONSTRUCTION

23        OF "SLOT" AND "PACKET"?

24             MR. BUMGARDNER:  NO, YOUR HONOR.

25             THE COURT:  OKAY.  AT THIS POINT IT WOULD BE PLAIN
```

```
1    AND ORDINARY MEANING, AND I'M NOT GOING TO LET ANYONE DEFINE

2    THAT.

3         OKAY.  LET'S GO TO ISSUE NUMBER 7.  WHAT IS YOUR ARGUMENT

4    ABOUT THAT?  I WASN'T CLEAR WHETHER YOU WERE TRYING TO ARGUE

5    NO, NO INFRINGEMENT BECAUSE THE PHONE ISN'T IN A DATA NETWORK.

6    WHAT IS THIS ISSUE?  I MEAN, IS THIS ONE THAT I HAVE TO RESOLVE

7    NOW?

8         (PAUSE IN PROCEEDINGS.)

9         MR. GREEN:  YOUR HONOR, I BELIEVE THIS IS GOING TO BE

10   ANOTHER EXPERT REPORT ISSUE.

11        THE COURT:  OKAY.  AND WHAT IS THE ISSUE?

12        MR. GREEN:  THE ISSUE WOULD BE, YOUR HONOR, WHERE WE

13   SEE A FIRST NODE IN A NETWORK WHERE THE DATA NETWORK INCLUDES A

14   PLURALITY OF NODES, THERE'S A PLURALITY REQUIREMENT THERE.

15        SO A DATA NETWORK INCLUDING A PLURALITY OF NODES, THERE'S

16   A MULTIPLICITY OF NODES THAT WOULD BE REQUIRED, WHEREAS THE

17   SALE OF A SINGLE DEVICE THAT WOULD BE ACCUSED OF BEING A NODE,

18   WE OBVIOUSLY DISAGREE WITH THAT.

19        BUT IT'S THE IDEA THAT YOU CAN SATISFY CLAIMS REQUIRING

20   NETWORKS AND MULTIPLE NODES WITH THE MERE ALLEGATION THAT APPLE

21   IS SELLING OR OFFERING TO SELL IPHONES INDIVIDUALLY.

22        THE COURT:  DO YOU WANT TO RESPOND TO THAT?

23        MR. BUMGARDNER:  YOUR HONOR, THIS IS THE FIRST TIME

24   APPLE HAS RAISED THIS POTENTIAL NON-INFRINGEMENT POSITION.

25        AGAIN, WE'RE COMFORTABLE WITH THE WAY IT'S LAID OUT IN OUR
```

1    EXPERT REPORT.  APPLE DOES SELL PHONES, WHICH WE CONTEND ARE

2    NODES, AND THAT THE INTENDED USE OF THESE NODES IS IN A NETWORK

3    OF NODES.

4         SO IT'S -- THE CLAIM IS TO A NODE, AND WE BELIEVE THAT'S

5    WHAT APPLE SELLS AND THAT'S -- THAT'S BEEN OUR, OBVIOUSLY OUR

6    INFRINGEMENT POSITION FOR SOME TIME, AND THIS POSITION THAT

7    APPLE IS SAYING, WELL, THIS IS SOMETHING ABOUT A NETWORK OF

8    NODES, THIS IS NEW TODAY.

9              THE COURT:  WELL, WHY DON'T YOU CLARIFY?  DOES THIS

10   NEED TO BE RESOLVED OR WHAT --

11             MR. GREEN:  YOUR HONOR, I --

12             THE COURT:  SHOULD THIS BE MORE APPROPRIATELY DECIDED

13   LATER TO SEE IF IT'S ACTUALLY GOING TO BECOME AN ISSUE?  OR IS

14   THIS A NON-INFRINGEMENT ARGUMENT THAT YOU INTEND TO RAISE

15   DURING TRIAL?  WHAT'S THE SITUATION?

16             MR. GREEN:  IT COULD BE -- WELL, IT WOULD BE A

17   NON-INFRINGEMENT ARGUMENT, YOUR HONOR.

18        IT WOULD ALSO BE ONE THAT, AGAIN, GPNE STRAYS FROM THE

19   PLAIN LANGUAGE OF THE CLAIM REQUIRING A PLURALITY OF NODES.

20        THE EVIDENCE THAT GPNE HAS PROFFERED THUS FAR WOULD NOT

21   SATISFY THAT ELEMENT.

22             THE COURT:  WHY DIDN'T YOU MOVE FOR SUMMARY JUDGMENT

23   ON THIS ISSUE?

24             MR. GREEN:  YOUR HONOR, THAT'S A FAIR QUESTION.

25        THE CANDID ANSWER IS WE HAD TO PICK OUR BATTLES AND WE

```
 1     TRIED -- WE TRIED THE ISSUES THAT WE THOUGHT WERE MOST
 2     SUSCEPTIBLE TO SUMMARY JUDGMENT WITHIN OUR PAGE LIMITS AND
 3     THAT'S WHAT WE HAD.
 4              MR. BUMGARDNER:  AND I WOULD RESPOND TO THAT, YOUR
 5     HONOR, THAT APPLE, AGAIN, HAS NEVER RAISED THIS.  THEY DID NOT
 6     ANSWER, OR EVER IDENTIFY THIS AS A NON-INFRINGEMENT DEFENSE.
 7     THEIR EXPERT DID NOT DISCUSS THIS.  IT'S NEVER BEEN RAISED BY
 8     APPLE.
 9              THE COURT:  HOW WOULD YOU SEEK TO GET THIS IN?
10              MR. GREEN:  YOUR HONOR, I BELIEVE THE BURDEN WOULD
11     FALL ON GPNE.  GPNE WOULD HAVE TO SHOW THAT THE ACTS DESCRIBED
12     IN LEGAL ISSUE NUMBER 7, MANUFACTURE, USE, OR SALE OF AN APPLE
13     ACCUSED DEVICE, SATISFIES THIS CLAIM REQUIREMENT WITH THE
14     PLURALITY LIMITATION.
15              THE COURT:  SO -- BUT I'M STILL NOT CLEAR.  ARE YOU
16     GOING TO BE CROSS-EXAMINING --
17              MR. GREEN:  SO, YES, YOUR HONOR.
18              THE COURT:  -- MR. DINAN ON THIS?
19              MR. GREEN:  WE WOULD CROSS-EXAMINE GPNE'S EXPERT ON
20     INFRINGEMENT.  IF IT'S DR. DINAN WHO INTENDS TO OFFER EVIDENCE
21     SATISFYING THIS, THEN IT WOULD BE DR. DINAN WHO'S
22     CROSS-EXAMINED.
23              THE COURT:  WELL, I WOULD ASSUME DR. DINAN IS YOUR
24     INFRINGEMENT EXPERT.  RIGHT?
25              MR. BUMGARDNER:  YES, YOUR HONOR.
```

```
 1              THE COURT:  THAT'S WHY I'M ASKING, HOW IS IT GOING TO

 2    COME UP?  IN CROSS?

 3              MR. GREEN:  IN CROSS-EXAMINATION OF THE INFRINGEMENT

 4    EXPERT, YES.

 5              THE COURT:  ALL RIGHT.  WELL, WHY DON'T WE DEAL WITH

 6    THIS THEN -- THIS PROBABLY SHOULD BE THE EVIDENTIARY OBJECTION

 7    THAT YOU BRIEF WHEN YOU BRIEF YOUR OBJECTIONS TO DR. DINAN.

 8    OKAY?

 9              MR. GREEN:  OKAY, YOUR HONOR.

10              MR. BUMGARDNER:  OKAY.

11              THE COURT:  I MEAN, MR. BUMGARDNER, IF YOU WANT

12    ANOTHER WAY TO RESOLVE IT -- I MEAN, I -- YOU KNOW, I'D LIKE TO

13    SEE WHAT HAPPENS TOMORROW AT YOUR SESSION BEFORE INVESTING A

14    LOT MORE TIME IN THIS CASE.

15        OBVIOUSLY IF IT'S GOING TO TRIAL, WE HAVE A DATE SET AND

16    WE'RE SET TO GO AND, YOU KNOW, YOU'LL GET RULINGS ON EVERYTHING

17    FAIRLY QUICKLY.

18        BUT I DON'T SEE A NEED TO SORT OF BRIEF THIS ISSUE NOW

19    WHEN IT SEEMS PREMATURE.

20              MR. GREEN:  UNDERSTOOD, YOUR HONOR.

21              MR. BUMGARDNER:  THAT'S FINE WITH US, YOUR HONOR.

22              THE COURT:  ALL RIGHT.  SO WHEN YOU FILE YOUR

23    EVIDENTIARY OBJECTIONS WITH REGARD TO DR. DINAN, WHY DON'T YOU

24    INCLUDE THIS ISSUE.  OKAY?

25              MR. BUMGARDNER:  OKAY.
```

```
 1              THE COURT:  AND IF IT TURNS OUT, WITH THIS ONE, THAT

 2      YOU MIGHT NEED A PAGE EXTENSION, YOU LET ME KNOW.

 3              MR. BUMGARDNER:  OKAY, YOUR HONOR.  THANK YOU.

 4              MR. GREEN:  THANK YOU, YOUR HONOR.

 5              THE COURT:  ALL RIGHT.  NOW, THERE'S ONE LAST ISSUE

 6      AND THAT'S ALL THESE INDEFINITENESS ARGUMENTS THAT APPLE HAS

 7      RAISED IN DISPUTED LEGAL ISSUES NUMBER 11 THROUGH 14.

 8          HOW DO THE PARTIES WANT TO DEAL WITH INDEFINITENESS?  AND

 9      IS IT A QUESTION OF LAW OR IS IT A MIXED QUESTION?  WHAT'S YOUR

10      VIEW ON THAT?

11              MR. CORDELL:  YOUR HONOR, WE -- IT IS OUR VIEW THAT

12      IT IS ACTUALLY A MIXED QUESTION AND THAT THERE ARE JURY ISSUES

13      EMBEDDED WITHIN THE INDEFINITENESS INQUIRY, AND SO WE BELIEVE

14      WHAT'S MOST APPROPRIATE IS THAT WE TRY THE CASE AND WE PUT ON

15      OUR EVIDENCE AND ALLOW THE JURY TO MAKE, TO MAKE THE DECISIONS

16      THAT THEY'LL MAKE.

17              THE COURT:  OKAY.  NOW, I DIDN'T -- THIS IS

18      PRE-NAUTILUS.  I DID NOT THINK THAT INDEFINITENESS WAS A

19      QUESTION OF FACT.  ARE YOU SAYING NAUTILUS MAKES IT A QUESTION

20      OF FACT OR A PARTIAL QUESTION OF FACT?

21              MR. CORDELL:  I THINK IT'S A PARTIAL QUESTION OF

22      FACT.  I THINK THE QUESTION OF WHETHER OR NOT A TERM HAS

23      SUFFICIENT DEFINITION, FOR THE PURPOSES OF NAUTILUS, HAS

24      EMBEDDED FACT ISSUES IN IT, AMBIGUITY, FOR EXAMPLE, WHETHER OR

25      NOT THERE IS AMBIGUITY FOR THOSE OF ORDINARY SKILL IN THE ART,
```

```
1          AND SO THAT IS OUR VIEW.

2               IT'S --

3                    THE COURT:  NOW, WAS THAT YOUR VIEW PRE-NAUTILUS?

4     HAS IT ALWAYS BEEN YOUR VIEW THAT THIS IS A MIXED QUESTION OF

5     LAW AND FACT THAT SHOULD GO TO THE JURY?

6                    MR. CORDELL:  I WILL TELL YOU THAT OUR THINKING HAS

7     EVOLVED BECAUSE OF NAUTILUS.  I CAN'T ANSWER THAT FIRST

8     QUESTION.  I JUST DON'T RECALL.

9                    BUT I KNOW THAT WHEN WE SAW NAUTILUS, THAT'S WHEN THIS

10    ISSUE REALLY ROSE TO THE FOREFRONT AND WE BELIEVE THAT, AT A

11    MINIMUM, A VERDICT WOULD, WOULD BE OF USE TO YOUR HONOR AS, AT

12    WORST, AN ADVISORY FINDING ON THE ISSUE THAT YOUR HONOR MAY

13    THEN ADOPT OR REJECT AS APPROPRIATE.

14                   THE COURT:  OKAY.  LET ME HEAR FROM GPNE.

15                   MR. SUSSER:  THANK YOU, YOUR HONOR.

16         I THINK -- I THINK IT'S STILL A QUESTION OF LAW, THE

17    INDEFINITENESS, AND LIKE MANY OF THE PATENT QUESTIONS IN LAW,

18    THERE ARE SUBSIDIARY FACTS.

19              AND I DON'T THINK WE HAVE AN OBJECTION TO HAVING THE JURY

20    SEE IT, AND THEN WE CAN WORK OUT YOUR VIEW ON THE ULTIMATE

21    DECISION BASED ON AN ADVISORY JURY.

22                   THE COURT:  OH, SO --

23                   MR. SUSSER:  THAT WILL BE OKAY.

24                   THE COURT:  SO IF BOTH SIDES WANT AN ADVISORY

25    VERDICT, THEN I WILL DO IT AND WE CAN SORT OF HASH OUT ON
```

```
 1    POST-TRIAL WHETHER IT'S A QUESTION OF LAW OR FACT OR A MIXED

 2    QUESTION.

 3         IS THAT WHAT YOU'D LIKE?

 4         MR. SUSSER:  I DON'T -- I DON'T SEE ANY PROBLEM WITH

 5    THAT.

 6         THE COURT:  OKAY.

 7         MR. SUSSER:  WE HAVEN'T REALLY STUDIED THESE

 8    PARTICULAR RAMIFICATIONS OF THE NAUTILUS CASE, BUT I THINK EVEN

 9    BEFORE NAUTILUS, THOSE ISSUES COULD BE SENT TO THE JURY WITH

10    THE OTHER -- THEY HAVE A COUPLE 112 ISSUES, SO --

11         THE COURT:  ALL RIGHT.  SO YOU'RE -- I MEAN, IF YOU

12    ALL WANT TO GET A JURY TO RENDER AN ADVISORY VERDICT AND BOTH

13    SIDES ARE FINE WITH THAT, THEN I WILL DO IT.

14         BUT IF ONE SIDE OBJECTS, I WANT TO KNOW.

15         MR. SUSSER:  DO YOU WANT TO TAKE A LOOK BACK AT

16    NAUTILUS?

17         (DISCUSSION OFF THE RECORD BETWEEN ALL COUNSEL.)

18         MR. CORDELL:  YOUR HONOR, IF I COULD MAKE A

19    SUGGESTION?  IT SOUNDS LIKE THE PARTIES SHOULD GET TOGETHER AND

20    DISCUSS THIS A BIT FURTHER.  I DON'T THINK EITHER SIDE HAS

21    REALLY PLEADED IT IN SOME OF THE SUBMISSIONS THAT WE'VE MADE

22    AND IT PROBABLY MAKES THE MOST SENSE FOR US TO GET TOGETHER AND

23    TALK IT THROUGH.

24         THE COURT:  WELL, BUT THIS NEEDS TO BE RESOLVED

25    BEFORE YOU HAVE TO DO YOUR EXHIBIT LIST, RIGHT, BECAUSE THAT
```

```
 1    COULD IMPACT, COULD IMPACT YOUR WITNESSES.  THAT'S WHY THIS

 2    NEEDS TO BE RESOLVED SOONER IF THAT'S THE CASE.

 3         I -- YOU KNOW --

 4             MR. SUSSER:  WE CAN WORK QUICK ON THIS.  WE REALLY

 5    HAVEN'T PUT OUR HEADS TOGETHER TOO HARD ON THIS PARTICULAR

 6    QUESTION.  SO WE CAN GET -- READ THE CASE AND FIRST THING NEXT

 7    WEEK WE SHOULD BE ABLE TO WORK TOGETHER ON THIS, RIGHT?

 8             MR. CORDELL:  YES.

 9             THE COURT:  WELL, I MEAN, NO OFFENSE, BUT I DON'T

10    WANT TO DO ANY MORE WORK ON THIS CASE.  I WANT TO SEE IF YOU'RE

11    GOING TO SETTLE OR NOT.

12             MR. SUSSER:  YES.

13             THE COURT:  I'VE ALREADY, YOU KNOW, ISSUED DAUBERTS,

14    SUMMARY JUDGMENTS, RULED ON MOTIONS IN LIMINE, AND I'M READY TO

15    RULE ON THE REST.

16         I DON'T WANT TO KEEP THIS STRINGING ALONG FOR A CASE THAT

17    MAY NOT EVEN GO TO TRIAL.  SO --

18             MR. SUSSER:  WELL, IF YOU -- IF IT HAS TO BE NOW,

19    WE'LL CONSENT TO THE ADVISORY --

20             THE COURT:  ADVISORY VERDICT?

21             MR. SUSSER:  BECAUSE THAT'S WHAT THEY WANT AND, YOU

22    KNOW, YOU CAN DO IT, I THINK, IF YOU WANT.  RIGHT?  SO THERE'S

23    NO PROHIBITION THAT I'M AWARE OF, SO I -- IF THAT'S WHAT YOU

24    WANT --

25             THE COURT:  ALL RIGHT.  THEN WE'LL DO IT.
```

```
 1            MR. SUSSER:  OKAY.

 2            THE COURT:  I MEAN, I -- YOU KNOW, I'M ACTUALLY

 3    INCLINED THE OTHER WAY, BUT --

 4            MR. SUSSER:  WELL, THEN, WE'LL GO WITH YOU THAT WAY,

 5    JUDGE.

 6        (LAUGHTER.)

 7            MR. SUSSER:  I'M JUST TRYING TO MAKE YOUR LIFE AS

 8    EASY AS POSSIBLE, YOU KNOW, WHEN IT'S NOT A SUBSTANTIAL,

 9    MATERIAL IMPACT ON MY CLIENT.

10        I JUST -- WHATEVER YOU THINK IS BEST UNDER THE

11    CIRCUMSTANCES.  IF YOU THINK IT'S TOO CONFUSING AN ISSUE GIVEN

12    ALL THE OTHER THINGS, THEN LET'S JUST HAVE YOU DECIDE IT.

13        I DON'T KNOW IF NAUTILUS MADE THINGS MORE OR LESS

14    CONFUSING FOR ALL OF US, BUT --

15            MR. CORDELL:  WELL, WE DO THINK IT'S --

16            THE COURT:  I MEAN, I'M HAPPY TO TRY IT THIS WAY OF

17    GETTING AN ADVISORY VERDICT.  I -- YOU KNOW, I --

18        WERE YOU GOING TO SAY SOMETHING?

19            MR. CORDELL:  I WAS JUST GOING TO SAY A COMPLETE

20    RECORD, I THINK, WOULD INFORM THE ISSUE, YOUR HONOR.  I THINK

21    THAT NAUTILUS GAVE US A LOT TO THINK ABOUT AND DEAL WITH, AND A

22    COMPLETE RECORD WOULD BENEFIT THE COURT, AS WELL AS THE JURY.

23    YOU'LL TAKE THE ADVISORY VERDICT, YOU'LL HAVE ALL OF THE

24    INFORMATION IN FRONT OF YOU AND ACCEPT OR REJECT THE JURY'S

25    VERDICT AS YOU SEE FIT.
```

1          THE COURT:  WHERE DID DR. RYSAVY HAVE AN

2    INDEFINITENESS OPINION IN HIS REPORT?  DID HE HAVE ONE?

3          MR. CORDELL:  WE WERE DISCUSSING THAT, YOUR HONOR.

4    WE -- BECAUSE NAUTILUS CAME OUT AFTER THE EXPERT REPORTS, WE DO

5    NOT HAVE A LOT OF EXPLICIT EXPERT SUPPORT FOR THE ISSUE, AND

6    ONE OF THE THINGS WE WERE DEBATING HERE AT COUNSEL TABLE IS

7    WHETHER ANY OF US HAD THE TEMERITY TO ASK YOUR HONOR TO ALLOW

8    US TO SUPPLEMENT A BIT ON THAT ISSUE.

9          MR. SUSSER:  THEY RAISED IT IN THEIR MARKMAN

10   POSITIONS AND YOU TREATED IT AND SAID THAT YOU WEREN'T GOING TO

11   RULE ON IT, SO -- BUT IT'S NOT -- SO THEY WERE AWARE OF

12   INDEFINITENESS ARGUMENTS.  THEY JUST DIDN'T PUT IT IN THEIR

13   EXPERT REPORT WHEN THEY HAD THE CHANCE.

14         THE COURT:  UM-HUM.

15         MR. SUSSER:  YOU SAID IT WASN'T APPROPRIATE TO BE

16   PART OF THE -- SOMETIMES JUDGES RULE ON INDEFINITENESS IN THE

17   CONTEXT OF CLAIM CONSTRUCTION.  OF COURSE THEY DO.

18      AND YOU DECIDED NOT TO GRANT ANY MOTION FOR INDEFINITENESS

19   THAT MIGHT HAVE BEEN PART OF THEIR MARKMAN PROCEEDINGS.

20      BUT THEY WERE CERTAINLY AWARE OF THE INDEFINITENESS

21   DEFENSE PRIOR TO THE RYSAVY REPORT.

22         MR. CORDELL:  THE MARKMAN WAS A WHILE BACK, YOUR

23   HONOR, AND I APOLOGIZE ABOUT THIS, BUT I THINK MR. SUSSER MAY

24   BE INFLATING THE 112(1) ISSUE WITH THE INDEFINITENESS ISSUE.

25      IN ANY EVENT, WE HAVE THE BENEFIT OF NAUTILUS NOW AND THE

1    ISSUES HAVE CHANGED A BIT.  WE'RE MORE THAN HAPPY TO HAVE OUR

2    EXPERT PUT IN A VERY SHORT SUPPLEMENT, DR. RYSAVY PUT IN A VERY

3    SHORT SUPPLEMENT.

4        BUT WE ALSO THINK THAT THE ISSUE AND THE -- THE

5    INDEFINITENESS OF THESE TERMS WILL BECOME MORE APPARENT AS WE

6    DEVELOP THE RECORD, AS THE WITNESSES DEBATE THE INFRINGEMENT

7    ISSUES, AND THE DIFFICULTY WITH WHICH THEY HAVE OF APPLYING

8    THIS LANGUAGE TO THE TECHNOLOGY, THAT WE WILL ELUCIDATE THE

9    INDEFINITENESS ISSUE WITH OR WITHOUT EXPERT SUPPORT.

10        THE COURT:  LET ME HEAR, WHAT'S YOUR POSITION,

11    MR. SUSSER, ON WHETHER THEY SHOULD BE ALLOWED TO SUPPLEMENT

12    POST-NAUTILUS?

13        MR. SUSSER:  ABSOLUTELY NO, AND THE FUNDAMENTAL

14    REASON IS THAT, HAVING READ NAUTILUS, I DON'T THINK IT CHANGED

15    ANYTHING AS FAR AS LOOKING AT A CLAIM ELEMENT THAT THEY'VE BEEN

16    LOOKING AT FOR A LONG TIME AND REACHING THE CONCLUSION THAT

17    IT'S TOO FUZZY TO BE UNDERSTOOD.

18        NAUTILUS MIGHT HAVE CHANGED THE LANGUAGE OF THE STANDARD,

19    BUT MUCH HAS BEEN WRITTEN BY REALLY SMART LAWYERS THAT SAY

20    NOTHING IS REALLY GOING TO CHANGE.  IT'S JUST A DIFFERENT WAY

21    OF PUTTING -- IT'S "REASONABLE CERTAINTY" INSTEAD OF "INSOLUBLY

22    AMBIGUOUS."

23        THE COURT:  OH, I DISAGREE.  YOU THINK THAT

24    "INSOLUBLY AMBIGUOUS" IS THE SAME AS "REASONABLE CERTAINTY"?

25        MR. SUSSER:  IT'S NOT THE SAME, BUT COMMENTERS THAT

```
 1        I'VE READ HAVE SAID THEY'RE NOT SURE IF THE STANDARD IS REALLY

 2     LOWERED OR NOT.

 3            BUT I THINK THAT --

 4                THE COURT:  WELL, IF IT WAS THE SAME, THERE WOULD BE

 5     NO NEED TO CHANGE THE LANGUAGE, RIGHT?

 6                MR. SUSSER:  THIS IS TRUE.

 7                THE COURT:  IF THE SUPREME COURT SAID "INSOLUBLY

 8     AMBIGUOUS, PERFECT," THERE WOULD BE NO NEED TO COME UP WITH

 9     "REASONABLE CERTAINTY."

10                MR. SUSSER:  THE CONSENSUS, I THINK, IS THAT THE

11     STANDARD IS LOWERED.  BUT I'VE READ COMMENTS AND QUESTIONING --

12                THE COURT:  IT IS LOWERED.

13                MR. SUSSER:  YEAH, YOU'RE IN THE MAJORITY.

14         THE OTHER THING I THINK IS I THINK -- I MEAN, WE HAVE

15     THINGS THAT WE'D LIKE TO SUPPLEMENT, TOO, IN OUR EXPERT

16     REPORTS.  WE ALL MAKE -- YOU KNOW, WE ALL COME UP WITH THINGS

17     AFTER WHERE, AT THIS POINT, WE SAY, OH, WE SHOULD HAVE PUT THIS

18     IN THERE.

19         WE'D LIKE TO SUPPLEMENT ON SOME THINGS AND DIDN'T, TOO.

20     THEY CAME IN WITH THEIR LAST REPORT WITH A LOT OF STUFF IN IT

21     THAT WE NEVER GOT A CHANCE TO SUPPLEMENT IN RESPONSE TO THE NEW

22     THINGS THEY RAISED IN THEIR REBUTTAL REPORT.

23         YOU KNOW, IT'S GOT TO STOP AT SOME POINT.

24         AND THEY'VE HAD THIS PATENT SINCE JULY 2011 WHEN WE

25     BROUGHT SUIT.  I DON'T THINK THAT THE CHANGE IN STANDARD ALL OF
```

1    A SUDDEN MADE AN INVALID PATENT, UNDER CLEAR -- A VALID PATENT,

2    UNDER THE CLEAR AND CONVINCING STANDARD, NOW IS INVALID BY THAT

3    CASE LAW.  IT'S JUST NOT THAT MAGNITUDE OF A CASE CHANGE.

4         THE COURT:  WHAT DO YOU HAVE, IF YOU DON'T HAVE

5    DR. --

6         AM I PRONOUNCING IT RIGHT, RYSAVY?

7         MR. CORDELL:  RYSAVY.

8         THE COURT:  -- RYSAVY, IF YOU DON'T HAVE THAT

9    TESTIMONY, WHICH IT SOUNDS LIKE YOU DON'T, YOU DON'T HAVE IT IN

10   HIS EXPERT REPORT, WHAT DO YOU HAVE THAT'S EVIDENCE OF HIS

11   TESTIMONY?

12        MR. CORDELL:  I'LL ASK MR. GREEN TO ADDRESS THAT,

13   YOUR HONOR, BECAUSE HE KNOWS THAT REPORT BETTER THAN I DO.

14        THE COURT:  OKAY.

15        MR. GREEN:  YOUR HONOR, SO WHAT WE WOULD HAVE, AND

16   THAT WAS THE REASON THAT MR. CORDELL RAISED THE ISSUE OF

17   SUPPLEMENTING THE EXPERT REPORT, AND WITHOUT TRYING TO BE GLIB,

18   HE JUST DIDN'T HAVE A CRYSTAL BALL.  HE DIDN'T KNOW WHAT THE

19   NAUTILUS OPINION WOULD SAY.

20     SO IT WOULD HAVE BEEN IMPOSSIBLE TO HAVE DR. RYSAVY COME

21   IN AND OPINE ON THESE ISSUES OF MIXED FACT AND LAW, ON WHETHER

22   THE TERMS RECITED IN THE PATENTS THAT GPNE HAS ASSERTED ARE

23   SUPPORTED, WITH SOME REASONABLE CERTAINTY, BY THE SPECIFICATION

24   OF THE PATENTS.

25        THERE'S JUST NO WAY THAT WE COULD HAVE HAD A WHOLESOME

```
 1      DISCLOSURE BY DR. RYSAVY, BY PETER RYSAVY RATHER, ON THE ISSUE

 2      OF INVALIDITY.  WE DIDN'T HAVE THE NAUTILUS CASE.

 3          UNDER INSOLUBLY AMBIGUOUS, WE MADE OUR CHOICES.  WE

 4      ABSOLUTELY DID, YOUR HONOR.

 5          I THINK YOUR HONOR HAS CORRECTLY FLAGGED THE STANDARD IS

 6      DIFFERENT.  WE'RE JUST IN A NEW PLACE.

 7              MR. SUSSER:  YOUR HONOR, MAYBE, YOU KNOW, IF COUNSEL

 8      COULD EXPLAIN WHAT DELTA IN THE STANDARD HAS CHANGED ABOUT WHAT

 9      CLAIM LIMITATION WENT FROM LUCID TO UNCERTAIN, I'D -- I THINK

10      IT WAS A CHANGE IN STANDARD.

11          BUT IT'S NOT LIKE THE FESTO CASES IN THE OLD DAYS WHERE IT

12      COMPLETELY CHANGED IT, IT OPENED UP A PRECLUSION OF DOCTRINE OF

13      EQUIVALENTS WHERE, BY AMENDMENT, WHERE THERE WAS NONE AT ALL

14      BEFORE.

15          THIS ISN'T -- IT'S A SLIGHT CHANGE IN STANDARD OF PROOF.

16          BUT WHEN YOU LOOK AT A CLAIM ELEMENT AND YOU SAY THIS

17      DOESN'T MAKE SENSE IN LIGHT OF THE SPECIFICATION, THAT SORT OF

18      FACTUAL ANALYSIS BY A PATENT LAWYER, OR ITS EXPERT, HASN'T

19      CHANGED BECAUSE THE STANDARD WENT DOWN A STITCH.  IT DIDN'T GO

20      DOWN FROM BEYOND A REASONABLE DOUBT TO PREPONDERANCE.

21              MR. GREEN:  SO, YOUR HONOR, THIS IS STARTING -- GO

22      AHEAD, PLEASE.

23              THE COURT:  LET ME DO THIS.  WE'RE GOING TO DO SOME

24      OF THE MOTIONS AND THEN I'D LIKE TO TAKE A BREAK AND THEN COME

25      BACK AND FINISH UP.
```

```
1          SO LET ME THINK ABOUT THIS ONE.  THIS ONE I -- I MEAN, I

2     CAN TELL YOU WHAT MY INCLINATION IS.  MY INCLINATION IS IF IT

3     WASN'T IN YOUR EXPERT REPORT, THE TIME HAS PASSED.  WE'RE

4     POST-SUMMARY JUDGMENT, WE ARE POST-DAUBERTS, WE'RE AT THE

5     PRETRIAL CONFERENCE.  WE'RE POST, YOU KNOW, MOTIONS IN LIMINE

6     RULINGS.  IT'S TOO LATE TO SUPPLEMENT.

7          AND BECAUSE THERE'S THIS SORT OF EVIDENTIARY ISSUE ABOUT

8     WHAT WAS PREVIOUSLY PRODUCED IN DISCOVERY AND WHAT WASN'T, I

9     THINK IF WE PRESENT IT TO THE JURY, IT'S GOING TO GET MESSY IN

10    TERMS OF A LOT OF EVIDENTIARY OBJECTIONS.

11         SO I'M INCLINED TO JUST LET YOU DO IT IN A JMOL MOTION,

12    BUT LET ME THINK ABOUT THIS BECAUSE I DO THINK THE SUPREME

13    COURT'S STANDARD IS MUCH LOWER THAN WHAT WAS PREVIOUSLY THE

14    CASE.

15              MR. GREEN:  YOUR HONOR, WE WOULD AGREE WITH THAT.

16     AND IF I MAY LEAVE YOU WITH ONE THOUGHT AS YOU TAKE YOUR BREAK

17     TO CONSIDER IT AND WE TAKE OURS?

18              THE COURT:  YEAH.

19              MR. GREEN:  IT IS THAT IF WE HAD FILED EXPERT REPORTS

20     APPLYING THE PREVIOUSLY EXISTING INSOLUBLY AMBIGUOUS STANDARD,

21     THEN ALL THAT WOULD BE GONE.  I WOULD BE STILL BE HERE IN THE

22     EXACT SAME POSITION WITHOUT AN EXPERT REPORT OR EVIDENCE

23     APPLYING THE CORRECT STANDARD TO RESOLVE THIS INDEFINITENESS

24     ISSUE.

25          IT'S NO ONE'S FAULT, YOUR HONOR, THAT THE STANDARD HAS
```

```
 1    CHANGED IN THE INTERIM PERIOD BETWEEN SUBMISSION OF EXPERT

 2    REPORTS AND THE PASSAGE OF THE SUMMARY JUDGMENT DEADLINE.  IT'S

 3    JUST WHERE WE ARE.  THE LAW EVOLVES AND THAT'S LIFE.

 4         THE COURT:  WELL, I MEAN, THAT'S WHY I'M -- YOU KNOW,

 5    MY NATURAL INCLINATION IS NO, NO, NO, NO.

 6      BUT BECAUSE THERE'S A SUPREME COURT DECISION, I DO THINK,

 7    ON INDEFINITENESS, IT'S, YOU KNOW, PROBABLY A GAME CHANGER IN

 8    SOME WAYS.

 9         MR. GREEN:  THANK YOU, YOUR HONOR.  THAT WOULD BE THE

10    POSITION THAT WE WOULD HAVE AS WELL.

11      BUT WE'RE CERTAINLY WILLING TO GO MULL THIS OVER IN OUR

12    MINDS DURING THE BREAK, AS I KNOW YOU WILL AS WELL, AND WE CAN

13    TAKE IT UP LATER.

14         THE COURT:  OKAY.  WHY DON'T WE DO THIS:  WHY DON'T

15    WE DO TWO MOTIONS IN LIMINE AND THE DAUBERTS -- I MEAN THREE

16    MOTIONS IN LIMINE AND THE DAUBERTS, AND THEN I WANT TO TAKE A

17    BREAK, AND THEN WE'LL HANDLE THE LAST MOTION IN LIMINE AND THEN

18    I THINK WE'RE DONE.

19      SO I'M HOPING WE CAN BE DONE BY 1:45 TODAY.  WE'LL SEE.

20         MR. GREEN:  UNDERSTOOD.  THANK YOU.

21      OKAY.  LET'S GO TO THE -- WE'LL COME BACK TO THIS

22    INDEFINITENESS ISSUE.  I HAVE TO THINK ABOUT IT.

23         MR. SUSSER:  I'M CONCERNED ABOUT TWO MORE EXPERT

24    REPORTS, TWO MORE DEPOSITIONS, MAYBE FIGHTS ABOUT THOSE.

25    IT'S -- IT SOUNDS LIKE IT COULD BE A PANDORA'S BOX TO ME.
```

```
 1              THE COURT:  NO, I HEAR YOU, AND I TOLD YOU BEFORE, MY

 2      NATURAL INCLINATION IS MOVE ON.  YOU KNOW, WHAT'S DONE IS DONE.

 3              BUT I -- YOU KNOW, I DO THINK WE HAVE A LITTLE BIT OF AN

 4      UNUSUAL SITUATION HERE IN THAT WE DO HAVE A SUPREME COURT

 5      DECISION THAT CHANGES THE STANDARD.  SO I JUST NEED TO THINK

 6      ABOUT IT.

 7              MR. SUSSER:  OKAY.

 8              THE COURT:  I DON'T -- I'M NOT SURE RIGHT NOW.

 9          OKAY.  LET'S GO TO APPLE'S MOTION IN LIMINE NUMBER 1,

10      THAT'S TO PRECLUDE EVIDENCE OR ARGUMENT ABOUT SUCCESSFUL

11      RE-EXAM RESULTS.

12          LET ME ASK MY QUESTIONS AND THEN I WILL TELL YOU WHAT MY

13      TENTATIVE THOUGHTS ARE.

14          I WAS GOING TO ISSUE A RULING ON THIS, BUT I REALIZED THE

15      LANGUAGE OF HOW YOU WORD IT IS REALLY COMPLICATED.

16          SO -- WELL, MAYBE I SHOULD GIVE YOU MY TENTATIVE AND THEN

17      ASK YOU THE QUESTIONS AND THAT MIGHT PUT THE QUESTIONS IN

18      CONTEXT.

19          SO IF THERE IS A FINAL PTO DECISION ON A RE-EXAM, THEN I

20      THINK THAT SHOULD BE ADMITTED AND ANYTHING THAT WAS SAID DURING

21      THAT FILE HISTORY, EITHER BY THE PTO OR BY THE PATENT OWNERS,

22      SEEMS FAIR GAME.

23          IF IT'S A NON-FINAL RE-EXAM PTO DETERMINATION, THEN I

24      THINK THERE'S ENOUGH CASE LAW THAT THAT SHOULD NOT COME IN.

25              NOW, THE HARDER QUESTION IS, WHAT HAPPENS TO PATENT
```

```
 1        OWNER'S STATEMENTS THAT WERE MADE DURING THAT RE-EXAM, EVEN

 2        THOUGH THE RE-EXAM IS NOT FINAL?

 3             I'M ALMOST INCLINED TO ALLOW THE STATEMENT IN BY THE

 4        PATENT OWNER, BUT NOT GET INTO OVERALL, YOU KNOW, WHAT

 5        HAPPENED, WHAT'S THE CURRENT STATUS OF A NON-FINAL RE-EXAM.

 6             BUT THEN THE QUESTION IS, THEN DO YOU NEED TO GET IN THE

 7        PTO EXAMINER'S STATEMENTS TO PUT THE PATENT OWNER'S STATEMENTS

 8        IN CONTEXT?  OTHERWISE IT MIGHT NOT MAKE SENSE.

 9             THEN ANOTHER ISSUE IS WHAT HAPPENS WITH, FOR EXAMPLE, THE

10        '492 PATENT WHEN ONE OF THE ASSERTED CLAIMS IS AFFIRMED AND THE

11        OTHER ONE IS REJECTED?  I THINK IT SHOULD BE IT EITHER ALL IS

12        COMING IN OR IT'S ALL NOT COMING IN.

13             BUT I'M NOT GOING TO ALLOW GPNE TO SAY, HEY, LOOK, ONE

14        ASSERTED CLAIM, THAT'S AFFIRMED, IT'S NOT GOING TO BE APPEALED,

15        THEREFORE, WE SHOULD BE ABLE TO PRESENT THAT, BUT THEN SAY, BUT

16        WE'RE GOING TO NOT DISCLOSE TO THE JURY THE ONE CLAIM THAT'S

17        BEEN REJECTED.

18             IT JUST DOESN'T SEEM RIGHT TO ME TO HAVE IT -- IT EITHER

19        NEEDS TO BE ALL IN OR ALL OUT.  THAT'S MY IMPRESSION.  OKAY?

20             NOW, MY OTHER QUESTIONS ARE IF THE RE-EXAMS DO COME IN IN

21        ANY FORM, THEN I DO THINK THE JURY NEEDS TO BE TOLD THAT GPNE

22        SUED RIM, THAT RIM FILED FOR THESE EXAMINATIONS, THAT RIM

23        ENTERED INTO A SETTLEMENT WITH GPNE AND IS NO LONGER

24        PARTICIPATING.

25             I MEAN, I THINK THEN THE CONTEXT OF WHY, YOU KNOW, THIS
```

```
 1    RE-EXAM IS NOT BEING EFFECTIVELY PROSECUTED BY ANYONE ANYMORE,

 2    I THINK THAT THAT SHOULD COME IN.

 3         SO THAT -- THOSE ARE MY TENTATIVE THOUGHTS, AND MAYBE YOU

 4    CAN SEE WHY I WAS NOT ABLE TO GIVE YOU A RULING, BECAUSE IT'S

 5    VERY MESSY.

 6         SO WHY DON'T WE DO THEM ONE BY ONE.

 7         LET ME FIRST ASK, FOR THE '492 PATENT WHERE ONE ASSERTED

 8    CLAIM IS AFFIRMED AND ONE IS REJECTED AND, YOU KNOW, GPNE IS

 9    NOT GOING TO APPEAL THE AFFIRMANCE, BUT PROBABLY WILL APPEAL

10    THE REJECTION, WHAT ARE YOUR THOUGHTS?  I THINK IT'S ALL IN OR

11    ALL OUT.  I THINK IT'S UNDULY UNFAIR TO JUST BE ABLE TO GET ONE

12    IN AND NOT THE OTHER.

13              MR. BUMGARDNER:  YOUR HONOR, LET ME INTRODUCE

14    STEVEN HARTSELL FROM MY FIRM.

15              THE COURT:  OKAY.

16              MR. BUMGARDNER:  STEVEN IS AN ASSOCIATE, AND OUTSIDE

17    OF A CLAIM CONSTRUCTION HEARING OR TWO, THIS IS HIS FIRST TIME

18    TO ARGUE A MOTION.

19              THE COURT:  OH, FANTASTIC.

20              MR. HARTSELL:  GOOD AFTERNOON, YOUR HONOR.

21         SO TO ANSWER YOUR QUESTION, OUR POSITION WOULD BE THAT

22    IT'S EITHER ALL IN OR ALL OUT.  WITH RESPECT TO THE '492

23    PATENT, I THINK IT'S FAIR THAT IF WE BRING IT ALL IN, WE CAN

24    TELL THE JURY THAT, YOU KNOW, THE PTO HAS AFFIRMED ONE, BUT

25    THEY HAVEN'T AFFIRMED THE OTHER.
```

1        WE DON'T THINK THAT IT'S RIGHT TO SELECTIVELY PULL THE

2   INFORMATION, SO WE WILL AGREE WITH YOU THAT IT EITHER ALL COMES

3   IN -- WE WOULD PREFER IT ALL TO COME IN.

4           THE COURT:  OKAY.  LET ME HEAR FROM MR. CORDELL.

5           MR. CORDELL:  WELL, CERTAINLY THAT WOULD BE OUR

6   PREFERENCE, YOUR HONOR, THAT IF IT'S NOT ALL COMING IN, THEN

7   NONE OF IT SHOULD COME IN.

8        AND IF MY COMMENTS ARE REALLY CONFINED TO JUST THAT ISSUE,

9   THAT'S ALL I PROBABLY NEED TO SAY ABOUT THAT.  IT SOUNDS LIKE

10  WE'RE IN AGREEMENT.

11          THE COURT:  OKAY.  NOW, TELL ME WHAT -- YOU KNOW,

12  BECAUSE THIS IS AN ISSUE WHERE WE MIGHT GET SOME MORE

13  INFORMATION IN THE INTERVENING MONTHS, I -- OR DO YOU DISAGREE?

14  IS THERE LIKELY TO BE ANY FINALITY TO -- I MEAN, SEPARATE FROM

15  THE '954, ARE WE LIKELY TO GET ANY MORE INFORMATION BEFORE

16  OCTOBER?

17          MR. CORDELL:  I THINK THAT THE COURT'S COMMENTS

18  REGARDING RIM INFORM THAT A BIT, SO, FOR EXAMPLE, THE '954

19  WOULDN'T BE FINAL TODAY BUT FOR THE FACT THAT RIM HAS SETTLED

20  AND HAS WITHDRAWN.

21          THE COURT:  RIGHT.

22          MR. CORDELL:  AND WE PRESUME WILL NOT APPEAL.

23          THE COURT:  RIGHT.

24          MR. CORDELL:  BUT THAT IS A CONSEQUENCE.

25       AND WE DO THINK IT'S IMPORTANT THAT WE TELL THE JURY THAT

```
1        STORY SO THEY UNDERSTAND THAT THIS WAS RIM'S DOING, RIM HAS

2        ENTERED AN AGREEMENT WITH THE PLAINTIFF AND, THEREFORE, DIDN'T

3        PURSUE IT.

4             WHEREAS APPLE WAS NOT A PART OF THE PROCEEDING AT ALL, AND

5        THAT SEEMS TO BE AN IMPORTANT PART OF THE CONTEXT THAT IF WE'RE

6        GOING TO SUFFER THE RE-EXAMS, THE JURY NEEDS TO UNDERSTAND THE

7        FULL LENGTH AND BREADTH OF WHAT HAPPENED.

8             THE COURT:  OKAY.  LET'S HANDLE THE RIM ISSUE.  I

9        THINK IF THESE RE-EXAMS ARE COMING IN, THAT RIM CONTEXT AND WHY

10       THEY'RE NO LONGER PARTICIPATING NEEDS TO BE DISCLOSED TO THE

11       JURY.

12            DO YOU HAVE ANY OBJECTION TO THAT?

13                 MR. HARTSELL:  NO, YOUR HONOR.

14                 THE COURT:  OKAY.  ALL RIGHT.  SO THEN THE CONTEXT --

15       THE RIM LITIGATION PROCEDURAL HISTORY WILL BE ADMITTED IF THE

16       RE-EXAMS COME IN.

17            NOW, LET ME ASK MR. CORDELL, DO YOU AGREE THAT THE '954

18       RE-EXAM IS EFFECTIVELY FINAL BECAUSE, YOU KNOW, AS YOU SAID,

19       RIM'S NOT GOING TO APPEAL AND GPNE IS NOT GOING TO APPEAL AN

20       AFFIRMANCE.  SO --

21                 MR. CORDELL:  AS A PRACTICAL MATTER, I THINK IT IS.

22            I DON'T THINK, AS A LEGAL MATTER, IT IS.  I DON'T THINK

23       THE APPEALS PERIODS HAVE RUN, AND SO YOU COULD HAVE, I

24       SUPPOSE -- I CAN'T IMAGINE WHAT IT IS, BUT --

25                 THE COURT:  YEAH.
```

```
1              MR. CORDELL:  -- THERE COULD BE SOMETHING THAT COULD

2     OCCUR.  RIM COULD BREACH ITS AGREEMENT NOT TO PROSECUTE THE

3     RE-EXAMINATIONS, FOR EXAMPLE.

4         BUT I DO THINK THE COURT IS CORRECT.  I THINK, FOR ALL

5     INTENTS AND PURPOSES, IT'S FINAL.

6              THE COURT:  OKAY.  BUT WHEN DOES THAT -- WHEN DOES

7     THE RIGHT OF APPEAL NOTICE, WHEN DOES THAT EXPIRE?

8              MR. CORDELL:  WHEN I LEARNED THAT RIM HAD SETTLED AND

9     HAD AGREED NOT TO PURSUE IT ANYMORE, I STOPPED LOOKING, YOUR

10    HONOR.  SO I APOLOGIZE.  I DON'T KNOW.

11             THE COURT:  ALL RIGHT.  SO -- BUT YOU WOULD AGREE

12    THEN THIS IS EFFECTIVELY A FINAL DETERMINATION ON THE '954?

13             MR. CORDELL:  I THINK THE WAY THAT GPNE PUT IT, IT

14    WAS TANTAMOUNT TO A FINAL.  I SUPPOSE THAT'S PROBABLY THE RIGHT

15    WAY TO PUT IT.

16        IT IS -- CERTAINLY BY TRIAL -- AGAIN, I DON'T RECALL THE

17    TIME TABLE OF THE PTO, BUT MY GUESS IS THAT BY TRIAL IT WILL

18    ACTUALLY BE FINAL, FINAL.

19             THE COURT:  IT'LL BE FINAL.  OKAY.  WELL, IF IT'S

20    FINAL, THEN I THINK IT SHOULD COME IN.  OKAY?

21             MR. CORDELL:  COULD I BE HEARD JUST BRIEFLY ON THAT?

22             THE COURT:  ALL RIGHT.  GO AHEAD.

23             MR. CORDELL:  IT REALLY RELATES TO A COUPLE OF

24    ISSUES.

25        NUMBER ONE IS THE FUNDAMENTAL ISSUE THAT WE'RE TALKING
```

1    ABOUT HERE, WHY DO THE PARTIES WANT TO TELL THE JURY ABOUT A

2    RE-EXAM?

3        AND THE ANSWER IS THEY WANT THE JURY TO ABDICATE ITS

4    RESPONSIBILITIES UNDER 282 TO DETERMINE VALIDITY.  WE ARE HERE

5    FOR THE FIRST TIME -- WE WEREN'T PART OF THAT RE-EXAM.  WE ARE

6    HERE FOR THE FIRST TIME PRESENTING OUR EVIDENCE AND OUR

7    ARGUMENTS TO THIS JURY ASKING THEM TO FIND INVALIDITY.

8        WE SEE PLAINTIFFS ALL OVER THE COUNTRY -- ONE OF THE CASES

9    THAT WE DEBATED BACK IN FORTH IN THE PAPERS WAS THE CALLAWAY

10   CASE, AND THAT WAS ONE OF MY PARTNERS, FRANK SCHERKENBACH, WHO

11   WAS A PLAINTIFF AND TOLD THE JURY THAT THESE PATENTS HAD BEEN

12   BLESSED MORE THAN ONCE, AND HE GOT IN TROUBLE.  THE COURT

13   DIDN'T DENY HIM RELIEF ON THAT BASIS, BUT ADMONISHED HIM NOT TO

14   DO IT AGAIN.

15       AND THE ONLY DEFECT THE FEDERAL CIRCUIT FOUND IN THAT

16   EXCHANGE WAS THAT THE DEFENDANT IN THAT CASE DIDN'T OBJECT

17   DURING THE OPENING STATEMENT WHEN MR. SCHERKENBACH TOLD THE

18   JURY THAT THESE HAD BEEN BLESSED MORE THAN ONCE.

19       IT IS A FUNDAMENTALLY PREJUDICIAL STATEMENT TO MAKE.

20       IT IS ALREADY INCORPORATED IN THE STANDARD OF PROOF

21   BECAUSE WE HAVE THE CLEAR AND CONVINCING STANDARD BORNE OUT OF

22   THE PRESUMPTION OF VALIDITY.

23       THAT IS THE CREDIT THE PATENTEE GETS FOR HAVING GONE

24   THROUGH THE PATENT OFFICE AND THE EXPERTISE OF THE PATENT

25   OFFICE AND THE ADMINISTRATIVE DEFERENCE WE GIVE TO THE PATENT

1    OFFICE.

2         REENFORCING IT A SECOND TIME BY TELLING THEM THAT THEY

3    HAVE BEEN BLESSED YET AGAIN IS SORT OF DOUBLE DIPPING.  THEY

4    NOT ONLY GET THE PRESUMPTIONS THAT COME ALONG WITH THE

5    ADMINISTRATIVE DEFERENCE, BUT NOW THEY'RE TRUMPETING IT TO THE

6    JURY.

7         AND WE ALL KNOW FROM EXPERIENCE THAT OFTEN TIMES JURORS

8    WILL SIMPLY STOP LISTENING.  THEY WILL SIMPLY NO LONGER LOOK AT

9    THE VALIDITY ISSUE SERIOUSLY IF THEY THINK, WELL, SOME PATENT

10   EXAMINER SOMEWHERE, WHO DOES THIS FOR A LIVING, HAS LOOKED AT

11   THIS NOT ONCE, BUT TWICE.

12        AND I WOULD ONLY ADD ONE OTHER POINT TO THAT, AND THAT IS

13   THAT WE JUST WEREN'T THERE.  THE PLAINTIFF POINTS TO EVIDENCE

14   THAT THEY SAY WAS PRESENTED TO THE PATENT OFFICE AND IT'S THE

15   SAME EVIDENCE WE'RE RELYING ON.

16        BUT THAT'S NOT QUITE RIGHT.  IT'S NOT QUITE RIGHT FOR A

17   COUPLE OF DIFFERENT REASONS.

18        NUMBER ONE, THE MIX OF THE STANDARDS THAT WERE PRESENTED

19   WAS DIFFERENT.

20        AND, IMPORTANTLY, THE CHARACTERIZATION OF THAT EVIDENCE

21   WAS DIFFERENT.

22        WE WEREN'T THERE.  WE WEREN'T ALLOWED TO POINT THE

23   EXAMINER TO PARTICULAR PARTS OF THE STANDARD OR THE MOULY

24   REFERENCE THAT WE THINK ACTUALLY HAS AN IMPACT ON THESE CLAIMS.

25        AND SO IT IS, WE BELIEVE, FUNDAMENTALLY PREJUDICIAL TO

```
 1       TELL THIS JURY, LOOK, VALIDITY HAS BEEN DONE TWICE ON MUCH OF

 2       THE SAME EVIDENCE, OR WHATEVER STATEMENTS THAT THEY ULTIMATELY

 3       MAKE.

 4            SO WE WOULD ASK THAT NONE OF THAT COME IN, AT LEAST NOT

 5       THE FUNDAMENTAL FACT OF THE RE-EXAMS.

 6            THE COURT:  CAN WE GO TO SOME OF THE OTHER QUESTIONS?

 7            MR. CORDELL:  SURE.

 8            THE COURT:  LET ME ASK MR. HARTSELL, DO YOU THINK

 9       THAT THE PATENT OWNER'S STATEMENTS IN THE NON-FINAL RE-EXAMS

10       SHOULD BE ADMITTED?

11            MR. HARTSELL:  YES.  WE BELIEVE, LIKE WE SAID

12       EARLIER, IT'S EITHER GOING TO ALL COME IN OR IT'S NOT.

13            SO, FOR EXAMPLE, I BELIEVE IT'S THE '492 PATENT WHERE ONE

14       HAS ALREADY BEEN ALLOWED BY THE PATENT OFFICE AND IT IS

15       TANTAMOUNT TO BEING FINAL AT THIS POINT.  YES, WE BELIEVE THE

16       STATEMENT SHOULD COME IN FOR BOTH.

17            THE COURT:  WELL, BUT WHAT ABOUT FOR THE ONE WHERE

18       IT'S REJECTED?  REMEMBER, IT'S ALL IN OR ALL OUT.

19            MR. HARTSELL:  YES.  AND OUR POSITION IS IT'S ALL IN

20       OR ALL OUT AND WE WOULD PREFER IT ALL BE IN.

21            THE COURT:  OH, OKAY.  SO YOU'RE FINE, IF WE LET IT

22       IN, TO LET IN ALL OF THE PTO'S STATEMENTS AND ALL OF THE PATENT

23       OWNER'S STATEMENTS TO COME IN?

24            MR. HARTSELL:  YES.  AND WE THINK THAT'S IMPORTANT

25       BECAUSE, LOOKING AT APPLE'S BRIEF, THEY WANT TO USE THOSE
```

1      STATEMENTS.  THEY PUT IN THEIR FOOTNOTE THAT THEY WANT TO BE

2      ABLE TO USE THIS.

3          BUT THEY ALSO WANT TO BE ABLE TO SHIELD THE JURY FROM THE

4      EVIDENCE THAT THE PATENT OFFICE CONSIDERED, SOME OF THE VERY

5      SAME ART THAT APPLE IS RELYING ON, INCLUDING THE REPORT OF

6      THEIR EXPERT WHICH HAS BEEN SUBMITTED AND SOME OF THESE CLAIMS

7      HAVE BEEN ALLOWED.

8          AND THE FEDERAL CIRCUIT HAS SAID THAT JURIES ARE

9      ENTITLED -- THIS GOES TO THE WEIGHT OF THE EVIDENCE AND WE

10     THINK THAT IT'S IMPORTANT FOR THE JURY TO HAVE THE FULL PICTURE

11     AND THEY'LL WEIGH THE EVIDENCE ACCORDINGLY.

12         WE'RE NOT -- APPLE SEEMS TO SAY THAT WE'RE GOING TO TRY TO

13     ABDICATE OUR RESPONSIBILITY TO PUT ON, YOU KNOW, TO PROVE --

14     WE'RE JUST GOING TO ABDICATE TO THE EXAMINERS.

15         THAT'S NOT THE CASE.  THIS IS JUST ONE DATA POINT THAT WE

16     THINK THE JURY IS ENTITLED TO CONSIDER.

17             THE COURT:  YOU KNOW, I DID HAVE THAT QUESTION,

18     MR. CORDELL.  IF -- YOU KNOW, IT DOES SEEM AS IF APPLE DOES

19     WANT TO USE -- I'M NOT CLEAR ON EXACTLY WHAT -- BUT AT LEAST

20     SOME INFORMATION FROM THE RE-EXAMS.  WHAT IS IT EXACTLY THAT

21     YOU WANT TO USE?

22             MR. CORDELL:  WE WANT TO USE STATEMENTS THAT WERE

23     MADE IN THE RE-EXAMS, AS STATEMENTS ARE MADE IN ANY PROSECUTION

24     HISTORY, WHERE THE PATENTEE AND THE PATENT EXAMINER ARE

25     AGREEING ABOUT THE CONFLUENCE OF TECHNOLOGY AND WORDS.  OVER

```
1      AND OVER AGAIN DURING THE PROSECUTION, SOMEONE WILL SAY, WHEN

2      I'M CLAIMING A VEHICLE, I DON'T MEAN AN AIRPLANE, AND THAT

3      MEANS YOU CAN'T TAKE YOUR PATENT CLAIM FOR AN AUTOMOBILE AND

4      APPLY IT TO AN AIRPLANE.

5          THAT'S ALL WE'RE ASKING.  THAT'S ALL WE'RE SUGGESTING.

6          AND THOSE ARE -- THAT'S RUN OF THE MILL PROSECUTION

7      HISTORY.  WE DON'T HAVE TO TELL THE JURY WHERE IT COMES FROM

8      PER SE.  IT'S SIMPLY A FACT THAT, DURING PROSECUTION, GPNE SAID

9      X, OR THE PATENT EXAMINER SAID Y, AND THAT BEARS ON THE

10     DECISIONS THEY HAVE TO MAKE WITHOUT ASKING THEM TO DEFER, ONE

11     WAY OR THE OTHER, TO THE PATENT OFFICE'S ULTIMATE FINDINGS.

12         AND IF I COULD ASK JUST ONE QUESTION, YOUR HONOR, BECAUSE

13     I WANT TO BE CLEAR.

14             THE COURT:  YEAH.

15             MR. CORDELL:  IS MR. HARTSELL SUGGESTING THAT WE THEN

16     WOULD BE ALLOWED TO TELL THE JURY THAT THE '267 PATENT HAS NOT

17     BEEN ALLOWED BY THE PATENT OFFICE?  SO IT IS STILL UNDER REVIEW

18     BY THE PATENT OFFICE UNDER THE ALL IN OR ALL OUT STANDARD?

19             MR. HARTSELL:  YES.

20             MR. CORDELL:  WELL, THAT --

21             THE COURT:  CAN WE REACH AN AGREEMENT HERE?  YOU

22     KNOW, I THINK IT -- WELL, YOU WANT TO RESPOND TO THAT?  THEY'RE

23     SAYING FINE.  THEY'RE SAYING FINE TO GETTING IN THE PATENT

24     OWNER STATEMENTS AND THE PTO CONTACTS, THE EXAMINER STATEMENTS

25     THAT PUT THE PATENT OWNER'S STATEMENTS IN CONTEXT.
```

```
1            MR. CORDELL:  THAT CERTAINLY HELPS AMELIORATE -- I

2    CAN'T SAY THAT WORD -- AMELIORATE SOME OF THE PREJUDICE BECAUSE

3    WE'LL TELL THEM THAT THERE'S MORE TO THE STORY HERE.

4            THE COURT:  OKAY.

5            MR. CORDELL:  BUT AGAIN, I GUESS FUNDAMENTALLY IT'S

6    OUR VIEW THAT THE STATEMENTS ARE FACTUAL STATEMENTS.  THEY WERE

7    MADE.

8        THE ULTIMATE DECISION OF A SEPARATE ADJUDICATORY BODY THAT

9    OPERATES UNDER DIFFERENT STANDARDS AND DIFFERENT RULES, HAD

10   DIFFERENT PARTIES, IF THIS WERE IN -- IF THIS WERE A PARALLEL

11   DISTRICT COURT PROCEEDING, WE WOULD SCREAM BLOODY MURDER ABOUT

12   TAKING THE JUDGMENT OF THAT SEPARATE CASE AND IMPORTING IT IN

13   FRONT OF A JURY BECAUSE WE WEREN'T PRESENT AND WE DIDN'T HAVE

14   AN OPPORTUNITY TO BE HEARD AND THERE'S NO DUE PROCESS THERE.

15       SO MUCH OF THOSE SAME CONCERNS PERVADE.

16           THE COURT:  UM-HUM.

17           MR. CORDELL:  HOWEVER, I DO TAKE THE '267 ALL IN OR

18   ALL OUT AS AT LEAST A GOOD STEP FORWARD.

19           MR. HARTSELL:  I ALSO THINK, THOUGH --

20           THE COURT:  YOU KNOW, MY ONLY CONCERN ABOUT -- I'M

21   SORRY.  I'M GOING TO LET YOU RESPOND, MR. HARTSELL.

22       MY ONLY CONCERN ABOUT WHAT YOU'RE PROPOSING, MR. CORDELL,

23   WILL LET US GET SOME OF THE PATENT OWNER'S STATEMENTS IN, BUT

24   THEN NOT THE ULTIMATE RESULT.

25       I JUST DON'T UNDERSTAND, IF YOU GET IN THE PATENT OWNER'S
```

1    STATEMENTS, GPNE HAS TO HAVE AN OPPORTUNITY TO BE ABLE TO REBUT

2    AND RESPOND TO THAT, SO THEY HAVE TO SAY, WELL, AFTER WE MADE

3    THAT STATEMENT, THEN THE EXAMINER DID X AND THIS IS WHAT -- I

4    MEAN, I CAN'T -- I CAN'T SEE A FAIR WAY TO SAY ONLY THIS COMES

5    IN, BUT ANY ULTIMATE CONSEQUENCE AND RESULT OF THAT DISCUSSION

6    IS EXCLUDED.

7        DO YOU SEE?

8        MR. CORDELL:  I UNDERSTAND THAT, YOUR HONOR, AND

9    THAT'S CERTAINLY A FAIR POINT.

10       BUT I THINK THERE'S A DEGREE THERE TO WHICH WE COULD, WE

11   CAN TAKE THE ANALYSIS.

12       SO THE QUESTION IS, HOW FAR DOWN THE CHAIN WOULD THEY NEED

13   TO GO TO PROVIDE THAT CONTEXT?  IT COULD BE THEY NEED TO SAY,

14   WELL, BUT IN THE NEXT OFFICE ACTION, THE EXAMINER SAID, OKAY,

15   THEN I GUESS THE PRIOR ART IS DISTINGUISHABLE, AND THEY CAN

16   PRESENT THAT.

17       THE COURT:  UM-HUM.

18       MR. CORDELL:  THAT'S A LITTLE BIT DIFFERENT FROM

19   SAYING THE PATENT OFFICE LOOKED AT IT ALL OVER AGAIN AND

20   BLESSED IT YET AGAIN AND THEREFORE YOU, LADIES AND GENTLEMEN,

21   SHOULDN'T LIFT A FINGER.

22       THE COURT:  ALL RIGHT.  WELL, ANOTHER OPTION IS FOR

23   ME TO JUST DENY THIS WITHOUT PREJUDICE AND LET YOU FILE

24   INDIVIDUAL OBJECTIONS TO, YOU KNOW, SPECIFIC EXCERPTS OF ANY

25   FILE HISTORIES FOR THESE RE-EXAMINATIONS.

1          YOU KNOW, THAT'S GOING TO BE A LOT MORE WORK FOR ALL OF US

2     AND IT SEEMS MESSIER, ESPECIALLY SINCE THERE SEEMS TO BE SOME

3     CONSENSUS THAT IT'S EITHER ALL IN OR ALL OUT ACROSS THE

4     DIFFERENT PATENTS.

5              MR. HARTSELL:  I AGREE, YOUR HONOR.  I THINK IT WOULD

6     BE MORE -- TO GO BACK TO YOUR POINT, I THINK IT'S IMPORTANT, IF

7     APPLE'S GOING TO PICK CERTAIN STATEMENTS AND WE DON'T KNOW

8     EXACTLY WHAT THEY ARE --

9              THE COURT:  YEAH.

10             MR. HARTSELL:  -- ULTIMATELY WHATEVER STATEMENTS THEY

11    PUT IN FRONT OF THE JURY TO SAY THIS CLAIM WAS INVALID, IF THE

12    EXAMINER ULTIMATELY ALLOWED IT OVER THAT, WE THINK THAT'S

13    IMPORTANT BECAUSE THE EXAMINERS ARE EXPERTS IN THIS AREA.  THEY

14    ARE PERSONS OF SKILL IN THE ART.  WE THINK THAT'S IMPORTANT FOR

15    THE JURY, FOR THE JURY TO KNOW AND THEY CAN WEIGH THAT EVIDENCE

16    ACCORDINGLY.

17         IT SEEMS LIKE APPLE WANTS TO BE ABLE TO GET THE STATEMENTS

18    IT WANTS IN, AND IF IT DOESN'T WORK TO THEIR FAVOR, THEY STILL

19    WANT TO HIDE THE ULTIMATE CONCLUSION AND IT GOES BACK TO IT'S

20    EITHER ALL IN OR IT'S NOT.

21             THE COURT:  OKAY.

22         MR. CORDELL:  HAVING SERVED AS A PATENT EXAMINER,

23    YOUR HONOR, I WOULD LIKE TO DISPUTE THAT POINT ABOUT EXPERTISE

24    OF THE EXAMINERS, BUT I WON'T.

25         BUT I WOULD -- I WOULD COMMEND THAT THE I4I DECISION,

1    SIMPLY THE COURT'S ANALYSIS THERE, WHERE THEY DISCUSS SOME OF

2    THE AMICI THAT'S PUT IN BRIEFING TALKING ABOUT THE FACT THAT

3    THE JURY SIMPLY ABDICATES THEIR ROLE WHEN THEY HEAR THE

4    ULTIMATE CONCLUSION, AND I DON'T THINK WE HAVE TO GO THAT FAR.

5         I THINK THAT WE COULD CHART A PATH THROUGH IT, BUT I

6    UNDERSTAND IT WOULD BE A DIFFICULT, PERHAPS A MORE DIFFICULT

7    ANALYSIS.

8              THE COURT:  UM-HUM.

9              MR. CORDELL:  BUT IN ANY EVENT, I BET IN OPENING WE

10   HEAR THE ULTIMATE CONCLUSION.  I BET THAT THAT WOULD BE A

11   FIXTURE, SO WE WILL ADDRESS THIS ISSUE RIGHT AT THE OUTSET.

12        I'M NOT HOPING FOR IT AND I DON'T MEAN TO SUGGEST IT, BUT

13   I BET THEY WILL OPEN ON IT.

14             THE COURT:  YEAH.  WELL, YOU KNOW, I REALLY DISLIKE

15   MOTIONS IN LIMINE BECAUSE IT'S SO HARD TO MAKE BLANKET GENERAL

16   RULINGS WITHOUT KNOWING WHAT EXACTLY THE PIECE OF INFORMATION

17   THAT'S BEING OBJECTED TO IS.

18        BUT FROM ALL THAT I'M HEARING, I DEFINITELY AM GOING TO

19   DENY THIS MOTION.

20        THE ONLY QUESTION IS -- WELL, I MEAN, I GUESS I CAN'T DO

21   IT WITH PREJUDICE SINCE YOU MAY HAVE ADDITIONAL OBJECTIONS

22   ANYWAY ON 403 GROUNDS OR SOMETHING ELSE.

23             MR. CORDELL:  AND WE COULD LOOK AT THEIR OPENING

24   SLIDES AND PERHAPS THAT WILL HELP CRYSTALIZE THE ISSUE.

25             THE COURT:  THAT'S FINE.  OKAY.  SO I'M GOING TO DENY

```
 1        THIS.  I'M JUST GOING TO SAY DENIED.  I'M NOT GOING TO SAY

 2    WITHOUT PREJUDICE BECAUSE I'M NOT ENCOURAGING YOU, BECAUSE IT

 3    SEEMS LIKE WE HAVE SOME CONSENSUS.  I'M NOT ENCOURAGING YOU TO

 4    FIGHT UNNECESSARY FIGHTS.  BUT THAT'S DENIED.

 5        OKAY.  LET'S GO TO MIL NUMBER 5 AND THEN I'D LIKE TO WRAP

 6    THIS UP IN AN HOUR AND A HALF SO MS. SHORTRIDGE CAN TAKE A

 7    BREAK.

 8        HOW IS THE $86 INCREMENTAL PRICE DIFFERENCE FOR A CELLULAR

 9    TECHNOLOGY FOR IPAD 2 RELEVANT TO MR. DANSKY'S NEW DAMAGES

10    REPORT?  IS IT RELEVANT AT ALL?

11            MR. MUELLER:  IT'S NOT.  THERE'S TWO WAYS OF LOOKING

12    AT THIS, YOUR HONOR.

13            THE COURT:  OKAY.

14            MR. MUELLER:  THERE'S THE UNIT LEVEL ANALYSIS AND

15    THEN THE AGGREGATE ANALYSIS OF PROFITS AND REVENUES.

16            THE COURT:  OKAY.

17            MR. MUELLER:  AND IT IS TRUE, AS GPNE NOTED IN THEIR

18    RESPONSE TO OUR MOTION IN LIMINE, THAT MR. DANSKY DOES AN

19    ANALYSIS OF UNIT LEVEL PROFIT MARGINS.

20            THE COURT:  ARE YOU TALKING ABOUT THE $40?  OR, NO,

21    THAT'S THE CONVOYED SALES.  WHAT ARE YOU TALKING ABOUT?

22            MR. MUELLER:  HE ACTUALLY DOES THE -- I'M NOT SURE IF

23    THE EXACT DOLLAR FIGURE IS SOMETHING I CAN SAY IN OPEN COURT,

24    BUT THERE'S A SECTION OF HIS OPINION THAT COMPARES TWO

25    DIFFERENT MODELS OF APPLE PRODUCTS --
```

```
 1              THE COURT:  UH-HUH.

 2              MR. MUELLER:  -- AND ATTEMPTS TO ISOLATE WHAT HE

 3    VIEWS AS THE VALUE OF CELLULAR FUNCTIONALITY, AND WE THINK HE'S

 4    WRONG.

 5              BUT I THINK FOR PURPOSES OF TODAY'S MOTION, THE KEY POINT

 6    IS THAT IT'S A UNIT LEVEL ANALYSIS.

 7              AND THAT UNIT LEVEL ANALYSIS IS NO REASON WHATSOEVER FOR

 8    GPNE TO OFFER EVIDENCE OF APPLE'S TOTAL REVENUES OR TOTAL

 9    PROFITS FOR MOBILE DEVICES.  IT'S JUST SIMPLY UNNECESSARY.

10              SO THE FIRST PROFFERED JUSTIFICATION FOR PRESENTING THAT

11    EVIDENCE TO THE JURY --

12              THE COURT:  I'M SORRY.  I'M A LITTLE BIT CONFUSED.

13              MR. MUELLER:  SURE.

14              THE COURT:  I THOUGHT THAT YOUR OBJECTIONS WERE BASED

15    ON THE CONVOYED SALES AND BASED ON THE SMALLEST SALEABLE

16    PRACTICING UNIT.

17              MR. MUELLER:  SO THERE'S --

18              THE COURT:  NOW YOU'RE SAYING THERE'S A THIRD ONE?

19              MR. MUELLER:  NO.  I'M SORRY, YOUR HONOR.  THERE'S --

20    THE MOTION IN LIMINE AND THE DAUBERT ARE RELATED.

21              THE COURT:  YEAH, THEY SEEM OVERLAPPING.

22              MR. MUELLER:  THEY DO.  THEY ABSOLUTELY OVERLAP.

23              THE COURT:  OKAY.

24              MR. MUELLER:  THE MOTION IN LIMINE SEEKS TO PRECLUDE

25    GPNE FROM OFFERING EVIDENCE TO THE JURY OF APPLE'S TOTAL
```

```
 1        PROFITS AND TOTAL REVENUES ON MOBILE DEVICES.

 2                THE COURT:  BUT THOSE INCLUDE THE IPHONES AND THE

 3        FOLLOW-ON PRODUCTS?

 4                MR. MUELLER:  YES.

 5                THE COURT:  OKAY.  SO THAT'S WHAT I'M CONSIDERING THE

 6        CONVOYED SALES.

 7                MR. MUELLER:  THAT'S EXACTLY RIGHT.  YOU'RE 100

 8        PERCENT RIGHT.

 9                THE COURT:  OKAY.

10                MR. MUELLER:  THERE'S TWO JUSTIFICATIONS THEY'VE

11        OFFERED FOR WHY THEY SHOULD BE ALLOWED TO PRESENT THIS

12        INFORMATION.

13            THE FIRST IS MR. DANSKY'S UNIT LEVEL ANALYSIS, AND AS I

14        MENTIONED, WE BELIEVE THAT UNIT LEVEL ANALYSIS IS REALLY BESIDE

15        THE POINT.

16            THAT'S NO REASON FOR THEM TO HAVE TO OFFER AGGREGATE

17        PROFITS, AGGREGATE REVENUES FOR ALL DEVICES SOLD.

18            HE COULD CONDUCT THAT ANALYSIS AND PRESENT IT TO THE JURY

19        PURELY IN THE CONTEXT OF A UNIT, A SINGLE UNIT.

20            SO THERE'S -- WE'RE NOT DENYING THAT HE CAN MAKE THAT

21        CASE.  WE THINK HE'S INCORRECT IN THE DETAILS, BUT FOR

22        ADMISSIBILITY PURPOSES, HE CAN MAKE THAT CASE.

23                THE COURT:  WHICH CASE?

24                MR. MUELLER:  THE UNIT LEVEL ANALYSIS.  THERE'S NO --

25        THAT UNIT LEVEL ANALYSIS COULD BE PRESENTED TO THE JURY WITHOUT
```

1        ANY REFERENCE AT ALL TO TOTAL REVENUES AND TOTAL PROFITS.

2              THE COURT:  THERE SEEMS TO BE TWO UNIT LEVEL NUMBERS.

3        ONE IS THE INCREMENTAL CONVOYED SALES UNIT NUMBER EARNED BY

4        APPLE, AND THE OTHER IS THE PER UNIT CALCULATION OF PROFIT.

5        WHICH ONE ARE YOU TALKING ABOUT?

6              MR. MUELLER:  THAT'S THE SECOND JUSTIFICATION THEY

7        OFFER.  THE SECOND JUSTIFICATION THEY OFFER IS CONVOYED SALES,

8        AND THEY SAY THAT HIS DISCUSSION OF TOTAL PROFITS AND REVENUES

9        IN THE CONTEXT OF CONVOYED SALES IS RELEVANT TO HIS CALCULATION

10       OF A ROYALTY RATE.  SO THAT'S THE SECOND REASON THEY'VE

11       OFFERED.

12          WE THINK THAT'S ALSO WRONG AND THAT OVERLAPS WITH THE

13       DAUBERT MOTION.  WE DON'T THINK IT'S A PROPER CONVOYED SALES

14       OPINION AS A MATTER OF LAW AND AS A METHODOLOGICAL MATTER.

15          SO IF THAT OPINION WERE KNOCKED OUT -- AND I'M HAPPY TO

16       ADDRESS THE REASONS WHY, YOUR HONOR, WHICH ARE DAUBERT MOTION

17       GROUNDS -- BUT IF THAT CONVOYED SALES OPINION WAS REMOVED FROM

18       THE CASE, THERE'S NOTHING LEFT TO SUPPORT PRESENTATION TO THE

19       JURY OF TOTAL PROFITS AND TOTAL REVENUES.

20             THE COURT:  ALL RIGHT.  WELL, I MAY NOT HAVE FULLY

21       UNDERSTOOD YOUR MOTION.  LET ME JUST TELL YOU WHAT MY TENTATIVE

22       WAS AND THEN MAYBE YOU CAN CLARIFY.  I THINK I MAYBE DIDN'T

23       FULLY COMPREHEND YOUR VARIOUS OBJECTIONS.

24          SO IT SEEMS THAT GPNE SHOULD BE ABLE TO ARGUE THAT THEY

25       SHOULD GET A HIGHER ROYALTY FROM APPLE AS COMPARED TO SAMSUNG

```
 1      AND HTC BECAUSE APPLE HAS GREATER REVENUES BECAUSE OF THESE

 2      FOLLOW-ON PRODUCTS THAT USE THE CELLAR TECHNOLOGY, SO THAT THEY

 3      SHOULD AT LEAST BE ABLE TO PRESENT THAT CONCEPT THAT THERE

 4      SHOULD BE A DIFFERENCE IN THE ROYALTY RATES BECAUSE APPLE MAKES

 5      MORE MONEY FROM THE TECHNOLOGY BECAUSE IT HAS ALL THESE

 6      ADDITIONAL PRODUCTS.  OKAY.  DO YOU AGREE WITH THAT?

 7              MR. MUELLER:  I AGREE WITH THAT IF THEY HAD A PROPER

 8       CONVOYED SALES OPINION, AND THEY DON'T, AND THAT'S THE SUBJECT

 9       OF OUR DAUBERT MOTION.

10              THE COURT:  OKAY.  LET ME GO ANOTHER STEP FROM THAT.

11          SO WE MIGHT -- I THINK I DISAGREE WITH YOU ON WHETHER THE

12      CONVOYED SALES SHOULD BE COMPLETELY ELIMINATED.  I DO THINK

13      THEY SHOULD BE ABLE TO ARGUE THAT BECAUSE APPLE HAS THESE

14      ADDITIONAL PRODUCTS AND ADDITIONAL SALES AND ADDITIONAL

15      REVENUE, THEY SHOULD PAY MORE.

16          BUT WHAT I DON'T THINK SHOULD BE ALLOWED ARE THESE ACTUAL

17      PER UNIT NUMBERS BECAUSE I THINK IT HAS THE SAME FLAW THAT

18      MR. DANSKY'S ORIGINAL REPORT HAD IN THAT IT DOESN'T APPORTION

19      THE VALUE OF THIS TECHNOLOGY AND KIND OF DOES THE SAME THING,

20      JUST SAYING THIS IS ALL BASED ON THE CELLULAR TECHNOLOGY, OUR

21      PATENTS ARE REALLY IMPORTANT TO CELLULAR TECHNOLOGY, THEREFORE,

22      IT SHOULD BE THIS MUCH MONEY.

23          SO I WOULD NOT ALLOW -- I DON'T KNOW.  ARE YOU ASKING FOR

24      THESE NUMBERS TO BE SEALED?  I --

25              MR. MUELLER:  I MEAN, IT DEPENDS ON WHICH NUMBER IT
```

```
1     IS.  THE ULTIMATE ROYALTY REQUEST HAS ALREADY BEEN DISCUSSED IN

2     THE PREVIOUS HEARING.

3               THE COURT:  HOW ABOUT THESE PER UNIT NUMBERS?

4               MR. MUELLER:  I THINK SOME OF THEM PROBABLY ARE --

5               THE COURT:  MARGINAL PROFIT, MARGINAL PROFIT NUMBER,

6     MARGINAL REVENUE, INCREMENTAL REVENUE NUMBER.  OKAY.  I WON'T

7     SAY THEM, BUT I HOPE THERE'S AGREEMENT ABOUT WHICH NUMBERS

8     WE'RE TALKING ABOUT.

9          SO I WOULD EXCLUDE THE ACTUAL NUMBERS, BUT I DON'T THINK

10    THAT GPNE REALLY NEEDS THEM TO JUST -- THE ACTUAL NUMBERS,

11    WHICH I DON'T THINK HAVE SUFFICIENT 702 SUPPORT, BUT THEY CAN

12    STILL GET IN THE GENERAL CONCEPT THAT THE ROYALTY RATES SHOULD

13    BE DIFFERENT.

14              MR. MUELLER:  CAN I --

15              THE COURT:  YEAH.

16              MR. MUELLER:  SURE.  I'M SORRY.

17              THE COURT:  AND THAT WOULD INCLUDE BOTH THE TOTAL

18    REVENUE NUMBERS, BUT ALSO THESE PER UNIT CALCULATIONS, BECAUSE

19    I DON'T THINK -- YOU KNOW, IT'S NOT IN DR. DINAN'S REPORT AND

20    THERE'S NO TECHNOLOGICAL SUPPORT FOR ANY APPORTIONMENT, AND IF

21    THERE'S NO APPORTIONMENT, WE'RE KIND OF BACK TO THE SAME

22    ARGUMENT ON THE DAUBERT MOTION.  I'M NOT GOING TO ALLOW IT

23    BECAUSE I THINK UNDER 702 IT'S NOT RELIABLE.

24              MS. PEDEN:  IF I CAN HAVE A MINUTE TO RESPOND TO

25    THAT?  I'M SURE THAT WE'RE TALKING ABOUT THE MOTION IN LIMINE
```

```
 1        AS OPPOSED TO THE DAUBERT MOTION IN THE FIRST INSTANCE.

 2            SO I THINK THE COURT STARTED WITH THE QUESTION OF WHETHER

 3    OR NOT THE $86 PER UNIT AMOUNT IN THE ORIGINAL OPINION IS STILL

 4    RELEVANT, AND IT IS.  THAT'S THE PER UNIT ANALYSIS THAT AS

 5    FAR -- YOU KNOW, THAT CLEARED DAUBERT LAST TIME, AND I DON'T

 6    THINK THAT IT SERIOUSLY --

 7            THE COURT:  WELL, NO.  THE $86 WAS NOT CHALLENGED

 8    BECAUSE APPLE SAID WE THINK THIS IS A BOGUS NUMBER THAT

 9    MR. DANSKY JUST CAME UP WITH, SO WE DON'T THINK IT MEANS

10    ANYTHING.  THAT'S WHY THEY DIDN'T SEEK TO SEAL IT.

11            MS. PEDEN:  RIGHT.  SO THAT NUMBER --

12            THE COURT:  SO TO SAY THAT NUMBER PASSED DAUBERT --

13            MS. PEDEN:  I'M JUST SAYING THAT WE --

14            THE COURT:  -- I THINK THAT'S NOT EXACTLY ACCURATE.

15       BUT GO AHEAD.

16            MS. PEDEN:  BUT WE ADDRESSED THAT NUMBER AND HOW

17    MR. DANSKY GOT TO THAT NUMBER IN THE LAST DAUBERT.

18        AND MY, MY PROBLEM WITH APPLE'S MOTION IN LIMINE NUMBER 5

19    IS IT STARTS BY SAYING -- THE VERY FIRST SENTENCE SAYS THAT

20    GPNE SHOULDN'T BE ABLE TO OFFER ANY ARGUMENT ABOUT TOTAL

21    REVENUE OR PROFITS.

22        WELL, THAT $86 NUMBER IS THE PROFIT PREMIUM THAT YOU GET

23    WHEN YOU START BY COMPARING THE SALE OF AN IPAD WITH WI-FI AND

24    CELLULAR VERSUS ONE WITH JUST CELLULAR, SO THAT IT FALLS RIGHT

25    INTO THIS LANGUAGE OF REVENUES OR PROFITS, AND THAT'S A PER
```

1    UNIT PROFIT.

2         SO IT'S THE WORDING OF THE MOTION IN LIMINE THAT LED US,

3    IN OPPOSITION, TO SAY, WELL, WAIT A MINUTE.  ALL DAMAGES

4    CALCULATIONS HAVE TO HAVE A STARTING POINT.

5         AND OUR EXPERT IS SEVERELY HANDICAPPED IF HE CAN'T EXPLAIN

6    TO THE JURY WHAT HIS STARTING POINT IS.

7         SO ON THE SALE, WHAT APPLE CHARGES FOR AN IPAD, HE NEEDS

8    TO BE ABLE TO EXPLAIN WHAT THAT SALE IS TO GET TO HIS $86

9    NUMBER.

10         SO THAT'S, THAT'S THE PER UNIT PIECE OF OUR OBJECTION TO

11    THIS MOTION IN LIMINE.

12         SEPARATE AND APART FROM THE PER UNIT OBJECTION ARE AFTER

13    MR. DANSKY GETS HIS PER UNIT RATE, THEN THE COURT ASKED HIM TO

14    PROVIDE A SUPPLEMENTAL REPORT TO GIVE FURTHER ANALYSIS OF HOW

15    HE WOULD SET THE ROYALTY RATE, AND HIS SUPPLEMENTAL REPORT IS

16    FOCUSSED ON THE GEORGIA-PACIFIC FACTORS AND COMING TO A MORE

17    DELINEATED APPORTIONMENT.

18         WITHIN GEORGIA-PACIFIC FACTOR 6, WHICH SPECIFICALLY

19    ADDRESSES AND ALLOWS FOR CONSIDERATION OF CONVOYED SALES,

20    MR. DANSKY CONSIDERS THE FOLLOW-ON SALES THAT APPLE MAKES AND

21    HE -- IF YOU -- HIS EXPERT REPORT -- IN HIS SUPPLEMENTAL

22    REPORT, IF YOU -- AT PAGE 16, HE SAYS HE USES APPLE'S FINANCIAL

23    REPORTS AND HE COMPARES THE REVENUES IN ORDER TO ESTIMATE THE

24    PER DEVICE FOLLOW-ON REVENUE.

25         AND SO HE DOES A REGRESSION ANALYSIS, WHICH IS

 1    METHODOLOGICALLY SOUND, AND COMES UP WITH $40 PER UNIT AS AN

 2    ESTIMATE OF THE FOLLOW-ON SALES.

 3        HE TAKES OUT THE OPERATING -- HE APPLIES AN OPERATING

 4    MARGIN OF APPROXIMATELY 30 PERCENT, AND HE COMES TO AN

 5    APPROXIMATION OF $12 FOR EACH UNIT.

 6            THE COURT:  BUT THERE'S NO, THERE'S NO TECHNICAL

 7    ANALYSIS OF WHAT THE APPORTIONMENT IS OF THOSE FOLLOW-ON SALES

 8    OF THIS PATENTED TECHNOLOGY.  IT'S NOT IN DR. DINAN'S REPORT,

 9    SO WE'RE KIND OF BACK TO THE SAME DAUBERT MOTION HERE.

10        I MEAN, HE CAN'T JUST -- YOU KNOW, I COULD DO ALL KINDS OF

11    JUST, ALL KINDS OF STATISTICS, BUT IF I DON'T HAVE THE

12    TECHNICAL SUPPORT FOR WHAT THIS VALUE OF THIS TECHNOLOGY IS,

13    THEN THE STATISTICS DON'T ACTUALLY MATTER, RIGHT?

14            MS. PEDEN:  WELL, BUT --

15            THE COURT:  THERE'S NO APPORTIONMENT.

16            MS. PEDEN:  RIGHT, AND IF HE WERE INCLUDING THIS

17    DOLLAR AMOUNT IN SOME BASE, IF HE WAS ADDING $12 TO A ROYALTY

18    BASE OR PUTTING HIS ROYALTY BASE ON HOW MUCH APPLE MAKES FROM

19    SELLING ALL OF ITS ITUNES, THEN THAT WOULD FALL WITHIN THE

20    ENTIRE MARKET VALUE RULE THAT APPLE COMPLAINS ABOUT AND ALL OF

21    THE CASES ARE AMVR CASES.

22        BUT WHEN HE DOES HIS PER UNIT ANALYSIS, HE IS NOT USING

23    THE ROYALTY BASE.  HE IS NOT PULLING THIS $12 INTO HIS ROYALTY

24    BASE.  IT'S THE DISTINCTION RITE-HITE MAKES.  THIS IS NOT PART

25    OF THE ROYALTY BASE.  IT IS AN UPWARD ADJUSTMENT FACTOR THAT'S

1    USED IN THE CONTEXT OF SETTING THE ROYALTY RATE.

2         THE $12 DOESN'T GET LUMPED INTO ANY KIND OF A DAMAGES

3    NUMBER.  THE $12 IS HIS DATA POINT FOR MAKING THE CONCLUSION

4    THAT GEORGIA-PACIFIC FACTOR 6 ALLOWS AN UPWARD ADJUSTMENT --

5         THE COURT:  SO WHERE DOES HE SAY HOW THIS -- YOU PUT

6    THE NUMBER OUT THERE, $12 -- HOW IT RELATES TO PATENTED

7    TECHNOLOGY OTHER THAN JUST SAYING IT'S, YOU KNOW, UBIQUITOUS

8    DATA ACCESS?  WHERE DOES HE SAY HOW THAT NUMBER RELATES TO THE

9    PATENTED TECHNOLOGY?

10        MS. PEDEN:  HE SAYS IT IN HIS ORIGINAL EXPERT REPORT,

11   AND IF YOU'LL LET ME -- IF I MAY JUST GRAB MY -- ANOTHER THING

12   FROM MY DESK?

13        THE COURT:  WAS THE $12 CALCULATION IN THE ORIGINAL

14   EXPERT REPORT?

15        MR. MUELLER:  THIS VERSION OF THE CONVOYED SALES

16   OPINION, I DO NOT BELIEVE, WAS IN THE ORIGINAL REPORT.

17        AND I'LL LET COUNSEL FINISH HER PIECE BEFORE FULLY

18   REBUTTING IT, BUT THERE'S ABSOLUTELY NO APPORTIONMENT

19   WHATSOEVER, AND HE CONCEDED AS MUCH IN HIS DEPOSITION.

20        MS. PEDEN:  SO, YOUR HONOR, IN HIS ORIGINAL REPORT,

21   AROUND PAGE 63 HE TALKS ABOUT --

22        THE COURT:  OKAY.  WHERE IS THE DEPOSITION EXCERPT?

23   DO YOU HAVE IT?

24        MR. MUELLER:  THE DEPOSITION EXCERPT IS IN OUR

25   THREE-PAGE BRIEF, YOUR HONOR, WHERE HE ADMITTED HE HAD NOT DONE

1    ANY SORT OF NUMERICAL CALCULATION TO ISOLATE THE VALUE OF THE

2    PATENTED TECHNOLOGY AS DISTINCT FROM TWO THINGS:  ONE, THE

3    ENTIRE CELLULAR STANDARD, WHICH COULD BE USED FOR CELLULAR DATA

4    TRANSFER; AND THEN THERE'S A SECOND PROBLEM AS WELL.  MANY

5    FORMS OF DATA TRANSFER USE OTHER NON-CELLULAR NETWORKS,

6    INCLUDING WI-FI.  THAT'S AN INCREDIBLY POPULAR WAY OF

7    TRANSFERRING DATA.

8        SO HE SORT OF USES THIS PHRASE, "UBIQUITOUS DATA

9    TRANSFER," THROUGHOUT HIS REPORT, BUT IT HAS NO MEANING.

10        THAT COULD EQUALLY APPLY TO WI-FI, IT COULD EQUALLY APPLY

11   TO BLUETOOTH, IT COULD EQUALLY APPLY TO CELLULAR, IT COULD

12   EQUALLY APPLY TO A WIRED CONNECTION WITH A CABLE.

13        HE'S MADE NO EFFORT, NOR HAS DR. DINAN, TO DISTINGUISH

14   BETWEEN THESE DIFFERENT TYPES OF DATA TRANSFER TECHNOLOGIES AND

15   TO WEIGHT THEM.

16        IT'S JUST USING A PHRASE, UBIQUITOUS DATA TRANSFER, AND

17   SAYING THAT'S ENOUGH TO BRING IN TOTAL PROFITS AND TOTAL

18   REVENUES.  IT'S NOT.

19        AND IF I COULD MAKE ONE FINAL POINT, YOUR HONOR?  EVEN

20   WITHIN THE CELLULAR STANDARDS, THOSE ARE TENS OF THOUSANDS OF

21   PAGES LONG AND THEY'RE ACCUSING, AT MOST, TINY SLIVERS OF THEM.

22        SO THEY'VE MADE NO EFFORT TO SHOW THOSE TINY SLIVERS ARE

23   DRIVING THESE CONVOYED SALES, THESE ALLEGED CONVOYED SALES.

24   THAT'S NOT ENOUGH OF A METHODOLOGICAL CONNECTION BETWEEN THE

25   PATENTED TECHNOLOGY AND THESE ALLEGED CONVOYED SALES.

```
1            THE COURT:  LET ME LET MS. PEDEN, WHAT WAS THE

2    POINT -- WHAT IS THE PARAGRAPH OF THE ORIGINAL REPORT THAT YOU

3    WANTED ME TO LOOK AT?

4            MS. PEDEN:  IT'S AT PAGE 63 --

5            THE COURT:  DO I HAVE THAT FULL REPORT?

6            MS. PEDEN:  I BELIEVE YOU DO, YOUR HONOR.

7            THE COURT:  DID YOU ALL SUBMIT IT WITH THE --

8            MR. MUELLER:  I THINK WE DID, YEAH.

9            MS. PEDEN:  I BELIEVE IT WAS IN THE LAST ROUND OF

10   BRIEFING, BUT I'M HAPPY TO HAVE MY OFFICE SEND ANOTHER ONE.

11           THE COURT:  IT'S THE ORIGINAL REPORT, PAGE 63.  IS IT

12   A SPECIFIC PARAGRAPH NUMBER, PLEASE?

13           MS. PEDEN:  I DON'T HAVE THE SPECIFIC PARAGRAPH

14   NUMBER.

15           THE COURT:  OKAY.  BUT IF IT'S PAGE 63, WE CAN FIND

16   IT.

17           MS. PEDEN:  AND THEN IT'S ADDRESSED AGAIN IN PAGE 17

18   OF THE SUPPLEMENTAL REPORT, WHICH SORT OF REFERS BACK TO THE

19   ORIGINAL REPORT.

20       AND I THINK --

21           THE COURT:  OKAY.  I HAVE THAT IN FRONT OF ME, SO WHY

22   DON'T YOU TELL ME WHERE IT DOES THAT?  BECAUSE THIS IS WHAT I

23   SEE.  "IN MY OPENING REPORT" -- ACTUALLY, I DON'T THINK I SEE

24   ANYTHING ON PAGE 17 THAT WOULD PROVIDE THAT APPORTIONMENT.

25           MS. PEDEN:  YEAH.
```

1           MR. MUELLER:  AND, YOUR HONOR, I FOUND -- I HAVE THE

2     DEPOSITION QUOTE THAT WE PROVIDED IN THE BRIEFING.

3           THE COURT:  OKAY.

4           MR. MUELLER:  "QUESTION:  MY QUESTION IS, HAVE YOU

5     ATTEMPTED TO ISOLATE THE FRACTION OF THE DATA TRANSFER PROCESS

6     THAT GPNE ACTUALLY CLAIMS TO OWN AS DISTINCT FROM EVERYTHING

7     ELSE?

8         "ANSWER:  NO.

9         "QUESTION:  BUT, AGAIN, YOU, IN YOUR CALCULATION, DID NOT

10    TRY TO NUMERICALLY ISOLATE THE CONVOYED SALE VALUE OF THE

11    PATENT SPECIFICALLY; CORRECT?

12        "ANSWER:  NO."

13          AND HE WENT ON TO SAY, "I THINK THEORETICALLY I COULD HAVE

14    USED SOME SORT OF A PATENT COUNTING METHOD OR ONE OF THE

15    METHODS THAT WE, WE USE TO TRY TO ISOLATE THAT AMOUNT, BUT I

16    DID NOT DO THAT."

17          SO HE ADMITTED AT HIS DEPOSITION, HE DIDN'T DO EXACTLY THE

18    THING HE HAD TO DO TO OFFER A PROPER CONVOYED SALES OPINION.

19            THE COURT:  WAIT.  I THOUGHT HE DID DO A SIMILAR

20     PATENT COUNTING ANALYSIS LIKE MR. MEYER.

21            MR. MUELLER:  HE DID IN HIS CORE RATE SECTION.

22            THE COURT:  OKAY.

23            MR. MUELLER:  BUT NOT IN HIS, IN HIS IDENTIFICATION

24     OF THE VALUE OF THE CONVOYED, THE ALLEGED CONVOYED SALES

25     TECHNOLOGY.

```
 1            AND IT REALLY GOES TO THE FUNDAMENTAL METHODOLOGICAL

 2    PROBLEM WITH THAT SECTION OF HIS OPINION.  THERE'S NO TIE

 3    BETWEEN THE ALLEGED INVENTIONS AND THESE ALLEGED CONVOYED

 4    SALES.

 5            AND IN THE ABSENCE OF A TIE, IT'S AN IMPROPER OPINION.

 6                THE COURT:  ALL RIGHT.  LET ME ASK MS. PEDEN, I HAVE

 7    PAGE 17.  WHAT IS THE LINE?

 8                AND SHOW ME THE ORIGINAL REPORT.  YOU MUST HAVE IT.  DO

 9    YOU HAVE IT?  CAN YOU SHOW ME PAGE 63?

10                MS. PEDEN:  I ACTUALLY DON'T HAVE THE ORIGINAL REPORT

11    IN FRONT OF ME.

12                THE COURT:  OKAY.  WELL, I HAVE PAGE 17, SO YOU TELL

13    ME WHERE IT SAYS APPORTIONMENT.

14                MS. PEDEN:  SO 17 REFERS TO THE OPENING REPORT.

15                THE COURT:  OKAY.  THIS IS WHAT IT SAYS:  "IN MY

16    OPENING REPORT, I DESCRIBE THE MARKET ENVIRONMENT AT THE TIME

17    OF THE HYPOTHETICAL NEGOTIATION WITH APPLE IN JUNE 2009.  GPRS

18    EDGE STANDARDS WERE IN WIDE-SPREAD USE AND IMPORTANT TO PRODUCT

19    FUNCTIONALITY, AS THEY ARE TODAY, AND THE CARRIERS WOULD

20    CONTINUE TO REQUIRE BACKWARDS COMPATIBILITY TO THESE STANDARDS

21    UP TO THE PRESENT DAY."

22            IS THAT WHAT YOU WERE REFERRING TO?

23                MS. PEDEN:  YES, AND THAT HE --

24                THE COURT:  OKAY.

25                MS. PEDEN:  THAT -- IN THIS REPORT, HE'S REFERRING
```

```
 1        BACK A GREAT DEAL TO HIS ORIGINAL REPORT.

 2             AND THEN AT PAGE 3 OF HIS ORIGINAL REPORT, HE SAYS THAT

 3        THE PURCHASE AND USE AND EXPERIENCE PROVIDED BY THE ACCUSED

 4        IPHONE AND/OR IPAD IN THE CASE OF DOWNLOADED CONTENT AND

 5        CONNECTIVITY TO APPLE IN ITS APP STORE AND ITUNES AND SOME

 6        PORTION OF THESE SALES UNQUESTIONABLY MAKE DIRECT USE OF GPNE'S

 7        PATENTED TECHNOLOGY TO TRANSFER DATA FROM A CELLULAR NETWORK.

 8             THE COURT:  ALL RIGHT.  NOW, THIS GUY IS A DAMAGES

 9        GUY.  WHAT GIVES HIM THE EXPERTISE TO SAY THAT?

10             MS. PEDEN:  WELL, BECAUSE OF THE PERSPECTIVE THAT

11        HE'S LOOKING AT THIS FROM.

12             THE COURT:  UM-HUM.

13             MS. PEDEN:  HE'S NOT, AND I THINK HIS DEPOSITION

14        MAKES CLEAR, HE'S NOT OFFERING A TECHNICAL EXPERT OPINION.

15             WHAT HE IS SAYING IS FROM A DAMAGES PERSPECTIVE AND FROM

16        THE --

17             THE COURT:  YEAH, BUT WHAT YOU JUST SAID WAS A

18        TECHNICAL CONCLUSION, SO WHAT IS IT ABOUT HIS M.B.A. AND HIS

19        B.A. IN ECONOMICS AND POLITICAL SCIENCE THAT GIVES HIM THE

20        BASIS?

21             MS. PEDEN:  I THINK -- I DON'T THINK THAT HE HAS

22        ANYTHING IN HIS QUALIFICATIONS OR BACKGROUND THAT GIVES HIM THE

23        BASIS FOR THAT.

24             I THINK HE HAS SPOKEN WITH GPNE AND STUDIED THE DOCUMENTS

25        AND APPLE'S FINANCIAL DOCUMENTS AND FINANCIAL STATEMENTS THAT
```

```
 1    APPLE HAS SAID ABOUT WHAT DRIVES THE SALES OF ITUNES AND THE

 2    APPS AND HE IS, FROM A BUSINESS PERSPECTIVE, TRYING TO BE ABLE

 3    TO TELL THE JURY THAT APPLE'S BUSINESS MODEL IS VERY DIFFERENT

 4    THAN SAMSUNG'S BUSINESS MODEL AND IS VERY DIFFERENT THAN THE

 5    OTHER LICENSEES' BUSINESS MODEL IN THAT APPLE'S FINANCIALS SHOW

 6    THAT FOR EVERY DEVICE IT SELLS, IT RECEIVES FOLLOW-ON SALES

 7    FROM ITS ITUNES AND APPS, AND THAT BECAUSE OF THOSE FOLLOW-ON

 8    SALES, AT THE HYPOTHETICAL NEGOTIATION, APPLE WOULD HAVE PAID

 9    MORE FOR A LICENSE THAN SAMSUNG WOULD HAVE.

10          THE COURT:  BUT WHY DO YOU NEED THE SPECIFIC NUMBERS?

11    I'M -- I'M FINE WITH YOU MAKING THAT STATEMENT AND THEN HAVING

12    MR. DANSKY MAKE THAT STATEMENT, THAT THE RATES SHOULD BE

13    DIFFERENT BECAUSE THERE ARE THESE FOLLOW-ON SALES THAT GENERATE

14    MORE REVENUE.  THAT'S FINE.

15          BUT I DON'T FIND THAT THERE IS A SUFFICIENT BASIS FOR THE

16    SPECIFIC $12 NUMBER AND THIS OTHER NUMBER WHICH I WON'T

17    MENTION.  I MEAN, I DON'T THINK THAT THERE IS A, A -- THAT

18    THERE'S ANY TECHNICAL BASIS FOR THESE ALLOCATIONS OF DOLLARS

19    PER UNIT BECAUSE THERE'S NO APPORTIONMENT OF THE VALUE OF THIS

20    PATENTED TECHNOLOGY.

21          SO I'M NOT GOING TO LET THE NUMBERS COME IN, BUT I'LL

22    CERTAINLY LET THE POINT COME IN, THAT THE RATES SHOULD BE

23    DIFFERENT AND APPLE'S SHOULD BE HIGHER BECAUSE APPLE SELLS MORE

24    PRODUCTS AND MAKES MORE REVENUE AND SALE OFF OF THOSE

25    ADDITIONAL PRODUCTS.
```

1    MS. PEDEN:  RIGHT.  AND THEN MY CONCERN WOULD BE HE

2    OFFERS THAT TESTIMONY AT TRIAL AND APPLE CROSS-EXAMINES HIM

3    ABOUT THE FACT THAT HE HASN'T OFFERED A, A FINANCIAL BASIS FOR

4    HIS OPINION THAT IT WOULD BE HIGHER.

5        DO YOU SEE WHAT I'M SAYING?  HE -- THESE NUMBERS --

6        THE COURT:  THAT'S HIS OWN PROBLEM.  YOU SHOULD HAVE

7    HAD A TECHNICAL EXPERT DO SOME APPORTIONMENT OF THE VALUE OF

8    THIS TECHNOLOGY.  RIGHT?  I MEAN, YOU CAN'T HAVE AN M.B.A.

9    POLITICAL SCIENTIST JUST THROWING OUT THESE NUMBERS WITH NO

10   BASIS TO WHAT IS THE VALUE OF THIS TECHNOLOGY TO ALL OF THESE

11   OTHER PRODUCTS, WHICH I DON'T EVEN KNOW IF THEY'VE BEEN

12   ANALYZED.  I MEAN, HAS ANYONE EVEN ANALYZED ITUNES?

13       MS. PEDEN:  I THINK IT'S IMPORTANT, YOUR HONOR, THAT

14   HE IS NOT INCLUDING THIS $12 IN A ROYALTY BASE.  HE IS --

15       THE COURT:  YOU THINK IT IS OR IS NOT?

16       MS. PEDEN:  IT IS.  THIS $12 DOES NOT GO INTO A

17   ROYALTY BASE.  HE IS NOT CLAIMING DAMAGES FOR THIS $12.

18       WHAT HE IS DOING IS A FACTUAL MATTER, MAKING A CALCULATION

19   OF FACT FOR, IN HIS OWN MIND, TO FIGURE OUT HOW MUCH ADDITIONAL

20   SALES REVENUE APPLE MAKES OFF THESE DEVICES AND THEN, UNDER

21   FACTOR 6, HE JUST SIMPLY SAYS THAT BECAUSE OF THIS FOLLOW-ON

22   REVENUE, IT WOULD WORK AN UPWARD ADJUSTMENT.

23       THE COURT:  OKAY.  ALL RIGHT.

24       DO YOU WANT TO RESPOND?

25       MR. MUELLER:  SURE, BRIEFLY, YOUR HONOR.

1          JUST RESPECTFULLY, THAT ONLY UNDERSCORES HOW IMPROPER THIS

2    IS.  WHAT COUNSEL IS EFFECTIVELY SAYING IS HE'S NOT USING THAT

3    NUMBER IN SOME NUMERICAL WAY.  THAT'S TRUE.

4          AND HE'S NOT ARRIVING AT IT, AS YOUR HONOR HAS POINTED

5    OUT, THROUGH ANY PRINCIPLED ANALYSIS OF THE TECHNOLOGY.

6          WHAT THEY REALLY WANT TO DO IS JUST SHOW THE JURY SOME BIG

7    NUMBERS ABOUT PROFITS AND REVENUES WITHOUT ANY CONNECTION

8    BETWEEN THOSE NUMBERS AND THE ACTUAL CLAIMED INVENTIONS, AND

9    THAT'S IMPROPER.

10          MS. PEDEN:  THAT'S ABSOLUTELY NOT TRUE, YOUR HONOR.

11    WE WOULDN'T -- WE WOULDN'T BRING UP THIS NUMBER IN OPENING OR

12    IN CLOSING, AND NOR WOULD WE LINGER ON IT WITH MR. DANSKY'S --

13    WITH HIS DIRECT.

14          IT'S THE STARTING POINT OF HIS FACTOR 6 ANALYSIS.  ALL

15    MR. DANSKY NEEDS TO BE ABLE TO DO AT TRIAL IS SAY, I LOOKED AT

16    THE FOLLOW-ON REVENUE, I LOOKED AT THE NUMBER OF DEVICES, I DID

17    THIS REGRESSION ANALYSIS, I CAME TO THIS CONCLUSION, AND IT

18    JUST SIMPLY IS ANOTHER DATA POINT WHY THE ROYALTY RATE THAT

19    APPLE WOULD PAY WOULD BE HIGHER THAN THAT OF SAMSUNG OR THE

20    OTHER LICENSEES.

21          MR. MUELLER:  AND WE DON'T THINK THOSE NUMBERS HAVE

22    ANY CONNECTION AT ALL TO THE PATENTS.  HE FAILED TO DO THE

23    ANALYSIS.  DR. DINAN FAILED TO DO THE ANALYSIS.

24          THE COURT:  IS THERE SOME STIPULATION THAT YOU'RE

25    WILLING TO ENTER INTO THAT WILL -- I AGREE WITH GPNE THAT THEY

1   NEED TO BE ABLE TO ADDRESS GEORGIA-PACIFIC FACTOR 6.

2        I DON'T AGREE THAT I WOULD ALLOW THEM TO GIVE THEM -- TO

3   THROW SPECIFIC NUMBERS OUT, WHICH I THINK ARE UNRELIABLE AND

4   POTENTIALLY PREJUDICIAL.

5        BUT I DO THINK THEY NEED TO BE ABLE TO SAY THAT, IN THEIR

6   VIEW, THIS TECHNOLOGY PROMOTES SALES OF OTHER PRODUCTS OF

7   APPLE.  I MEAN, THAT'S REALLY WHAT 6 IS.  6 DOESN'T REQUIRE

8   THAT YOU SHOW AND EXACTLY QUANTIFY WHAT THE VALUE IS.

9        BUT CAN YOU REACH SOME STIPULATION WHERE THEY CAN AT LEAST

10  ESTABLISH THAT, BUT NOT HAVE THE NUMBERS THROWN OUT?

11            MR. MUELLER:  MAY I JUST HAVE A BRIEF MOMENT WITH MY

12  CLIENT, YOUR HONOR?

13            THE COURT:  YES, YES.

14       (PAUSE IN PROCEEDINGS.)

15            THE COURT:  YOU KNOW WHAT?  I'M NOT GOING TO MAKE YOU

16  DO THIS ON THE SPOT.  I'M WONDERING IF I SHOULD JUST GIVE YOU

17  SOME TIME TO SEE IF YOU CAN MEET AND CONFER TO SEE IF THERE'S

18  SOME WAY THAT YOU CAN GET WHAT YOU NEED FOR FACTOR 6 TO BE ABLE

19  TO SAY THERE ARE THESE OTHER SALES BEYOND THE ACCUSED DEVICES

20  THAT BENEFIT FROM OUR TECHNOLOGY, THEREFORE, THE RATE SHOULD BE

21  HIGHER.

22       BUT I'M NOT GOING TO HAVE THESE BIG NUMBERS JUST THROWN

23  OUT SO THEY CAN SAY, LOOK, WE'RE ONLY ASKING FOR 1 DOLLAR OUT

24  OF 12, WE'RE ASKING FOR SUCH A MINIMAL AMOUNT, WHEN THAT 12

25  NUMBER I DON'T THINK HAS A SUFFICIENT RELIABLE BASIS.

```
 1            MR. MUELLER:  RIGHT, AND I UNDERSTAND, YOUR HONOR.

 2         IF I TAKE YOUR POINT, IT'S FOR ADMISSIBILITY PURPOSES

 3    ONLY.  WE'RE NOT AGREEING THAT THERE, IN FACT, IS A CONNECTION

 4    BETWEEN THE PATENTS AND THESE ALLEGED CONVOYED SALES.  BUT FOR

 5    ADMISSIBILITY PURPOSES, WE WOULD AGREE THEIR EXPERT CAN REFER

 6    TO, FOR EXAMPLE, THE EXISTENCE OF AN APP STORE, AND THEY WOULD

 7    BE PRECLUDED FROM OFFERING ANY NUMBERS OF HOW MUCH MONEY THOSE

 8    STORES, THE STORE IS MAKING.

 9         IS THAT WHAT YOU'RE PROPOSING?

10            THE COURT:  YEAH.  AND, I MEAN, I HAVEN'T -- THESE

11    ARE MY TENTATIVE THOUGHTS.

12            MR. MUELLER:  SURE.

13            THE COURT:  THAT -- I MEAN, I GUESS YOU'LL HAVE TO

14    WORK OUT AND SEE -- I MEAN, I HAVEN'T THOUGHT IT THROUGH AS TO

15    EXACTLY MUCH INFORMATION WOULD BE ADMITTED.

16         BUT IT DOES SEEM LIKE THERE'S A MIDDLE GROUND HERE, THAT

17    THEY CAN STILL ESTABLISH FACTOR 6, THAT APPLE SHOULD PAY MORE,

18    WITHOUT HAVING ALL THESE NUMBERS THROWN OUT WHICH MIGHT BE

19    PREJUDICIAL AND IS NOT SPECIFICALLY APPORTIONED TO THE

20    TECHNOLOGY.  THAT'S MY ONLY CONCERN.

21            MR. MUELLER:  SURE.  UNDERSTOOD, YOUR HONOR.

22         AND I THINK THAT WE CAN MEET AND CONFER AND DISCUSS WITH

23    OUR CLIENT A BIT ON THIS TO TRY TO REACH SOME SORT OF

24    ACCOMMODATION FOR ADMISSIBILITY PURPOSES.  WHY DON'T WE DO

25    THAT, AND PERHAPS EVEN ON THE BREAK, WE MIGHT BE ABLE TO WORK
```

1    SOMETHING OUT.

2             THE COURT:  SO LET ME TALK ABOUT, JUST QUICKLY, ABOUT

3    GPNE MIL NUMBER 4.

4         I'M INCLINED TO GRANT THIS.  THIS HAS TO DO WITH THE SIM

5    CARDS.

6         LET ME JUST ASK QUICKLY, BECAUSE I DO WANT TO TRY TO WRAP

7    THIS UP NO LATER THAN 2:00 O'CLOCK TODAY, WHETHER APPLE AGREES

8    THAT THE SIM CARDS STORE NETWORK SPECIFIC INFORMATION USED TO

9    AUTHENTICATE AND IDENTIFY SUBSCRIBERS ON THE NETWORK.

10        DO YOU AGREE WITH THAT, THAT THAT'S WHAT THE FUNCTION IS?

11            MR. GREEN:  THAT THAT'S ALL THE FUNCTIONALITY OF THE

12   SIM CARD?

13            THE COURT:  WELL, I GUESS -- WHY DON'T YOU EXPLAIN

14   HOW THE SIM CARD CHANGES THE CAPABILITY OF THE DEVICE TO

15   OPERATE INDEPENDENT OF A TELEPHONE NETWORK, BECAUSE THAT'S

16   REALLY THE QUESTION.  I GUESS I JUST DON'T UNDERSTAND WHAT THE

17   RELATIONSHIP IS.

18            MR. GREEN:  FOR A SIM CARD IN GENERAL OR THE AGILENT

19   SIM CARD OR ALL OF IT TOGETHER?  I CAN START ANYWHERE YOU LIKE.

20            THE COURT:  WELL, WHY DON'T I SAY THIS:  I'M PLANNING

21   TO GRANT GPNE'S MOTION, SO YOU TELL ME WHY I SHOULDN'T.

22            MR. GREEN:  THANK YOU, YOUR HONOR.

23        THE REASON YOU SHOULD NOT DO THAT IS BECAUSE THE FUNCTION

24   OF THE SIM CARD, AND THE PARTICULAR SIM CARD THAT ONE INSTALLS

25   IN A PHONE TO CONNECT IT TO ANY NETWORK, IS RELEVANT TO THE

1        OPERATION OF THAT PHONE.

2              NOW, I UNDERSTAND THAT GPNE'S EXPERT, DR. DINAN, DISAGREES

3        WITH THAT.

4              BUT THAT'S THEIR VIEW OF THE CASE AND THIS IS A FACTUAL

5        ISSUE.

6              I THINK NO ONE WOULD DISPUTE THAT THE PHONES DON'T WORK

7        WITHOUT THE SIM CARDS, AND DEPENDING ON WHICH SIM CARD IS

8        PLACED IN THE PHONE, YOU SEE DIFFERENT RESULTS, DIFFERENT

9        PERFORMANCE OUT OF THE PHONE.  IN PARTICULAR, A PHONE WITH A

10       SIM CARD THAT IS CONNECTED OR MATED, IF YOU'D SAY, TO ONE

11       NETWORK DOESN'T WORK ON OTHER NETWORKS.

12             THAT SIM CARD INFORMATION IS NEEDED TO IDENTIFY THE USER,

13       IT PROVIDES AUTHENTICATION, SYNCHRONIZATION FUNCTIONS.

14             THE SIM CARD IS REALLY THE GATEWAY PIECE TO BE ABLE TO

15       CONNECT TO A GSM NETWORK AT ALL.  IT'S PART OF THE FUNDAMENTAL

16       OPERATION OF THE PHONE.

17             IT'S FAIR, YOUR HONOR, FOR APPLE AND APPLE'S EXPERT, ON

18       ISSUES OF INFRINGEMENT, TO BE ABLE TO CHALLENGE THE VALIDITY OF

19       DR. DINAN'S EXPERIMENT CONCERNING THE BASE BAND EMULATOR, THE

20       BASE STATION EMULATOR, RATHER.

21             I UNDERSTAND GPNE HAS THEIR VIEW OF IT.  WE VEHEMENTLY

22       DISAGREE.  WE HAVE OUR OWN CRITIQUES OF THAT.

23             I REALIZE THAT YOUR HONOR HAS ALREADY RULED THAT'S GOING

24       TO BE A FACTUAL ISSUE TO GO TO THE JURY.

25             YOUR RULING ON THIS AS A MIL IS TAKING THIS, RESPECTFULLY,

```
 1        YOUR HONOR, ONE STEP TOO FAR BECAUSE THAT'S AN ADJUDICATED

 2        FACT.  IT'S NOT SOMETHING THAT SHOULD BE INADMISSIBLE FOR ANY

 3        PURPOSE.  IT'S NOT SOMETHING THAT SHOULD BE THE PROVINCE OF A

 4        MIL WHERE THIS IS GOING TO SOMEHOW TAINT THE JURY OR CREATE

 5        SOMETHING THAT CAN'T BE UNDONE.

 6             THIS IS A DISPUTED FACT.  THEY HAVE THEIR VIEW.  WE HAVE

 7        OURS.

 8             THE SIM CARD IS FUNDAMENTAL TO THE OPERATION OF THE PHONE,

 9        AND PREVENTING OUR EXPERT FROM BEING ABLE TO DESCRIBE WHAT THAT

10        SIM CARD FUNCTION IS AND WHY IT MATTERS IS GOING TO UNFAIRLY

11        PREJUDICE APPLE'S ABILITY TO RAISE ITS DEFENSES.

12             THE COURT:  LET ME ASK ABOUT THE $25,000 LICENSING

13        OFFER.  WHO WAS THAT MADE TO?

14             MR. GREEN:  I'M SORRY.  IS THAT THE SIM CARD ISSUE?

15             THE COURT:  NO, I'M SORRY.  I'M GOING BACK TO A

16        SEPARATE ISSUE.  IT'S A MIL THAT I'VE ALREADY RULED ON, BUT I

17        ANTICIPATE IT'S GOING TO GET LITIGATED FURTHER, SO I JUST

18        WANTED TO FIND OUT.

19             THIS HAS TO DO WITH -- IT'S REALLY MIL NUMBER 1 THAT GPNE

20        FILED, THIS ISSUE ABOUT LICENSING DISCUSSIONS ABOUT THE

21        PATENTS-IN-DISPUTE.  I MEAN, I'VE ALREADY RULED ON THAT IN THE

22        JUNE 24TH ORDER.

23             MR. GREEN:  YOU'RE ASKING FOR THE IDENTITY OF THE

24        PARTY TO WHOM THE $25,000 OFFER WAS MADE?  MR. --

25             MR. BUMGARDNER:  I THINK WE SHOULD BE IN A BETTER
```

```
 1        POSITION TO ANSWER THAT.
 2             I WOULD HAVE TO CHECK, YOUR HONOR.  I DON'T HAVE IT RIGHT
 3        ON THE TIP OF MY TONGUE.
 4                  THE COURT:  THAT'S FINE.  WE DON'T NEED TO GET INTO
 5        IT.
 6                  MR. GREEN:  MR. MUELLER MAY BE --
 7                  MR. MUELLER:  THAT'S FINE.  IF YOU DO WANT TO RETURN
 8        TO THE OTHER ISSUES, YOUR HONOR, WE DO HAVE A PROPOSAL FOR YOU.
 9                  THE COURT:  WHAT'S THE PROPOSAL?
10                  MR. MUELLER:  WE WOULD AGREE, FOR ADMISSIBILITY
11        PURPOSES ONLY, THAT THEIR EXPERT COULD VOICE HIS OPINION THAT,
12        UNDER GEORGIA-PACIFIC, APPLE'S ALLEGED OTHER CONVOYED SALES
13        EXERT AN UPWARD PRESSURE ON RATE, SO LONG AS, ONE, HE STAYS
14        WITHIN THE CONFINES OF HIS REPORT; AND, TWO, HE NOT REFER TO
15        ANY NUMBERS.
16             NOW, OF COURSE, WE THINK THAT HIS OPINION IS WRONG AND WE
17        WILL CROSS-EXAMINE ON THAT AND WE MAY EVEN MOVE FOR JMOL ON
18        THAT AS LEGALLY INSUFFICIENT.
19             BUT FOR ADMISSIBILITY PURPOSES, TO TRY TO RESOLVE THIS
20        TODAY, YOUR HONOR, WE WOULD AGREE THAT THE CONVOYED SALES
21        OPINION COULD BE VOICED BY MR. DANSKY, TO THE EXTENT HE HAD IT
22        IN HIS REPORT, WITHOUT ANY PREFERENCE TO NUMBERS.
23                  MS. PEDEN:  YOUR HONOR, SO WITHOUT ANY REFERENCE TO
24        NUMBERS, AS LONG AS THAT DOESN'T INCLUDE THE TOTAL NUMBERS OF
25        UNITS SOLD, BECAUSE THAT IMPLICATES THE OTHER PART OF THE
```

```
1    EXPERT REPORT.

2              THE COURT:  UNITS OF WHAT SOLD?

3              MS. PEDEN:  OF IPADS AND OF -- OF ACCUSED DEVICES.

4              THE COURT:  OH, THAT -- NO.

5              MS. PEDEN:  YEAH.

6              MR. MUELLER:  NO, WE'RE NOT SEEKING TO EXCLUDE THAT.

7              MS. PEDEN:  OKAY, YEAH.  IF WE'RE TALKING --

8              THE COURT:  OKAY.  NO, THAT WOULD BE DENIED IF THEY

9    EVEN MOVED FOR THAT.

10             MS. PEDEN:  OKAY.  IF WE'RE JUST TALKING ABOUT THE

11   BIG SALES NUMBER, HOW MUCH APPLE MAKES OFF THE SALES OF ITUNES

12   GENERALLY, THOSE TYPES OF NUMBERS, THEN WE'RE FINE WITH THAT,

13   YOUR HONOR.

14             THE COURT:  OKAY.  SO IF IT'S AN ACCUSED DEVICE,

15   THOSE UNIT NUMBERS ARE COMING IN.

16        BUT WE'RE TALKING -- I WAS THINKING MORE OF THE FOLLOW-ON

17   DEVICES, AND IT SOUNDS LIKE THERE'S AN AGREEMENT.

18        OKAY.  DOES THIS RESOLVE THE MOTION, OR NOT?

19             MR. MUELLER:  WELL, THERE'S TWO THINGS.  SO THERE'S

20   TWO MOTIONS.  THERE'S A MOTION IN LIMINE AND THE DAUBERT

21   MOTION.

22        THE MOTION IN LIMINE WAS TO EXCLUDE EVIDENCE OF TOTAL

23   PROFITS AND TOTAL REVENUES.  THE ONLY TOTAL PROFITS AND

24   REVENUES THAT THEY SOUGHT TO BRING IN, I BELIEVE, WERE THE

25   CONVOYED SALES PROFITS AND REVENUES.
```

```
 1              I THINK WE NOW HAVE AGREEMENT THEY'RE NOT GOING TO REFER

 2      TO THE ACTUAL NUMBERS, BUT ARE GOING TO REFER TO THE CONCEPT OF

 3      CONVOYED SALES, AND FOR ADMISSIBILITY PURPOSES ONLY, WE'RE

 4      WILLING TO AGREE TO THAT.

 5              THE COURT:  OKAY.  CAN WE DO THIS?  THIS MIGHT BE

 6      HELPFUL.  I'M WONDERING IF YOU ALL CAN DRAFT A STIPULATION

 7      BECAUSE I ANTICIPATE THERE MAY BE SOME LITIGATION ABOUT THIS

 8      DURING THE TRIAL, SO I WOULD JUST LIKE, AS MUCH AS POSSIBLE,

 9      SOME CLARITY ON EXACTLY WHAT'S BEING AGREED TO AND EXACTLY WHAT

10      THE EXACT LANGUAGE IS.

11              HOW MUCH -- TAKE YOUR TIME, BECAUSE THE TRIAL IS NOT FOR A

12      FEW MONTHS.

13              BUT ON THE OTHER HAND, I WOULD LIKE TO, YOU KNOW, RULE ON

14      THESE MOTIONS.

15              WHAT AMOUNT OF TIME WOULD YOU NEED TO TRY TO PUT A

16      STIPULATION TOGETHER AS TO EXACTLY WHAT'S BEEN AGREED TO, AND

17      THEN FOR YOU TO IDENTIFY WHAT'S STILL OUTSTANDING AND NEEDING A

18      RULING?  HOW LONG?

19              MS. PEDEN:  YOUR HONOR, TWO WEEKS?

20              THE COURT:  THAT'S FINE.

21              MS. PEDEN:  I HAVE --

22              THE COURT:  THAT'S FINE.  SO TODAY IS THE 26TH.  SO

23      BY JULY 10TH.

24              MR. MUELLER:  THAT'S FINE, YOUR HONOR, YEAH.

25              MS. PEDEN:  YES.
```

1          MR. MUELLER:  THERE'S ONE LAST DAUBERT ISSUE THAT WE

2   HAVEN'T TALKED ABOUT TODAY, AND THAT'S, I BELIEVE, THE LAST

3   DAMAGES RELATED ISSUE ON THE MOTION DOCKET, AND THAT IS THE

4   BASE BAND PROCESSORS AS THE SMALLEST SALEABLE UNIT.

5          THE COURT:  OH, I KNOW.  I'M GOING TO GRANT YOUR

6   MOTION ON THAT.

7          MR. MUELLER:  OKAY.

8          THE COURT:  I THINK THAT THE PREVIOUS ORDER ALREADY

9   SAID WHAT THE SMALLEST SALEABLE PRACTICING UNIT IS.

10      OKAY.  SO MAYBE WHAT I WILL DO THEN IS I'LL ISSUE A SORT

11  OF HOUSEKEEPING ORDER THAT GOES THROUGH EVERYTHING WE DISCUSSED

12  TODAY, ALL THE LOGISTICAL STUFF; I'LL SAY THAT THE APPLE MOTION

13  IN LIMINE NUMBER 1 IS DENIED; I WILL SAY THAT THE APPLE MIL

14  NUMBER 5 AND THE DAUBERT -- WELL, I MEAN, I WAS GOING TO ISSUE

15  A WRITTEN ORDER ON THE SMALLEST SALEABLE PRACTICING UNIT.  THAT

16  STILL MIGHT BE USEFUL TO HAVE IN THE RECORD.

17      BUT WHY DON'T I AT LEAST JUST HOLD OFF ON ISSUING MY

18  DAUBERT RULING AND APPLE MIL NUMBER 5 RULING UNTIL I SEE YOUR

19  STIPULATION TO SEE IF THERE'S STILL ANY OUTSTANDING DISPUTES OR

20  WHETHER YOU'VE NOW REACHED AN AGREEMENT?

21      SO THEN THE ONLY OTHER THING THAT'S LEFT IS MIL NUMBER 3

22  AND THIS INDEFINITENESS ISSUE.  WHY DON'T WE TAKE OUR BREAK NOW

23  BECAUSE MS. SHORTRIDGE HAS BEEN GOING FOR QUITE SOME TIME.

24          MR. MUELLER:  THANK YOU, YOUR HONOR.

25          MS. PEDEN:  THANK YOU.

```
1          (RECESS FROM 1:54 P.M. UNTIL 2:16 P.M.)

2              THE COURT:  OKAY.  WELCOME BACK.  PLEASE TAKE A SEAT.

3          LET ME ASK TWO QUESTIONS ON MIL NUMBER 3 HAVING DO TO WITH

4      THE DOE ISSUE.  FIRST LET ME ASK IF YOU NEED -- IF YOU CAN GIVE

5      ME THE PARAGRAPH NUMBER WHERE DR. DINAN DISCLOSED A DOE OPINION

6      FOR LTE DEVICES.

7              MR. BUMGARDNER:  MR. SUSSER IS GOING TO ADDRESS THIS,

8      YOUR HONOR.

9              THE COURT:  OH, OKAY.  WOULD YOU PLEASE IDENTIFY A

10     PAGE OR PARAGRAPH NUMBER IN WHICH DR. DINAN DISCLOSES A DOE

11     OPINION FOR LTE DEVICES?  I JUST NEED THE IDENTIFICATION OF THE

12     PAGE NUMBER OR THE PARAGRAPH AND WE'LL GO BACK AND LOOK AT IT.

13     YOU DON'T HAVE TO --

14             MR. SUSSER:  YEAH, I DON'T HAVE THAT AT MY

15     FINGERTIPS.  I HAVE THE REPORTS, OF COURSE.

16             THE COURT:  OKAY.  THEN WHY DON'T YOU TAKE A SEAT AND

17     FIND IT AND I'LL ASK APPLE'S QUESTION AND THEN YOU CAN TELL ME

18     AT THE END OF THIS.  OKAY?

19         ALL RIGHT.  SO LET ME ASK APPLE, HOW IS YOUR MOTION IN

20     LIMINE NUMBER 3 ANY DIFFERENT FROM YOUR SUMMARY JUDGMENT MOTION

21     ON THE NODE LIMITATION?  IS THIS JUST A DO-OVER?

22             MR. GREEN:  NO, YOUR HONOR, IT'S NOT JUST A DO-OVER.

23             THE COURT:  WHY?

24             MR. GREEN:  THE SUMMARY JUDGMENT ADDRESSED THE ISSUE

25     OF PAGER AND PAGING SYSTEM AND YOUR HONOR DETERMINED THAT THERE
```

1    WAS A FACTUAL ISSUE, GENERALLY, AS TO WHETHER APPLE IPHONES,

2    CONNECTED TO CELLULAR TELEPHONE NETWORKS, COULD BE PAGERS THAT

3    ARE SENDING TWO-WAY DATA COMMUNICATIONS OVER A PAGING SYSTEM

4    THAT OPERATES INDEPENDENTLY FROM A TELEPHONE NETWORK.

5        WHAT WAS NOT ADDRESSED IN YOUR HONOR'S ORDER, OR IN OUR

6    PAPERS, WAS THE SPECIFIC LINE OF CASES THAT DEALS WITH CLAIM

7    CONSTRUCTIONS AND CLAIM TERMS THAT PRESENT BINARY CHOICES, OR

8    TWO TERMS THAT ARE ANTITHETICAL, SUCH AS MOUNTED AND UNMOUNTED,

9    EVEN AND ODD, BEFORE AND AFTER.

10       THESE ARE THE KINDS OF TERMS THAT WE SEE THE FEDERAL

11   CIRCUIT AND THE DISTRICT COURTS LOOKING AT AND SAYING THE

12   VITIATION RULE IS SOMETHING WE'RE GOING TO RUN INTO WHEN WE

13   HAVE TERMS, LIKE WE HAVE HERE, THAT ARE NOT APPLIED IN HALF

14   MEASURES OR BY RELATIVE TERMS OR BY MATTERS OF DEGREE.

15       SOMETHING IS EITHER INDEPENDENT OR IT IS NOT.

16       THERE'S NO DISCUSSION IN THE PATENT OF PARTIAL DEPENDENCY

17   OR SHARING RESOURCES OR LOGICAL INDEPENDENCE.

18       THIS IS NOT DISCUSSED IN THE SUMMARY JUDGMENT MOTION.

19   IT'S NOT ADDRESSED IN YOUR HONOR'S ORDER.

20       I CAN SPEAK MORE, BUT I WANTED TO GIVE YOU THE FASTER

21   ANSWER.

22            THE COURT:  ALL RIGHT.  THANK YOU.

23       HAVE YOU FOUND IT?

24            MR. SUSSER:  I CAN RESPOND TO THAT.

25            THE COURT:  OKAY.  WHERE IS IT?

```
 1            MR. SUSSER:  THERE IS NO SPECIFIC CONTENT IN THE

 2   DINAN EXPERT REPORT WHERE HE LAYS OUT THE DOCTRINE OF

 3   EQUIVALENTS ANALYSIS WITH RESPECT TO LTE, AND WHAT WE'VE SAID

 4   IS THAT HIS ANALYSIS OF THE DOCTRINE OF EQUIVALENTS WITH

 5   RESPECT TO GPRS IS IN THERE, AND SHOULD HOPEFULLY SERVE AS

 6   SUFFICIENT NOTICE TO DEFENDANTS, MUCH IN THE SAME WAY THAT YOUR

 7   SUMMARY JUDGMENT ORDER RECOGNIZED THAT OUR ARGUMENTS FOR

 8   INFRINGEMENT --

 9            THE COURT:  YEAH, BUT MAYBE THAT WAS WRONG.  IF

10   YOU'RE CONCEDING THAT HE DIDN'T EVEN GIVE AN EXPERT OPINION ON

11   DOCTRINE OF EQUIVALENTS FOR LTE, I DON'T THINK THAT'S SOMETHING

12   THAT THE JURY SHOULD JUST DO --

13            MR. GREEN:  YOUR HONOR --

14            THE COURT:  -- ITS OWN DOE ANALYSIS.

15            MR. GREEN:  IF I --

16            MR. SUSSER:  THE ANALYSIS THAT HE DOES ON THE

17   DOCTRINE OF EQUIVALENTS, THAT CARRIES ON FOR MULTIPLE, LENGTHY

18   PARAGRAPHS ON THE TERM "NODE," EVERY SINGLE ONE OF THOSE IS

19   DIRECTLY APPLICABLE, DIRECTLY APPLICABLE.

20            THE COURT:  RIGHT.  BUT IF HE NEVER SAYS IT'S THE

21   SAME FOR LTE DEVICES, THEN I DON'T THINK THAT'S APPROPRIATE FOR

22   THE JURY TO JUST COME UP WITH THEIR OWN EXPERT OPINION.

23            MR. SUSSER:  WELL, IT'S IN OUR CONTENTIONS, OUR

24   AMENDED INFRINGEMENT CONTENTIONS WHERE WE DID MAP THE EXACT

25   SAME LANGUAGE OF THE DOCTRINE OF EQUIVALENTS AS WITH RESPECT TO
```

```
1    THE NODE FOR GPRS TERM.

2          THE COURT:  RIGHT, BUT THAT'S ATTORNEY ARGUMENT.  YOU

3    KNOW, INFRINGEMENT CONTENTIONS, THAT'S ATTORNEY ARGUMENT.  I

4    MEAN, WHERE IS THE EVIDENCE?

5          MR. GREEN:  YOUR HONOR, I CAN --

6          MR. SUSSER:  WELL, IT'S THE --

7          THE COURT:  I'M NOT GOING TO ALLOW AN INFRINGEMENT

8    CONTENTION TO BE MARKED AS AN EXHIBIT AND HANDED OVER TO THE

9    JURY.  SO --

10          MR. SUSSER:  WELL, IF YOUR HONOR PREVENTS DR. DINAN

11    FROM GIVING DIRECT TESTIMONY ON THAT, WE WOULD STILL RESERVE

12    THE RIGHT TO BE ABLE TO CROSS-EXAMINE APPLE'S EXPERTS AS TO THE

13    LACK OF DOE INFRINGEMENT, SINCE WE'VE PUT THEM ON NOTICE.

14      WE WON A MOTION TO AMEND TO ADD THESE TO OUR CONTENTIONS.

15    WE WON A MOTION -- WE OPPOSED THE SUMMARY JUDGMENT MOTION TO

16    THROW OUT LTE INFRINGEMENT ON THE DOCTRINE OF EQUIVALENTS, IT

17    WAS DENIED, SO THAT DOCTRINE OF EQUIVALENTS IS AN ISSUE IN THE

18    CASE FOR LTE ON THAT SECOND FIGHT.

19          AND I WAS -- YOU KNOW, I WOULD HOPE THAT, GIVEN THE

20    OVERALL NOTICE IN THE CONTENTIONS AND, AS YOU POINTED OUT IN

21    THE SUMMARY JUDGMENT ORDER SO ELOQUENTLY, THE OVERLAP IN THE

22    WHOLE CASE BETWEEN THE LTE INFRINGEMENT AND THE GPRS

23    INFRINGEMENT, THAT APPLE'S ON SUFFICIENT NOTICE THAT DR. DINAN

24    HAS OPINIONS THAT PAGER AND PAGING NETWORK AND OPERATES

25    INDEPENDENTLY AND ALL OF THOSE THINGS THAT APPLY WITH EQUAL
```

1    FORCE TO LTE FOR THE EXACT SAME REASONS.

2            THE COURT:  OKAY.  SO DOES HE GIVE A LITERAL

3    INFRINGEMENT OPINION FOR LTE?

4            MR. SUSSER:  OH, YES.  HE HAS CLAIM CHARTS AFTER

5    CLAIM CHARTS.

6            THE COURT:  SO TELL ME WHAT YOU THINK IS -- SO YOU'RE

7    NOT POINTING ME TO ANY SPECIFIC PAGE OR PARAGRAPH OF

8    DR. DINAN'S REPORT --

9            MR. SUSSER:  AS TO --

10           THE COURT:  -- FOR DOE FOR LTE DEVICES?  BECAUSE I

11   THINK THAT MAY HAVE BEEN A MISTAKE ON MY PART TO JUST ASSUME

12   AND MAKE THE OPINION THAT -- I MEAN, IT'S CERTAINLY NOT MY

13   POSITION TO MAKE AN EXPERT OPINION THAT DOE FOR CERTAIN DEVICES

14   WOULD BE THE SAME AND THE ANALYSIS WOULD BE THE SAME, SO THAT

15   MIGHT BE MY OWN MISTAKE.

16           MR. GREEN:  YOUR HONOR, IF I COULD BRING SOME FOCUS

17   TO THIS?

18           THE COURT:  YEAH.

19           MR. GREEN:  THE FIVE PARAGRAPHS, TOTAL FIVE

20   PARAGRAPHS OF DR. DINAN'S EXPERT REPORT ON INFRINGEMENT THAT

21   PERTAIN TO EQUIVALENTS AT ALL OF ANY FLAVOR --

22           THE COURT:  WHAT ARE THEY?

23           MR. GREEN:  120 TO 125.  THE WORDS "LTE" DO NOT

24   APPEAR IN THOSE PARAGRAPHS AT ALL.

25       AND MORE SPECIFICALLY, IF THERE WAS SOME TREATMENT BY

1    DR. DINAN OF THIS SHARING OF RESOURCES OR EXACTLY WHAT THIS

2    LOGICAL INDEPENDENCE IS, SOME ACTUAL EXPLANATION OF WHY THAT IS

3    EQUIVALENT, THEN WE WOULD HAVE ADDRESSED THAT, TOO, IN OUR

4    MOTION PAPER.  BUT IT'S NOT THERE, AS YOUR HONOR CORRECTLY

5    NOTES.

6         MORE SPECIFICALLY STILL, THERE IS ONE PARAGRAPH, PARAGRAPH

7    125, THAT EVEN MENTIONS, EVEN MENTIONS THE IDEA OF SHARING

8    PARTIAL RESOURCES AND IT'S JUST A CONCLUSION THAT NETWORKS THAT

9    SHARE RESOURCES ARE INSUBSTANTIALLY DIFFERENT, ALTHOUGH WE

10   DON'T KNOW WHY, THAN NETWORKS THAT DO NOT SHARE RESOURCES.

11   THAT'S THE SCOPE OF IT.

12         THE COURT:  OKAY.  SO LET ME ASK MR. SUSSER, OTHER

13   THAN PARAGRAPHS 120 THROUGH 125, IS THERE ANYTHING ELSE THAT I

14   SHOULD LOOK AT FOR THIS QUESTION?

15         MR. SUSSER:  WELL, THE -- THE DISCUSSION OF

16   INFRINGEMENT FOR LTE TECHNOLOGY BEGINS AT PARAGRAPH 86 AND HAS

17   CLAIM CHARTS FOR ALL THE ASSERTED CLAIMS IN THE CASE AT THAT

18   TIME ON AN ELEMENT-BY-ELEMENT BASIS FOR ALL THREE PATENTS ALL

19   THE WAY TO PAGE 128.  SO THAT'S AN EXTENSIVE DISCUSSION OF THE

20   BASIS FOR INFRINGEMENT.

21         AND, YOUR HONOR, WITH RESPECT TO NODE, WITH RESPECT TO

22   NODE, IT'S THE SAME CASE AS THE GPRS CASE.  IT'S -- IT'S THE

23   SAME -- WE ALL KNOW IT'S THE SAME DEVICES, RIGHT?  YOU CAN HAVE

24   AN IPHONE THAT DOES LTE, AN IPHONE THAT DOES GPRS.

25         AND SO WHEN WE GET TO THE PART ABOUT THE DOE, THE TERM

```
 1      "GPRS" WAS USED IN THE DESCRIPTION.  IT WAS -- IT COULD HAVE

 2      BEEN GPRS/LTE, BUT THE POINT WAS TO MAKE THE DOE ARGUMENT ABOUT

 3      NODE.

 4              THE COURT:  DO YOU AGREE THAT THE DOE OPINION IS IN

 5      PARAGRAPHS 120 THROUGH 125?  OR IS THERE SOMEWHERE ELSE I

 6      SHOULD LOOK FOR A DOE OPINION?

 7              MR. SUSSER:  AS FAR AS DINAN'S REPORT, YES.

 8          IT IS ALSO THE CONTENTIONS, OR WHAT GPNE INTENDS TO ASSERT

 9      IN THE CASE, THAT HAVE A LITTLE BIT MORE.  BUT IT'S MORE OF THE

10      SAME.  IT'S THE SAME CONDUCT.

11              THE COURT:  YOU'RE SAYING THE INFRINGEMENT

12      CONTENTIONS?

13              MR. SUSSER:  YES.

14              THE COURT:  ALL RIGHT.  THANK YOU.

15          NOW LET ME TALK ABOUT INDEFINITENESS.

16              MR. SUSSER:  YOUR HONOR, COULD I TALK REAL QUICKLY

17      ABOUT THE IDEA OF THE VITIATION ARGUMENT?  WE DIDN'T REALLY GET

18      TO THAT AT ALL AND I HAVE A LOT TO SAY ABOUT THAT BECAUSE I

19      THINK WHAT MR. GREEN SAID IS ABSOLUTELY WRONG AND I WANT TO

20      MAKE SURE WE DON'T SKIP THAT.  THE --

21              THE COURT:  WELL, I MEAN, IF IT MAKES ANY DIFFERENCE

22      TO YOU, I DON'T THINK IT APPLIES AND I'M PROBABLY GOING TO DENY

23      THIS MOTION.

24              MR. SUSSER:  I'LL RESERVE MY COMMENTS THEN, YOUR

25      HONOR.
```

```
 1            THE COURT:  I'LL GO BACK AND LOOK AT IT.  IT DOES

 2   SEEM LIKE A DO-OVER MOTION COMPARED TO THE SUMMARY JUDGMENT ON

 3   NODE LIMITATIONS, BUT I'LL GO BACK AND TAKE A LOOK.

 4            MR. SUSSER:  ALL RIGHT.  I HAVE SOME ARGUMENT ON

 5   WHETHER SOMETHING IS THE POLAR OPPOSITE OR ANTITHESIS, AND HE

 6   GAVE A SOME EXAMPLES.  THERE'S A COUPLE OTHER EXAMPLES IN CASES

 7   THAT WERE MUCH CLOSER.  THAT'S THE KIND OF STUFF I WANTED TO

 8   ARGUE WITH YOU.

 9        BUT --

10            THE COURT:  WELL, IS IT NOT BRIEFED?  YOU DIDN'T

11   MENTION THOSE CASES IN YOUR BRIEF?

12            MR. SUSSER:  YEAH, WE DID.

13            THE COURT:  OH, OKAY.  IF IT'S IN THE BRIEFS, IT'S

14   BEEN READ AND WILL BE CAREFULLY CONSIDERED.

15            MR. SUSSER:  OH, THAT'S GREAT.  THAT'S GREAT TO KNOW.

16   THANK YOU, YOUR HONOR.

17            THE COURT:  LET ME TALK ABOUT INDEFINITENESS.

18        WHAT'S THAT?

19            MR. GREEN:  VERY QUICKLY, I DID NOT KNOW IF YOU --

20   I'M ASSUMING YOU FINISHED YOUR DISCUSSION ON MIL NUMBER 4.

21        YOU ASKED THE $25,000 OFFER QUESTION, AND FRANKLY, THAT

22   THREW ME WHEN YOU DID IT.

23        I JUST WANTED TO SAY THAT APPLE'S POSITION IS THE SIM CARD

24   FUNDAMENTALLY CHANGES THE OPERATION OF THE PHONES AND THAT IS

25   AN ISSUE OF FACT THAT THE JURY OR THE FACT FINDER CAN WEIGH AS
```

 1    THEY WILL, BUT THAT'S SOMETHING THAT SHOULD HAVE BEEN BROUGHT

 2    UP ON SUMMARY JUDGMENT.

 3         AND THAT WAS THE WAY I WANTED TO CLOSE THE STATEMENT.

 4         THANK YOU, YOUR HONOR.

 5              THE COURT:  ALL RIGHT.  LET'S GO TO THIS

 6    INDEFINITENESS ISSUE.

 7         NOW, IN YOUR STATEMENT, YOU SAY THERE ARE FOUR TERMS.  I

 8    WOULD LIKE -- THIS IS WHAT I'M INTENDING TO DO:  I DO THINK

 9    THIS IS STILL A QUESTION OF LAW, SO THERE WILL BE NO ADVISORY

10    VERDICT FROM THE JURY.  IF YOU WANT TO DO A JMOL MOTION ON

11    INDEFINITENESS, YOU CAN.

12         WHILE I'M NORMALLY NOT INCLINED TO ALLOW SUPPLEMENTAL

13    REPORTS AFTER THE DEADLINES HAVE PASSED, BECAUSE THE SUPREME

14    COURT HAS ISSUED AN OPINION WHICH I THINK IS A GAME CHANGER ON

15    THIS ISSUE -- I'M NOT SAYING WHETHER THESE TERMS MEET OR DO NOT

16    MEET THE SUPREME COURT'S LOWERED STANDARD -- BUT I DO THINK

17    THAT'S A SIGNIFICANT ENOUGH CHANGE THAT IT WOULD BE APPROPRIATE

18    TO ALLOW A SUPPLEMENTAL REPORT THAT ONLY ADDRESSES

19    INDEFINITENESS AS TO THESE.

20         NOW, ARE YOU REALLY GOING TO MOVE ON ALL FOUR TERMS, OR

21    CAN I ASK YOU TO LOOK MORE CAREFULLY?  I MEAN, IT'S STILL A

22    VERY HIGH STANDARD.

23              MR. GREEN:  YOUR HONOR, WE --

24              THE COURT:  IT'S NOT AS HIGH AS IT WAS, BUT IT'S

25    STILL A VERY HIGH STANDARD.

```
 1              MR. GREEN:  WE WILL TAKE THE HOLDING OF NAUTILUS TO

 2     HEART, AS WELL AS YOUR COMMENT ABOUT MOVING -- ABOUT OVER

 3     SEEKING RELIEF ON THESE TERMS, AND WE WILL FIND THOSE THAT ARE

 4     MOST SUSCEPTIBLE AND GO FORWARD IN A MEASURED WAY.

 5              THE COURT:  ALL RIGHT.  BECAUSE YOU IDENTIFY FOUR

 6     HERE.  IF YOU WERE TO REALLY, REALLY FOCUS AND PICK A, A

 7     NARROWED LIST OF YOUR STRONGER ONES, THAT WOULD BE MUCH BETTER.

 8          I DON'T KNOW IF YOU CAN MAKE A COMMITMENT NOW TO WHAT THE

 9     NUMBER IS GOING TO BE, OR --

10              MR. GREEN:  THIS WOULD BE ONE OF THOSE THINGS, YOUR

11     HONOR, I WOULD WANT TO AT LEAST GET A FINAL SIGN OFF FROM OUR

12     EXPERT BEFORE COMMITTING HIM TO THE OPINION.

13              THE COURT:  OKAY.  THAT'S FAIR.  THAT'S FAIR.  OKAY.

14          SO I WOULD SET OPENING EXPERT REPORTS FOR JULY 24TH --

15     WELL, WAIT A MINUTE.  THAT GIVES YOU A LOT OF TIME, RIGHT?

16     WHAT IS TODAY?  TODAY IS THE 20 --

17              MR. GREEN:  -- 6TH.

18              THE COURT:  -- 6TH.  WELL, LET ME -- I'M GOING TO ASK

19     GPNE, WHAT'S THE TIMEFRAME THAT YOU THINK IS APPROPRIATE AND

20     WHAT LIMITATIONS DO YOU THINK ARE APPROPRIATE ON THIS?

21              MR. SUSSER:  WELL, THE LAW IS ONE CASE, SO WE

22     DON'T -- WE'RE NOT -- IT'S NOT A WHOLE LOT OF LIFTING THERE.

23          I THINK JUST IDENTIFYING THE CLAIM TERM AND MAKING THE

24     CASE FOR INDEFINITENESS SHOULDN'T BE MANY PAGES OF AN EXPERT

25     REPORT.
```

```
 1              THE COURT:  SO CAN WE SAY 10 PAGES?

 2              MR. SUSSER:  I THINK THAT'S DOABLE.  WE DON'T HAVE TO

 3   GO THROUGH THE C.V. AND ALL THAT OTHER STUFF.  IT COULD JUST BE

 4   A SUPPLEMENT.

 5              MR. GREEN:  OF COURSE WE'D ALWAYS LIKE MORE, BUT WE

 6   CAN TRY FOR 10 PAGES, YOUR HONOR.  WOULD 15 OFFEND ANYONE?

 7              THE COURT:  I'M GOING TO LET MR. SUSSER WEIGH IN ON

 8   THAT.

 9              MR. SUSSER:  YOU KNOW, IF -- I WOULD SAY, YOU KNOW,

10   THREE PAGES PER TERM OR SOMETHING LIKE THAT.  I MEAN --

11              THE COURT:  ALL RIGHT.  12 PAGES.

12              MR. SUSSER:  OKAY, 12.

13              THE COURT:  OKAY.  SO 12 PAGES FOR THE OPENING REPORT

14   AND 12 PAGES FOR REBUTTAL.  OKAY?

15              MR. SUSSER:  UM-HUM.

16              THE COURT:  AND THEN WHAT ABOUT THREE WEEKS, THREE

17   WEEKS?  OR FOUR WEEKS, FOUR WEEKS?  I MEAN, I DO WANT THIS TO

18   CLOSE SOON, AND I'M NOT ANTICIPATING REVIEWING ANY MOTIONS ON

19   THIS.  IF SOMEONE IS GOING TO MOVE ON SUMMARY JUDGMENT, JUST DO

20   JMOL AFTER THE TRIAL.

21              MR. SUSSER:  ONE THING -- IF I MAY, YOUR HONOR?  ONE

22   OF THE PROBLEMS HERE IS WE DON'T EVEN KNOW -- YOU KNOW, WE'RE

23   NOT GOING TO KNOW WHAT TERMS THEY'RE MOVING ON, WHAT THE BASIS

24   IS, UNTIL WE SEE THE REPORT, UNLIKE IN, YOU KNOW, OTHER

25   DISCOVERY THAT'S NORMAL WHERE WE GET THEIR INVALIDITY
```

1    CONTENTIONS AND THEY'RE LAID OUT THERE, MAYBE EVEN

2    INTERROGATORIES AND EVERYBODY KNOWS WHAT'S COMING IN EXPERT

3    REPORTS.

4         SO THIS IS SORT OF A SURPRISE.  SO IF -- GIVEN THE

5    SCHEDULE, YOU KNOW, I WOULD LIKE A MONTH TO --

6              THE COURT:  THAT'S FINE.  THAT'S FINE.  SO THEY'VE

7    IDENTIFIED FOUR TERMS, "RANDOMLY GENERATED INFORMATION,"

8    "RECEIVE A FIRST GRANT SIGNAL," "RECEIVE A SECOND GRANT

9    SIGNAL," AND "RECEIVE AN AUTHORIZATION SIGNAL," BUT I'M REALLY

10   COUNTING ON MR. GREEN TO NARROW IT FURTHER AND NOT GO ON FOUR.

11             MR. GREEN:  WE WON'T LET YOU DOWN.

12             THE COURT:  SO IF YOU WANT -- HOW MUCH TIME WOULD YOU

13   NEED -- I ASSUME THERE ARE ONLY TWO DEPOSITIONS.  DOES THAT

14   SOUND RIGHT TO YOU?

15             MR. SUSSER:  YEAH.

16             THE COURT:  OKAY.  SO WHAT IF WE DID -- TODAY IS THE

17   26TH.  WHAT IF WE SAID THE SUPPLEMENTAL REPORT IS DUE JULY 25

18   AND THE REBUTTAL REPORT IS DUE AUGUST 29?

19             MR. SUSSER:  OKAY.

20             THE COURT:  OH, YOU KNOW WHAT?  LET ME DO IT A LITTLE

21   SOONER, BECAUSE IF THERE ARE ANY ISSUES, I WANT THEM BRIEFED

22   FOR THE LAST PTC.  OH, NO.  HOW MUCH -- DO YOU THINK YOU CAN

23   GET THE DEPOSITIONS DONE IN TWO WEEKS?

24             MR. SUSSER:  SURE.

25             THE COURT:  I'LL GIVE YOU UNTIL AUGUST 29 FOR THE

```
 1        REBUTTAL, YOU'RE GOING TO GET EXTRA TIME, AND THEN COMPLETE THE

 2        TWO DEPOSITIONS BY SEPTEMBER 12TH.  DOES THAT SOUND OKAY?

 3                MR. SUSSER:  OKAY.

 4                THE COURT:  AND WHAT ELSE?  AND I -- YOU KNOW, THIS

 5        IS NOT GOING TO THE JURY.  IF YOU THINK THERE'S A MOTION, JUST

 6        SAVE IT FOR JMOL.

 7                MR. SUSSER:  OKAY.

 8                MR. GREEN:  UNDERSTOOD.

 9                THE COURT:  OKAY.  ALL RIGHT.  WHAT ELSE?  WAS THERE

10        ANYTHING ELSE WE NEEDED TO HANDLE TODAY?

11                MR. GREEN:  I DON'T THINK THERE'S ANYTHING ELSE FROM

12        APPLE'S SIDE, YOUR HONOR.

13                MR. SUSSER:  NO.  I THINK WE GOT ALL THE MILS OUT OF

14        THE WAY.

15                THE COURT:  OKAY.  WELL, I -- ALL RIGHT.  I THINK

16        WE'RE DONE.

17            I WOULD PROBABLY -- I MEAN, I COULD ISSUE THE DAUBERTS

18        SOONER, BUT I THINK I'D LIKE TO WAIT UNTIL I SEE YOUR

19        STIPULATION, BECAUSE IT COULD BE THAT THERE'S SOME THINGS THAT

20        YOU HAVEN'T AGREED TO THAT NEED TO BE DECIDED, OR SOME -- YOU

21        KNOW, OR -- BUT -- AND I DO WANT TO TAKE A LITTLE FURTHER LOOK

22        AT SOME OF THIS, BUT I MIGHT BE ABLE TO ISSUE SOME OF THE OTHER

23        MILS VERY QUICKLY.

24            ALL RIGHT.  ANYTHING ELSE FOR TODAY?

25                MR. SUSSER:  IT SEEMS LIKE YOUR SCHEDULE IS EMPTY FOR
```

1       THE NEXT WEEK, AND IF YOU'RE GOING ON VACATION, WE WISH YOU A

2       REALLY GOOD TIME.

3                   THE COURT:  THANK YOU.

4                   MR. SUSSER:  YOU PROBABLY NEED IT.

5                   THE COURT:  THANK YOU VERY MUCH.  HAVE A GREAT DAY.

6       THANK YOU ALL.

7                   MR. GREEN:  THANK YOU.

8                   MR. SUSSER:  THANK YOU, YOUR HONOR.

9                   MR. CORDELL:  THANK YOU, YOUR HONOR.

10          (THE PROCEEDINGS WERE CONCLUDED AT 2:33 P.M.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18          DATED:  JULY 7, 2014

19

20

21

22

23

24

25