**KERR & WAGSTAFFE LLP**
Patricia L. Peden (SBN 206440)
peden@kerrwagstaffe.com
Julia A. Stockton (SBN 286944)
stockton@kerrwagstaffe.com
100 Spear Street, 18th Floor
San Francisco, CA 94105–1528
[Tel.] (415) 371-8500
[Fax] (415) 371-0500

**NELSON BUMGARDNER CASTO, P.C.**
Barry J. Bumgardner (*pro hac vice*)
barry@nbclaw.net
Steven W. Hartsell (*pro hac vice*)
shartsell@nbclaw.net
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
[Tel.] (817) 377-9111
[Fax] (817) 377-3485

**BURNS & LEVINSON LLP**
Howard J. Susser (*pro hac vice*)
hsusser@burnslev.com
Zachary R. Gates (*pro hac vice*)
zgates@burnslev.com
Alexandra Capachietti (*pro hac vice*)
acapachietti@burnslev.com
125 Summer Street
Boston, Massachusetts 02110
[Tel.] (617) 345-3000
[Fax] (617) 345-3299

**DONOVAN HATEM LLP**
Paul T. Muniz (*pro hac vice*)
pmuniz@donovanhatem.com
53 State Street, 8th Floor
Boston, Massachusetts 02109
[Tel.] (617) 406-4610
[Fax] (617) 406-4507

**GARTEISER HONEA, P.C.**
Randall T. Garteiser (SBN 231821)
randall.garteiser@sftrialattorneys.com
Christopher A. Honea (SBN 232473)
chris.honea@sftrialattorneys.com
44 North San Pedro Road
San Rafael, California 94903
[Tel.] (415) 785-3762
[Fax] (415) 785-3805

**FISH & RICHARDSON, P.C.**
Katherine K. Lutton (SBN 194971)
lutton@fr.cm
500 Arguello Street, Ste. 500
Redwood City, California 94063
[Tel.] (650) 839-5070
[Fax] (650) 839-5071

Ruffin B. Cordell (*pro hac vice*)
cordell@fr.com
1425 K Street, NW
Suite 1100
Washington, DC 20005
[Tel.] (207) 783-5070
[Fax] (207) 783-2331

Christopher O. Green (*pro hac vice*)
cgreen@fr.com
Aamir A. Kazi (*pro hac vice*)
kazi@fr.com
Jacqueline Tio (*pro hac vice*)
tio@fr.com
1180 Peachtree Street, 21st Floor
Atlanta, Georgia 30309
[Tel.] (404) 892-5005
[Fax] (404) 892-5002

Benjamin C. Elacqua (*pro hac vice*)
elacqua@fr.com
1221 McKinney, Suite 2800
Houston, Texas 77010
[Tel.] (713) 654-5300
[Fax] (713) 652-0109

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Joseph J. Mueller (*pro hac vice*)
joseph.mueller@wilmerhale.com
50 State Street
Boston, Massachusetts 02109
[Tel.]  (617) 526-6000
[Fax]  (617) 526-5000

Matthew Hawkinson (SBN 248216)
matthew.hawkinson@wilmerhale.com
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
[Tel.]  (213) 443-5300
[Fax]  (213) 443-5400

SECOND AMENDED JOINT PROPOSED FINAL JURY INSTRUCTIONS
CIVIL NO. 5:12-CV-02885-LHK

*Attorneys for Plaintiff GPNE Corp.*

Mark D. Selwyn (SBN. 244180)
Mark.selwyn@wilmerhale.com
950 Page Mill Road
Palo Alto, CA 94304
[Tel.] (650) 858-6000
[Fax] (650) 858-6100

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| GPNE CORP.,<br><br>                    Plaintiff,<br><br>vs.<br><br>APPLE INC.,<br><br>                    Defendant. | Civil No. 5:12-CV-02885-LHK<br><br>**JURY TRIAL DEMANDED**<br><br>**SECOND AMENDED JOINT PROPOSED FINAL JURY INSTRUCTIONS** |

Pursuant to the Court's Pretrial Conference Order (Dkt. No. 327), Plaintiff GPNE Corp. and Defendant Apple Inc. respectfully submit these joint proposed jury instructions, which contain the parties' proposed final jury instructions in the order in which they are to be read to the jury. Where the parties disagree on an instruction, Plaintiff's proposed language appears **[bracketed in bold]** and Defendant's proposal language appears [bracketed and underlined].

Each party reserves the right to propose additional instructions as the need arises and to object to additional instructions proposed by its opponent.

Submission of an instruction on any particular issue, or inclusion of that issue in a party's proposed verdict form, should not be construed as an express or implied admission that the issue is properly in this case or that sufficient evidence will be provided to submit such issue to the jury at the close of all evidence. The parties have submitted motions *in limine* and have identified evidentiary issues in the Pretrial Order. Additionally, each party reserves the right to move for judgment as a matter of law on any issue that would otherwise be determined by the jury.

## I.   INSTRUCTION TO BE GIVEN AFTER CLOSING ARGUMENTS

Final Instruction No. 1: **Duty of Jury**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. Do not let personal likes or dislikes, opinions, prejudices, bias, or sympathy influence your decision. Bias includes bias for or against any party or any witness based upon nationality, race or ethnicity. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**Source:**

Adapted from Ninth Circuit Model Civil Jury Instructions – 1.1C (2007 ed.).

Adapted from Case No. 12-CV-00630 Final Instruction No. 1 (ECF No. 1848 at 5).

1  Final Instruction No. 2: **What is Evidence**

2  The trial is now over.  The evidence you are to consider in deciding what the facts are

3  consists of:

4  1.  the sworn testimony of any witness;

5  2.  the exhibits which are received into evidence; and

6  3.  any facts to which the lawyers have agreed.

7  **Source:**

8  Adapted from Ninth Circuit Model Civil Jury Instructions – 1.6 (2007 ed.).

9  Adapted from Case No. 12-CV-00630 Final Instruction No. 5 (ECF No. 1848 at 9).

Final Instruction No. 3: **What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.  Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they said in their opening statements and throughout the trial, and what they will say in their closing arguments or at other times is intended to help you interpret the evidence.  But these arguments and statements are not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.  Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.  Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

4.  Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**Source:**

Adapted from Ninth Circuit Model Civil Jury Instructions – 1.7 (2007 ed.).

Adapted from Case No. 12-CV-00630 Final Instruction No. 6 (ECF No. 1848 at 10).

1    Final Instruction No. 4: **Evidence for Limited Purpose**

2    Some evidence may have been admitted for a limited purpose only.  You must consider it

3    only for that limited purpose and for no other.

4    **Source:**

5    Adapted from Ninth Circuit Model Civil Jury Instructions – 1.8 (2007 ed.).

6    Adapted from Case No. 12-CV-00630 Final Instruction No. 7 (ECF No. 1848 at 11).

Final Instruction No. 5: **Charts and Summaries Not Received in Evidence**

Certain charts and slides not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**Source:**

Adapted from Ninth Circuit Model Civil Jury Instructions – 2.12 (2007 ed.).

Adapted from Case No. 12-CV-00630 Final Instruction No. 8 (ECF No. 1848 at 12).

1    Final Instruction No. 6: **Charts and Summaries in Evidence**

2         Certain charts and summaries have been received into evidence to illustrate information

3    brought out in the trial.  You may use those charts and summaries as evidence, even though the

4    underlying documents and records are not here.  You should give them only such weight as you

5    think they deserve.

6    **Source:**

7    Adapted from Ninth Circuit Model Civil Jury Instructions – 2.13 (2007 ed.).

8    Adapted from Case No. 12-CV-00630 Final Instruction No. 9 (ECF No. 1848 at 13).

Final Instruction No. 7: **Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**Source:**

Adapted from Ninth Circuit Model Civil Jury Instructions – 1.9 (2007 ed.).

Adapted from Case No. 12-CV-00630 Final Instruction No. 10 (ECF No. 1848 at 14).

1     Final Instruction No. 8: **Credibility of Witnesses**

2        In deciding the facts in this case, you may have to decide which testimony to believe and

3 which testimony not to believe.  You may believe everything a witness says, or part of it, or none

4 of it.

5        In considering the testimony of any witness, you may take into account:

6        1.  the opportunity and ability of the witness to see or hear or know the things

7            testified to;

8        2.  the witness's memory;

9        3.  the witness's manner while testifying;

10       4.  the witness's interest in the outcome of the case and any bias or prejudice;

11       5.  whether other evidence contradicted the witness's testimony;

12       6.  the reasonableness of the witness's testimony in light of all the evidence; and

13       7.  any other factors that bear on believability.

14       The weight of the evidence as to a fact does not necessarily depend on the number of

15 witnesses who testify about it.

16 **Source:**

17 Adapted from Ninth Circuit Model Civil Jury Instructions – 1.11 (2007 ed.).

18 Adapted from Case No. 12-CV-00630 Final Instruction No. 11 (ECF No. 1848 at 15).

19

20

21

22

23

24

25

26

27

28

1    Final Instruction No. 9: **Impeachment Evidence - Witness**

2         The evidence that a witness lied under oath or gave different testimony on a prior

3   occasion may be considered, along with all other evidence, in deciding whether or not to believe

4   the witness and how much weight to give to the testimony of the witness and for no other

5   purpose.

6   **Source:**

7   Ninth Circuit Model Civil Jury Instructions – 2.8 (2007 ed.).

8   Adapted from Case No. 12-CV-00630 Final Instruction No. 12 (ECF No. 1848 at 16).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Final Instruction No. 10: **Taking Notes**

2    You may have taken notes during the trial.  Whether or not you took notes, you should

3    rely on your own memory of the evidence.  Notes are only to assist your memory.  You should

4    not be overly influenced by your notes or those of your fellow jurors.

5    **Source:**

6    Ninth Circuit Model Civil Jury Instructions – 1.14 (2007 ed.).

7    Adapted from Case No. 12-CV-00630 Final Instruction No. 13 (ECF No. 1848 at 17).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Final Instruction No. 11: **Deposition in Lieu of Live Testimony**

2    You heard some witnesses testify by deposition.  A deposition is the sworn testimony of a

3    witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each

4    party may ask questions.  The questions and answers are recorded.

5    You should consider deposition testimony, presented to you in court in lieu of live

6    testimony, insofar as possible, in the same way as if the witness had been present to testify.

7    **Source:**

8    Ninth Circuit Model Civil Jury Instructions – 2.4 (2007 ed.).

9    Adapted from Case No. 12-CV-00630 Final Instruction No. 14 (ECF No. 1848 at 18).

Final Instruction No. 12: **Use of Interrogatories of a Party**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**Source:**

Ninth Circuit Model Civil Jury Instructions – 2.10 (2007 ed.).

Adapted from Case No. 12-CV-00630 Final Instruction No. 15 (ECF No. 1848 at 19).

1         Final Instruction No. 13: **Expert Opinion**

2         Some witnesses, because of education or experience, were permitted to state opinions and

3    the reasons for those opinions.

4         Opinion testimony should be judged just like any other testimony.  You may accept it or

5    reject it, and give it as much weight as you think it deserves, considering the witness's education

6    and experience, the reasons given for the opinion, and all the other evidence in the case.

7    **Source:**

8    Ninth Circuit Model Civil Jury Instructions – 2.11 (2007 ed.).

9    Adapted from Case No. 12-CV-00630 Final Instruction No. 16 (ECF No. 1848 at 20).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Final Instruction No. 14: **Use of Devices During Deliberations**

The physical devices you received are evidence in this trial.

You may use them in your deliberations, but must not alter or modify the devices in any way.

**Source:**

Adapted from Case No. 12-CV-00630 Final Instruction No. 17 (ECF No. 1848 at 21).

1    Final Instruction No. 15: **Summary of Contentions**

2    I will now again summarize for you each side's contentions in this case. I will then tell

3    you what each side must prove to win on each of its contentions.

4    As I previously explained, GPNE seeks money damages from Apple for allegedly

5    infringing claims 19 and 22 of the '954 patent, claim 42 of the '267 patent, and claims 37 and 44

6    of the '492 patent. These claims are referred to as the asserted claims.

7    Apple denies that it has infringed the asserted claims and argues that, in addition, the

8    asserted claims are invalid. Invalidity is a defense to infringement.

9    For each patent infringement claim against Apple, the first issue you will be asked to

10   decide is whether Apple has infringed the asserted claims of GPNE's patents. You will also be

11   asked to decide whether those claims are valid. If you decide that any asserted claim of GPNE's

12   patents has been infringed and is not invalid, you will then need to decide any money damages to

13   be awarded to GPNE to compensate it for the infringement.

14   **Source:**

15   Adapted from Case No. 12-CV-00630 Final Instruction No. 18 (ECF No. 1848 at 26).

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Final Instruction No. 16: **Duty to Deliberate**

2         When you begin your deliberations, you should elect one member of the jury as your

3    presiding juror.  That person will preside over the deliberations and speak for you here in court.

4         You will then discuss the case with your fellow jurors to reach agreement if you can do

5    so.  Your verdict must be unanimous.

6         Each of you must decide the case for yourself, but you should do so only after you have

7    considered all of the evidence, discussed it fully with the other jurors, and listened to the views of

8    your fellow jurors.

9         Do not hesitate to change your opinion if the discussion persuades you that you should.

10   Do not come to a decision simply because other jurors think it is right.

11        It is important that you attempt to reach a unanimous verdict but, of course, only if each

12   of you can do so after having made your own conscientious decision.  Do not change an honest

13   belief about the weight and effect of the evidence simply to reach a verdict.

14   **Source:**

15   Ninth Circuit Model Civil Jury Instructions – 3.1 (2007 ed.).

16   Adapted from Case No. 12-CV-00630 Final Instruction No. 19 (ECF No. 1848 at 27).

17

18

19

20

21

22

23

24

25

26

27

28

1    Final Instruction No. 17: **Conduct of the Jury**

2    Because you must base your verdict only on the evidence received in the case and on

3    these instructions, I remind you that you must not be exposed to any other information about the

4    case or to the issues it involves. Except for discussing the case with your fellow jurors during

5    your deliberations:

6        Do not communicate with anyone in any way and do not let anyone else communicate

7        with you in any way about the merits of the case or anything to do with it. This includes

8        discussing the case (including the parties, evidence, witnesses or the lawyers) in person,

9        in writing, by phone or electronic means, via email, text messaging, social media or any

10       Internet chat room, blog, website or other feature. This applies to communicating with

11       your family members, your employer, the media or press, and the people involved in the

12       trial. If you are asked or approached in any way about your jury service or anything about

13       this case, you must respond that you have been ordered not to discuss the matter and to

14       report the contact to the court.

15       Do not read, watch, or listen to any news or media accounts or commentary about the case

16       or anything to do with it (including the parties, evidence, witnesses or the lawyers); do not

17       do any research, such as consulting dictionaries, searching the Internet or using other

18       reference materials; and do not make any investigation or in any other way try to learn

19       about the case on your own.

20       The law requires these restrictions to ensure the parties have a fair trial based on the same

21   evidence that each party has had an opportunity to address. A juror who violates these

22   restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside

23   information, please notify the court immediately.

24   **Source:**

25   Adapted from Ninth Circuit Model Civil Jury Instructions – 1.12 (2007 ed.).

26

27

28

1    Final Instruction No. 18: **Communications with Court**

2         If it becomes necessary during your deliberations to communicate with me, you may send

3    a note through the Bailiff, signed by your presiding juror or by one or more members of the jury.

4    No member of the jury should ever attempt to communicate with me except by a signed writing; I

5    will communicate with any member of the jury on anything concerning the case only in writing,

6    or here in open court.  If you send out a question, I will consult with the parties before answering

7    it, which may take some time.  You are not to conclude from any time delays that the question is

8    difficult to answer and you are not to speculate that the time delay gives any indication as to what

9    the answer is. You may continue your deliberations while waiting for the answer to any question.

10   Remember that you are not to tell anyone—including me—how the jury stands, numerically or

11   otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not

12   disclose any vote count in any note to the court.

13   **Source:**

14   Ninth Circuit Model Civil Jury Instructions – 3.2 (2007 ed.).

15   Adapted from Case No. 12-CV-00630 Final Instruction No. 20 (ECF No. 1848 at 28).

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Final Instruction No. 19: **Return of Verdict**

2    A verdict form has been prepared for you.  After you have reached unanimous agreement

3    on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it,

4    and advise the court that you are ready to return to the courtroom.

5    **Source:**

6    Ninth Circuit Model Civil Jury Instructions – 3.3 (2007 ed.).

7    Adapted from Case No. 12-CV-00630 Final Instruction No. 21 (ECF No. 1848 at 29).

1    Final Instruction No. 20: **Interpretation of Claims**

2         Before you decide whether Apple has infringed any of the asserted claims of GPNE's

3    patents or whether the claims of GPNE's patents are invalid, you will need to understand the

4    patent claims.  As I mentioned, the patent claims are numbered sentences at the end of the patent

5    that describe the boundaries of the patent's protection.  At the beginning of this case I gave you a

6    document reflecting those meanings.  You must accept those interpretations as correct.  My

7    interpretation of the language should not be taken as an indication that I have a view regarding

8    the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are

9    yours to make.

10        The term "node" means "pager with two-way data communications capability that

11   transmits wireless data communications on a paging system that operates independently from a

12   telephone network."

13        The term "frequency" means "a number expressed in hertz."

14        The term "randomly generated information" means "[i]nformation that is randomly

15   generated."

16        The term "count value" means "[t]he number of consecutively related packets emanating

17   from a transmitter."

18        The term "interface [configured/controlled] by the at least one processor to [transmit and

19   receive terms]" means "Electronic circuitry which is configured/controlled by the processor(s)

20   according to instructions in the memory, that allows the processor(s) to communicate with a

21   transceiver."

22        [APPLE PROPOSAL:  The above language "[transmit and receive terms]" refers to the

23   transmitting and receiving steps that a claim states are performed by the interface.  For example,

24   claim 39 of the '267 patent (parent of asserted dependent claim 42) recites:

25            at least one interface controlled by the processor to:

26                    transmit a random access request signal in a first slot, the random access request

27                    signal including information that allows determination that the first node requires

28                    an allocation of resources to transmit a reserve access request signal;

1    receive a first grant signal subsequent to transmission of the random access

2    request signal, said first grant signal including information relating to an allocation

3    of a second slot to the first node for transmitting the reserve access request signal

4    for transmitting first data packets containing a message;

5    transmit the reserve request signal in the second slot subsequent to receiving the

6    first grant signal;

7    receive a second grant signal subsequent to transmission of the reserve request

8    signal, said second grant signal including information related to an allocation of

9    additional resources for transmitting the first data packets; and

10   transmit the first data packets in response to the second grant signal.]

11       The term "providing code to" means "which is actually programmed to provide code to."

12       The term "first grant signal including information relating to an allocation of a second slot

13   to the first node for transmitting the reserve access request signal" means "first grant signal

14   including information identifying a slot to use for transmitting the reserve access request signal."

15       The term "allocation of additional resources for transmitting the data packets/allocation of

16   additional resources for transmitting the first data packets" means "An assignment of a frequency

17   to the same node for transmitting the message."

18       The term "clocking signal" means "A signal that, among other things, contains timing

19   information used for allocating resources."

20       For claim language where I have not provided you with any meaning, you should apply

21   the claim language's plain and ordinary meaning.

22       The claims define the scope of the patent.  You must read the claims in the same way

23   when you analyze infringement and when you analyze GPNE's patents for invalidity.

24   **Source:**

25   Adapted from N.D. Cal. Model Patent Jury Instr. B.2.1.

26   Adapted from Case No. 12-CV-00630 Final Instruction No. 22 (ECF No. 1848 at 30).

27   ECF No. 87 (claim construction order).

28   **Authorities:**

1   *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*,

2   415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d

3   1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en*

4   *banc*)*; Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

5

6   [Apple Comment: The construed term "interface [configured/controlled] by at least one

7   processor to [transmit and receive terms]" represents several similar claim terms that contained

8   common areas of dispute, and thus were briefed together by the parties and decided together by

9   the Court. The Court's claim construction order includes an example of how the bracketed

10  language in the common claim term applies to one of the asserted claims in which it appears.

11  Dkt. No. 87 at 29. GPNE's suggestion that Apple is seeking to offer different meanings than

12  those provided by the Court is thus incorrect. Quite the opposite, Apple's proposal will clarify

13  for the jury the manner in which the single term construed by the Court applies to each of the

14  asserted claims.]

15

16  **[GPNE Comment: Apple's Proposal is not found in the Model Jury Instructions.**

17  **Furthermore, the Court has already construed the claims and Apple is seeking to**

18  **circumvent the Court's instructions by offering meanings different than those found in the**

19  **Court's Order Construing Claims (Dkt. No. 87) For instance, Apple refers to "steps" which**

20  **are appropriate to method claims, not the apparatus claims at issues in the case.]**

21

22

23

24

25

26

27

28

1

Final Instruction No. 21:  **Burden of Proof**

2

3

I will now instruct you on the rules you must follow in deciding whether GPNE has

proven that Apple infringed one or more of the asserted claims of the asserted patents.  To prove

4

infringement of any claim, GPNE must persuade you that it is more likely than not that Apple has

5

infringed that claim.

6

**Source:**

7

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.1.

8

Adapted from Case No. 12-CV-00630 Final Instruction No. 23 (ECF No. 1848 at 32).

9

**Authorities:**

10

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.,* 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-*

11

*Flex, Inc. v. Athletic Track and Court Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l,*

12

*Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Final Instruction No. 22: **Patents – Direct Infringement**

2        A patent's claims define what is covered by the patent.  A product directly infringes a

3    patent if it is covered by at least one claim of the patent.

4        Deciding whether a claim has been directly infringed is a two-step process.  The first step

5    is to decide the meaning of the patent claim.  I have already made this decision, and I have

6    already instructed you as to the meaning of the asserted patent claims.  The second step is to

7    decide whether Apple has made, used, sold, offered for sale, or imported within the United States

8    a product covered by any of the asserted claims of GPNE's patents.  If it has, it infringes.  You,

9    the jury, make this decision.

10       With one exception, you must consider each of the asserted claims of the patents

11   individually, and decide whether the accused Apple products infringe that claim.   The one

12   exception to considering claims individually concerns dependent claims.  A dependent claim

13   includes all of the requirements of a particular independent claim, plus additional requirements of

14   its own.  As a result, if you find that an independent claim is not infringed, you must also find

15   that its dependent claims are not infringed.  On the other hand, if you find that an independent

16   claim has been infringed, you must still separately decide whether the additional requirements of

17   its dependent claims have also been infringed. [APPLE PROPOSAL #1:  For example:

18       -    Asserted claim 42 of the '267 patent depends from claim 39.  This means that if you

19            find claim 39 not infringed, you must also find claim 42 not infringed.  On the other

20            hand, if you find that claim 39 has been infringed, you must still separately decide

21            whether the additional requirements of claim 42 have also been infringed.

22       -    Asserted claim 44 of the '492 patent depends from claim 37.  This means that if you

23            find claim 37 not infringed, you must also find claim 44 not infringed.  On the other

24            hand, if you find that claim 37 has been infringed, you must still separately decide

25            whether the additional requirements of claim 44 have also been infringed.

26       -    Asserted claim 22 of the '954 patent depends from claim 13.  This means that if you

27            find claim 13 not infringed, you must also find claim 22 not infringed.  On the other

28

1   hand, if you find that claim 13 has been infringed, you must still separately decide

2   whether the additional requirements of claim 22 have also been infringed.

3   -   Asserted claim 19 of the '954 patent depends from claim 18, which in turn depends

4       from claim 13. This means that if you find claim 13 or claim 18 not infringed, you

5       must also find claim 19 not infringed.  On the other hand, if you find that both claim

6       13 and claim 18 have been infringed, you must still separately decide whether the

7       additional requirements of claim 19 have also been infringed.]

8   [APPLE PROPOSAL #2:   To determine infringement, you must compare GPNE's

9   asserted claims to Apple's products.   You should not determine infringement solely by

10  comparing GPNE's asserted claims to the GPRS/EDGE and/or LTE standards.  Likewise, you

11  should not determine infringement solely by comparing Apple's products to the GPRS/EDGE

12  and/or LTE standards.]

13  Whether or not Apple knew its products infringed or even knew of GPNE's patents does

14  not matter in determining direct infringement.

15  There are two ways in which a patent claim may be directly infringed.  A claim may be

16  "literally" infringed, or it may be infringed under the "doctrine of equivalents."  The following

17  instructions will provide more detail on these two types of direct infringement.

18  **Source:**

19  Adapted from N.D. Cal. Model Patent Jury Instr. B.3.2.

20  Adapted from Case No. 12-CV-00630 Final Instruction No. 24 (ECF No. 1848 at 33).

21  **Authorities:**

22  35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997);

23  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327-28 (Fed. Cir. 2010); *Cross Med. Prods., Inc. v.*

24  *Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed.  Cir.

25  2005); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex,*

26  *Inc. v. Athletic Track and Court Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc.*

27  *v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

28

1   [Apple Comment:  Apple's Proposal #1, which explains the jury's responsibility with respect to
2   the specific dependent claims at issue in this case, will be helpful to the jury, particularly with
3   respect to claim 19 of the '954 patent, which is a dependency of a dependency.  Apple's Proposal
4   #2 is a correct statement of the controlling case law.  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321,
5   1327-28 (Fed. Cir. 2010), and GPNE has already represented to this Court in its opposition to
6   Apple's Motion *in Limine* No. 4 that it does not intend to point only to the standard to show
7   infringement.  Dkt. No. 294 at 11-12.]

8

9   **[GPNE Comment: Regarding Apple's Proposal No. 1, GPNE contends that only one**
10  **example is required, if at all.**

11

12  **Apple's Proposal No. 2 is not found in the model instructions and is an improper attempt to**
13  **control the jury's deliberations.   Furthermore, Apple's proposal conflicts with Federal**
14  **Circuit precedent and seeks to tell the jury how they should weigh certain pieces of**
15  **evidence.  *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ("a district**
16  **court may rely on an industry standard in analyzing infringement. If a district court**
17  **construes the claims and finds that the reach of the claims includes any device that**
18  **practices a standard, then this can be sufficient for a finding of infringement. We agree that**
19  **claims should be compared to the accused product to determine infringement. However, if**
20  **an accused product operates in accordance with a standard, then comparing the claims to**
21  **that standard is the same as comparing the claims to the accused product. We accepted this**
22  **approach in Dynacore where the court held a claim not infringed by comparing it to an**
23  **industry standard rather than an accused product. An accused infringer is free to either**
24  **prove that the claims do not cover all implementations of the standard or to prove that it**
25  **does not practice the standard.").]**

26

27

28

1

2          Final Instruction No. 23: **Patents – Literal Infringement**

3          To decide whether each accused Apple product literally infringes a claim of an asserted

4   patent, you must compare the product with the patent claim and determine whether every

5   requirement of the claim is included in that product.  If so, the Apple product in question literally

6   infringes that claim.  If, however, a particular Apple product does not have every requirement in

7   the patent claim, that product does not literally infringe that claim.  You must decide literal

8   infringement for each asserted claim and each accused product separately.

9          If the patent claim uses the term "comprising," that patent claim is to be understood as an

10  open claim.  An open claim is infringed as long as every requirement in the claim is present in the

11  accused product.  The fact that a particular accused Apple product also includes other parts or

12  steps will not avoid infringement, as long as it has every requirement in the patent claim.

13  **Source:**

14  Adapted from N.D. Cal. Model Patent Jury Instr. B.3.3.

15  Adapted from Case No. 12-CV-00630 Final Instruction No. 26 (ECF No. 1848 at 35).

16  **Authorities:**

17  *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword,*

18  *LLC v. Centraal Corp.,* 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.,* 102

19  F.3d 524, 532 (Fed. Cir. 1996).

20

21

22

23

24

25

26

27

28

1     Final Instruction No. 24: **Infringement Under the Doctrine of Equivalents**

2          If you decide that one of Apple's [APPLE PROPOSAL #1: GPRS] products does not

3     literally infringe an asserted patent claim, you must nonetheless then decide whether that product

4     infringes the asserted claim under what is called the "doctrine of equivalents."   [APPLE

5     PROPOSAL #2:  In this case, the only claim element for which the "doctrine of equivalents" is

6     available is "node."  You may not use the doctrine of equivalents to find infringement by Apple's

7     LTE products.]

8           Under the doctrine of equivalents, the product can infringe an asserted patent claim if it

9     includes parts that are identical or equivalent to the requirements of the claim.  If the product is

10    missing an identical or equivalent part to even one requirement of the asserted patent claim, the

11    product cannot infringe the claim under the doctrine of equivalents.   Thus, in making your

12    decision under the doctrine of equivalents, you must look at each individual requirement of the

13    asserted patent claim and decide whether the product has either an identical or equivalent part to

14    that individual claim requirement.

15         A part of a product is equivalent to a requirement of an asserted claim if a person of

16    ordinary skill in the field would think that the differences between the part and the requirement

17    were not substantial as of the time of the alleged infringement.

18         Changes in technique or improvements made possible by technology developed after the

19    patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if

20    it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

21         One way **[GPNE PROPOSAL #1: , but not the only way,]** to decide whether any

22    difference between a requirement of an asserted claim and a part of the product is not substantial

23    is to consider whether, as of the time of the alleged infringement, the part of the product

24    performed substantially the same function, in substantially the same way, to achieve substantially

25    the same result as the requirement in the patent claim.

26         **[GPNE PROPOSAL #2:   In deciding whether any difference between a claim**

27    **requirement and the product is not substantial, you may consider whether, at the time of**

28    **the alleged infringement, persons of ordinary skill in the field would have known of the**

1  interchangeability of the part with the claimed requirement.  The known interchangeability

2  between the claim requirement and the part of the product is not necessary to find

3  infringement under the doctrine of equivalents.  However, known interchangeability may

4  support a conclusion that the difference between the part in the product and the claim

5  requirement is not substantial.  The fact that a part of the product performs the same

6  function as the claim requirement is not, by itself, sufficient to show known

7  interchangeability.]

8      [APPLE PROPOSAL #3:  You may not use the doctrine of equivalents to find

9  infringement by Apple's GPRS products of any claim requirement other than "node."]

10      You may not use the doctrine of equivalents to find infringement if you find that the

11  relevant functionality in Apple's products is the same as what was in the prior art before the

12  application for the asserted patents or what would have been obvious to persons of ordinary skill

13  in the field in light of what was in the prior art.  GPNE may not obtain, under the doctrine of

14  equivalents, protection that it could not have lawfully obtained from the Patent and Trademark

15  Office.  If Apple has offered evidence sufficient to show that the relevant functionality in the

16  accused products was in the prior art, the burden shifts to GPNE to prove that what it attempts to

17  cover under the doctrine of equivalents is not in the prior art or would not have been obvious

18  from the prior art.

19      You may not use the doctrine of equivalents to find infringement if you find that the

20  subject matter alleged to be equivalent to a requirement of the patent claim was described in the

21  asserted patents but not covered by any of their claims.  The subject matter described but not

22  claimed must be specific enough that one of ordinary skill in the art would understand that it was

23  present in the patent.

24   **Source:**

25  Adapted from N.D. Cal. Model Patent Jury Instr. B.3.4.

26  **Authorities:**

27  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002); *Warner-*

28  *Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v.*

1   *Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)*; Abraxis Bioscience, Inc. v. Mayne Pharma*

2   *(USA) Inc.*, 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429

3   F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. Inc. v. R.E. Service Co., Inc.*, 285

4   F.3d 1046 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d

5   1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*, 16 F.3d 394, 397 (Fed.

6   Cir. 1994).

7

8   [Apple Comment:  GPNE's expert Dr. Dinan has not opined on a methodology for determining

9   alleged insubstantial differences other than the function-way-result test.  *See generally* Apple's

10   Motion *in Limine* No. 3.  GPNE's Proposal #1 is therefore improper, because it is not found in

11   this District's model instructions, and it implies that GPNE will present an alternative to the

12   function-way-result test when none exists.  A bare statement by an expert that differences are

13   insubstantial is insufficient.  *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d

14   1558, 1567 (Fed. Cir. 1996) ("Generalized testimony as to the overall similarity between the

15   claims and the accused infringer's product or process will not suffice.").  GPNE's Proposal #2 is

16   inappropriate for similar reasons, and because Dr. Dinan has not opined on known

17   interchangeability.  Thus, GPNE's Proposal #2 is unnecessary and would be confusing to the

18   jury.

19

20      Apple's Proposals #1 and #2 make clear to the jury that, as set forth in the Court's Pretrial

21   Conference Order, to the extent GPNE presents testimony regarding the doctrine of equivalents,

22   that testimony is limited to Apple's GPRS devices.  Dkt. No. 327 at 1-2.  GPNE incorrectly states

23   that "there is no meaningful way to separate" GPRS and LTE functionality.  Apple and GPNE

24   previously identified the iPhone 5 (CDMA version), iPad (3rd Generation) (CDMA Version) and

25   iPad Mini (CDMA version) as supporting LTE functionality, but not GPRS.  (D236, D237.)

26   Apple and GPNE also previously identified the iPhone 4 (GSM version), iPhone 4S, and iPad 2

27   (GSM version) as supporting GPRS functionality, but not LTE.  (D236, D237.)  Given the

28   existence of distinct GPRS-only and LTE-only iPhones and iPads, and further given that GPNE's

1  expert, Dr. Dinan, has separate and distinct claim charts for GPRS and LTE functionality, *see*

2  Dkt. No. 201-11 at 25-96 (GPRS) and 104-128 (LTE), GPNE cannot assert that GPRS and LTE

3  functionality is incapable of "meaningful" separation.  More specifically, during the pretrial

4  conference, the Court rejected GPNE's argument that it may offer GPRS-specific evidence and

5  opinions as proof that LTE devices infringe under the doctrine of equivalents ("DOE").  (June 26,

6  2014, Pretrial Conf. Tr. at 82:9 – 83:9).

7

8         The Court further excluded GPNE from offering technical expert testimony that LTE

9  functionality satisfies the asserted patents under the doctrine of equivalents.  (Dkt. No. 327 at 1-

10 2.)  Without particularized expert testimony, there is no triable DOE issue.  *See, e.g., AquaTex*

11 *Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) (affirming summary

12 judgment dismissing DOE claim where plaintiff "only provided lawyer argument and generalized

13 testimony about the accused product"; explaining that "when the patent holder relies on the

14 doctrine of equivalents, as opposed to literal infringement, the difficulties and complexities of the

15 doctrine require that evidence be presented to the jury or other fact-finder through the

16 particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who

17 (on a limitation-by-limitation basis) describes the claim limitations and establishes that those

18 skilled in the art would recognize the equivalents"); *see also Centricut, LLC v. Esab Group, Inc.*,

19 390 F.3d 1361, 1370 (Fed. Cir. 2004) (holding that although "[w]e do not state a per se rule that

20 expert testimony is required to prove infringement when the art is complex . . . . in a case

21 involving complex technology, where the accused infringer offers expert testimony negating

22 infringement, the patentee cannot satisfy its burden of proof by relying only on testimony from

23 those who are admittedly not expert in the field"); *Implicit Networks Inc. v. F5 Networks Inc.*,

24 Nos. C10-3365 SI, C 10-4234 SI, 2013 WL 1007250, at *1, 13 (N.D. Cal. Mar. 13, 2013)

25 (deeming patents covering a networking system that selects software routines after arrival of the

26 first packet of a message to be "complex" and requiring expert testimony to prove infringement).

27  Finally, GPNE has the burden of proof on infringement, and it has not identified any "other

28 witnesses" it may present who are qualified or competent to offer testimony on this issue.  The

1  only GPNE witness qualified to offer any testimony on the doctrine of equivalents is Dr. Dinan,

2  and he failed to offer any such opinions in his report.  The jury should thus be instructed that

3  there is no DOE issue to decide as to LTE.

4

5  Apple's Proposal #3, regarding the available scope of the Doctrine of Equivalents, comports with

6  the scope of Dr. Dinan's DOE opinions.  *See* Apple's Motion *in Limine* No. 3.  GPNE's appeal to

7  its infringement contentions in its Comment tacitly acknowledges Dr. Dinan's silence with

8  respect to limitations other than "node."]

9

10  **[GPNE Comment: GPNE's Proposal No. 2 is derived from the N.D. Cal. Model Patent Jury**

11  **Instructions concerning Doctrine of Equivalents.**

12

13  **Regarding Apple Proposal Nos. 1-3, GPNE is accusing Apple's iPhones and iPads.  For**

14  **several of the accused devices the same model is capable of communicating using either**

15  **GPRS or LTE and there is no meaningful way to separate the functionality.  .  The Court's**

16  **Pretrial Order only limited the questions that GPNE may ask Dr. Dinan during trial ("Dr.**

17  **Dinan may not offer testimony at trial regarding the doctrine of equivalents as to the**

18  **accused LTE devices." (Dkt. No. 327)).  Importantly, the Pretrial Order does not limit the**

19  **DOE theories to only GPRS devices and Apple's attempts to craft the jury instructions in**

20  **this vein are improper and inconsistent with the Court's ruling.  Furthermore, DOE**

21  **testimony may come in through other witnesses at trial.  Regarding Apple's Proposal No. 3,**

22  **Apple is improperly seeking to limit the scope of the case through the jury instructions.**

23  **GPNE's amended infringement contentions included Doctrine of Equivalents arguments**

24  **for both "node" and information related to a count value.]**

25

26

27

28

SECOND AMENDED JOINT PROPOSED FINAL JURY INSTRUCTIONS
CIVIL NO. 5:12-CV-02885-LHK                                                      Page 34

1    Final Instruction No. 25: **Patents – Invalidity – Burden of Proof**

2         I will now instruct you on the rules you must follow in deciding whether Apple has

3    proven that asserted claims of GPNE's patents are invalid.  Before discussing the specific rules, I

4    want to remind you about the standard of proof that applies to this defense.  To prove invalidity

5    of any patent claim, Apple must **[GPNE PROPOSAL: persuade you by clear and convincing**

6    **evidence that the claim is invalid, which means highly probable that the claim is invalid]**

7    [APPLE PROPOSAL #1: persuade you that it is highly probable that the claim is invalid.]  Some

8    of GPNE's asserted claims have gone through a process at the United States Patent and

9    Trademark Office (PTO) known as reexamination.  In a reexamination, a challenger asks the

10   PTO to consider whether a patent's claims are still valid in light of certain prior art that the PTO

11   may not have considered before granting the patent.  The reexaminations of GPNE's patents were

12   requested by Research in Motion ("RIM," now known as BlackBerry), and Apple did not

13   participate in them.  During the reexaminations, RIM and GPNE took turns making arguments to

14   the PTO about the prior art in question, but RIM settled with GPNE before the reexaminations

15   were finished, and the terms of the settlement precluded RIM from further participating in the

16   reexaminations.  [APPLE PROPOSAL #2:  Because RIM was no longer participating, GPNE

17   was able to make a series of unchallenged arguments to the PTO.  Also, as you have heard,

18   during the reexaminations the PTO did not consider all of the prior art you have seen in this case.

19   But regardless of whether a patent claim was reexamined and whether the PTO considered a

20   given piece of prior art during reexamination, you are to decide whether Apple has shown that

21   the claim is invalid in light of the prior art.  A patent claim that survives reexamination is not

22   "more valid" than a patent claim that has not been reexamined.]

23        [APPLE PROPOSAL #3:  During this case, Apple has submitted prior art that was not

24   considered by the United States Patent and Trademark Office (PTO) during the prosecution of the

25   asserted patents.  Apple contends that such prior art invalidates certain claims of the asserted

26   patents.  In deciding the issue of invalidity, you may take into account the fact that the prior art

27   was not considered by the PTO when it issued the asserted patents.  Prior art that differs from the

28   prior art considered by the PTO may carry more weight than the prior art that was considered and

1    may make Apple's burden of showing that it is highly probable that a patent claim is invalid

2    easier to sustain.]

3    **Source:**

4    Adapted from N.D. Cal. Model Patent Jury Instr. B.4.1.

5    Adapted from Case No. 12-CV-00630 Final Instruction No. 31 (ECF No. 1848 at 40).

6    **Authorities:**

7    *Microsoft Corp. v. i4i Ltd.   P'ship,* 131 S.Ct. 2238, 2242, 2251 (2011); *Sciele Pharma Inc. v.*

8    *Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) ("Whether a reference was previously

9    considered by the PTO, the burden of proof is the same: clear and convincing evidence of

10   invalidity."); *Buildex Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech*

11   *Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986).

12

13   [Apple Comment:  Apple's Proposal #1 comes directly from this District's model instructions

14   (Instruction B.4.1), while GPNE's proposed addition of "clear and convincing evidence" is not

15   found in the model instructions.

16

17   Apple's Proposal #2 will help put the reexaminations in context for the jury according to the

18   Court's guidance at the June 26 pretrial conference.  (June 26, 2014 Hrg. Tr. at 39-40 ("Now, my

19   other questions are if the re-exams do come in in any form, then I do think the jury needs to be

20   told that GPNE sued RIM, that RIM filed for these examinations, that RIM entered into a

21   settlement with GPNE and is no longer participating.  I mean, I think then the context of why,

22   you know, this re-exam is not being effectively prosecuted by anyone anymore, I think that that

23   should come in.").)  Contrary to GPNE's assertion below, the reexamination file histories of the

24   patents-in-suit contain no indication that any Examiner read and/or rejected Apple's expert Peter

25   Rysavy's expert report or any of his opinions therein.  GPNE is incorrect to suggest that the

26   Examiner's initials confirm full consideration of Mr. Rysavy's report.  *See* MPEP 2656 ("Where

27   patents, publications, and other such items of information are submitted by a party (patent owner

28   or requester) in compliance with the requirements of the rules, the requisite degree of

consideration to be given to such information will normally be limited by the degree to which the party filing the information has explained its content and relevance. The initials of the examiner placed adjacent to the citations on the form PTO/SB/08A and 08B or its equivalent, without an indication to the contrary, ***do not signify that the information has been considered*** any further than noted above.") (emphasis added).   Further still, reexamination proceedings are limited to "patents, publications, and other such items of information" (*id.*; *see also* MPEP 2658), none of which encompasses Mr. Rysavy's expert report.   Nor do the reexamination file histories contain any evidence that the Examiner considered all the same underlying art upon which Mr. Rysavy opined, as evidenced by GPNE's use of the word "much" when alleging how much of Apple's art was before the Patent Office.

Apple's Proposal #2 also correctly instructs the jury regarding the relationship between a reexamination proceeding and a litigation validity challenge—(1) that Apple's clear and convincing burden does not increase for a claim that has emerged unamended from a reexamination, *see, e.g., Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259-61 (Fed. Cir. 2012) ("The burden does not suddenly change to something higher — 'extremely clear and convincing evidence' or 'crystal clear and convincing evidence' — simply because the prior art references were considered by the PTO."); and (2) that the finder of fact may independently find a claim to be invalid regardless of a PTO determination to the contrary, *see, e.g., Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991) ("The courts are the final arbiter of patent validity and, although courts may take cognizance of, and benefit from, the proceedings before the patent examiner, the question is ultimately for the courts to decide, without deference to the rulings of the patent examiner.").

Apple's Proposal #3 is also directly from this District's model instructions (Instruction B.4.1) and is a correct statement of controlling Supreme Court precedent.   *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2242, 2251 (2011) ("Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force.   And, concomitantly, the

1   challenger's burden to persuade the jury of its invalidity defense by clear and convincing

2   evidence may be easier to sustain.  In this respect, although we have no occasion to endorse any

3   particular formulation, ***we note that a jury instruction on the effect of new evidence can, and***

4   ***when requested, most often should be given***.") (internal citation omitted; emphasis added).]

5

6   **[GPNE Comment: Regarding Apple Proposal No. 1, the standard for proving invalidity is**

7   **clear and convincing evidence per the Supreme Court.  *See Microsoft Corp. v. i4i Ltd. P'ship*,**

8   **131 S. Ct. 2238, 2242 (U.S. 2011) ("We consider whether § 282 requires an invalidity**

9   **defense to be proved by clear and convincing evidence. We hold that it does.").   By**

10  **eliminating the word "evidence" Apple invites the jury to make invalidity rulings based on**

11  **intuition rather than evidence. The jury should be instructed on the correct standard as**

12  **articulated by the Supreme Court.  Furthermore, GPNE's proposal is consistent with the**

13  **Court's Tentative Preliminary Jury Instruction (Annotated) No. 21 (Dkt. No. 318) ("To**

14  **prove invalidity of any claim, Apple must persuade you by clear and convincing evidence**

15  **that the claim is invalid").  Apple did not object to the Court's Tentative Preliminary Jury**

16  **Instructions (Annotated) during the June 26 hearing.  See June 26, 2014 Tr. at p. 15:2-6.**

17

18  **Apple's Proposal No. 2 presents numerous problems.  First, Apple implies that there was no**

19  **challenge to GPNE's arguments at the PTO.  This is incorrect.  According to 37 C.F.R.**

20  **1.104(a)(1): "On taking up an application for examination or a patent in a reexamination**

21  **proceeding, the examiner shall make a thorough study thereof and shall make a thorough**

22  **investigation of the available prior art relating to the subject matter of the claimed**

23  **invention. The examination shall be complete with respect both to compliance of the**

24  **application or patent under reexamination with the applicable statutes and rules and to the**

25  **patentability of the invention as claimed, as well as with respect to matters of form, unless**

26  **otherwise indicated."  Thus, the reexamination examiners were tasked with challenging any**

27  **statements from GPNE during the reexamination.   Second, Apple's proposal that the PTO**

28  **did not consider all of the prior art in this case is incorrect.  As was pointed out in opposing**

1   Apple's motion *in limine* concerning the reexamination proceedings, GPNE submitted
2   Apple's expert report along with much of the GSM art that Apple relies on. *See* Dkt. No.
3   294 at pp. 1-3; *see also* Dkt. Nos. 294-6 thru 294-11 (showing submission of "Expert Report
4   of Peter Rysavy" and accompanying exhibits, as well as GSM art). GPNE notes that Dkt.
5   Nos. 294-7 and 294-10 are Information Disclosure Statements showing the submission of the
6   Rysavy report and the examiners electronically signed those documents stating "All
7   references considered except where lined through." Apple's insinuation that Mr. Rysavy's
8   report was not relevant to the reexaminations is unfounded. Mr. Rysavy's report included
9   claim charts based on certain patents and publications, which were submitted to the Patent
10  Office. *See* Dkt. Nos. 294-7 and 294-10. Third, while it may be true that the burden for
11  proving invalidity does not change from clear and convincing evidence, the fact that the
12  same art has already been considered by the Patent Office goes to the weight of the evidence
13  and whether the challenger has satisfied its burden. *See Sciele Pharma, Inc. v. Lupin Ltd.*,
14  684 F.3d 1253, 1260 (Fed. Cir. 2012) ("it may be harder to meet the clear and convincing
15  burden when the invalidity contention is based upon the same argument on the same
16  reference that the PTO already considered"); *see also Interconnect Planning Corp. v. Feil*,
17  774 F.2d 1132, 1139 (Fed. Cir. 1985) (when the defendant bases his obviousness defense on
18  the same prior art relied upon by the examiner, its "burden of proving invalidity [is] made
19  heavier."); *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir. 1983)
20  ("Section 282 of Title 35 USC assigns a burden which is most formidable when the party
21  asserting invalidity relies upon prior art considered by the Patent and Trademark Office
22  (PTO)."). Apple's instruction invites the jury to discount the PTO proceedings in an
23  attempt to lessen Apple's burden of persuasion.

24

25  Apple's Proposal No. 3 is improper for many of the reasons stated above. As noted, much,
26  if not all, of the prior art that Apple relies upon and its expert report were before the Patent
27  Office during the reexamination, making the first sentence in Apple's Proposal No. 3
28  inaccurate. Further, while it is true that art not considered by the Patent Office may carry

1   more weight, the opposite is also true. *See Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253,

2   1260 (Fed. Cir. 2012) ("it may be harder to meet the clear and convincing burden when the

3   invalidity contention is based upon the same argument on the same reference that the PTO

4   already considered").  If the Court determines that an instruction regarding the weight of

5   evidence needs to be given to the jury, a fair and balanced instruction that properly reflects

6   Federal Circuit precedent should be given.   In other words, the jury should also be

7   instructed that "it may be harder to meet the clear and convincing burden when the

8   invalidity contention is based upon the same argument on the same reference that the PTO

9   already considered, making Apple's burden more difficult to sustain." *Id.*]

1   Final Instruction No. 26: **Written Description Requirement**

2         A patent claim is invalid if the patent does not contain an adequate written description of

3   the claimed invention. The purpose of this written description requirement is to demonstrate that

4   the inventor was in possession of the invention at the time the application for the patent was filed,

5   even though the claims may have been changed or new claims added since that time. The written

6   description requirement is satisfied if a person of ordinary skill in the field reading the original

7   patent application at the time it was filed would have recognized that the patent application

8   described the invention as claimed, even though the description may not use the exact words

9   found in the claim. A requirement in a claim need not be specifically disclosed in the patent

10  application as originally filed if a person of ordinary skill would understand that the missing

11  requirement is necessarily implied in the patent application as originally filed.

12

13  **Source:**

14  Adapted from N.D. Cal. Model Patent Jury Instr. B.4.2a.

15  **Authorities:**

16  35 U.S.C. § 112(1) and (2); *In re Skvorecz,* 580 F.3d 1262, 1269 (Fed. Cir. 2009); *Kao Corp. v.*

17  *Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006); *Chiron Corp. v. Genentech, Inc.*, 363

18  F.3d 1247 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir.

19  2000); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry*

20  *Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *In re Alton*, 76 F.3d

21  1168, 1172 (Fed. Cir. 1996); *University of Rochester v. G.D. Searle & Co., Inc.,* 358 F.3d 916,

22  926-928 (Fed. Cir. 2004).]

23

24  **[GPNE Comment: Should Apple fail to present evidence regarding written description,**

25  **GPNE believes that this instruction should not be given to the jury.]**

26

27

28

1    Final Instruction No. 27: **Enablement**

2         A patent claim is invalid if the patent at the time it was originally filed did not contain a

3    description of the claimed invention that is sufficiently full and clear to enable a person of

4    ordinary skill in the field at the time to make and use the full scope of the invention.  This is

5    known as the "enablement" requirement.

6         The patent may be enabling even though it does not expressly state some information if a

7    person of ordinary skill in the field could make and use the invention without having to do

8    excessive experimentation.  In determining whether excessive experimentation is required, you

9    may consider the following factors:

10            the scope of the claimed invention;

11            the amount of guidance presented in the patent;

12            the amount of experimentation necessary;

13            the time and cost of any necessary experimentation;

14            how routine any necessary experimentation is in the field;

15            whether the patent discloses specific working examples of the claimed invention;

16            the nature and predictability of the field; and

17            the level of ordinary skill in the field.

18        The question of whether a patent is enabling is judged as of the date the original

19    application for the patent was first filed, here June 24, 1994.

20    **Source:**

21    Adapted from N.D. Cal. Model Patent Jury Instr. B.4.2b.

22    **Authorities:**

23    35 U.S.C. § 112(1); *Sitrick v. Dreamworks, LLC,* 516 F.3d 993, 999 (Fed. Cir. 2008); *Auto.*

24    *Techs. Int'l, Inc. v. BMW of N. Am., Inc.,* 501 F.3d 1274, 1285 (Fed. Cir. 2007); *AK Steel Corp. v.*

25    *Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003); *Union Pac. Resources Co. v. Chesapeake*

26    *Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland*

27    *Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

28

1

2   **[GPNE Comment: Should Apple fail to present evidence regarding enablement, GPNE**

3   **believes that this instruction should not be given to the jury. Further, enablement does not**

4   **appear in Apple's expert's invalidity report and it would be improper to instruct the jury**

5   **on this issue. Thus, the issue is waived. ]**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1       Final Instruction No. 28: **Patents – Anticipation**

2          A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid

3   because it is not new, all of its requirements must have existed in a single device or method that

4   predates the claimed invention, or must have been described in a single previous publication or

5   patent that predates the claimed invention.  In patent law, these previous devices, methods,

6   publications or patents are called "prior art references."  If a patent claim is not new we say it is

7   "anticipated" by a prior art reference.

8          The description in the written reference does not have to be in the same words as the

9   claim, but all of the requirements of the claim must be there, either stated or necessarily implied,

10  so that someone of ordinary skill in the field looking at that one reference would be able to make

11  and use the claimed invention.

12         Here is a list of the ways that Apple can show that a GPNE patent claim was not new:

13       – If the claimed invention was already publicly known or publicly used by others in the

14  United States before the date of conception of the claimed invention;

15       – If the claimed invention was already patented or described in a printed publication

16  anywhere in the world before the date of conception of the claimed invention.  A reference is a

17  "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

18       – If the claimed invention was already made by someone else in the United States before

19  the date of conception of the claimed invention, if that other person had not abandoned the

20  invention or kept it secret;

21       – If the claimed invention was already described in another issued U.S. patent or

22  published U.S. patent application that was based on a patent application filed before the patent

23  owner's application filing date or the date of conception of the claimed invention.

24         Since it is in dispute, you must determine dates of conception for the claimed invention.

25  Conception is the mental part of an inventive act and is proven when the invention is shown in its

26  complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

27

28

1    **[GPNE PROPOSAL:  Since the PTO already considered some of the prior art cited**

2    **by Apple, you must consider the fact that the Examiner concluded the claims were valid**

3    **over this art.]**

4    **Source:**

5    Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a1.

6    Adapted from Case No. 12-CV-00630 Final Instruction No. 32 (ECF No. 1848 at 41).

7    **Authorities:**

8    35 U.S.C. § 102; *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358-60 (Fed. Cir. 2006);

9    *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re*

10   *Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*, 355 F.3d 1313,

11   1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-80 (Fed.

12   Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co., Inc.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001);

13   *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem,*

14   *Inc. v. S.  Cal.  Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d

15   1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998);

16   *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-*

17   *Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d

18   1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574

19   (Fed. Cir. 1985); *Am.  Stock Exch., LLC v. Mopex, Inc.*, 250 F.Supp.2d 323, 328-32 (S.D.N.Y.

20   2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55

21   (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v.*

22   *Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*, 180 F.3d

23   1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581

24   (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma*

25   *Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

26

27   [Apple Comment:  GPNE's proposal is not in this District's model instructions and implies an

28   incorrect statement of law.  Apple's clear and convincing burden does not increase for a reference

that was explicitly considered by the PTO. *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259-61 (Fed. Cir. 2012) ("The burden does not suddenly change to something higher — 'extremely clear and convincing evidence' or 'crystal clear and convincing evidence' — simply because the prior art references were considered by the PTO.").]

**[GPNE Comment: Apple's statement is incorrect. GPNE does not claim that Apple faces a higher burden, but the jury must consider the fact that the examiner concluded certain claims were valid in view of the art at issue in the re-examination. *See Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555, (Fed. Cir. 1985) ("The Examiner's decision, on an original or reissue application, is never binding on the court. It is, however, evidence the court must consider in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence.").]**

1                Final Instruction No. 29: **Patents – Statutory Bars**

2         A patent claim is invalid if the patent application was not filed within the time required by

3 law. This is called a "statutory bar." For a patent claim to be invalid by a statutory bar, all of its

4 requirements must have been present in one prior art reference dated more than one year before

5 the patent application was filed. Here is a list of ways Apple can show that a GPNE patent

6 application was not timely filed:

7         – If the claimed invention was already patented or described in a printed publication

8 anywhere in the world before June 24, 1993. A reference is a "printed publication" if it is

9 accessible to those interested in the field, even if it is difficult to find;

10         – If the claimed invention was already being openly used in the United States before June

11 24, 1993 and that use was not primarily an experimental use (a) controlled by the inventor, and

12 (b) to test whether the invention worked for its intended purpose;

13         – If a device or method using the claimed invention was sold or offered for sale in the

14 United States, and that claimed invention was ready for patenting, before June 24, 1993.

15         For a claim to be invalid because of a statutory bar, all of the claimed requirements must

16 have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a

17 reference to one skilled in the field, or (3) must have been present in the reference, whether or not

18 that was understood at the time. The disclosure in a reference does not have to be in the same

19 words as the claim, but all the requirements must be there, either described in enough detail or

20 necessarily implied, to enable someone of ordinary skill in the field looking at the reference to

21 make and use the claimed invention.

22 **Source:**

23 Adapted from Case No. 12-CV-00630 Final Instruction No. 33 (ECF No. 1848 at 43).

24 **Authorities:**

25 35 U.S.C. § 102(b) and (d); *Pfaff v. Wells Elec., Inc.*, 525 U.S. 55 (1998); *Schering Corp. v.*

26 *Geneva Pharms., Inc.*, 339 F.3d 1373 (Fed Cir. 2003); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d

27 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed.

28 Cir. 1999); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354 (Fed. Cir. 1999); *J.A. LaPorte,*

1    *Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897,

2    898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1150 (Fed.

3    Cir. 1983).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Final Instruction No. 30: **Patents – Obviousness**

2    Not all innovations are patentable.  A patent claim is invalid if the claimed invention

3    would have been obvious to a person of ordinary skill in the field at the time of invention.  This

4    means that even if all of the requirements of the claim cannot be found in a single prior art

5    reference that would anticipate the claim or constitute a statutory bar to that claim, a person of

6    ordinary skill in the field who knew about all this prior art would have come up with the claimed

7    invention.

8    The ultimate conclusion of whether a claim is obvious should be based upon your

9    determination of several factual decisions.

10   First, you must decide the level of ordinary skill in the field that someone would have had

11   at the time the claimed invention was made.  In deciding the level of ordinary skill, you should

12   consider all the evidence introduced at trial, including:

13       1.       the levels of education and experience of persons working in the field;

14       2.       the types of problems encountered in the field; and

15       3.       the sophistication of the technology.

16   Second, you must decide the scope and content of the prior art.  The parties disagree as to

17   whether certain prior art references should be included in the prior art you use to decide the

18   validity of the asserted claims.  In order to be considered as prior art to a particular asserted

19   patent, these references must be reasonably related to the claimed invention of that patent.  A

20   reference is reasonably related if it is in the same field as the claimed invention or is from another

21   field to which a person of ordinary skill in the field would look to solve a known problem.

22   Third, you must decide what differences, if any, existed between the claimed invention

23   and the prior art.

24   **[GPNE PROPOSAL #1:  Fourth, if the PTO analyzed the claims in light of the prior**

25   **art, you must consider the fact that the Examiner concluded the claims were valid over the**

26   **art.]**

27   Finally, you should consider any of the following factors that you find have been shown

28   by the evidence:

SECOND AMENDED JOINT PROPOSED FINAL JURY INSTRUCTIONS
CIVIL NO. 5:12-CV-02885-LHK                                                                    Page 49

1.   commercial success of a product due to the merits of the claimed invention;

2.   a long felt need for the solution provided by the claimed invention;

3.   unsuccessful attempts by others to find the solution provided by the claimed invention;

4.   copying of the claimed invention by others;

5.   unexpected and superior results from the claimed invention;

6.   acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention; and

7.   independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

The presence of any of factors 1-6 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of factor 7 may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether Apple has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the

1  patent. Also, you may consider whether the innovation applies a known technique that had been
2  used to improve a similar device or method in a similar way. You may also consider whether the
3  claimed invention would have been obvious to try, meaning that the claimed innovation was one
4  of a relatively small number of possible approaches to the problem with a reasonable expectation
5  of success by those skilled in the art. However, you must be careful not to determine
6  obviousness using the benefit of hindsight; many true inventions might seem obvious after the
7  fact. You should put yourself in the position of a person of ordinary skill in the field at the time
8  the claimed invention was made and you should not consider what is known today or what is
9  learned from the teaching of the patent.

10  **Source:**

11  Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3b.

12  Adapted from Case No. 12-CV-00630 Final Instruction No. 34 (ECF No. 1848 at 44).

13  **Authorities:**

14  35 U.S.C. § 103; *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966); *KSR Int'l Co. v.*
15  *Teleflex Inc.*, 550 U.S. 398, 407 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000);
16  *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty*
17  *Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF,*
18  *Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309,
19  313 (Fed. Cir. 1985). *See Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20
20  (Fed. Cir. 2002); *Wang Labs, Inc. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *Daiichi*
21  *Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007)*; Brown & Williamson*
22  *Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA*
23  *Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg.*
24  *Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991); *Fromson v. Advance Offset Plate, Inc.*,
25  755 F.2d 1549, 1555 (Fed. Cir. 1985); *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d
26  1573 (Fed. Cir. 1983).

27

28

1   [Apple Comment:  GPNE's Proposal #1 is not in this District's model instructions and implies an

2   incorrect statement of law.  Apple's clear and convincing burden does not increase for a reference

3   that was explicitly considered by the PTO.  *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253,

4   1259-61 (Fed. Cir. 2012) ("The burden does not suddenly change to something higher —

5   'extremely clear and convincing evidence' or 'crystal clear and convincing evidence' — simply

6   because the prior art references were considered by the PTO.").]

7

8   **[GPNE Comment: Apple's statement is incorrect.  GPNE does not claim that Apple faces a**

9   **higher burden, but the jury must consider the fact that the examiner concluded the claims**

10  **were valid in view of the art considered during the re-examination.  *See Fromson v.***

11  ***Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555, (Fed. Cir. 1985) ("The Examiner's decision,**

12  **on an original or reissue application, is never binding on the court.  It is, however, evidence**

13  **the court must consider in determining whether the party asserting invalidity has met its**

14  **statutory burden by clear and convincing evidence.").  *Fromson* also supports GPNE's**

15  **Proposal No. 1.]**

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Final Instruction No. 31: **Patent Damages – Burden of Proof**

2   I will instruct you about the measure of damages for claims of patent infringement.  By

3   instructing you on damages, I am not suggesting which party should win on any issue.  **[GPNE**

4   **PROPOSAL NO. 1: If you find that Apple infringed any valid claim of the asserted patents,**

5   **you must then determine the amount of money damages to be awarded to the GPNE to**

6   **compensate it for the infringement.]**  [APPLE PROPOSAL #1:  If you find that Apple has not

7   infringed any valid claim, you do not need to determine damages.  If you find that Apple

8   infringed any valid claim of GPNE's patents, you must then determine the amount of money

9   damages to be awarded to GPNE to compensate it for the infringement.]

10   The amount of those damages must be adequate to compensate GPNE for the

11   infringement.  A damages award should put GPNE in approximately the financial position it

12   would have been in had the infringement not occurred, but in no event may the damages award

13   be less than a reasonable royalty.  You should keep in mind that the damages you award are

14   meant to compensate GPNE and not to punish Apple [APPLE PROPOSAL #2, nor should the

15   damages you award be based on Apple's overall success, wealth, or ability to pay].

16   GPNE has the burden to persuade you of the amount of its damages.  You should award

17   only those damages that GPNE proves it more likely than not suffered.  While GPNE is not

18   required to prove its damages with mathematical precision, it must prove them with reasonable

19   certainty.  GPNE is not entitled to damages that are remote or speculative.

20   **Source:**

21   Adapted from N.D. Cal. Model Patent Jury Instr. B.5.1.

22   Adapted from Case No. 12-CV-00630 Final Instruction No. 35 (ECF No. 1848 at 46).

23   **Authorities:**

24   35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003);

25   *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999);

26   *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,*

27   *Inc.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (en banc).

28

1    [Apple Comment:  Apple's Proposal #1 makes it more clear for the jury that there are two

2    scenarios, one of which does not require that the jury compute damages and one of which that

3    does.  Apple's proposal is less prejudicial as it does not suggest to the jury that one of those two

4    scenarios is more correct or that the Court has a view on the outcome of those scenarios.]

5

6    **[GPNE Comment:  GPNE's Proposal No. 1 tracks the language in the Model Patent Jury**

7    **Instructions, whereas Apple's Proposal No. 1 does not and is prejudicial to GPNE.  As for**

8    **Apple Proposal No. 2, Apple's language is not found in in the Model Patent Jury**

9    **Instructions and is not relevant to the issues in the case.]**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Final Instruction No. 32: **Patent Damages – Reasonably Royalty - Entitlement**

2         GPNE seeks a reasonable royalty for the infringement of its patents.   [APPLE

3    PROPOSAL #1:  If you have found that Apple infringed any valid claim of GPNE's patents,

4    then] GPNE should be awarded a reasonable royalty for **[GPNE PROPOSAL:  all]** [APPLE

5    PROPOSAL #2:  any] infringing Apple sales.

6    **Source:**

7    Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6.

8    Adapted from Case No. 12-CV-00630 Final Instruction No. 40 (ECF No. 1848 at 51).

9    **Authorities:**

10   35 U.S.C. § 284; *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d

11   1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed.

12   Cir. 1988) (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109,

13   1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996);

14   *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Uniloc USA,*

15   *Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway,*

16   *Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

17

18   [Apple Comment:  GPNE's proposal, though it tracks this District's model instructions, implies

19   that GPNE is entitled to a reasonable royalty therefore implying infringement and validity.

20   Apple's proposal clarifies when a reasonable royalty should be awarded and is thus accurate and

21   less prejudicial.]

22

23   **[GPNE Comment: Apple's Proposals do not track the language in the Model Patent Jury**

24   **Instructions.  As to the disagreement between "all infringing sales" or "any infringing**

25   **sales," the Model Patent Jury Instructions, says "all infringing sales."  Further, GPNE**

26   **notes that GPNE's proposed instruction was good enough for Apple when it was a plaintiff.**

27   *See* **Case No. 12-CV-00630 Final Instruction No. 40 (ECF No. 1848 at 49).]**

28

1    Final Instruction No. 33: **Patent Damages – Reasonably Royalty - Definition**

2      A royalty is a payment made to a patent owner in exchange for the right to make, use or

3    sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment

4    for the license that would have resulted from a hypothetical negotiation between GPNE and

5    Apple taking place at the time when the infringing activity first began.  In considering the nature

6    of this negotiation, you must assume that GPNE and Apple would have acted reasonably and

7    would have entered into a license agreement.  You must also assume that both parties believed

8    the patent was valid and infringed.  Your role is to determine what the result of that negotiation

9    would have been.   The test for damages is what royalty would have resulted from the

10   hypothetical negotiation and not simply what either party would have preferred.

11     **[GPNE PROPOSAL:  A royalty can be calculated in several different ways and it is**

12   **for you to determine which way is the most appropriate based on the evidence you have**

13   **heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."**

14   **To calculate an ongoing royalty, you must first determine the "base," that is, the product on**

15   **which the infringer is to pay.   You then need to multiply the revenue the defendant**

16   **obtained from that base by the "rate" or percentage that you find would have resulted**

17   **from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail**

18   **sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you**

19   **find would have resulted from the hypothetical negotiation is 1%, then the royalty would be**

20   **$2, or the rate of .01 times the base revenue of $200.**

21     **If the patent covers only part of the product that the infringer sells, then the base**

22   **would normally be only that feature or component.  For example, if you find that for a $100**

23   **car, the patented feature is the tires which sell for $5, the base revenue would be $5.**

24   **However, in a circumstance in which the patented feature is the reason customers buy the**

25   **whole product, the base revenue could be the value of the whole product.  The patent owner**

26   **might also seek a royalty that is not calculated as a percentage of the net sales for the whole**

27   **product, such as a royalty to be paid per unit sold.**

28

**A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells.**

**When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.**

**In determining a reasonable royalty, you may consider the following factors:]**

[APPLE PROPOSAL:  Some of the kinds of factors that you may consider in making your determination are:]

1.    The royalties received by GPNE for the licensing of the asserted patents, proving or tending to prove an established royalty.

2.    The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

3.    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6.    The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7.    The duration of the patent and the term of the license.

8.      The established profitability of the product made under the patents, its commercial success, and its current popularity.

9.      The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11.     The extent to which Apple has made use of the invention and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13.     The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by Apple. [APPLE PROPOSAL #1:  In considering this factor—and in analyzing damages generally—you may consider the smallest saleable patent practicing unit.  That is the smallest saleable component, within an accused device, that substantially embodies the patented claims.  You may, however, need to further apportion that component to isolate the portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements of that component.  In this case, I instruct you that the smallest saleable patent practicing unit would be a baseband processor chip.  That does not mean the Apple products use the patents-in-suit.  That is a question for you to decide.  But I am instructing you that if the patents-in-suit are present in any accused devices at all, it would be in the baseband processor chip.  You may consider that in analyzing any damages in this case.

14.     Another factor that can be considered is] the opinion and testimony of qualified experts.

15.     [APPLE PROPOSAL #2:  A final factor is] the amount that a licensor (such as GPNE) and a licensee (such as Apple) would have agreed upon (at the time the infringement

1    began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the

2    amount which a prudent licensee—who desired, as a business proposition, to obtain a license to

3    manufacture and sell a particular article embodying the patented invention—would have been

4    willing to pay as a royalty and yet be able to make a reasonable profit and which amount would

5    have been acceptable by a prudent patent owner who was willing to grant a license.

6           It is up to you, based on the evidence, to decide what type of royalty is appropriate in this

7    case [APPLE PROPOSAL #3, if any at all].

8    **Source:**

9    Adapted from N.D. Cal. Model Patent Jury Instr. B.5.7.

10   Adapted from Fed. Cir. Bar Ass'n Model Patent Jury Instr. B.6.7.

11   Adapted from Case No. 12-CV-00630 Final Instruction No. 41 (ECF No. 1848 at 52).

12   **Authorities:**

13   35 U.S.C. § 284; *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d

14   1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed.

15   Cir. 1988) (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109,

16   1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996);

17   *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Golight, Inc.,*

18   *v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86

19   F.3d 1098, 1108-10 (Fed. Cir. 1996); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp.

20   1116, 1120 (S.D.N.Y. 1970); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed.

21   Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

22

23   [Apple Comment:  GPNE's proposal is irrelevant and confusing in that none of the proposed

24   language reflects the methodology of either party's damages expert in this case.  In particular,

25   this Court previously held that GPNE may not use the entire value of Apple's accused products

26   as a royalty base.  *See* Dkt. No. 242 at 24-25.

27

28   Apple's proposals reflect the Court's holding that the baseband processor is the smallest saleable

1   patent-practicing unit.  (Dkt. No. 242 at 24-25 ("the Court holds as a matter of law that in this

2   case, the baseband processor is the proper smallest salable patent-practicing unit."); *see also* June

3   26, 2014 Hrg. Tr. at 79 ("The Court:  I think that the previous order already said what the

4   smallest saleable practicing unit is.").)  GPNE does not deny that Apple's instruction accurately

5   states the Court's legal determination ("as a matter of law") that the baseband processor is the

6   proper smallest saleable patent-practicing unit, nor does GPNE argue that Apple is misstating any

7   Federal Circuit precedent regarding the relevance of the smallest saleable patent-practicing unit.

8   GPNE's critique amounts to simple disagreement with the Court's legal conclusion regarding the

9   smallest saleable patent-practicing unit—but the jury should be instructed regarding the law as

10  decided by the Court.]

11

12  **[GPNE Comment: GPNE's proposal comes from the Model Patent Jury Instructions.**

13

14  **Apple's Proposal No. 1 is inappropriate.  The Court's rulings on the parties' motions *in***

15  ***limine* impact the evidence that will be presented to the jury.  Apple's proposed additions to**

16  **the jury instructions regarding smallest saleable unit seeks to instruct the jury on how it**

17  **should weigh and deliberate specific evidence.  The purpose of the jury instructions is to**

18  **inform the jurors of the law and the larger framework of how to calculate damages.  Apple**

19  **seeks, through the jury instructions, to get the Court's stamp of approval on its closing**

20  **arguments.  This is simply improper.  There is not a model instruction in either the N.D.**

21  **Cal. Model Patent Jury Instructions or the Federal Circuit Bar Association Model Patent**

22  **Jury Instructions on smallest saleable unit, and that is for good reason.   Apple is simply**

23  **cherry picking what it thinks is strong evidence to focus the jury's attention on immediately**

24  **prior to the beginning of deliberations.  The jury instructions are not a proper vehicle for**

25  **Apple to highlight specific details of its case.  GPNE believes Apple's proposal invites legal**

26  **error.**

27

28

1  For the record, and to avoid the appearance of any acquiescence, GPNE maintains its

2  objection to the Court's conclusion concerning the smallest saleable unit.

3

4  Apple's Proposal No. 2 is inappropriate as it seeks to limit the universe of factors that the

5  jury may consider in their deliberations and is not part of the model instructions.

6

7  Apple's Proposal No. 3 would imply that the Court believes that no damages are

8  appropriate and would be highly prejudicial to GPNE.  Furthermore, this statement is not

9  part of the model instructions.]

10

11  RESPECTFULLY SUBMITTED this 15th day of July, 2014.

12

13  KERR & WAGSTAFFE LLP                    FISH & RICHARDSON, P.C.

14  /s/ Steven W. Hartsell                   /s/ Katherine K. Lutton
    Patricia L. Peden (SBN 206440)          Katherine K. Lutton (SBN 194971)
15  peden@kerrwagstaffe.com                  lutton@fr.com
    Julia A. Stockton (SBN 286944)          500 Arguello Street, Ste. 500
16  stockton@kerrwagstaffe.com              Redwood City, California 94063
    100 Spear Street, 18th Floor            [Tel.] (650) 839-5070
17  San Francisco, CA 94105–1528            [Fax] (650) 839-5071
18  [Tel.] (415) 371-8500
    [Fax] (415) 371-0500

19

20  NELSON BUMGARDNER CASTO, P.C.            Ruffin B. Cordell (pro hac vice)
21  Barry J. Bumgardner (pro hac vice)       cordell@fr.com
    barry@nbclaw.net                         1425 K Street, NW
22  Steven W. Hartsell (pro hac vice)       Suite 1100
    shartsell@nbclaw.net                     Washington, DC 20005
23  3131 West 7th Street, Suite 300         [Tel.] (207) 783-5070
    Fort Worth, Texas 76107                 [Fax] (207) 783-2331
24  [Tel.] (817) 377-9111
25  [Fax] (817) 377-3485                    Christopher O. Green (pro hac vice)
                                            cgreen@fr.com
26  BURNS & LEVINSON LLP                     Aamir A. Kazi (pro hac vice)
    Howard J. Susser (pro hac vice)          kazi@fr.com
27  hsusser@burnslev.com                    Jacqueline Tio (pro hac vice)
    Zachary R. Gates (pro hac vice)          tio@fr.com
28  zgates@burnslev.com                     1180 Peachtree Street, 21st Floor
    Alexandra Capachietti (pro hac vice)    Atlanta, Georgia 30309

SECOND AMENDED JOINT PROPOSED FINAL JURY INSTRUCTIONS
CIVIL NO. 5:12-CV-02885-LHK                                          Page 61

| | | |
|---|---|---|
| 1 | acapachietti@burnslev.com<br>125 Summer Street | [Tel.] (404) 892-5005<br>[Fax] (404) 892-5002 |
| 2 | Boston, Massachusetts | |
| 3 | [Tel.] 617-345-3000<br>[Fax] 617-345-3299 | Benjamin C. Elacqua (*pro hac vice*)<br>elacqua@fr.com |
| 4 | **DONOVAN HATEM LLP** | 1221 McKinney, Suite 2800<br>Houston, Texas 77010 |
| 5 | Paul T. Muniz (*pro hac vice*)<br>pmuniz@donovanhatem.com | [Tel.] (713) 654-5300<br>[Fax] (713) 652-0109 |
| 6 | 53 State Street, 8th Floor | |
| 7 | Boston, Massachusetts 02109<br>[Tel.] (617) 406-4610 | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| 8 | [Fax] (617) 406-4507 | Joseph J. Mueller (*pro hac vice*)<br>joseph.mueller@wilmerhale.com |
| 9 | **GARTEISER HONEA, P.C.** | 50 State Street |
| 10 | Randall T. Garteiser (SBN 231821)<br>randall.garteiser@sftrialattorneys.com | Boston, Massachusetts 02109<br>[Tel.]  (617) 526-6000 |
| 11 | Christopher A. Honea (SBN 232473)<br>chris.honea@sftrialattorneys.com | [Fax]  (617) 526-5000 |
| 12 | 44 North San Pedro Road<br>San Rafael, California 94903 | Matthew Hawkinson (SBN 248216)<br>matthew.hawkinson@wilmerhale.com |
| 13 | [Tel.] (415) 785-3762<br>[Fax] (415) 785-3805 | 350 South Grand Avenue, Suite 2100<br>Los Angeles, California 90071 |
| 14 | | [Tel.]  (213) 443-5300<br>[Fax]  (213) 443-5400 |
| 15 | ***Attorneys for Plaintiff GPNE Corp.*** | |
| 16 | | Mark D. Selwyn (SBN 244180)<br>Mark.selwyn@wilmerhale.com |
| 17 | | 950 Page Mill Road<br>Palo Alto, CA 94304 |
| 18 | | [Tel.] (650) 858-6000<br>[Fax] (650) 858-6100 |
| 19 | | |
| 20 | | ***Attorneys for Defendant Apple Inc.*** |
| 21 | | |
| 22 | | <u>**CERTIFICATE OF SERVICE**</u> |
| 23 | | I hereby certify that on July 15, 2014, I electronically submitted the foregoing SECOND |
| 24 | AMENDED JOINT PROPOSED JURY INSTRUCTIONS using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to individuals | |
| 25 | who have consented in writing to accept this Notice as service of this document by electronic means. | |
| 26 | | /s/ *Claudia Newman* |
| 27 | | |
| 28 | | |

SECOND AMENDED JOINT PROPOSED FINAL JURY INSTRUCTIONS
CIVIL NO. 5:12-CV-02885-LHK                                                                              Page 62