UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GPNE CORP., <br><br> Plaintiff, <br><br> v. <br><br> APPLE, INC., <br><br> Defendant. | Case No.: 12-CV-02885-LHK <br><br> ORDER GRANTING IN PART AND DENYING IN PART APPLE'S SECOND *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF MICHAEL J. DANSKY, DENYING APPLE'S MOTION *IN LIMINE* No. 5 AS MOOT, AND GRANTING JOINT PROPOSED STIPULATION ON DAMAGES-RELATED ISSUES |

Plaintiff GPNE Corp. ("GPNE") brings this action for patent infringement against Defendant Apple, Inc. ("Apple"). GPNE alleges that Apple infringes U.S. Patent Nos. 7,555,267 ("'267 Patent"), 7,570,954 ("'954 Patent"), and 7,792,492 ("'492 Patent") (collectively, "Patents-in-Suit"). Apple now moves to exclude two expert opinions of Michael Dansky. This order also resolves Apple's Motion *in Limine* No. 5 and a related stipulation on damages issues. For the following reasons, Apple's motion to exclude Mr. Dansky's testimony is GRANTED IN PART and DENIED IN PART as moot. Apple's Motion *in Limine* No. 5 is DENIED as moot, and the parties' Joint Proposed Stipulation on Damages-Related Issues is GRANTED as to paragraphs 5-8.

I.     PROCEDURAL BACKGROUND

On July 1, 2011, GPNE filed a Complaint in the District of Hawaii against Apple, as well as

1

United States District Court <br> For the Northern District of California

Amazon, Barnes & Noble, Garmin, Nokia, Pantech, Research in Motion, Sharp, and Sony. *See GPNE v. Amazon.com, Inc.*, Case No. 11-CV-00426 JMS RLP (D. Haw. 2011); *see also* ECF No. 1. Subsequently, the District Court in Hawaii severed GPNE's cases against each of the defendants in the Hawaii action and transferred the separate actions against Apple, Barnes & Noble, Amazon, Nokia, and Pantech to the instant Court. *See GPNE v. Amazon.com, Inc.*, Case No. 11-CV-00426 JMS RLP (D. Haw. 2011); ECF Nos. 6, 246, 295; *GPNE Corp. v. Nokia Corp.*, Case No. 12-CV-00250 SOM RLP, ECF No. 14; *GPNE Corp. v. Pantech Co., Ltd. and Pantech Wireless, Inc.*, Case No. 12-CV-00251 SOM RLP, ECF No. 10. After the actions against the instant Defendants were transferred to the Northern District of California, this Court related the cases. *See GPNE v. Apple, Inc.*, Case No. 12-CV-2885 LHK PSG, ECF No. 35 (N.D. Cal. 2012).

After holding a tutorial and claim construction hearing on June 6, 2013, this Court issued an order construing disputed claim terms. *See* ECF No. 87. On October 16, 2013, GPNE, in compliance with the Court's Case Management Order, *see* ECF No. 98, limited the case to the following ten asserted claims: claims 19 and 22 of the '954 Patent, claims 13, 18, 30, 31, 39, and 42 of the '267 Patent, and claims 37 and 44 of the '492 Patent. ECF No. 107. Along with Apple's summary judgment motion, Apple filed *Daubert* motions to exclude the testimony of GPNE's experts Mr. Dansky and Dr. Dinan, *see* ECF Nos. 184-4, 188, as well as a motion to strike Dr. Dinan's expert report and one of GPNE's infringement contentions, *see* ECF No. 189. GPNE filed a motion to exclude the testimony of Apple's damages expert Mr. Meyer. *See* ECF No. 186-4. On April 9, 2014, the Court denied Apple's motion for summary judgment as to direct infringement, but granted Apple's motion as to indirect infringement. ECF No. 239. The Court also granted Apple's motion for partial summary judgment of invalidity. *Id*. One week later, on April 16, 2014, the Court ruled on the parties' *Daubert* motions, denying the motions as to Mr. Meyer and Dr. Dinan, but granting Apple's motion to exclude the testimony of Mr. Dansky. ECF No. 242, *Daubert* Order.

Following the Court's exclusion of Mr. Dansky's expert testimony, GPNE served a new expert report from Mr. Dansky, and Mr. Dansky was deposed about the new report. Apple now

2

1  moves to exclude two of Mr. Dansky's new opinions. *See* ECF No. 283 ("Mot."). GPNE filed an
2  opposition. *See* ECF No. 296 ("Opp."). Apple also brought several motions *in limine*, including
3  Apple's Motion *in Limine* No. 5, which seeks to preclude GPNE "from offering evidence or
4  argument relating to Apple's total revenues or profits from accused or non-accused products." *See*
5  ECF No. 282, Apple's Motions *in Limine*, at 11-13. The Court held a hearing on Apple's *Daubert*
6  Motion and Motion *in Limine* No. 5 at the pretrial conference on June 26, 2014.

7        At the pretrial conference, the parties indicated that they may be able to reach a stipulation
8  regarding Apple's Motion *in Limine* No. 5 and Apple's *Daubert* Motion to Exclude Mr. Dansky's
9  Testimony as to Mr. Dansky's convoyed sales opinion. Therefore, while the Court ruled on all
10 other motions *in limine* either before the pretrial conference or at the pretrial conference, *see* ECF
11 Nos. 319, 327, the Court deferred ruling on Apple's Motion *in Limine* No. 5 and Apple's *Daubert*
12 Motion to Exclude Mr. Dansky's Testimony so that the parties could reach an agreement. *See* ECF
13 No. 327, at 2. On July 18, 2014, the parties filed a Joint Proposed Stipulation on Damages-Related
14 Issues. ECF No. 336 ("Stip.").

**II.     LEGAL STANDARD**

    **A.  *Daubert* Standard**

17       Federal Rule of Evidence 702 allows admission of "scientific, technical, or other
18 specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the
19 evidence or to determine a fact in issue." Expert testimony is admissible pursuant to Rule 702 if it
20 is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). A
21 district court's decision to admit expert testimony under *Daubert* in a patent case follows the law of
22 the regional circuit. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).
23 When considering expert testimony offered pursuant to Federal Rule of Evidence 702, the trial
24 court acts as a "gatekeeper" by assessing the soundness of the expert's methodology to exclude
25 junk science. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc);
26 *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999); *Gen. Elec. Co. v. Joiner*, 522
27 U.S. 136, 142 (1997); *Daubert*, 509 U.S. at 589-90. An expert witness may provide opinion

3

Case No.: 12-CV-02885-LHK
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO EXCLUDE DANSKY TESTIMONY AND DENYING AS MOOT APPLE'S MOTION *IN LIMINE* No. 5

testimony if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; *see Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008). Under *Daubert*, courts consider (1) whether a theory or technique "can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the known or potential rate of error;" and (4) whether there is "general acceptance" of the methodology in the "relevant scientific community." *Daubert*, 509 U.S. at 593-94.

The inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 594, 596). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

### B. *Georgia-Pacific* Factors

Mr. Dansky undertakes an analysis using the *Georgia-Pacific* factors to propose a reasonable royalty as damages for Apple's alleged infringement of the Patents-in-Suit. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The *Georgia-Pacific* factors are used in the "hypothetical negotiation" approach to determining a reasonable royalty. The hypothetical negotiation approach "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). "The hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement." *Id.* at 1325.

The *Georgia-Pacific* factors are a non-exhaustive list of fifteen factors for experts to consider in determining what reasonable royalty would result from the hypothetical negotiation.

*See Georgia-Pacific*, 318 F. Supp. at 1120. Examples of *Georgia-Pacific* factors are "[t]he royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty" (Factor One), "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity" (Factor Eight), "[t]he effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales" (Factor Six), and "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer" (Factor Thirteen). *Id*.

### III.   DISCUSSION

Following the Court's exclusion of Mr. Dansky's original methodology, Mr. Dansky's supplemental expert report contains a largely new damages approach. To inform the discussion of Apple's specific challenges to Mr. Dansky's opinions, the Court first briefly outlines Mr. Dansky's new methodology. Mr. Dansky begins with an extensive analysis of two GPNE settlement licenses (the "comparable licenses") under *Georgia-Pacific* factor one, finding that each license would assist Apple and GPNE in the hypothetical negotiation. Dansky Supp. Report, at 5-14. Mr. Dansky then details Apple's convoyed sales, comparing them to the lack of follow on revenue for the licensees in the comparable licenses used by Mr. Dansky. *Id*. at 15-17. As a result, Mr. Dansky opines that Apple and GPNE would likely arrive at a rate higher than the per unit royalties in the comparable licenses. Dansky Supp. Report, at 17. Next, Mr. Dansky returns to the $86 average incremental profit earned by Apple for each cellular-capable iPad, which Mr. Dansky derives and uses in his original report. *See* ECF No. 184-5, Dansky Original Report, at 80-83. Responding to the Court's criticism that he failed to properly determine what portion of the $86 figure is attributable to the Patents-in-Suit, Mr. Dansky borrows Mr. Meyer's approach of dividing a baseline profit figure by a number of standard-essential patent families derived from the Fairfield study to approximate the amount of Apple profit resulting from the Patents-in-Suit. Dansky Supp.

5

Report, at 19-24. Mr. Dansky then takes the apportioned profit figure, compares it to the comparable licenses' royalty rates, and arrives at his final damages number of $1 per unit—the same royalty figure as in Mr. Dansky's original methodology. *Id*. at 24. Mr. Dansky also provides an alternative opinion, which is challenged by Apple and outlined in more detail below. *Id*. at 25-27; *see also infra* Part III.B (analyzing Apple's motion to exclude Mr. Dansky's alternative opinion).

Apple moves to exclude two of Mr. Dansky's opinions: (1) Mr. Dansky's analysis of Apple's convoyed sales, and (2) Mr. Dansky's "Alternative Calculation" based on a smallest salable patent-practicing unit other than the baseband processor. The Court considers each challenge in turn.

**A. Convoyed Sales (First *Daubert* Issue) and Apple's Motion *in Limine* No. 5**

Apple and GPNE have reached a stipulation regarding Mr. Dansky's convoyed sales opinion and Apple's Motion *in Limine* No. 5. *See* ECF No. 336 ("Stip."). Save for one issue addressed below, the parties' stipulation resolves Apple's *Daubert* motion as to Mr. Dansky's convoyed sales opinion and Apple's Motion *in Limine* No. 5. The Court GRANTS paragraphs 5-8 of the stipulation. The text of the agreement reads as follows:[1]

> In light of the Court's Daubert and Motion *in Limine* No. 5 decisions, and subject to the reservation of rights above, GPNE agrees that it is not permitted to offer the jury numbers regarding Apple's total revenues or total profits, e.g., for Apps and iTunes or Apple's entire corporate revenues/profits (including but not limited to as part of a convoyed sales analysis) and cannot offer the jury Mr. Dansky's unit-level numerical calculation of convoyed sales revenues/profits (*e.g.*, Mr. Dansky's opinion that Apple receives an additional $12.00 per unit in convoyed sales revenue) without first approaching the bench to seek reconsideration of the Court's decision to preclude such evidence. (Apple will oppose any such request for reconsideration.) Under the Court's rulings at the pretrial conference, GPNE may offer Mr. Dansky's testimony regarding convoyed sales as relevant to *Georgia Pacific* Factor No. 6, including his opinion that the follow on sales of other Apple products results in a higher royalty

---

[1] The stipulation also includes background information, several reservations of rights, and an agreement from Apple not to file more *in limine* or *Daubert* motions regarding Mr. Dansky's convoyed sales opinion. Although the Court does not quote these portions of the stipulation here, the Court grants the parties' stipulation as to all reservations of rights and the parties' agreement, which encompasses paragraphs 5-8.

6
Case No.: 12-CV-02885-LHK
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO EXCLUDE DANSKY TESTIMONY AND DENYING AS MOOT APPLE'S MOTION *IN LIMINE* No. 5

          rate for Apple as compared to other GPNE licensees, including Samsung and HTC.

Stip. at 4. The Court notes that the parties accurately summarize the Court's rulings at the pretrial conference. In light of the stipulation, the Court DENIES as moot Apple's *Daubert* motion as to Mr. Dansky's convoyed sales opinion and Apple's Motion *in Limine* No. 5. The Court now turns to the one remaining disputed issue identified in the parties' stipulation.

      In the stipulation filing, Apple contests for the first time the admissibility of "the amount Apple charges for the iPad 2 WiFi only model compared to the iPad2 [sic] WiFi and cellular model, which serves as the factual predicate for Mr. Dansky's per-unit royalty calculation for the accused products." Stip. at 4-5. Mr. Dansky uses the price difference between Apple's iPad models to derive the average incremental profit earned by Apple for each cellular-capable iPad, which Mr. Dansky apportions into a per-unit royalty for the Patents-in-Suit. This per-unit royalty is unrelated to Mr. Dansky's unit-level calculation of convoyed sales profits that the parties stipulated to exclude.

      The Court declines to exclude Mr. Dansky's presentation of the amount Apple charges for its iPad 2 models. Apple has had ample prior opportunity to object to this aspect of Mr. Dansky's testimony. In its first Dansky *Daubert* motion, Apple explicitly did not challenge Mr. Dansky's derivation and use of his $86 average incremental profit figure. *See Daubert* Order, at 4 ("Although Apple disagrees with Mr. Dansky's profit calculation, Apple does not challenge that calculation for the purposes of this *Daubert* motion."). Nor did Apple raise this issue in either its second Dansky *Daubert* motion or its motions *in limine*. By waiting to move to exclude this testimony until after two rounds of *Daubert* motions, the pretrial conference, and rulings on all but one motion *in limine*, Apple has waived its argument.

      In addition, granting Apple's belated motion would be highly prejudicial to GPNE. GPNE has already supplemented Mr. Dansky's expert report. Because Apple did not previously contest Mr. Dansky's $86 average incremental profit figure, Mr. Dansky did not supplement his report as to that calculation. Therefore, if the Court were to exclude the average incremental profit figure now, Apple's delay in challenging Mr. Dansky's calculation would have the unfairly prejudicial

United States District Court
For the Northern District of California

effect of denying GPNE the opportunity to address Apple's objection in its supplemental expert report.

Apple responds that "Apple has consistently contested Mr. Dansky's failure to use the right royalty base within each unit . . . ." Stip. at 5. Apple overstates the scope of its prior *Daubert* challenges. In Apple's first Dansky *Daubert* motion, Apple contended that Mr. Dansky "provide[d] no methodology to derive his $1 per unit royalty from the $86 average net incremental profit." *Daubert* Order, at 7. However, Apple declined to challenge Mr. Dansky's derivation of the $86 average net incremental profit figure, stating instead that Mr. Dansky's alleged errors in that calculation were merely "grounds for cross-examination." ECF No. 184-4, Apple's Motion to Exclude Dansky Testimony, at 12. Moreover, if Apple instead intends the present argument to be an extension of its smallest salable patent-practicing unit argument, the Court has previously held that Mr. Dansky's methodology does not implicate the smallest salable patent-practicing unit doctrine. *Daubert* Order, at 25 ("Mr. Dansky's current damages theory does not implicate the smallest salable patent-practicing unit doctrine").

Furthermore, even if the Court considers Apple's argument, it is unmeritorious. The only reasoning Apple supplies in favor of excluding Mr. Dansky's per-unit royalty opinion is that "Mr. Dansky has not conducted an analysis that isolates the value of the alleged invention as compared to unclaimed technologies . . . ." Stip. at 6. However, Apple's argument is rather ironic, given that Mr. Dansky's new methodology borrows Mr. Meyer's apportionment methodology. Although the experts disagree on the number of standard-essential patent families to use as the denominator for the apportionment calculation, both parties' damages experts apportion by dividing a base figure by a number of relevant standard-essential patent families derived from the Fairfield study. As the Court found Mr. Meyer's methodology sufficiently reliable under *Daubert* in its first *Daubert* order, the Court now rejects Apple's belated challenge to Mr. Dansky's essentially identical methodology. Therefore, Apple's motion to "preclude[] Mr. Dansky from testifying about the amount Apple charges for the iPad 2 WiFi only model compared to the iPad2 [sic] WiFi and cellular model" is DENIED. *See* Stip at 4-6. Mr. Dansky may testify as to the prices Apple charges

8

for its WiFi-only and cellular-capable iPad 2 models, the price difference between the two models, and Mr. Dansky's calculation resulting in the $86 average net incremental profit figure for the cellular-capable iPad 2 over the WiFi-only iPad 2.

### B. Alternative Calculation (Second *Daubert* Issue)

In his supplemental report, Mr. Dansky provides a second methodology for calculating a reasonable royalty for the Patents-in-Suit. Mr. Dansky's "Alternative Calculation" employs the same basic methodology as Mr. Meyer. Dansky Supp. Report, at 25-27; *see Daubert* Order, at 11-13 (outlining Mr. Meyer's methodology). However, Mr. Dansky disagrees with Mr. Meyer's use of the baseband processor as the smallest salable patent-practicing unit, and with Mr. Meyer's conclusion that at least 800 patent families have been declared essential to the GSM/WCDMA standards. Dansky Supp. Report, at 25-27. Mr. Dansky also multiplies his resulting per unit royalty figure by three "to account for the lack of a FRAND commitment" on GPNE's patents. *Id.* at 27. As a result, despite following the same methodology as Mr. Meyer, Mr. Dansky arrives at a royalty figure that is approximately 60 times greater than Mr. Meyer's royalty rate.

Apple challenges only one aspect of Mr. Dansky's "Alternative Calculation": his use of a collection of components as the smallest salable patent-practicing unit. Apple argues that the Court in its previous *Daubert* order found as a matter of law that the smallest salable patent-practicing unit is the baseband processor, and that Mr. Dansky is therefore precluded from using anything other than the baseband processor as the smallest salable patent-practicing unit. GPNE responds that identification of the proper smallest salable patent-practicing unit is a disputed factual issue that should be resolved by the jury.

The Court excludes Mr. Dansky's "Alternative Calculation." As an initial matter, the Court previously held "as a matter of law that in this case, the baseband processor is the proper smallest salable patent-practicing unit." *Daubert* Order, at 24-25. Although GPNE initially characterized the smallest salable patent-practicing unit inquiry as a legal question because it wanted the Court to exclude Mr. Meyer's testimony based on the doctrine, GPNE now cites two cases—both from other district courts—in support of its current position that the smallest salable patent-practicing

9

Case No.: 12-CV-02885-LHK
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO EXCLUDE DANSKY TESTIMONY AND DENYING AS MOOT APPLE'S MOTION *IN LIMINE* No. 5

unit inquiry is a question of fact. *See Stryker Corp. v. Zimmer Inc.*, 10-CV-01223 RJJ, 2013 WL 6231533, at *17 (W.D. Mich. Aug. 7, 2013); *Broadcom Corp. v. Emulex Corp.*, 09-CV-01058 JVS, 2011 WL 11025895, at *7 (C.D. Cal. Dec. 13, 2011).

GPNE's position is misguided for two reasons. First, the Court in its *Daubert* order recognized that factual disputes often underlie the smallest salable patent-practicing unit determination. Because no factual disputes regarding the smallest salable patent-practicing unit existed in this case at that time, the Court found that "the parties do not dispute any facts underlying the smallest salable patent-practicing unit determination" before ruling that the baseband processor is the smallest salable patent-practicing unit as a matter of law. *Daubert* Order, at 24.

Second, both the *Stryker* and *Broadcom* cases involved genuine disputes over underlying factual issues. In *Stryker*, which concerned orthopedic pulsed lavage devices, the parties' experts provided conflicting testimony on whether the components claimed by the patents-in-suit "were inseparable elements of the whole pulsed lavage handpiece." *Stryker*, 2013 WL 6231533, at *17. Similarly, in *Broadcom*, the parties disputed whether SerDes cores, one of the suggested smallest salable patent practicing units, were regularly sold. *Broadcom*, 2011 WL 11025895, at *7. The court in *Broadcom* found in its order regarding judgment as a matter of law that the jury was entitled to weigh conflicting testimony on whether SerDes cores were sold and conclude in the prevailing party's favor. *Id*. The *Stryker* and *Broadcom* cases present two examples of situations in which parties may dispute facts underlying the smallest salable patent-practicing unit determination. The Federal Circuit has suggested that, in other situations, the smallest salable patent-practicing unit determination can be a pure issue of law. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66 (Fed. Cir. 2012) (affirming the district court's grant of a new trial on damages based on LaserDynamics' failure to comply with the entire market value rule and smallest salable patent-practicing unit doctrine); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 287 (N.D.N.Y. 2009) (granting judgment as a matter of law and holding that "no reasonable jury could have relied on this royalty base in determining Cornell's damages award"

because it conflicted with the entire market value rule and the smallest salable patent-practicing unit doctrine). In the instant case, neither party disputes any underlying factual issues, so the Court was correct in ruling as a matter of law that the baseband processor is the smallest salable patent-practicing unit.

GPNE now attempts to manufacture a factual dispute over the smallest salable patent-practicing unit by returning with new testimony from Mr. Dansky that the smallest salable patent-practicing unit is a collection of hardware components. However, Mr. Dansky's testimony is either outside the scope of his expertise, or it relies on undisclosed opinions from GPNE's technical expert, Dr. Esmael Dinan. In his supplemental report, Mr. Dansky attempts to ascertain "the cost to Apple of all of the components incorporated into the accused iPad to enable it to be cellular-capable and the related components that leverage the infringed technology to operate the cellular functions and features of the device." Dansky Supp. Report, at 25. According to Mr. Dansky, "[t]hese collective components at the least should be considered as the SSPPU [smallest salable patent-practicing unit] . . . ." *Id*. Mr. Dansky further opines that "[a]ll of these 'cellular' items that I am accounting for are part of either what is necessary to practice the claims of the patent or are implicated in operation as requiring the use of the patents." *Id*. at 25-26. Here, Mr. Dansky finally cites Dr. Dinan as the source of Mr. Dansky's conclusions regarding the components that practice the claims, but Mr. Dansky nowhere cites any part of Dr. Dinan's report or testimony. *Id*. at 26 n.48. Instead, Mr. Dansky refers solely to his "discussions with Dr. Dinan." *Id*. at 26. However, to the extent that Mr. Dansky relies on technical analysis, those opinions must be separately disclosed by GPNE's technical expert. *See* Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2). Dr. Dinan does not disclose any opinions regarding the smallest salable patent-practicing unit in his report, and, as it is now too late for Dr. Dinan to supplement his report, Mr. Dansky may not rely on Dr. Dinan's undisclosed opinions.

Furthermore, Mr. Dansky's smallest salable patent-practicing unit theory appears to be that all components in cellular-capable iPads that are not present in WiFi-only iPads constitute the smallest salable patent-practicing unit. *See* Dansky Supp. Report, at 25-26. However, Mr. Dansky

assumes, without justification, that the components constituting Mr. Dansky's smallest salable patent-practicing unit—the components added to a WiFi-only iPad to create the cellular-capable iPad sold by Apple—are limited to only those components that actually practice the claims of the Patents-in-Suit. For example, Mr. Dansky assumes that any component present only in Apple's cellular-capable iPads is directed to enabling an iPad's cellular capability. Mr. Dansky further assumes, again without justification, that any component that aids in enabling an iPad's cellular capability is necessary to practice the claims of the Patents-in-Suit. While Mr. Dansky cites undisclosed "discussions with Dr. Dinan" elsewhere in his analysis, Mr. Dansky does not cite any technical expertise for the proposition that every single component added to a WiFi-only iPad to create a cellular-capable iPad aids in practicing the claims of the Patents-in-Suit. Without any technical testimony to support this methodology, Mr. Dansky's testimony concerning an alternative smallest salable patent-practicing unit must be excluded.

The Court is also unclear as to which specific components constitute Mr. Dansky's smallest salable patent-practicing unit. In his supplemental report, Mr. Dansky cites to a May 2010 "Concept Review" Apple document and "publicly available tear-down information" as providing lists identifying "all of the components incorporated into the accused iPad to enable it to be cellular-capable and the related components that leverage the infringed technology to operate the cellular functions and features of the device." Dansky Supp. Report, at 25-26. Mr. Dansky also refers to a "weighted average cost" figure from his original report that he previously used to estimate the average net incremental profit Apple makes on its cellular-capable iPads. *Id*. at 26. Further, Mr. Dansky in a footnote provides an example of a component included in Mr. Dansky's smallest salable patent-practicing unit. The footnote states: "[f]or example, according to Dr. Dinan, the practice of the claims of the Patents-in-Suit also implicates the use of the memory of the device." *Id*. at 26 n.48. Yet, Apple provides identical memory components in its WiFi-only and cellular-capable iPads. *See, e.g.*, Apple, *Compare iPads*, https://www.apple.com/ipad/compare/. Therefore, Mr. Dansky does not even clearly describe which components of the accused devices constitute his proposed smallest salable patent-practicing unit.

12

Case No.: 12-CV-02885-LHK
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO EXCLUDE DANSKY TESTIMONY AND DENYING AS MOOT APPLE'S MOTION *IN LIMINE* No. 5

In sum, the Court has outlined three independent bases to exclude Mr. Dansky's "Alternative Calculation." First, the "Alternative Calculation" directly contravenes the Court's holding in its previous *Daubert* order that the baseband processor is the smallest salable patent-practicing unit. That ruling was made as a matter of law, given that no facts underlying the smallest salable patent-practicing unit inquiry were in dispute. Second, to the extent that Mr. Dansky now tries to manufacture a factual dispute with new testimony concerning the smallest salable patent-practicing unit, Mr. Dansky's testimony is excluded. Mr. Dansky's new identification of a smallest salable patent-practicing unit relies on technical testimony outside the scope of Mr. Dansky's expertise and not present in any of Dr. Dinan's disclosed opinions. Finally, Mr. Dansky's smallest salable patent-practicing unit theory assumes, without justification, that any component only present in a cellular-capable iPad aids in practicing the claims of the Patents-in-Suit. Moreover, Mr. Dansky does not clearly identify which components of the accused devices constitute his proposed smallest salable patent-practicing unit. Therefore, the Court GRANTS Apple's motion to exclude Mr. Dansky's "Alternative Calculation" damages methodology.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART as moot Apple's *Daubert* Motion to Exclude Testimony of Michael J. Dansky. Specifically, Apple's motion is GRANTED as to Mr. Dansky's "Alternative Calculation" opinion. Apple's motion is DENIED as moot as to Mr. Dansky's convoyed sales opinion. The Court also GRANTS the parties' Joint Proposed Stipulation on Damages-Related Issues as to paragraphs 5-8 and DENIES as moot Apple's Motion *in Limine* No. 5.

**IT IS SO ORDERED.**

Dated: August 6, 2014

*Lucy H. Koh*
LUCY H. KOH
United States District Judge