| | |
|---|---|
| **SUSMAN GODFREY LLP**<br>Kalpana Srinivasan (237460)<br>ksrinivasan@susmangodfrey.com<br>Frances S. Lewis (291055)<br>flewis@susmangodfrey.com<br>Trevor P. Stutz (296882)<br>tstutz@susmangodfrey.com<br>1901 Avenue of the Stars, Suite 950<br>Los Angeles, California 90067-6029<br>[Tel.] (310) 789-3100<br>[Fax] (310) 789-3150<br><br>Max L. Tribble, Jr. (*pro hac vice*)<br>mtribble@susmangodfrey.com<br>1000 Louisiana, Suite 5100<br>Houston, Texas 77002-5096<br>[Tel.] (713) 651-9366<br>[Fax] (713) 654-6666<br><br>*(Additional counsel listed in signature block)*<br><br>*Attorneys for Plaintiff GPNE Corp.* | **FISH & RICHARDSON, P.C.**<br>Katherine K. Lutton (SBN 194971)<br>lutton@fr.cm<br>500 Arguello Street, Ste. 500<br>Redwood City, California 94063<br>[Tel.] (650) 839-5070<br>[Fax] (650) 839-5071<br><br>Ruffin B. Cordell (*pro hac vice*)<br>cordell@fr.com<br>1425 K Street, NW<br>Suite 1100<br>Washington, DC 20005<br>[Tel.] (207) 783-5070<br>[Fax] (207) 783-2331<br><br><br>*(Additional counsel listed in signature block)*<br><br>*Attorneys for Defendant Apple Inc.* |

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| GPNE CORP.,<br><br>    Plaintiff,<br><br>vs.<br><br>APPLE, INC.<br><br>    Defendant. | Case No: 12-cv-02885-LHK<br><br>**JOINT SUBSEQUENT CASE MANAGEMENT STATEMENT**<br><br>DATE:    September 24, 2014<br>TIME:    2:00 p.m.<br>PLACE:  Courtroom Eight, Fourth Floor<br><br>Trial Date: October 6, 2014 |

Case Management Statement–
Case No 12-cv-02885-LHK

3327491v1/014346

Pursuant to Civil L.R. 16-10(d) and the Court's July 6, 2014, Pretrial Conference Order (Dkt. 327), the parties to the above-entitled action submit this Joint Case Management Statement in advance of the status conference scheduled for September 24, 2014 at 2 p.m.

## I.  DESCRIPTION OF SUBSEQUENT CASE DEVELOPMENTS

Since the Pretrial Conference on June 24, 2014, the following has occurred:

1. The parties filed their Second Amended Joint Proposed Final Jury Instructions (Dkt. 335) on July 15, 2014, per the Court's Pretrial Conference Order (Dkt. 327). The Court has not yet resolved the disputed jury instruction issues.

2. The parties filed a Joint Proposed Stipulation on Damages-Related Issues (Dkt. 336) relating to Apple's Motion *in Limine* No. 5 and Apple's second Daubert Motion to Exclude the Testimony of Michael J. Dansky. The Court issued an Order resolving these issues on August 6, 2014 (Dkt. 361).

3. The parties exchanged supplemental expert reports on indefiniteness per the Court's Pretrial Conference Order (Dkt. 327) and conducted limited supplemental expert discovery.

4. GPNE produced additional licenses executed on or before July 29, 2014 and the parties exchanged supplemental damages reports regarding these licenses per Judge Grewal's Order, dated July 29, 2014 (Dkt. 360).

5. The parties have filed their deposition designations (Dkts. 367, 368) and objections and counter-designations (Dkts. 370, 371) per the Court's Pretrial Conference Order (Dkt. 327).

6. The parties have met and conferred regarding the development of a joint exhibit list per the Court's Pretrial Conference Order (Dkt. 327).

The parties are currently prepared to proceed to trial on October 6, 2014, as set forth in the Pretrial Conference Order (Dkt. 327).

## II.  FURTHER STIPULATIONS

In the Court's Pretrial Conference Order, the Court held that the parties must file their objections and responses to witnesses, exhibits, and demonstratives no later than 8 a.m. the day

before the witness is to testify or the exhibit or demonstrative is to be used and must file their objections and responses to opening statement demonstratives by Thursday, October 2, 2014, at 1 p.m. The Court further instructed the parties to stipulate to a timeline for exchanging the relevant materials with each other as well as arranging for a meet and confer prior to the filings.

The following stipulations shall replace Section VI.A-C (Stipulations) from the Joint Pretrial Statement:

### A.  Advance Notification of Demonstratives, Exhibits, and Witnesses

During presentation of evidence during their respective cases-in-chief, each party must identify to opposing counsel the identity of any witness (live or via deposition) to be called at trial, and the order in which they will be called, by no later than 3:00 p.m. two days before the trial day on which that witness is expected to testify. (See also, subsection C below). Similarly, specific pages of any non-demonstrative exhibits to be used on direct with any of the live witnesses must be identified by no later than 3:00 p.m. two days before the trial day on which that witness's testimony will be offered. Animations and demonstratives do not need to be included on the trial exhibit list, but must be provided to opposing counsel by no later than 3:00 p.m. two days before their use during trial, unless they are for use during opening and closing arguments in which case they must follow the procedures outlined below. Demonstrative exhibits that are merely excerpts, enlargements, or highlights of trial exhibits need not be exchanged, but the specific pages of the underlying trial exhibits must be identified under the procedure outlined in this paragraph.

The other party must identify any objections by no later than 7:00 p.m. two days before their use at trial. The parties will meet and confer promptly after the objections are served, but in any event no later than 9:00 p.m. that same day, and will file any unresolved objections and responses to the Court by 8:00 a.m. the next day, i.e., the day before the relevant trial day.

### B.  Demonstratives for Use in Opening and Closing Statements

Both parties must simultaneously disclose to the other party specific pages of the non-demonstrative exhibits, deposition testimony, or other evidence to be presented as part of opening statements no later than 7:00pm on October 1, 2014. The parties must also simultaneously

2

1  disclose any animations or demonstratives that will be used in opening statements no later than
2  7:00pm on October 1, 2014.  Demonstrative exhibits that are merely excerpts, enlargements, or
3  highlights of trial exhibits need not be exchanged, but the specific pages of the underlying trial
4  exhibits must be identified under the procedure outlined in this paragraph. The other party must
5  identify any objections by no later than 9:00 a.m. on October 2, 2014. The parties will meet and
6  confer no later than 12:00 p.m. that same day and will file any unresolved objections and
7  responses to the Court by 1:00 p.m. on October 2, 2014, per the Court's Pretrial Conference
8  Order.

9  For closing statements, the parties agree to make the same disclosures at 1:00pm the day
10 before closing arguments, to exchange objections by 3:00pm, and to submit any briefing to the
11 Court by 5:00pm, and will negotiate any changes to this schedule in good faith.

12  **C.     Sealing of Demonstratives and Exhibits**

13  After receiving notice pursuant to subsection A or B of demonstratives or exhibits that
14 may be used during witness testimony or during opening/closing statements, each party will
15 identify for the Court any portions of the disclosed demonstratives and exhibits that each party
16 seeks to seal. The parties' requests to seal will be filed no later than the time specified in
17 subsections A and B for filing unresolved objections.  The parties will also lodge with the Court a
18 copy of any demonstratives or exhibits that are the subject of a sealing request.

19  **D.     Witnesses**

20  As provided in subsection A, above, witnesses shall be identified by no later than 3:00
21 p.m. two days before the trial day on which that witness is expected to testify. For those witnesses
22 who will be called in a party's case-in-chief via deposition, the parties agree that any counter-
23 designated testimony will be presented to the jury together with the designated testimony, subject
24 to the resolution of any objections to the designated or counter-designated testimony, as discussed
25 below. Each party shall provide to opposing counsel the deposition testimony that it expects to
26 present at trial, along with any associated exhibits, by no later than 3:00 p.m. two days before the
27 trial day on which the deposition testimony is expected to be introduced and agree to proceed
28 with objections and responses using the procedures outlined in subsection A.

### E. Ordering of Proof

The parties agree that GPNE will present its case in chief first followed by Apple's presentation of its case in chief. However, Apple has indicated that it intends to offer evidence at trial on certain affirmative defenses relating to validity. Because the burden of proof on these issues falls on Apple, the parties agree that after Apple presents its case in chief, GPNE may use any of its remaining time to present rebuttal testimony limited to the defenses Apple raises during its case in chief.

### III. ADDITIONAL ISSUES

Apple respectfully requests that the Court consider the following issues A through C at the status conference, all of which relate to the streamlined presentation of evidence at trial. GPNE does not object to addressing some of these issues at the upcoming status conference, but disputes Apple's proposals for each of the issues. GPNE proposes an additional two issues for the Court's consideration.

### A. Examination of Apple Witnesses Adversely Called by GPNE

**Apple's Position:** GPNE has served trial subpoenas upon Apple witnesses Srini Vasuvedan and Johnson Sebeni and has identified them, and potentially other Apple employees, as adverse witnesses. Not only would it be confusing for the jury to have multiple rounds of testimony from these witnesses, but they have rearranged their work schedules around the trial subpoenas and are not available any other time. Apple therefore will need to conduct its full examination of these witnesses during GPNE's case, and believes that under the circumstances it is more efficient and less confusing for the jury if these witnesses are examined in conventional order (i.e., direct by Apple, cross by GPNE, redirect by parties if necessary). Alternatively, to the extent the Court is inclined to permit GPNE to conduct a hostile direct examination of Apple's witnesses, Apple respectfully requests that its cross-examination of these witnesses not be limited to the scope of GPNE's hostile direct, as this Court has allowed in the past in, e.g., *Apple Inc. v. Samsung Electronics Co. Ltd.*, Case No. 5:11-CV-01846-LHK (N.D. Cal.).

GPNE's position overlooks the realities of the process it set in motion by serving trial subpoenas on two of Apple's 30(b)(6) witnesses on topics relating to the GPRS and LTE

protocols. It should not be surprising that Apple would call these witnesses in its case in chief, and indeed Apple discussed this with GPNE on multiple occasions. Most recently, during a conference on September 12, Apple explained to GPNE that it would call those witnesses for purposes of a direct examination. Apple further explained that the witnesses made arrangements to appear on the noticed dates, which would significantly compromise their ability to be recalled at a later date due to rearranging work and travel schedules after receiving the subpoenas. Indeed, Mr. Sebeni is scheduled to be out of the country from October 13 onward.

**GPNE's Position:** GPNE objects to Apple's proposal, which would essentially allow Apple to present affirmative testimony in the middle of GPNE's case in chief. GPNE has subpoenaed two Apple employees to provide testimony during GPNE's case in chief. GPNE has repeatedly asked Apple whether Apple also intends to call these witnesses live during Apple's case in chief, but Apple has only indicated that it desires to direct these witnesses during GPNE's case in chief. Apple's proposal therefore attempts to solve a problem that does not exist—these witnesses are not currently scheduled to appear on two days during trial in the first place. There is therefore no burden being imposed on these witnesses that would warrant adjusting the normal course of how witnesses are presented at trial. GPNE should be permitted to call these adverse witnesses and conduct its direct examination of them, and thereafter Apple should be permitted to conduct a cross examination of these witnesses limited to the scope of GPNE's direct.

If Apple desires to recall these witnesses live during Apple's case in chief to conduct a direct examination of a broader scope, which as of the time of this filing Apple has not indicated it intends to do, GPNE does not believe having these witnesses appear on two separate days during trial will pose an undue burden on them because of their proximity to the courthouse. However, GPNE remains willing to work with Apple, the Court, and the witnesses should appearing on two separate days impose an undue burden on these witnesses. GPNE objects to any format that would allow Apple to present these witnesses to the jury first in the middle of GPNE's case in chief as highly prejudicial.

**B.      Apple's Competitively Sensitive Information**

**Apple's Position:** The trial is nearly certain to include testimony regarding highly sensitive Apple information, both financial (including licensing), and technical (including internal Apple processes and source code), the disclosure of which could cause significant competitive harm to Apple. This raises two related issues.

First, Apple respectfully requests consideration at the status conference of procedures to adequately protect Apple's competitively sensitive information. For example, if a motion to seal is granted by the Court, then that exhibit will only be displayed on the screens of the jury, the Court, and the parties, and not any public screens. Experts that are authorized to see such information under the Protective Order may also view such information. To the extent that a party believes that oral testimony regarding such sealed exhibits will itself reveal the sealed information, the party will approach the Court in advance of such testimony and request permission to seal the courtroom for such testimony. But, the parties will make every effort to avoid the need to seal the courtroom.

Second, when the courtroom is sealed individuals not qualified under the Court's Protective Order should be dismissed, including GPNE's expert Dr. Dinan, who would not sign the Protective Order because he did not wish to be bound by its prosecution bar. Apple respectfully requests resolution of this point prior to trial and outside the presence of the jury.

GPNE's position seeks to eviscerate the prosecution bar in the Protective Order and inappropriately shift to Apple an unwarranted burden of demonstrating that its confidential technical information is not related to Dr. Dinan's pending patents. GPNE already litigated this issue in 2013, when it sought to bring under the Protective Order an expert with active patent applications that would not agree to the prosecution bar. GPNE lost that argument. Dkt. No. 203. Since then, the parties have abided by the terms of the Protective Order, and GPNE cannot at this point dispense with them out of pure expediency.

**GPNE's Position**: GPNE disputes Apple's presumption that the parties' presentation of evidence in this case will warrant sealing the entire courtroom at the exclusion of the public and certain experts, including GPNE's technical expert, Dr. Esmael Dinan. The parties have proposed

1  a procedure above for identifying for the Court and each other which exhibits will be used
2  affirmatively on direct that a party believes should be sealed because they contain exceptionally
3  sensitive information and truly deserve protection. GPNE proposes that if a motion to seal is
4  granted by the Court, then that exhibit will only be displayed on the screens of the jury, the Court,
5  and the parties, and not any public screens. GPNE proposes that in such circumstances, the
6  courtroom not be cleared and that clearing the courtroom only occur if Apple can demonstrate
7  that the information being discussed orally meets the extremely high burden for preventing
8  disclosure at trial under the law. This is consistent with how this Court handled Apple's
9  confidential material in its trial against Samsung, Case No. 11-CV-01846 (Dkt. 1256). With
10 respect to Dr. Dinan specifically, Dr. Dinan was not permitted to review AEO material because
11 the Protective Order contains a prosecution bar and Dr. Dinan conducts patent prosecution in this
12 general area for his own personal patents. GPNE does not anticipate that any such information
13 relevant to patent prosecution would be presented in light of the exhibits that have been
14 exchanged in this case. There is therefore no reason to exclude Dr. Dinan from attending any part
15 of trial unless Apple can demonstrate that the AEO-designated information being discussed is of
16 the kind that could be used by Dinan in current patent prosecution.

### C. Dr. Harry Tan

**Apple's Position:** Dr. Harry Tan is a lay witness whose deposition testimony GPNE seeks to play in its case in chief. Dr. Tan is a Professor Emeritus at UC Irvine and was intimately involved in the prosecution of the patents-in-suit, including technical consulting and claim drafting. GPNE has not tendered Dr. Tan as an expert in this case, nor has he submitted a written report. Yet much of GPNE's deposition designations for Dr. Tan are impermissible opinion testimony related to both infringement and validity. Much of the rest of GPNE's designated testimony is hearsay, wherein Dr. Tan describes what GPNE founder and named inventor Gabriel Wong allegedly told him about his alleged invention in the mid-1990s. Following is an excerpt from an extended colloquy GPNE has designated, in which Dr. Tan articulates nearly word-for-word GPNE's infringement theory regarding the construed claims' requirement of a "paging system that operates independently from a telephone network":

> Q   What does that mean, GPRS overlay over a GSM?
> A   That means basically you have a GSM telephone network augmented with an overlay of a GPRS packet data network.
> Q   I'm trying to understand here. So excuse my terminology. But is it true that the GPRS overlay is dependent on the underlying GSM telephone network?
> THE WITNESS: Their operation is -- can be -- it's very independent. But they share some common infrastructure.
>
> * * *
>
> Q   So there's a larger physical resource, and at any given point in time, a smaller physical resource within that larger physical resource can be occupied by either party but only one of those parties?
> A   Depending on what the network op- -- the -- generally, there will be one network operator. And he will have a, a certain plan of operation that says channels, at any given time -- this is dynamically changing over -- over a day's period, depending on what were -- the traffic demands are.
> If there are a lot of voice calls, he would dedicate a lot of channels to GSM. If there were a lot of data calls, he would develop -- he will assign more channels to GPRS. And there's changes over the entire day.
> So the GPRS and GSM, they are both operating independently of each other as far as -- as the traffic flows are concerned. But they occupy the same physical infrastructure, like the employees of the two law firms occupy the parking garage spaces. But the two law firms are independent of each other. Their employees – their employees don't interact with each other in this parking function.

(Tan Tr. 88:21-89:7; 92:18-93:15 (objection omitted).) Given that GPNE has tendered not one but two infringement experts, it is unlikely GPNE would seek to play such highly prejudicial testimony unless its goal is to create the impression in the minds of the jurors that it has yet another expert in its camp—this one unconstrained by the bounds of any report. Indeed, resolution of this dispute likely will determine whether GPNE plays any testimony from Dr. Tan at all. Apple thus respectfully requests that the Court consider this issue at the status conference and resolve it before trial.

**GPNE's Position**: Dr. Harry Tan is a fact witness who has direct, personal knowledge of the technology of the patents in suit and GPNE's efforts to develop a prototype. He worked with

8

1  GPNE and was engaged to build a prototype in the late 1990s. GPNE does not intend to offer Dr. Tan as an expert witness at trial and disagrees with Apple's unfounded and unsupported characterization of Dr. Tan's testimony as containing "no relevant, admissible fact testimony."

### D. Po Sing Tsui

**GPNE's Position**: Apple listed Po Sing Tsui, the co-inventor of the patents and a non-party to this suit, as a "may call" witness in the Joint Pretrial Statement filed on June 12, 2014. However, Apple has also designated portions of Mr. Tsui's deposition to play at trial. Since these submissions, GPNE has asked Apple on multiple occasions over a course of weeks whether Apple intends to subpoena Mr. Tsui to testify live at trial. Apple has not provided an answer and to GPNE's knowledge has not subpoenaed Mr. Tsui. As a result, GPNE objects to Apple's proposed use of Mr. Tsui's testimony at trial under Federal Rule of Civil Procedure 32(a). Mr. Tsui was not deposed as a representative of GPNE, and Apple has not demonstrated that Mr. Tsui is an unavailable witness under the exceptions to the hearsay rules. Should the Court agree with this assessment, GPNE withdraws its designations of Apple's witnesses that also live within the subpoena power of the Court who were not deposed in their representative capacity.

**Apple's Position:** Apple does not plan on calling Po Tsui live, and is willing to meet and confer with GPNE regarding the playing of deposition testimony of available witnesses.

### E. Apple's Expanded Exhibit List

**GPNE's Position:** At the Joint Pretrial Conference on June 24, 2014, the Judge instructed the parties to narrow not expand their exhibit lists. *See* June 24, 2014, Tr. 16:7-24 ("This is really a[] reduction and narrowing of the list. It's not further expansion of something new, unless it's just been produced."). With that in mind, GPNE substantially narrowed its list from 521 exhibits in the Joint Pretrial Statement to 288 exhibits for the parties' joint submission on September 17, 2014. GPNE proposed adding only ten new documents. These new documents included the six intermediate patents for the sake of completeness, two specifications one of which was already on Apple's exhibit list, and newly available documents such as Apple's updated financial information and the re-examination certificates. Apple on the other hand, originally listed 521 exhibits in the Joint Pretrial Statement and is now proposing a list that contains approximately

9

Case Management Statement –
Case No 12-cv-02885-LHK

3327491v1/014346

1  476 exhibits. Almost eighty of the exhibits on Apple's recent list, DX545-DX622, are brand new.
2  Of these eighty, only twenty-one are the telematics licenses that were recently produced in this
3  case. The other approximately sixty exhibits bear no relation to any newly produced information.
4  GPNE therefore objects to Apple's late addition of these new exhibits.

5  **Apple's Position:** Since the submission of the original preliminary exhibit lists, the
6  parties have extensively met and conferred and both have diligently reduced the number of
7  exhibits on their separate lists.  Apple expects its final exhibit list to be in the range of 430
8  exhibits, a significant reduction in light of the significant number of additional exhibits Apple had
9  to add based on GPNE's litigation decisions.  First, many of the exhibits about which GPNE
10 complains are the byproduct of its prolonged withholding of its recent litigation licenses, finally
11 produced last month after Judge Grewal granted Apple's Motion to Compel (Dkt. No. 360).
12 Apple has added to its exhibit list not only the licenses, but also exhibits from its damages expert
13 Paul Meyer's supplemental report concerning those licenses.  Second, GPNE recently served a
14 new set of deposition designations that were substantially different from the set it served in June.
15 These materially different designations raised a new set of issues that required new exhibits to
16 address.  Finally, a number of what GPNE alleges are new and more exhibits are actually a
17 reduction of the total volume of exhibits: Apple replaced several voluminous exhibits (e.g., file
18 histories and a set of videos) with only those portions actually needed for trial, thus decreasing the
19 size of some of its exhibits by thousands of pages.  In sum, Apple believes that it is submitting a
20 reasonable number of exhibits given the above circumstances and the remaining issues in the
21 case.

22 **IV.     FURTHER ADR**

23      Pursuant to Civil L.R. 16-10(d), the parties have discussed whether further ADR would be
24 useful at this time and agree that it would not.

Dated: September 17, 2014

| | |
|---|---|
| **SUSMAN GODFREY LLP** | **FISH & RICHARDSON, P.C.** |
| */s/ Kalpana Srinivasan* | */s/ Ruffin B. Cordell* |
| Kalpana Srinivasan (237460) | Katherine K. Lutton (SBN 194971) |
| ksrinivasan@susmangodfrey.com | lutton@fr.com |
| Frances S. Lewis (291055) | 500 Arguello Street, Ste. 500 |
| flewis@susmangodfrey.com | Redwood City, California 94063 |
| Trevor P. Stutz (296882) | [Tel.] (650) 839-5070 |
| tstutz@susmangodfrey.com | [Fax] (650) 839-5071 |
| 1901 Avenue of the Stars, Suite 950 | |
| Los Angeles, California 90067-6029 | Ruffin B. Cordell (*pro hac vice*) |
| [Tel.] (310) 789-3100 | cordell@fr.com |
| [Fax] (310) 789-3150 | 1425 K Street, NW |
| | Suite 1100 |
| Max L. Tribble, Jr. (*pro hac vice*) | Washington, DC 20005 |
| mtribble@susmangodfrey.com | [Tel.] (207) 783-5070 |
| 1000 Louisiana, Suite 5100 | [Fax] (207) 783-2331 |
| Houston, Texas 77002-5096 | |
| [Tel.] (713) 651-9366 | Christopher O. Green (*pro hac vice*) |
| [Fax] (713) 654-6666 | cgreen@fr.com |
| | Aamir A. Kazi (*pro hac vice*) |
| **NELSON BUMGARDNER CASTO, P.C.** | kazi@fr.com |
| Barry J. Bumgardner (*pro hac vice*) | Jacqueline Tio (*pro hac vice*) |
| barry@nbclaw.net | tio@fr.com |
| Steven W. Hartsell (*pro hac vice*) | 1180 Peachtree Street, 21st Floor |
| shartsell@nbclaw.net | Atlanta, Georgia 30309 |
| 3131 West 7th Street, Suite 300 | [Tel.] (404) 892-5005 |
| Fort Worth, Texas 76107 | [Fax] (404) 892-5002 |
| [Tel.] (817) 377-9111 | |
| [Fax] (817) 377-3485 | Benjamin C. Elacqua (*pro hac vice*) |
| | elacqua@fr.com |
| **BURNS & LEVINSON LLP** | Brian G. Strand (*pro hac vice*) |
| Howard J. Susser (*pro hac vice*) | strand@fr.com |
| hsusser@burnslev.com | 1221 McKinney, Suite 2800 |
| Zachary R. Gates (*pro hac vice*) | Houston, Texas 77010 |
| zgates@burnslev.com | [Tel.] (713) 654-5300 |
| Alexandra Capachietti (*pro hac vice*) | [Fax] (713) 652-0109 |
| acapachietti@burnslev.com | |
| 125 Summer Street | **WILMER CUTLER PICKERING HALE** |
| Boston, Massachusetts | **AND DORR LLP** |
| [Tel.] 617-345-3000 | Joseph J. Mueller (*pro hac vice*) |
| [Fax] 617-345-3299 | joseph.mueller@wilmerhale.com |
| | 50 State Street |
| ***Attorneys for Plaintiff GPNE Corp.*** | Boston, Massachusetts 02109 |
| | [Tel.] (617) 526-6000 |
| | [Fax] (617) 526-5000 |

11

Case Management Statement –
Case No 12-cv-02885-LHK

3327491v1/014346

Matthew Hawkinson (SBN 248216)
matthew.hawkinson@wilmerhale.com
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
[Tel.]  (213) 443-5300
[Fax]  (213) 443-5400

Mark D. Selwyn (SBN 244180)
Mark.selwyn@wilmerhale.com
950 Page Mill Road
Palo Alto, CA 94304
[Tel.] (650) 858-6000
[Fax] (650) 858-6100

***Attorneys for Defendant Apple Inc.***

12

Case Management Statement –
Case No 12-cv-02885-LHK

3327491v1/014346