United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| GPNE CORP., | ) | Case No.: 12-CV-02885-LHK |
|          Plaintiff, | ) | |
| | ) | FINAL JURY INSTRUCTIONS |
|    v. | ) | |
| | ) | |
| APPLE, INC., | ) | |
| | ) | |
|          Defendant. | ) | |
| | ) | |

**IT IS SO ORDERED.**

Dated: October 21, 2014

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

## INSTRUCTIONS AT THE CLOSE OF EVIDENCE

FINAL JURY INSTRUCTION NO. 1 DUTY OF JURY.................................................................4

FINAL JURY INSTRUCTION NO. 2 WHAT IS EVIDENCE ................................................5

FINAL JURY INSTRUCTION NO. 3 WHAT IS NOT EVIDENCE ...........................................6

FINAL JURY INSTRUCTION NO. 4 CHARTS AND SUMMARIES NOT RECEIVED
    IN EVIDENCE...................................................................7

FINAL JURY INSTRUCTION NO. 5 CHARTS AND SUMMARIES IN EVIDENCE .............8

FINAL JURY INSTRUCTION NO. 6 DIRECT AND CIRCUMSTANTIAL EVIDENCE .........9

FINAL JURY INSTRUCTION NO. 7 CREDIBILITY OF WITNESSES...................................10

FINAL JURY INSTRUCTION NO. 8 IMPEACHMENT EVIDENCE—WITNESS ................11

FINAL JURY INSTRUCTION NO. 9 TAKING NOTES...........................................................12

FINAL JURY INSTRUCTION NO. 10 DEPOSITION IN LIEU OF LIVE TESTIMONY.......13

FINAL JURY INSTRUCTION NO. 11 USE OF INTERROGATORIES OF A PARTY ..........14

FINAL JURY INSTRUCTION NO. 12 USE OF REQUESTS FOR ADMISSION BY A
    PARTY ...................................................................15

FINAL JURY INSTRUCTION NO. 13 EXPERT OPINION ....................................................16

FINAL JURY INSTRUCTION NO. 14 USE OF DEVICES DURING DELIBERATIONS ......17

FINAL JURY INSTRUCTION NO. 15 SUMMARY OF CONTENTIONS ..............................18

FINAL JURY INSTRUCTION NO. 16 DUTY TO DELIBERATE..........................................19

FINAL JURY INSTRUCTION NO. 17 CONDUCT OF THE JURY.........................................20

FINAL JURY INSTRUCTION NO. 18 COMMUNICATION WITH COURT ........................21

FINAL JURY INSTRUCTION NO. 19 RETURN OF VERDICT .............................................22

FINAL JURY INSTRUCTION NO. 20 INTERPRETATION OF CLAIMS.............................23

FINAL JURY INSTRUCTION NO. 21 BURDEN OF PROOF FOR INFRINGEMENT..........24

FINAL JURY INSTRUCTION NO. 22 DIRECT INFRINGEMENT .......................................25

FINAL JURY INSTRUCTION NO. 23 LITERAL INFRINGEMENT ......................................26

FINAL JURY INSTRUCTION NO. 24 INFRINGEMENT UNDER THE DOCTRINE OF
    EQUIVALENTS ...................................................................27

FINAL JURY INSTRUCTION NO. 25 INVALIDITY – BURDEN OF PROOF ......................28

FINAL JURY INSTRUCTION NO. 26 WRITTEN DESCRIPTION REQUIREMENT ...........29

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

FINAL JURY INSTRUCTION NO. 27 PRIOR ART ................................................................30

FINAL JURY INSTRUCTION NO. 28 OBVIOUSNESS .........................................................31

FINAL JURY INSTRUCTION NO. 29 PATENT DAMAGES – BURDEN OF PROOF .........33

FINAL JURY INSTRUCTION NO. 30 PATENT DAMAGES – REASONABLE
　　　ROYALTY – ENTITLEMENT ........................................................................34

FINAL JURY INSTRUCTION NO. 31 PATENT DAMAGES – REASONABLE
　　　ROYALTY – DEFINITION ............................................................................35

3

# FINAL JURY INSTRUCTION NO. 1
## DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. Do not let personal likes or dislikes, opinions, prejudices, bias, or sympathy influence your decision.  Bias includes bias for or against any party or any witness based upon nationality, race or ethnicity.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

**United States District Court**
For the Northern District of California

**FINAL JURY INSTRUCTION NO. 2**
**WHAT IS EVIDENCE**

The trial is now over.  The evidence you are to consider in deciding what the facts are consists of:

     1. the sworn testimony of any witness;

     2. the exhibits which are received into evidence; and

     3. any facts to which the lawyers have agreed.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 3**
**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)   Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they said in their opening statements and throughout the trial, and what they will say in their closing arguments or at other times is intended to help you interpret the evidence.  But these arguments and statements are not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)   Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)   Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4)   Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

**FINAL JURY INSTRUCTION NO. 4**
**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts, slides, and other demonstratives not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 5**
**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. You may use those charts and summaries as evidence, even though the underlying documents and records are not here. You should give them only such weight as you think they deserve.

**FINAL JURY INSTRUCTION NO. 6**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

# FINAL JURY INSTRUCTION NO. 7
## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

> (1) the opportunity and ability of the witness to see or hear or know the things testified to;

> (2) the witness's memory;

> (3) the witness's manner while testifying;

> (4) the witness's interest in the outcome of the case and any bias or prejudice;

> (5) whether other evidence contradicted the witness's testimony;

> (6) the reasonableness of the witness's testimony in light of all the evidence; and

> (7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 8**
**IMPEACHMENT EVIDENCE—WITNESS**

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 9
## TAKING NOTES

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 10**
**DEPOSITION IN LIEU OF LIVE TESTIMONY**

You heard some witnesses testify by deposition.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

United States District Court
For the Northern District of California

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 11**
**USE OF INTERROGATORIES OF A PARTY**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 12
## USE OF REQUESTS FOR ADMISSION BY A PARTY

Before trial, each party has the right to ask another party to admit in writing that certain facts are true.  If the other party admits those facts, you must accept them as true.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 13
## EXPERT OPINION

Some witnesses, because of education or experience, were permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

**United States District Court**
For the Northern District of California

**FINAL JURY INSTRUCTION NO. 14**
**USE OF DEVICES DURING DELIBERATIONS**

The physical devices you received are evidence in this trial.

You may use them in your deliberations, but must not alter or modify the devices in any way.

17

# FINAL JURY INSTRUCTION NO. 15
## SUMMARY OF CONTENTIONS

I will now again summarize for you each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.

As I previously explained, GPNE seeks money damages from Apple for allegedly infringing claims 19 and 22 of the '954 patent, and claim 44 of the '492 patent.  These claims are referred to as the asserted claims.

Apple denies that it has infringed the asserted claims and argues that, in addition, the asserted claims are invalid.  Invalidity is a defense to infringement.

For each patent infringement claim against Apple, the first issue you will be asked to decide is whether Apple has infringed the asserted claims of GPNE's patents.  You will also be asked to decide whether those claims are valid.  If you decide that any asserted claim of GPNE's patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to GPNE to compensate GPNE for Apple's infringement.

# FINAL JURY INSTRUCTION NO. 16
## DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 17
## CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case (including the parties, evidence, witnesses or the lawyers) in person, in writing, by phone or electronic means, via email, text messaging, social media or any Internet chat room, blog, website or other feature.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it (including the parties, evidence, witnesses or the lawyers); do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 18
## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You are not to conclude from any time delays that the question is difficult to answer and you are not to speculate that the time delay gives any indication as to what the answer is.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 19
## RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**FINAL JURY INSTRUCTION NO. 20**
**INTERPRETATION OF CLAIMS**

Before you decide whether Apple has infringed any of the asserted claims of GPNE's patents or whether the claims of GPNE's patents are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.  I have interpreted the meaning of some of the language in the patent claims involved in this case.  At the beginning of this case I gave you a document reflecting those meanings.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

The term "node" means "pager with two-way data communications capability that transmits wireless data communications on a paging system that operates independently from a telephone network."

The term "frequency" means "a number expressed in hertz."

The term "randomly generated information" means "[i]nformation that is randomly generated."

The term "count value" means "[t]he number of consecutively related packets emanating from a transmitter."

The term "interface [configured/controlled] by the at least one processor to [transmit and receive terms]" means "[e]lectronic circuitry which is configured/controlled by the processor(s) according to instructions in the memory, that allows the processor(s) to communicate with a transceiver."

The term "providing code to" means "which is actually programmed to provide code to."

The term "first grant signal including information relating to an allocation of a second slot to the first node for transmitting the reserve access request signal" means "first grant signal including information identifying a slot to use for transmitting the reserve access request signal."

The term "allocation of additional resources for transmitting the data packets/allocation of additional resources for transmitting the first data packets" means "[a]n assignment of a frequency to the same node for transmitting the message."

The term "clocking signal" and the term "aligning signal" mean "[a] signal that, among other things, contains timing information used for allocating resources."

\*        \*        \*

For claim language where I have not provided you with any meaning, the claim language's plain and ordinary meaning to a person of ordinary skill in the art at the time of the invention applies.

The claims define the scope of the patent.  You must read the claims in the same way when you analyze infringement and when you analyze GPNE's patents for invalidity.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 21**
**BURDEN OF PROOF FOR INFRINGEMENT**

I will now instruct you on the rules you must follow in deciding whether GPNE has proven that Apple infringed one or more of the asserted claims of the asserted patents.  To prove infringement of any claim, GPNE must persuade you by a preponderance of the evidence meaning that it is more likely than not that Apple has infringed that claim.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 22
## DIRECT INFRINGEMENT

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Apple has made, used, sold, offered for sale, or imported within the United States a product covered by any of the asserted claims of GPNE's patents. If it has, it infringes. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether the accused Apple products infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

Whether or not Apple knew of GPNE's patents does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement.

**FINAL JURY INSTRUCTION NO. 23**
**LITERAL INFRINGEMENT**

To decide whether each accused Apple product literally infringes a claim of an asserted patent, you must compare the product with the patent claim and determine whether every requirement of the claim is included in that product.  If so, the Apple product in question literally infringes that claim.  If, however, a particular Apple product does not have every requirement in the patent claim, that product does not literally infringe that claim.

You must decide literal infringement for each asserted claim and each accused product separately.  If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in the accused product.  The fact that a particular accused Apple product also includes other parts or features will not avoid infringement, as long as it has every requirement in the patent claim.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 24
## INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

If you decide that one of Apple's products does not literally infringe an asserted patent claim, you must nonetheless then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the product is missing an identical or equivalent part to even one requirement of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has either an identical or equivalent part to that individual claim requirement. You may not use the doctrine of equivalents with respect to LTE.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

You may not use the doctrine of equivalents to find infringement if you find that the relevant functionality in Apple's products is the same as what was in the prior art before the application for the asserted patents or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art. GPNE may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the United States Patent and Trademark Office ("PTO"). If Apple has offered evidence sufficient to show that the relevant functionality in the accused products was in the prior art, the burden shifts to GPNE to prove that what it attempts to cover under the doctrine of equivalents is not in the prior art or would not have been obvious from the prior art.

You may not use the doctrine of equivalents to find infringement if you find that the subject matter alleged to be equivalent to a requirement of the patent claim was described in the asserted patents but not covered by any of their claims. The subject matter described but not claimed must be specific enough that one of ordinary skill in the art would understand that it was present in the patent.

**FINAL JURY INSTRUCTION NO. 25**
**INVALIDITY – BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Apple has proven that asserted claims of GPNE's patents are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any patent claim, Apple must prove by clear and convincing evidence that the claim is invalid, which means that it is highly probable that the claim is invalid.

All of GPNE's asserted claims have gone through an additional process at the United States Patent and Trademark Office ("PTO") known as reexamination.  In a reexamination, a challenger asks the PTO to consider whether a patent's claims are still valid in light of certain prior art.

During this case, Apple has submitted prior art.  Apple contends that such prior art invalidates certain claims of the asserted patents.  In deciding the issue of invalidity, you may take into account the fact that certain prior art was or was not considered by the PTO when it issued or reexamined the asserted patents.

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 26
## WRITTEN DESCRIPTION REQUIREMENT

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention. The purpose of this written description requirement is to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added since that time. The written description requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim. A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 27**
**INVALIDITY – PRIOR ART**

A patent claim is invalid if the claimed invention is not new.  In patent law, previous devices, methods, publications or patents are called "prior art references."

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied.

Here is a list of the ways that Apple can show that a GPNE patent claim was not new:

> – If the claimed invention was already publicly known or publicly used by others in the United States before the date of conception of the claimed invention;

> – If the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception of the claimed invention.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

> – If the claimed invention was already made by someone else in the United States before the date of conception of the claimed invention, if that other person had not abandoned the invention or kept it secret;

> – If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the patent owner's application filing date or the date of conception of the claimed invention.

Since they are in dispute, you must determine dates of conception for the claimed inventions. Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

### FINAL JURY INSTRUCTION NO. 28
### OBVIOUSNESS

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time of invention.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference, a person of ordinary skill in the field who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

> (1)     the levels of education and experience of persons working in the field;

> (2)     the types of problems encountered in the field; and

> (3)     the sophistication of the technology.

Second, you must decide the scope and content of the prior art.  The parties disagree as to whether certain prior art references should be included in the prior art you use to decide the validity of the asserted claims.  In order to be considered as prior art to a particular asserted patent, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

> (1)     commercial success of a product due to the merits of the claimed invention;

> (2)     a long felt need for the solution provided by the claimed invention;

> (3)     unsuccessful attempts by others to find the solution provided by the claimed invention;

> (4)     copying of the claimed invention by others;

> (5)     unexpected and superior results from the claimed invention;

> (6)     acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention; and

> (7)     independent invention of the claimed invention by others before or at about the same time as the named inventors thought of it.

The presence of any of factors 1-6 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of factor 7 may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the

31

relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether Apple has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art. However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

### FINAL JURY INSTRUCTION NO. 29
### PATENT DAMAGES – BURDEN OF PROOF

I will instruct you about the measure of damages for claims of patent infringement. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that Apple infringed any valid claim of the asserted patents, you must then determine the amount of money damages to be awarded to GPNE to compensate GPNE for Apple's infringement.

The amount of those damages must be adequate to compensate GPNE for the infringement. A damages award should put GPNE in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate GPNE and not to punish Apple, nor should the damages you award be based on Apple's overall success, wealth, or ability to pay.

GPNE has the burden to persuade you of the amount of its damages. You should award only those damages that GPNE proves it more likely than not suffered. While GPNE is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. GPNE is not entitled to damages that are remote or speculative.

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

1

**FINAL JURY INSTRUCTION NO. 30**
**PATENT DAMAGES – REASONABLE ROYALTY – ENTITLEMENT**

2

3

GPNE seeks a reasonable royalty for the infringement of its patents.  GPNE should be awarded a reasonable royalty for all infringing Apple sales.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 12-CV-02885-LHK
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 31
## PATENT DAMAGES – REASONABLE ROYALTY – DEFINITION

A royalty is a payment made to a patent owner in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between GPNE and Apple taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that GPNE and Apple would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In determining a reasonable royalty, you may consider the following factors:

(1)   The royalties received by GPNE for the licensing of the asserted patents, proving or tending to prove an established royalty.

(2)   The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)   The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)   The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)   The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)   The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)   The duration of the patent and the term of the license.

(8)   The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)   The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)   The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)   The extent to which Apple has made use of the invention and any evidence probative of the value of that use.

(12)   The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

35

(13)   The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by Apple.

(14)   The opinion and testimony of qualified experts.

(15)   The amount that a licensor (such as GPNE) and a licensee (such as Apple) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patent owner who was willing to grant a license.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called a "running royalty."  To calculate a running royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply that base by the "rate" that you find would have resulted from the hypothetical negotiation.  You may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold.  If you do, the royalty would be that fixed number of dollars times the number of units sold.

Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of a running royalty because, with a running royalty, the licensee pays based on the number of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

36