# APPLE INC.'S HIGH PRIORITY OBJECTIONS FILED ON OCTOBER 4, 2014 AS AN EXHIBIT TO TO THE DECLARATION OF CHRISTOPHER O. GREEN IN SUPPORT OF APPLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL (DKT. NO. 416)
# UNREDACTED

| | |
|---|---|
| FISH & RICHARDSON P.C. | WILMER CUTLER PICKERING HALE AND DORR LLP |
| Katherine K. Lutton (CSB No. 194971)<br>lutton@fr.com<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063<br>Tel: (650) 839-5070 Fax: (650) 839-5071 | Joseph J. Mueller (*pro hac vice*)<br>joseph.mueller@wilmerhale.com<br>60 State Street<br>Boston, MA 02109<br>Tel: (617) 526-6000 Fax: (617) 526-5000 |
| Ruffin B. Cordell (*pro hac vice*)<br>cordell@fr.com<br>1425 K Street, NW, Suite 1100<br>Washington, DC 20005<br>Tel: (207) 783-5070 Fax: (207) 783-2331 | Matthew Hawkinson (CSB No. 248216)<br>matthew.hawkinson@wilmerhale.com<br>350 South Grand Avenue, Suite 2100<br>Los Angeles, California 90071<br>Tel: (213) 443-5300 Fax: (213) 443-5400 |
| Christopher O. Green (*pro hac vice*)<br>cgreen@fr.com<br>Aamir A. Kazi (*pro hac vice*)<br>kazi@fr.com<br>Jacqueline Tio (*pro hac vice*)<br>tio@fr.com<br>1180 Peachtree Street, 21st Floor<br>Atlanta, GA 30309<br>Tel: (404) 892-5005 Fax: (404) 892-5002 | Mark D. Selwyn (CSB No. 244180)<br>mark.selwyn@wilmerhale.com<br>950 Page Mill Road<br>Palo Alto, CA 94304<br>Tel: (650) 858-6000 Fax: (650) 858-6100<br><br>Attorneys for Defendant APPLE INC. |
| Benjamin C. Elacqua (*pro hac vice*)<br>elacqua@fr.com<br>Brian G. Strand (*pro hac vice*)<br>strand@fr.com<br>1221 McKinney Street, Suite 2800<br>Houston, TX 77010<br>Tel: (713) 654-5300 Fax: (713) 652-0109 | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

| | |
|---|---|
| GPNE, CORP.,<br><br>        Plaintiff,<br><br>  v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No. 5:12-cv-02885-LHK<br><br>**APPLE INC.'S HIGH PRIORITY OBJECTIONS**<br><br>Trial Date: October 6, 2014 |

I. **Apple's Objections to GPNE's Disclosures for October 6 Witnesses**

*Demonstratives (Gabriel and Edwin Wong).* GPNE seeks to rely on certain demonstratives that allegedly relate to work surrounding a never disclosed prototype. GPNE provides no reasons why these photographs or the Palmtop computer GPNE contends is "a demonstrative of what was used for the prototype" were not produced during discovery, or why they were not disclosed until September 30. *See* Dkt. No. 398 at 1 (Apple's prior briefing of this issue). Moreover, GPNE does not identify any specific context warranting their inclusion—particularly images that do not include the inventor. To the extent GPNE uses the images and references to a "prototype" to suggest that this work relates to the asserted claims, GPNE provides no support and, indeed, expressly distanced itself from this association. *See* Dkt. No. 398-4 at 13. GPNE fails to establish the relevance of these images, which would only mislead the jury on GPNE's "history" and should be excluded under Fed. R. Evid. 401 and 403.

*PTX 144 (Edwin Wong).* Apple objects to PTX 144 under Fed. R. Evid. 802 as hearsay. It is an out of court statement authored by a third party, and no hearsay exceptions apply to this exhibit. Apple also objects to this exhibit under Fed. R. Evid. 701. GPNE uses this exhibit (and the related Dr. Tan designations) as a proxy to introduce the improper lay testimony of Dr. Tan. PTX144 is an "Evaluation of Digicomm, Ltd Paging System." It contains statements of Dr. Tan concerning prior art data communication systems and purports to evaluate the technical features of U.S. Pat. 5,542,115 in comparison to those systems. Dr. Tan did not provide an expert report related to this case, and GPNE cannot shoehorn his testimony in through an exhibit during Edwin Wong's examination. *See* Fed. R. Evid. 701 & Advisory Committee's Note ("[A]ny part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702.").

*PTX 202 (All three witnesses).* Apple objects to PTX 202 under Fed. R. Evid. 403 as prejudicial because it suggests that GPNE commercialized its product. To date, GPNE has not provided any disclosure under Patent L.R. 3-1 of any product that embodies the claims of the patent-in-suit, nor has it provided discovery about any system until the recently produced "demonstratives." Further, this exhibit is highly prejudicial and confusing because it concerns

1

APPLE'S OPPOSITION TO PLAINTIFF'S
REVISED TRIAL EXHIBIT LIST
Case No. 5:12-CV-02885-LHK

1  GPNE patents 5,542,115, 5,613,212, 5,729,827, and 5,689,807 – none of which is asserted in this
2  case. (p. 2.)  The first patent in the list is the parent patent, but the focus of the exhibit is on U.S.
3  Pat. 5,613,212. (p. 10), identifying the goal of the project as "building a prototype . . . to emulate
4  the system described in Digicomm's Patent #5,613,212").  Admitting this exhibit would confuse
5  the jury, particularly because the system described within the exhibit is not the same as the GPNE
6  paging system at issue here.  Finally, PTX 202 incorporates PTX 144 (or a version of that exhibit)
7  as an appendix, and Apple incorporates its PTX 144 objections herein.

8   *PTX 203 (Harry Tan).*  Apple objects to PTX 203 under Fed. R. Evid. 401-403.  This
9  exhibit is not relevant and is highly prejudicial because it suggests GPNE was commercializing its
10 product in 2005, when that is not the case.  The exhibit concerns QPRS (*see* p. 3), which is
11 unrelated to the patents-in-suit.  *See* Ex. A, Tan Tr. at 57:5-15; 144:13-23.  Additionally, GPNE
12 does not identify any system that embodied the claims of the Patents-in-Suit, and when
13 information about any commercialization was requested during discovery, GPNE responded that
14 no product or prototype existed.  Dkt. No. 398 at 1.  Given the lack of relevance of the system
15 discussed in PTX 203, the exhibit has no probative value and serves only to confuse the jury.

16  *PTX 280 and 354 (All three witnesses).*  PTX 280 is the *inter partes* reexamination
17 certificate issued for the '954 patent.  It provides no substantive value to the disputed facts of the
18 case.  PTX 354 is a decision issued by the PTO on September 26, 2014 for the '492 patent that
19 addresses other claims of the '492 patent, but it provides **no** additional analysis of claim 44
20 asserted here.  (*See* PTX 354 at 18 ("[C]laim[] 44 . . . w[as] confirmed *for separate reasons* in the
21 ACP mailed 4/29/14.)" (emphasis added).  Thus any probative value provided by these exhibits is
22 substantially outweighed by their unfair prejudice to Apple by encouraging the jury to abdicate its
23 responsibility under §282 to the PTO.  *See* Apple's MIL No. 1 (Dkt. No. 282 at 1-2).  These
24 disclosed exhibits further confirm Apple's concerns, discussed at the first pretrial conference.  At
25 that time, GPNE still asserted claim 42 of the '267 patent, which stood rejected in reexamination.
26 GPNE's subsequent flip-flop between asserted and non-asserted claims candidly shows that its
27 choice of asserted claims turns on whether it can describe them as "twice" confirmed by the PTO.
28 *See* Dkt. No. 389-1 at 2:20-25.  These chain of events only strengthen Apple's initial position, as

GPNE has provided no reason why reexamination materials that do not discuss any disputed claim element in this case outweighs their unfair prejudice to Apple. Fed. R. Evid. 403.

*Tan Deposition Designations.*[1] Apple objects to 32:03-32:12, 32:17-32:18, 33:02-33:04, 33:06-34:18, 38:23-39:08; 39:11-39:12, 39:16-39:19, 41:22-43:01, 43:10-43:15 under Fed. R. Evid. 403. This testimony concerns a supposed prototype. *See* objections to PTX 202. Apple objects to 80:04-81:19 under Fed. R. Evid. 403 and 701. This testimony concerns a version of PTX 144 (referenced in the testimony as "UCI Evaluation"), and Apple incorporates those objections herein. As with PTX 144, Dr. Tan provides testimony of nominal relevance because the underlying document concerns U.S. Pat. 5,542,115, which is not at issue in this case and has different claims than the Patents-in-Suit. This testimony is also highly technical in nature, and is not appropriate of a lay witness. Fed. R. Evid. 701. Apple similarly objects to 88:21-89:2, 89:5-92:7, 92:11-93:25, 132:11-133:7, and 133:10-134:5 under Fed. R. Evid. 701, as these span a variety of technical topics, ranging from the operation of complex cellular telephony standards (GSM and GPRS), prior art systems, and issues of validity to issues related to non-infringement. Dr. Tan did not submit any expert disclosures in this matter, and as with PTX 144, the subject matters of his testimony are not issues appropriate for lay testimony. Fed. R. Evid. 701.

## II.     Apple's Responses to GPNE Objections to Apple's Disclosures

*DTX 123.* GPNE objects to Apple using on cross-examination a document entitled "GPNE Corp. Presentation, Investor Presentation." The document is a 21-page presentation that discusses corporate strategy (p. 3), gives a technology overview (p. 4-5), outlines its IP litigation strategy (p. 6-8), and charts its management team (p. 9). GPNE's primary objection appears to be that it discusses some of its litigations (p. 10-12) and therefore violates the Court's Order on Apple's MIL No. 2. However, the Court specifically addressed this point in its Order (Dkt. No. 319 at 2), stating "other GPNE litigation on the patents-in-suit that led to settlements are indisputably relevant to the calculation of reasonable royalties." Further, GPNE's business model is undisputed: "Q: Does GPNE have any income other than money it makes from licensing and litigating its patent portfolio? A: No. and Q: How many companies has GPNE sent licensing

---

[1] Apple notes that Dr. Tan does not appear on the parties' joint witness list submitted twice by the parties. Dkt. Nos. 405, 408-1, 409-1.

letters to? A: I think a few hundred." (Ex. B, Oct. 24, 2013 Edwin Wong Dep. Tr. at 94, 149). Apple should be permitted to question GPNE about its business model using DTX 123.

*DTX 169.* This email from co-inventor Po Sing Tsui to Edwin Wong, dated December 8, 2005, confirms a discussion regarding efforts to draft claims concerning GPRS (e.g., "Po did you get the gprs book yet??" (4th line in body of the email). Their discussion of GPRS, and GPNE's attempt to draft patent claims relating to that technology, is relevant to issues of infringement and invalidity, including the written description requirement of 35 U.S.C. § 112. GPNE's understanding of standards is further relevant to damages, including GPNE's state of mind at the hypothetical negotiation and GPNE's arguments that its patents are "essential" to standards but not subject to a FRAND licensing commitment. *See* Jan. 1, 2014 Dansky Report at 89; Dkt. No. 243 at 6. GPNE has incorrectly stated that precedent such as *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867 (Fed. Cir. 1988), prohibits Apple from referencing GPNE's attempt to "copy" certain standards. The *Kingsdown* opinion addresses whether drafting claims to a "competitor's product" establishes "deceitful intent" in furtherance of equitable defenses. *Id.* at 874. Such precedent is inapt because no analogous facts or defenses are in play here.

*DTX 293.* GPNE has made clear that it intends to offer testimony regarding its commercialization efforts. DTX 293 directly rebuts that storyline. This exhibit in particular informs GPNE of licensing options for U.S. Pat. No. 6,282,406, which GPNE asserted against several suppliers of DOCSIS modems in 2007 and 2008. The Court already denied GPNE's MIL No. 1 to exclude such references to GPNE's business model, and GPNE can identify no other alleged prejudice from these facts. Dkt. No. 319 at 2.

*DTX 302.* For the reasons stated for DTX 123 and 299, DTX 302 (October 31, 2004 email from Edwin Wong to Ernest Bodner) should not be excluded. This document relates directly to GPNE's business strategies and what types of companies it may or may not "go after."

*DTX 299*. For the reasons stated for DTX 123, DTX 299 (September 15, 2000 email from Edwin Wong to Gabrial Wong) is relevant, at least because it relates to GPNE's business strategies, such as using "IBM's open and cheap licensing formula to success." (paragraph 1). It is also relevant to GPNE's understanding of standards ("you can not sue a standard"). (paragraph 1).

1  *DTX 413*.  This exhibit is a Certificate of Formation for an LLC issued by the State of Texas.  The GPNE Texas LLC entity is a co-signatory on several GPNE license agreements at issue in this case, including, e.g., agreements with DriverTech, LLC and United Rentals, Inc.  The document contains corporate registration facts that are not prejudicial, much less unfairly prejudicial, to GPNE under Fed. R. Evid. 403. The Court's ruling in GPNE's MIL No. 1 also warrants admitting this exhibit because this entity is a licensor of the patents-in-suit in this case, an issue relevant to the calculation of a reasonable royalty.  *See* Dkt. No. 319 at 2-3.

*Tan Counter Designations*. As discussed in response to GPNE's objections to DTX293, Dr. Tan's testimony about GPNE's business model rebuts GPNE's product development story.  Additionally, GPNE is using its licensing efforts to influence the jury on liability (*see, e.g.*, GPNE's Opening Slide 15 stating that other "Major Players Have Taken a License"), and testimony from Dr. Tan places those litigation-induced licenses into context.  The Court's ruling on Apple's MIL No. 2 is instructive because the Court refused to prevent Apple from relying on such evidence.  Dkt. No. 319 at 2 (finding that mutuality on MIL No. 2 was not necessary).

*GPNE's Request that Apple Identify Pages for its Cross Exhibits*.  GPNE's position that the parties agreed to identify pages of its cross exhibits is false.  First, the parties' prior agreement to do so relates only to direct exhibits.  Dkt. No. 374 at 2.  Second, GPNE formerly took the position that as of the parties' prior joint statement, GPNE believed it was not required to even put cross exhibits on its exhibit list. It can hardly expect to use this same statement to represent an agreement as to cross exhibits.  Third, the parties' October 1 email relating to advance notification of the parties' exhibits does not mention specific pages at all.  Ex. C (Oct. 1, 2014 email from Elacqua to Lewis). Finally, although GPNE appears to have identified pages in its disclosure of direct exhibits, it does so while "reserv[ing] the right to use any of its opening demonstratives that have not been excluded by the Court." Ex. D (Oct. 3, 2014 disclosure by GPNE).  Thus, Apple has treated GPNE's disclosures to be of full exhibits.  Finally, GPNE's objection to Apple's number of exhibits is not warranted because GPNE's two witnesses include the inventor and the CEO of GPNE Corp., who was designated for all of Apple's noticed 30(b)(6) topics.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: October 4, 2014 | FISH & RICHARDSON P.C. |
| 3 | | |
| 4 | | By: /s/ *Christopher O. Green* |
| | | Christopher O. Green |
| 5 | | |
| | | Attorneys for Defendant |
| 6 | | APPLE INC. |