| | |
|---|---|
| FISH & RICHARDSON P.C. | WILMER CUTLER PICKERING HALE AND DORR LLP |
| Katherine K. Lutton (CSB No. 194971)<br>lutton@fr.com<br>Rebecca Charnas Grant (CSB No. 264214)<br>rgrant@fr.com<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063<br>Tel: (650) 839-5070 Fax: (650) 839-5071 | Joseph J. Mueller (*pro hac vice*)<br>joseph.mueller@wilmerhale.com<br>60 State Street<br>Boston, MA 02109<br>Tel: (617) 526-6000 Fax: (617) 526-5000 |
| Ruffin B. Cordell (*pro hac vice*)<br>cordell@fr.com<br>1425 K Street, NW, Suite 1100<br>Washington, DC 20005<br>Tel: (207) 783-5070 Fax: (207) 783-2331 | Matthew Hawkinson (CSB No. 248216)<br>matthew.hawkinson@wilmerhale.com<br>350 South Grand Avenue, Suite 2100<br>Los Angeles, California 90071<br>Tel: (213) 443-5300 Fax: (213) 443-5400 |
| Christopher O. Green (*pro hac vice*)<br>cgreen@fr.com<br>Aamir A. Kazi (*pro hac vice*)<br>kazi@fr.com<br>Jacqueline Tio (*pro hac vice*)<br>tio@fr.com<br>1180 Peachtree Street, 21st Floor<br>Atlanta, GA 30309<br>Tel: (404) 892-5005 Fax: (404) 892-5002 | Mark D. Selwyn (CSB No. 244180)<br>mark.selwyn@wilmerhale.com<br>950 Page Mill Road<br>Palo Alto, CA 94304<br>Tel: (650) 858-6000 Fax: (650) 858-6100<br><br>Attorneys for Defendant APPLE INC. |
| Benjamin C. Elacqua (*pro hac vice*)<br>elacqua@fr.com<br>Brian G. Strand (*pro hac vice*)<br>strand@fr.com<br>1221 McKinney Street, Suite 2800<br>Houston, TX 77010<br>Tel: (713) 654-5300 Fax: (713) 652-0109 | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

| | |
|---|---|
| GPNE CORP.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No. 5:12-cv-02885-LHK<br><br>**APPLE INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OF INDEFINITENESS**<br><br>Date:　　　January 29, 2015<br>Time:　　　1:30pm<br>Place:　　　Courtroom 8, 4th Floor<br>Judge:　　　Hon. Lucy H. Koh |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................2

II. LEGAL STANDARD ..................................................................................................2

    A. Judgment as a Matter of Law ..........................................................................2

    B. Indefiniteness ...................................................................................................2

III. ARGUMENT ...............................................................................................................3

    A. "Randomly Generated Information" is Indefinite ...........................................3

    B. No Narrower Interpretation of "Randomly Generated Information" is Appropriate.7

IV. CONCLUSION ............................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014) ................................................................................................5, 6

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    481 F.3d 1371 (Fed. Cir. 2007) .......................................................................................................7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ...........................................................................................................3, 4, 5

*Perkin-Elmer Corp. v. Computervision Corp.*,
    732 F.2d 888 (Fed. Cir. 1984) .........................................................................................................2

**Statutes**

35 U.S.C. § 112 ...............................................................................................................................2, 7

**Other Authorities**

FED. R. CIV. P. 50 .................................................................................................................................2

Leahy-Smith America Invents Act, Pub. Law 112-29, § 4, 125 Stat. 296-97 (Sept. 16, 2011) .........2

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 29, 2015, at 1:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Defendant Apple Inc. ("Apple") moves for judgment as a matter of law (renewed) as follows:

The phrase "randomly generated information," found in all asserted claims, is indefinite, and thus all asserted claims are invalid as a matter of law.

**RELIEF REQUESTED**

The Court should issue an order that the asserted claims of the patents are invalid.

## I. INTRODUCTION

Apple Inc. ("Apple") moves for a judgment as a matter of law on the issue of indefiniteness because one of ordinary skill in the art could not determine the scope of the phrase "randomly generated information" with reasonable certainty. The GPNE patents contain no supporting disclosure for this term, leaving it to its ordinary meaning. Apple's and GPNE's respective experts agree that the scope of the term is not bounded in any way, that the specification does not describe any objective standard for limiting the scope of the phrase, and that one of ordinary skill in the art could not determine how to generate the "random" information that the claims require.

Accordingly, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Apple renews its motion for judgment as a matter of law that GPNE's asserted claims are invalid for failure to satisfy 35 U.S.C. § 112.[1]

## II. LEGAL STANDARD

### A. Judgment as a Matter of Law

Judgment as a matter of law may be granted "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ."[2] In evaluating a Rule 50(b) motion, the trial court must determine whether the evidence "constitutes 'substantial evidence' in support of the jury's findings and, if so, whether those findings can support the legal conclusions necessarily drawn by the jury in accord with its instructions *en route* to its verdict."[3]

### B. Indefiniteness

Section 112, ¶ 2, Title 35, requires that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."[4] The U.S. Supreme Court recently announced a newly-refined and lower standard for evaluating indefiniteness under § 112, ¶ 2, stating "we hold

---

[1] Dkt. No. 527.
[2] FED. R. CIV. P. 50.
[3] *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 893 (Fed. Cir. 1984).
[4] Because the asserted patents were filed prior to September 16, 2012, the pre-AIA patent statute § 112, ¶ 2 applies. *See* Leahy-Smith America Invents Act, Pub. Law 112-29, § 4, 125 Stat. 296-97 (Sept. 16, 2011).

that a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."[5]

While recognizing that "absolute precision" may not always be possible, the Court made clear that "a patent must be precise enough to afford clear notice of what is claimed."[6] The Supreme Court emphatically rejected the Federal Circuit's previous standard where proving indefiniteness required clearing a higher hurdle, under which a claim remained definite "so long as the claim is 'amenable to construction,' and the claim, as construed, is not 'insolubly ambiguous.'"[7] That is, the Supreme Court explained that patent law cannot tolerate patent claims that lack requisite precision, stating that "[i]t cannot be sufficient that a court can ascribe *some* meaning to a patent's claims," because tolerating this level of imprecision would breed uncertainty and create a "zone of uncertainty" surrounding the patent's claims.[8]

### III. ARGUMENT

#### A. "Randomly Generated Information" is Indefinite

Each of the asserted claims requires that the "node" receives "randomly generated information,"[9] a phrase the Court has construed as "information that is randomly generated."[10] Applying *Nautilus* here, this phrase is indefinite because one of ordinary skill in the art cannot determine the scope of the phrase with reasonably certainty.

Starting with the ordinary meaning, one of ordinary skill in the art could not determine what degree of "randomness" is necessary to satisfy the construction, or how to go about generating "random" information. Apple's expert, Mr. Rysavy, testified that "randomly generated

---

[5] *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).
[6] *Id.* at 2128-29.
[7] *Id.* at 2124.
[8] *Id.* at 2130 (emphasis in original).
[9] JTX 2 at cl. 37 ("wherein the first grant signal returns randomly generated information to the first node to enable identification of the first node as a desired recipient of the first grant signal"); JTX 3 at cl. 19 ("wherein the interface is further controlled by the processor to: transmit randomly generated information created by the first node; and receive said randomly generated information returned from the communication controller to enable identification of the first node."), cl. 22 ("wherein the interface is further controlled by the processor to: transmit randomly generated information created by the first node; and receive said randomly generated information returned from the communication controller to enable identification of the first node.").
[10] Dkt. No. 87 at 58.

information" in the claims "could mean anything."[11] GPNE's expert Dr. Dinan agreed.[12] The types of information that fall under the scope of the broad phrase vary in content, and consequently, their intended use. The undisputed evidence indicates that "randomly generated information" encompasses varying types of information, including "nondeterministic" information, "random information" produced using "non-computer methods," and "random information" deterministically produced using computer methods.[13] Each of these sequences of information varies in degrees of randomness, and "the difficulty" in determining what is "randomly generated information" is "knowing how random [and] to what extent is [the] information completely unpredictable."[14] Moreover, as made clear in *Nautilus,* it matters not that the term "randomly generated information" has been construed.[15]

Compounding the term's uncertain scope is that the intrinsic evidence is completely silent with respect to "randomly generated information." Both Mr. Rysavy and Dr. Dinan agree that the GPNE patents do not say anything about how to generate this information,[16] nor do the patents identify the requisite degree of randomness necessary to satisfy the Court's construction. For example, the GPNE patents make no reference to deterministic or non-deterministic methods, nor do they disclose any type of computer or non-computer algorithm for generating any random information. Instead, the specification merely refers to the specific circumstance of a pager "randomly" *selecting* (not generating) a previously defined time slot to communicate with a base station—a one-off example that provides no guidance on the requirement of generating random information:

> In the above regard, since pager unit P1 has not yet been assigned a time slot for CELL$_2$, the request on frequency C$_4$ is randomly made. However, pager unit P1 keeps

---

[11] Tr. 1359:17-21.
[12] Tr. 1638:18-22.
[13] Tr. 1359:13-1360:1.
[14] Tr. 1359:25-1360:1.
[15] *Nautilus,* 134 S. Ct. at 2129 (rejecting the Federal Circuit's "amenable to construction" standard); *id.* at 2130 ("Falling short in that regard, the expressions 'insolubly ambiguous' and 'amenable to construction' permeate the Federal Circuit's recent decisions concerning § 112, ¶ 2's requirement. We agree with Nautilus and its *amici* that such terminology can leave courts and the patent bar at sea without a reliable compass.").
[16] Tr. 1360:5-6; 1639:6-11.

track of the time slot in which it makes its request to the new central control station (e.g., station S2).

Thereafter, pager unit P1 continues to monitor (step 512) communications packets from station S2 on frequency $C_2$, waiting for station S2 to issue a message which references the time slot at which pager unit P1 made its request of step 510. In particular, pager unit P1 awaits a message from station S2 on frequency $C_2$ that includes both a SLOT RECOGNITION COMMAND CODE and information stored in the same time slot which pager unit P1 randomly generated. Since the message including the SLOT RECOGNITION COMMAND CODE includes station S2 as the sender and mirrors the slot randomly generated by pager unit P1, pager unit P1 recognizes the message as being addressed to pager unit P1 and considers issuance of such a message by station S2 (see step 612 of FIG. 11) to constitute authority for pager unit P1 to communicate further with station S2.[17]

GPNE's decision to pursue a boundless construction for a term that suffers from lack of clarity and support in the specification is fatal.[18] As the Supreme Court stated in *Nautilus,* that there are "several different [definitions]" and "no informed and confident choice . . . available among the contending definitions" indicates "there is an indefiniteness problem."[19]

The Federal Circuit recently applied the *Nautilus* standard to a similar situation in *Interval Licensing LLC v. AOL, Inc.*[20] The Federal Circuit held that "unobtrusive manner that does not distract a user" was indefinite because the patent failed to "inform those skilled in the art about the scope of the invention with reasonable certainty."[21] In *Interval Licensing,* the subject patent at least discussed what "unobtrusive manner" meant in a different embodiment, and provided an example. But a single example in the different embodiment (still more than is disclosed in the GPNE patents) was not sufficient:

> Had the phrase been cast as a definition instead of as an example—if the phrase had been preceded by "i.e." instead of "e.g."—then it would help provide the clarity that the specification lacks. But as the specification is written, we agree with the district court that a person of ordinary skill in the art would not understand the "e.g." phrase to constitute an exclusive definition of "unobtrusive manner that does not distract a user." With this lone example, a skilled artisan is still left to wonder what other forms of display are unobtrusive and non-distracting. What if a displayed image takes up 20% of the screen space occupied by the primary application with which the user is interacting? Is the image unobtrusive? The

---

[17] JTX002.0022 (at 11:47-66).
[18] Dkt. No. 87 at 19.
[19] *Nautilus,* 134 S. Ct. at 2130 n.8.
[20] 766 F.3d 1364 (Fed. Cir. 2014).
[21] *Interval,* 766 F.3d at 1374.

> specification offers no indication, thus leaving the skilled artisan to consult the "unpredictable vagaries of any one person's opinion." Such ambiguity falls within "the innovation-discouraging 'zone of uncertainty' against which [the Supreme Court] has warned."[22]

Here, the intrinsic evidence provides even less disclosure than that in *Interval*. The GPNE patents fail to define the degree of randomness that would meet the claim requirement, or how a person of ordinary skill would go about "randomly generat[ing]" information. As both experts agree, the specification is absolutely silent on this term.[23]

This gap in the specification is fatal to the phrase "randomly generated information." Without any guidance, a skilled artisan would be left to his own subjective opinion to determine whether "information" is "random" enough for an application, because different applications may require a different level of "randomness."[24] And notably, even the opinion of a skilled artisan in the field may not be enough. As Mr. Rysavy testified, "there are mathematicians who spend their entire careers working with random number theory."[25] Underscoring this point, GPNE's expert, Dr. Dinan, could not identify a single source of information that one of ordinary skill in the art could use to determine how to "randomly generate" information, and confirmed that "[he's] not a mathematician who can generate randomly generated information."[26] Further still, the definition of one of ordinary skill in the art that GPNE advocated did not include any education or training as a mathematician.[27]

Thus, because of the broad and varied interpretations of "randomly generated information," and the bare disclosure in the specification that GPNE's own expert admits would not allow him to figure out how to generate random information, the phrase is indefinite.[28]

---

[22] *Interval,* 766 F.3d at 1373-74 (internal citations omitted).
[23] Tr. 1360:5-6; 1639:6-11.
[24] Tr. 1359:9-1360:1 (identifying the "predictability" of random information as driving the decision as to what type of algorithm is used).
[25] Tr. 1359:14-16.
[26] Tr. 1640:3-16.
[27] Tr. 545:20-24.
[28] *Interval,* 766 F.3d at 1369, 1377 (affirming district court's finding that claim language was indefinite "(1) because the patents fail to provide an objective standard by which to define the scope of [the phrase]; and (2) because the determination of whether an accused product would meet the claim limitations depends on its usage in changing circumstances").

**B.    No Narrower Interpretation of "Randomly Generated Information" is Appropriate**

GPNE cannot argue that "randomly generated information" is entitled to any narrower interpretation resulting from the surrounding claim language. Dr. Dinan testified that "[y]ou need to look at the claim as well" in determining the scope of the phrase.[29] But the scope of this phrase was decided at claim construction. At that time, Apple advocated a narrower construction for the phrase based on the limited intrinsic evidence, which concerned a randomly selected timeslot.[30] GPNE advocated a broader construction, that the Court ultimately adopted, based on the plain language of the phrase. In doing so, the Court recognized the lack of disclosure in the specification regarding "randomly generated information" other than the selection of a timeslot, and forewarned that the scope of the phrase may render the patent invalid for overstepping 35 U.S.C. § 112:

> Here, it is possible that the Patents will, at a later stage, be deemed invalid for lack of a sufficient written description to the extent the specification fails to describe randomly generated information other than the random time slot. [31]

Simply put, GPNE's attempt to stretch its patents beyond the original specification from 1994 was at its own peril.[32] GPNE filed the asserted patents as continuations of its 1994 paging patent, in an attempt to target modern day cellular telephone technology. But GPNE's 1994 paging patent has nothing to do with cellular telephone technologies. In fact, the lead inventor and GPNE co-founder, Gabriel Wong, admitted that he did not know anything about GPRS or LTE,[33] had never read the claims of the asserted patents that were drafted to target those standards in a "detailed fashion," [34] and does not fully understand the claims of those patents.[35] Instead, the

---

[29] Tr. 1639:1-2.
[30] *See, e.g.,* Dkt. No. 87 at 19.
[31] Dkt. 87 at 23-24. Note that the Court was referring to the lack of a corresponding written description, and not indefiniteness, but the analysis overlaps on this issue.
[32] *Cf. Liebel-Flarsheim Co. v. Medrad, Inc.,* 481 F.3d 1371, 1380 (Fed. Cir. 2007) ("The irony of this situation is that Liebel successfully pressed to have its claims include a jacketless system, but, having won that battle, it then had to show that such a claim was fully enabled, a challenge it could not meet. The motto, 'beware of what one asks for,' might be applicable here.").
[33] Tr. 302:22-303:6; 305:2-13.
[34] Tr. 276:5-12.
[35] Tr. 276:13-16 (Mr. Wong understands "the general idea" of the claims, but not the "precise" wording used).

claims were drafted by or at the direction of former principal Ernest Bodner,[36] who is not one of ordinary skill in the art, and were not reviewed by the GPNE patent inventors.[37]  Given the intentional departure from the 1994 specification to target after developed technology, it is no surprise that GPNE's claims are indefinite.

### IV. CONCLUSION

For the reasons stated herein, Apple respectfully requests that the Court grant its motion for Judgment as a Matter of Law and find the term "randomly generated information" to be indefinite.

Dated:  November 5, 2014                    FISH & RICHARDSON P.C.

                                                     By: *Christopher O. Green*
                                                           Christopher O. Green
                                               Attorneys for Defendant
                                               APPLE INC.

---

[36] Dkt. No. 530, Ex. A (Bodner Tr.) at 64:1-3; 98:2-98:13.
[37] Dkt. No. 530, Ex. A (Bodner Tr.) at 72:17-24; 75:2-75:10.